# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITY OF PHILADELPHIA, | |
| *Plaintiff* | Case No. 2:25–cv–06185–GJP |
| —v— | The Honorable Gerald J. Pappert |
| CVS HEALTH CORPORATION, *et al.*, | |
| *Defendants.* | |

# CVS DEFENDANTS' SEPARATE BRIEF
# IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

I.   THE CITY'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED ............................1

    A.   The Contracts.................................................................................................2

    B.   The City's Claim is Time-Barred .................................................................3

         1.   The City Waited Too Long, as to Some Contracts Decades, to File .......................3

         2.   The City Cannot Invoke Tolling to Extend Limitations ...........................4

             (a)   The City was on Notice...............................................................5

             (b)   Even if the City Lacked Clear Notice, it had Inquiry Notice and Diligence Would Have led it to Discover its Claims ..................6

         3.   Nullum Tempus Does not Apply.................................................................7

    C.   The City has Failed to Plead a Breach of Contract .................................................7

         1.   The City has not Alleged a Plausible Breach of any Formulary or DUR Provisions.................................................................................7

         2.   The City has not Adequately Alleged Facts Supporting a Breach. .........................9

II.   THE COMMONWEALTH'S CONSENT DECREE PRECLUDES MULTIPLE CLAIMS AGAINST CVS ....................................................................................10

III.   THERE IS NO BASIS FOR PERSONAL JURISDICTION OVER THE CVS HOLDING COMPANIES.................................................................................14

IV.  CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Angstadt v. Midd-W. Sch. Dist.*,
  377 F.3d 338 (3d Cir. 2004) .................................................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 10

*Avera Gettysburg v. Teva Pharm. Indus. Ltd.*,
  Case No. 27-CV-23-17610 (Fourth Judicial District, Minn. May 22, 2025) ......................... 12, 13

*Baptiste v. Bethlehem Landfill Co.*,
  965 F.3d 214 (3d Cir. 2020) .................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 2, 10

*Bohus v. Beloff*,
  950 F.2d 919 (3d Cir. 1991) ...................................................................................... 4

*Brawner v. Educ. Mgmt. Corp.*,
  513 F. App'x 148 (3d Cir. 2013) ................................................................................ 4

*Callum v. CVS Health Corp.*,
  137 F. Supp. 3d 817 (D.S.C. 2015) ........................................................................... 15

*Caplan v. Fellheimer, Eichen, Braverman & Kaskey*,
  5 F. Supp. 2d 299 (E.D. Pa. 1998) ............................................................................. 8

*City of Boston v. Express Scripts, Inc.*,
  765 F. Supp. 3d 31 (D. Mass. 2025), *appeal filed sub nom.*,
  *The City of Boston, et al v. OptumRx, Inc., et al*, No. 25-1258 (1st Cir. 2025) ............................... 1, 5

*City of Boston v. Express Scripts, Inc.*,
  Not. of Removal at 3, ECF 1 (D. Mass. March 1, 2024) (No. 24-cv-10525) ................................ 1

*City of Philadelphia v. Beretta U.S.A., Corp.*,
  126 F. Supp. 2d 882 (E.D. Pa. 2000),
  *aff'd on other grounds*, 277 F.3d 415 (3d Cir. 2002) ........................................................ 13

*City of Pittsburgh v. W. Penn Power Co.*,
  147 F.3d 256 (3d Cir. 1998) .................................................................................... 11

*Commonw. ex rel. Krasner v. Att'y Gen.*,
  309 A.3d 265 (Pa. Commw. Ct. 2024), *appeal pending* ................................................... 11, 12

*Corcoran v. CVS Health Corp.*,
    169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................................ 15

*Ecore Int'l, Inc. v. Downey*,
    343 F. Supp. 3d 459 (E.D. Pa. 2018) .................................................................. 4

*Fine v. Checcio*,
    870 A.2d 850 (Pa. 2005) ............................................................................... 4, 6

*Gorski v. Smith*,
    812 A.2d 683 (Pa. Super. Ct. 2002) ................................................................... 7

*Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*,
    810 F.3d 116 (3d Cir. 2016) ............................................................................. 11

*In re Briscoe*,
    448 F.3d 201 (3d Cir. 2006) ............................................................................. 15

*In re Erny's Est.*,
    12 A.2d 333 (Pa. 1940) ................................................................................... 14

*Kripp v. Kripp*,
    849 A.2d 1159 (Pa. 2004) ................................................................................. 8

*Mest v. Cabot Corp.*,
    449 F.3d 502 (3d Cir. 2006) .............................................................................. 4

*Munsif v. Am. Bd. of Internal Med.*,
    No. 11-5949, 2012 WL 3962671 (E.D. Pa. Sept. 11, 2012) ............................... 15

*Nekrilov v. City of Jersey City*,
    45 F.4th 662 (3d Cir. 2022) .............................................................................. 12

*Nieves v. Hess Oil Virgin Islands Corp.*,
    819 F.2d 1237 (3d Cir. 1987) ........................................................................... 12

*Northampton Cnty. Area Cmty. Coll. v. Dow Chem., U.S.A.*,
    566 A.2d 591 (Pa. Super. Ct. 1989), *aff'd*, 598 A.2d 1288 (Pa. 1991) ............... 13

*Northwell Health, Inc. v. Lexington Ins. Co.*,
    550 F. Supp. 3d 108 (S.D.N.Y. 2021) ................................................................. 9

*Pa. Pub. Util. Comm'n v. Del. Valley Reg'l Econ. Dev. Fund*,
    255 A.3d 602 (Pa. Commw. Ct. 2021) ............................................................... 13

*Pennington v. Wells Fargo Bank, N.A.*,
    947 F. Supp. 2d 529 (E.D. Pa. 2013) .................................................................. 9

*Philidor Rx Servs. LLC v. Polsinelli PC,*
    552 F. Supp. 3d 506 (E.D. Pa. 2021),
    *aff'd*, No. 22-2836, 2023 WL 6290746 (3d Cir. Sept. 27, 2023) ..................................................... 8

*Pop Test Cortisol, LLC v. Univ. of Chicago,*
    No. 14-CV-7174, 2015 WL 3822237 (D.N.J. June 18, 2015) ........................................................ 15

*Prime Energy & Chem. LLC v. Tucker Arensberg, P.C.,*
    No. 23-2169, 2024 WL 4441492 (3d Cir. Oct. 8, 2024) ........................................................... 4, 6

*Rice v. Diocese of Altoona-Johnstown,*
    255 A.3d 237 (Pa. 2021) ................................................................................................................. 6

*S.T. Hudson Eng'rs, Inc. v. Camden Hotel Dev. Assocs.,*
    747 A.2d 931 (Pa. Super. Ct. 2000) ............................................................................................... 3

*Steiner v. Markel,*
    968 A.2d 1253 (Pa. 2009) ............................................................................................................... 3

*Stevenson v. Silverman,*
    208 A.2d 786 (Pa. 1965) ............................................................................................................... 13

*U.S. Express Lines, Ltd. v. Higgins,*
    281 F.3d 383 (3d Cir. 2002) ........................................................................................................... 3

*Waller v. Nelson,*
    No. 4:22-cv-00120, 2023 WL 4106250 (W.D. Va. June 21, 2023) ............................................. 15

## STATUTES

42 Pa. Stat. and Cons. Stat. Ann. § 5525 (2024) ................................................................................. 3

Philadelphia Consumer Protection Ordinance, 9 Phila. Code § 9-6307 ........................................... 12

## REGULATIONS

21 C.F.R. § 1306.04(a) .......................................................................................................................... 9

## CONSTITUTIONAL PROVISIONS

United States Constitution, Art. I, § 10, cl. 1 .................................................................................... 12

The CVS Defendants: CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., AdvanceRx.com, L.L.C., and CaremarkPCS Pennsylvania Mail Pharmacy, LLC submit this separate brief in support of their motion to dismiss.

## I.    THE CITY'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED.

CaremarkPCS Health, L.L.C. ("CaremarkPCS Health") provides PBM services to the City of Philadelphia and has done so since 2006. No other CVS Defendant has contracted with the City, so the breach of contract claim against the other CVS Defendants must be dismissed. As to CaremarkPCS Health, the City's breach of contract claim suffers from three basic deficiencies.

*First*, the City's claim that CaremarkPCS Health breached contracts in place between 2006 and 2021 is time-barred by Pennsylvania's four-year statute of limitations. Because the City had sufficient notice of its alleged injuries and their alleged cause, the City cannot rely on any tolling doctrine to extend that period. Political subdivisions around the country began bringing opioid-related actions against PBMs, including CVS, well over four years ago. A district court in Massachusetts recently found that a municipality's claims against PBMs for their alleged conduct related to opioid abuse were time-barred based on the extensive prior litigation history against PBMs and a municipality's own opioid litigation against other defendants. *City of Boston v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025), *appeal filed sub nom.*, *The City of Boston, et al v. OptumRx, Inc., et al*, No. 25-1258 (1st Cir. 2025). The City of Boston filed its action ***nearly two years before*** the City of Philadelphia filed this one. *See* Not. of Removal at 3, ECF 1 (D. Mass. March 1, 2024) (No. 24-cv-10525). The same result— dismissal—should follow here. To be clear, though CVS discusses tolling and *nullum tempus* in the context of the breach of contract claim, CVS's arguments with respect to these issues apply to *all* of the claims against it in this litigation, including those addressed in Defendants' joint brief.

*Second*, as to its claims based on formulary and drug utilization review (DUR) services, the City cannot point to a specific promise that CVS breached. Instead, the City distorts contractual provisions

that do not obligate CVS as the City suggests (and in some instances directly contradict the City's allegations).

**Third**, the City has not come close to plausibly alleging a breach of contract. Despite filing a 277-page complaint, the City's breach of contract claim proceeds by "labels and conclusions" and a "formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But a complaint must contain factual allegations that support each claim and "raise a right to relief [for that claim] above the speculative level." *Id.* Because the City does not plead basic *factual content* and, instead, relies on only a few conclusory allegations—its claim should be dismissed.

### A.     The Contracts.

CaremarkPCS Health has provided PBM services over the past two decades to the City pursuant to a series of contracts. Among other services, it provides:

- Access to a retail pharmacy network that CVS has contracted with to provide retail pharmacy services to plan members, *see, e.g.*, Ex. 1, 2022 Contract, Ex. PA-A § 2.3;

- Formulary management services to the City, through which the City adopts a specific formulary proposed by CaremarkPCS Health which may be changed with notice to the City during the term of the contract, *see, e.g.*, *id.* § 2.6; and

- Drug utilization review (DUR) services, which apprise participating pharmacies and prescribers of information related to drug usage. Doctors and pharmacists are "responsible for acting or not acting" on the "information generated" by the DUR services. *See, e.g.*, *id.* § 2.8.

Under the contracts, CaremarkPCS Health seeks rebates from manufacturers. *See, e.g.*, Ex. 2, 2011 Contract, Ex. A, § 6.1. CaremarkPCS Health passes those rebates through to the City. *See, e.g.*, *id.* § 6.2. CaremarkPCS Health is permitted to retain certain fees received from manufacturers, *see, e.g.*, *id.*, which are not considered rebates, *see, e.g.*, *id.* § 6.4.

In addition to other rights under the contracts, the City has audit and inspection rights. The City, whether on its own or through a third party, may conduct annual audits of claims data, *see, e.g.*, *id.* § 4.1, and rebates, including review of up to ten contracts CaremarkPCS Health has with pharmaceutical

companies, *see, e.g.*, *id.* § 4.2. And the City may "for a period of five (5) years after the expiration" of any contract audit contract performance and inspect services and materials. *See, e.g.*, *id.*, Professional Services Contract General Provisions, Art. VI, §§ 6.1, 6.2.

This Court may properly consider excerpts from CaremarkPCS Health's contracts with the City of Philadelphia on this motion to dismiss because the contracts are both "integral to [and] explicitly relied upon in the complaint." *Angstadt v. Midd-W. Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (quoting *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)). The City's "claim [cannot] be evaluated without some reference to" the contracts. *Id.* For ease of reference and given the length of the contracts—which often span hundreds of pages inclusive of exhibits and contain highly confidential information—CVS has submitted relevant nonconfidential excerpts.

### B.    The City's Claim is Time-Barred.

#### 1.    The City Waited Too Long, as to Some Contracts Decades, to File.

The City's breach of contract claims are plainly time-barred under Pennsylvania's four-year statute of limitations for a breach of contract claim. *Steiner v. Markel*, 968 A.2d 1253, 1255 n.5 (Pa. 2009); 42 Pa. Stat. and Cons. Stat. Ann. § 5525 (2024). Limitations begin to run when the breach occurs. *S.T. Hudson Eng'rs, Inc. v. Camden Hotel Dev. Assocs.*, 747 A.2d 931, 934 (Pa. Super. Ct. 2000). Yet the City bases its claim, brought in **October 2025**, on conduct that allegedly began more than two decades ago under contracts that have since long ago terminated. *See, e.g.*, Compl. ¶¶ 1 ("[T]he PBM Defendants worked closely with opioid manufacturers, distributors, and pharmacies to increase the prescribing, dispensing, and sales of prescription opioids across the nation *for more than two decades*." (emphasis added)), 5 ("[T]he PBM Defendants quite literally tracked the opioid epidemic, pill by pill, as it unfolded over the *last two decades*." (emphasis added)), 263 ("The PBM Defendants *knew for decades* that they possessed the ability to address the overutilization of opioids." (emphasis added)), 414 ("*After decades* of working to increase opioid utilization, in 2017, due to mounting pressure from their clients

3

and the federal government, [the PBMs] finally implemented programs aimed at addressing opioid overutilization and abuse.") (emphasis added)). Under a straightforward application of the statute of limitations, the City's claim must be dismissed.

### 2.    The City Cannot Invoke Tolling to Extend Limitations.

For multiple reasons, the City cannot invoke the discovery rule or other tolling doctrine. The discovery rule is an exception to the ordinary accrual of a claim. The doctrine suspends limitations when "the complaining party is reasonably unaware that his or her injury has been caused by another party's conduct." *Brawner v. Educ. Mgmt. Corp.*, 513 F. App'x 148, 150 (3d Cir. 2013) (per curiam). The party invoking the discovery rule bears the burden of proving that it "was unable, by the exercise of due diligence, to ascertain that [the defendant] had breached the agreement." *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 495 (E.D. Pa. 2018). "Where … reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." *Fine v. Checcio*, 870 A.2d 850, 858-59 (Pa. 2005).

Other tolling doctrines, including fraudulent concealment, likewise fail where a party has notice of its claim or would have notice upon the exercise of reasonable diligence. *See Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991) (fraudulent concealment is "a corollary to the discovery rule"); *Mest v. Cabot Corp.*, 449 F.3d 502, 516 (3d Cir. 2006) ("Like the discovery rule, the fraudulent concealment doctrine does not toll the statute of limitations where the plaintiff knew or should have known of [its] claim despite the defendant's misrepresentation or omission."); *Prime Energy & Chem. LLC v. Tucker Arensberg, P.C.*, No. 23-2169, 2024 WL 4441492, at *2 (3d Cir. Oct. 8, 2024) ("The same standard of reasonable diligence applies under the discovery rule and the doctrine of fraudulent concealment.").

###### (a)     The City was on Notice.

As discussed in Defendants' joint brief, the City had notice of its alleged injuries and their alleged cause. Yet it sat by idly for years. Other political subdivisions began bringing claims against PBMs, including CVS, nearly eight years ago. *See* Joint Brief § I. And beginning in January 2018, the City itself began bringing lawsuits against companies alleging it had been injured by prescription opioids. *See id.* These two facts alone—the PBM litigation history and the City's own suits—foreclose the City's invocation of any tolling doctrine. *Boston*, 765 F. Supp. 3d at 39-43.

The parties' contractual relationship underscores the City's notice. By dint of this contractual relationship, the City knew of CaremarkPCS Health's changes to formularies, its provision (or not) of DUR services, and its utilization management limits on insurance coverage. In fact, the City *approved these changes and services. See* Letter from Barbara Levy, Vice President of PCMA to Matthew E. Baker, Pennsylvania House of Representatives, Comm. on Health at 4 (cited at Compl. ¶ 171) ("When an employer or health plan decides to contract with a PBM to administer their pharmacy benefit, they maintain authority over the terms and benefit plan design. The employer or plan—not the PBM— makes decisions regarding cost-sharing requirements, mail-service, formulary, etc."). The City exercised ultimate control over the formulary. *See, e.g.*, Ex. 2, 2011 Contract, Ex. A § 2.6(a) ("City hereby adopts, as part of the Plan design and as City's formulary, the [list of preferred pharmaceutical products] …."); Ex. 1, 2022 Contract, Ex. PA-A, § 2.6(a) (materially identical provision). It knew what medications were preferred; what restrictions applied; and when medications were removed or added. Ex. 2, 2011 Contract, Ex. A § 2.6(b); Ex. 1, 2022 Contract, Ex PA-A, § 2.6(b). This information was more than enough to put the City on notice. *See, e.g.*, Compl. ¶¶ 261-307 (alleging that PBMs' failures to use claims data, formularies, UM, and DUR "to address overprescribing, abuse, and diversion" contributed to an opioid epidemic).

      **(b)**      **Even if the City Lacked Clear Notice, it had Inquiry Notice and Diligence Would Have led it to Discover its Claims.**

At a minimum, the City had inquiry notice of its causes of action, *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021), and "*should have known* on the exercise of reasonable diligence of [its] injury and its cause," *Fine*, 870 A.2d at 858 (emphasis added). Pennsylvania law "t[ies] commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Rice*, 255 A.3d at 247. Put differently, "[t]he proper focus under Pennsylvania law is when [a plaintiff] received warnings … sufficient to provide inquiry notice and prompt an investigation." *Prime Energy & Chem. LLC*, 2024 WL 4441492, at *5. And a plaintiff must show that it could not have notice of its injury and cause "despite the exercise of reasonable diligence." *Fine*, 870 A.2d at 858.

Inquiry notice abounds. Even absent the litigation history discussed above, the City adopted the same formularies it now complains about and was informed of the fact that manufacturer administrative fees are not defined as rebates that are passed through to the City. *See, e.g.*, Ex. 2, 2011 Contract, Ex. A §§ 6.4 ("Provider … may have a financial relationship with such pharmaceutical companies and may receive and retain fees."), 2.6 (a)-(b) (provisions related to formulary management, including City's adoption of formulary); Ex. 1, 2022 Contract, Ex. PA-A §§ 6.4, 2.6 (a)-(b) (similar provisions). The City knew that CaremarkPCS Health affiliates recovered fees per drug dispensed because the City's contracts disclosed this. *See* Ex. 2, 2011 Contract, Ex. A §§ 6.1, 6.2. All of this information was more than enough to put the City on inquiry notice of its supposed injuries and their alleged cause.

At all times, the City had audit and inspection rights. Those rights include auditing claims data and rebates, reviewing contracts with manufacturers, and auditing contract performance. *Supra* § I.A (emphasis added). Even the slightest exercise of diligence by the City would have supplied it with a

wealth of information concerning the practices that it now alleges form the basis of its contract and tort claims. The Court should dismiss the City's breach of contract claim as time-barred.

### 3. *Nullum Tempus* Does not Apply.

As Defendants explain in their joint brief, *nullum tempus* applies to claims brought by political subdivisions only when they are enforcing "strictly public rights." Joint Brief § I.C.1. Here, the City sues as *an employer and benefit plan* seeking redress for the alleged improper provision of services to City employees, just as any other private litigant could. Indeed, this issue taints *all* of the City's claims against CVS—the City cannot be said to be acting in a *strictly* governmental capacity when all of its claims include in part CVS's contractual provision of commercial services to City employees. Compl. ¶ 162. The City points to nothing to suggest that it was required by state law to enter into contracts with CVS for the provision of PBM and mail-order services. Its claim is premised on enforcing voluntary contract obligations that are not subject to the sovereign doctrine of *nullum tempus*.

### C. The City has Failed to Plead a Breach of Contract.

Beyond the threshold issues discussed above, the City fails to plead a fundamental part of its claim: a breach. In part, that failure derives from the City's misunderstanding of the contract terms regarding formulary management and DUR. And in part, that deficiency is a result of the City's failure to plead *any* factual content to make its breach claims plausible.

### 1. The City has not Alleged a Plausible Breach of any Formulary or DUR Provisions.

With respect to the alleged breaches of the DUR and formulary contract provisions, the City misreads the contracts. As a result, the City has not identified any specific promises that CVS breached. CVS provided the City with the required services, and the Complaint never suggests otherwise.

Among the elements required for a breach of contract is, of course, "a breach of a duty imposed by the contract." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002). To determine the duties

imposed by contract, "the intent of the parties is the writing itself." *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004); *accord Caplan v. Fellheimer, Eichen, Braverman & Kaskey*, 5 F. Supp. 2d 299, 304 (E.D. Pa. 1998). There can be no breach of contract when "an identifiable contract provision has not been breached." *Philidor Rx Servs. LLC v. Polsinelli PC*, 552 F. Supp. 3d 506, 515 (E.D. Pa. 2021), *aff'd*, No. 22-2836, 2023 WL 6290746 (3d Cir. Sept. 27, 2023).

The plain meaning of these contractual provisions cannot bear the weight the City places on them. Start with CaremarkPCS Health's formulary obligations. The City contends that CaremarkPCS Health "pursued profits in lieu of making formulary management decisions … that considered" certain factors enumerated in the contracts, including safety. Compl. ¶ 859(a). But under the contracts, the City itself "adopts" an offered formulary. *See, e.g.*, Ex. 2, 2011 Contract, Ex. A § 2.6(a); Ex. 1, 2022 Contract, Ex. PA-A § 2.6(a). From that point, CaremarkPCS Health is not required to make changes to the formulary—although it retains the ability to do so. *Id.* § 2.6(b). But the City's evident theory of breach presupposes that CaremarkPCS Health had an ongoing obligation to make changes to the formulary. That is nowhere in the contract language. Regardless, the formulary provision states that changes "*may* be based upon, *among other things*," certain listed criteria. *Id.*; Compl. ¶ 551 (emphases added). Even if CaremarkPCS Health were required to make changes—which it is not—the City has not alleged a breach under this language, which merely provides CaremarkPCS Health with discretion to make changes to the formulary pursuant to a non-exclusive list of factors. The City never alleges that CaremarkPCS Health was required to prioritize certain factors over others—because the language does not so require. The City cannot now impose this extracontractual obligation.

The City's DUR theory suffers from the same issue. The City's breach claim here is the same: that CaremarkPCS Health "pursued profits in lieu of properly using DUR to ensure safe dispensing." Compl. ¶ 859(b). But the contract language simply relates to the provision of certain "automated concurrent" DUR services; the City does not allege that such services were not provided. The next

provision explicitly places the responsibility for acting on any of the information provided on pharmacies and prescribers, not the PBM: "Participating Pharmacies and Prescribers are individually responsible for acting or not acting upon the information generated and transmitted through the DUR Services." Ex. 2, 2011 Contract, Ex. A § 2.8(b); Ex. 1, 2022 Contract, Ex. PA-A § 2.8(b).

Because the City misreads these contract provisions, the Court must dismiss these claims.

### 2.    The City has not Adequately Alleged Facts Supporting a Breach.

Beyond misreading the contracts' provisions, the City fails to plead adequately its breach claim. A "breach of contract claim cannot rest on a conclusory statement that the defendant breached a contract," and claims "merely parrot[ing] the language of the contractual provisions … without providing supporting facts are not presumed true." *Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 115 (S.D.N.Y. 2021); *accord Pennington v. Wells Fargo Bank, N.A.*, 947 F. Supp. 2d 529, 535 (E.D. Pa. 2013).

The City alleges nothing to suggest that CVS plausibly breached its contracts *as to the City* for the mail-order, DUR, and formulary claims. But that is exactly what the City must plead. *See, e.g.*, Ex. 2, 2011 Contract, Ex. A § 2.2(a) (specifying that scope of mail-order services pertains to services for a "Plan Participant"); *id.* § 1.16 (a "Plan Participant" "means each individual identified by City to be eligible for prescription drug benefits under the Plan"); Ex. 1, 2022 Contract, Ex. PA-A §§ 2.2(a), 1.53 (same). Take, for example, the mail-order claim. To adequately allege a breach based on filling unlawful prescriptions, the City must allege that CVS pharmacists filled unlawful prescriptions *for the City and its employees*. It must also allege that the dispensing pharmacist knew any given prescription was illegal, among other things. *See* 21 C.F.R. § 1306.04(a) (2025). The City has failed to allege any such facts, instead relying on allegations untethered to any particular prescriptions for any City employees.

The City's rebate claim also lacks any factual content that would make it plausible. CaremarkPCS Health's contracts with the City require it to remit rebate payments to the City. Ex. 2, 2011 Contract,

Ex. A, § 6.2. The contracts explicitly disclose that CaremarkPCS Health's affiliates "may receive and retain fees or other compensation from pharmaceutical companies." *Id.* § 6.4. Throughout, the contracts reference a variety of potential fees that these affiliates may receive from manufacturers. *See, e.g.*, Ex. 2, 2011 Contract, Ex. A § 2.8(d); Ex. 1, 2022 Contract, Ex. PA-A § 1.38. The contracts make clear that these fees and "other compensation from pharmaceutical companies" are not defined as rebates. Ex. 2, 2011 Contract, Ex. A § 6.4; Ex. 1, 2022 Contract, Ex. PA-A § 6.4 (similar). In the face of this contract language the City relies on the barebones and "wholly conclusory statement," *Twombly*, 550 U.S. at 561, that CaremarkPCS Health "mislabeled rebate payments received from opioid manufacturers," Compl. ¶ 558. That is nothing more than a legal conclusion. The City offers no explanation of how CaremarkPCS Health mislabeled payments that should have been rebates when the contract made clear that these payments are not "rebates." This is the classic "unadorned, the-defendant-unlawfully-harmed-me accusation" that federal courts must not credit. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And it warrants the claim's dismissal.

## II.    THE COMMONWEALTH'S CONSENT DECREE PRECLUDES MULTIPLE CLAIMS AGAINST CVS.

Unlike the other Defendants, CVS has entered into a global settlement agreement of opioid claims with nearly all States and their subdivisions. The City is one of the few jurisdictions that chose not to join this agreement. But the Commonwealth of Pennsylvania did, and acting through its Attorney General, entered into a consent decree with CVS in February 2024. Ex. 3 (Consent Decree); Ex. 4 (court order). That consent decree includes a broad release that forecloses claims by even non-participating subdivisions like the City.

The consent decree includes a release of any claim based on CVS's pharmacy benefit management services that relate to prescription opioids. The release precludes: any public claim under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); any claim by *any* Pennsylvania subdivision that seeks relief on behalf of the public; and any claim brought in a sovereign or quasi-

sovereign capacity. The release, therefore, precludes the City's UTPCPL claim, its ordinance-based public UTPCPL claim under the Philadelphia Consumer Protection Ordinance ("PCPO"), its public-nuisance claim, and the City's attempt to invoke the sovereign-sword of *nullum tempus*.

**The Court May Consider the Consent Decree.** This court may consider the consent decree on a motion to dismiss because it is a matter of public record and constitutes a final judgment. *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.,* 810 F.3d 116, 127 (3d Cir. 2016) (citing *City of Pittsburgh v. W. Penn Power Co.,* 147 F.3d 256, 259 (3d Cir. 1998)).

**The AG Has the Power to Release the Public's and the City's Claims.** "The Attorney General represents the public interests of the entire Commonwealth, **including its municipalities and subdivisions**." *Commonw. ex rel. Krasner v. Att'y Gen.,* 309 A.3d 265, 277 (Pa. Commw. Ct. 2024) (emphasis added), *appeal pending.* The AG determined that the consent decree was in the public interest, Ex. 3, Recitals, ¶ 2, as did the Commonwealth Court, *id.* at p.5, ¶ 5. The AG released CVS to the "maximum extent of [her] power." *Id.* at p.6, ¶ 10.

**The Release Covers Several of the City's Claims.** The AG released Defendant CVS Pharmacy, Inc. and all of its direct and indirect parents and subsidiaries from any claim arising from dispensing or pharmacy benefit management of prescription opioids. Ex. 3 at p. 4, definition P; p. 9, definition HHH. The AG released all claims by: (a) the Commonwealth and participating subdivisions; (b) public districts of the Commonwealth (such as school districts); and (c) "**any person or entity** acting in a *parens patriae*, sovereign, quasi-sovereign … or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the Commonwealth or any Subdivision of the Commonwealth, **whether or not any of them participate in the Agreement**." (emphases added). *Id.* at p.6, ¶¶ 10-11.

Although the City is not a participating subdivision, this release extends to the City because the City seeks: (1) to impair the decree by resurrecting through city ordinance a released, public UTPCPL

claim; (2) relief on behalf of part of the same general public on whose behalf the AG has released claims; and (3) to act in a sovereign or quasi-sovereign capacity. *See* Compl. ¶¶ 23, 702, 724, 726.

First, the release precludes any attempt by the City to bring a retroactive, public UTPCPL claim under the PCPO. 9 Phila. Code § 9-6307. CVS had no reason to anticipate when it agreed to settle with the Commonwealth that a subdivision of the Commonwealth would later seek to retroactively subject CVS to *the very same* statutory liability. The Third Circuit has explained that this kind of retroactive application of statutory liability violates the Contract Clause of the United States Constitution, Art. I, § 10, cl. 1 ("[n]o state shall ... pass any ... law impairing the Obligation of Contracts"). *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1243 (3d Cir. 1987). "The Contract Clause applies equally to municipal ordinances as it does to state legislation." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 678-79 (3d Cir. 2022) (internal quotes omitted). Because the City's ordinance unreasonably impairs CVS's contract rights retroactively, its PCPO/UTPCPL claim is precluded.

The consent decree also precludes this claim because "[t]he [Commonwealth's] Settlement Agreements have achieved all remedies available for a public UTPCPL claim, including injunctive relief, restitution for victims, and civil penalties." *Krasner*, 309 A.3d at 278. *Accord* Ex. 5, *Avera Gettysburg v. Teva Pharm. Indus. Ltd.*, Case No. 27-CV-23-17610 (Fourth Judicial District, Minn. May 22, 2025) at 42. In *Krasner*, the Commonwealth Court found that public UTPCPL claims by district attorneys against the manufacturers and distributors of prescription opioids were barred by the AG's releases. CVS was not a party to *Krasner*. But CVS has entered into its own consent decree with the Commonwealth and the same reasoning applies. Because the comparable releases at issue in *Krasner* preclude public UTPCPL claims by district attorneys against the settling defendants, so too does such a release bar the City's attempt to bring a public UTPCPL claim against CVS by assigning itself the power to bring a retroactive, public UTPCPL claim by ordinance. *See* Joint Brief § VI.B.2 (addressing the conflict between the UTPCPL and PCPO).

Second, because the rights at issue in a public nuisance claim are "rights [] held in common by the public at large … the remedy for their infringement ordinarily lies '***in the hands of the [S]tate***.'" *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 220 (3d Cir. 2020) (citation omitted) (emphasis added). When the City files a nuisance action on behalf of its citizens, it "seeks to exert traditional state power." *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 893 (E.D. Pa. 2000), *aff'd on other grounds*, 277 F.3d 415 (3d Cir. 2002). In addition to asserting a private claim for public nuisance based on an alleged special injury, Compl. ¶ 727, the City seeks additional relief "in its public capacity," *id.* ¶ 726, and on behalf of the same general public within its borders, *id.* ¶¶ 705, 724. By its own allegations, the City has brought a claim against CVS in a public capacity. This claim therefore falls squarely within the release which precludes claims "seeking relief on behalf of or generally applicable to the general public with respect to … any Subdivision." Ex. 5, *Avera Gettysburg*, at 45, 53-54 (finding claim for public nuisance barred by AG release). And because the City purports to represent the same public as the Commonwealth and there is a consent decree that disposes of the public's claim, res judicata also bars the claim. The consent decree is a final judgment barring additional litigation "between the same parties or their privies on the same cause of action." *Stevenson v. Silverman*, 208 A.2d 786, 788 (Pa. 1965).

Third, the City invokes *nullum tempus*, which can be invoked in only a sovereign capacity. Compl. ¶ 670. "*Nullum tempus,* which the sovereign asserts as plaintiff, must be viewed together with sovereign immunity, its coordinate doctrine, which the sovereign asserts when it is a defendant." *Northampton Cnty. Area Cmty. Coll. v. Dow Chem., U.S.A.*, 566 A.2d 591, 594 (Pa. Super. Ct. 1989), *aff'd*, 598 A.2d 1288 (Pa. 1991). "Although sovereign immunity and *nullum tempus* are distinct doctrines … they arise from similar prerogatives of the sovereign." *Pa. Pub. Util. Comm'n v. Del. Valley Reg'l Econ. Dev. Fund*, 255 A.3d 602, 614 (Pa. Commw. Ct. 2021). The former is the sovereign's shield; the latter the sovereign's sword. *Id.* "While ordinarily the immunity of the sovereign from the operation of the limitation statutes against it does not extend to municipalities … the contrary is true … where the

right sought to be enforced by the municipality … is a right accruing to it in the exercise of a strictly governmental function." *In re Erny's Est.*, 12 A.2d 333, 335 (Pa. 1940).

Because the City contends that circumstances exist in this case that allow it to use the sovereign's sword in this litigation, the City is necessarily a "person or entity acting in a … sovereign … capacity." To hold otherwise would render clause (c) of the release meaningless.

## III. THERE IS NO BASIS FOR PERSONAL JURISDICTION OVER THE CVS HOLDING COMPANIES.

The City's claims against CVS Health Corporation and Caremark Rx, L.L.C. ("Caremark Rx") fail at the threshold because both are holding companies for which personal jurisdiction does not lie. The primary functions of these Defendants relate solely to their status as holding companies—they conduct no business in Pennsylvania. Ex. 6 (Declaration of Thomas S. Moffatt) ¶ 4.

The primary functions of CVS Health Corporation are to issue stock that is traded on the New York Stock Exchange and to file reports with the SEC. *Id.* It is organized under the laws of Delaware and maintains its principal place of business in Rhode Island. *Id.* ¶ 5. It has no offices, facilities, assets, income, employees, or operations in Pennsylvania. *Id.* ¶ 12. It is not qualified as a foreign corporation under the laws of Pennsylvania, does not have a registered agent for service of process here, and is not regulated by any Pennsylvania agency. *Id.* ¶ 14.

Caremark Rx is also a Delaware limited liability company, and its principal place of business is in Rhode Island. *Id.* ¶ 6. It is a holding company that has no operations other than those related to its status as a holding company. *Id.* ¶ 12. Caremark Rx has no offices or facilities in Pennsylvania. *Id.* ¶ 13. None of its limited business functions regularly occur in the Commonwealth, and it has no assets, income, employees, or operations in the Commonwealth. *Id.* It is not qualified as a foreign corporation under Pennsylvania law and does not have a registered agent for service of process in the Commonwealth. *Id.* ¶ 14.

While these holding companies have subsidiaries, they are separate and distinct from those subsidiaries, each of which observes and enforces corporate formalities. *Id.* ¶ 16. Neither has direct involvement in directing, managing, or supervising the operations or employees of any of its subsidiary companies, including those engaged in pharmacy benefit management services. *Id.* ¶¶ 11, 14.

The City's claims do not arise out of the companies' activities as holding companies. Nor do these activities take place in Pennsylvania. Thus, personal jurisdiction does not lie. Courts have found personal jurisdiction lacking over CVS Health Corporation given its limited activities. *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 836-37 (D.S.C. 2015); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 979-84 (N.D. Cal. 2016). That reasoning also applies to Caremark Rx.

RICO's nationwide service of process does not help the City. The Third Circuit has explained that a plainly time-barred cause of action is not a colorable claim. *See In re Briscoe*, 448 F.3d 201, 219 (3d Cir. 2006). And a court cannot exercise personal jurisdiction under RICO's nationwide service of process unless the underlying RICO claim is colorable. *Waller v. Nelson*, No. 4:22-cv-00120, 2023 WL 4106250, at *8-9 (W.D. Va. June 21, 2023); *Pop Test Cortisol, LLC v. Univ. of Chicago*, No. 14-CV-7174, 2015 WL 3822237, at *5 (D.N.J. June 18, 2015); *Munsif v. Am. Bd. of Internal Med.*, No. 11-5949, 2012 WL 3962671, at *8 (E.D. Pa. Sept. 11, 2012). Furthermore, the City hasn't clearly alleged that either holding company itself engaged in any conduct that forms the basis for its claims. For instance, the City has not even alleged that either is a party to the contracts that it claims have been breached.

## IV.    CONCLUSION

For the reasons stated above, the breach of contract, UTPCPL/PCPO, public nuisance, and any claims for which the City invokes *nullum tempus* must be dismissed as to the CVS Defendants. Further, Defendants CVS Health Corporation and Caremark Rx, L.L.C. must be dismissed for want of personal jurisdiction.

Dated: January 15, 2026

Respectfully submitted,

*s/ Mark Villanueva*

Mark Villanueva (PA 89892)
Robert J. Norcia (PA 321509)
STRADLEY RONON STEVEN
  & YOUNG LLP
205 Market Street, Suite 2600
Philadelphia, PA
(215) 564-8159
mvillanueva@stradley.com
rnocia@stradley.com

Blair G. Brown (admitted pro hac vice)
Steven N. Herman (PA 205832)
Ivano M. Ventresca (PA 316256)
Brian J. Beaton, Jr. (admitted pro hac vice)
Aaron Chou (admitted pro hac vice)
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 220037
(202) 778-1800
bbrown@zuckerman.com
sherman@zuckerman.com
iventresca@zuckerman.com
bbeaton@zuckerman.com
achou@zuckerman.com

Conor B. O'Croinin (admitted pro hac vice)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-0444
cocroinin@zuckerman.com

*Attorneys for Defendants CVS Pharmacy, Inc., CVS Health Corporation, Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., AdvanceRx.com, L.L.C., and CaremarkPCS Pennsylvania Mail Pharmacy, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 15, 2026, I caused the foregoing to be served on counsel of record via the Court's electronic case filing system.

*s/ Mark Villanueva*

Mark Villanueva

*Attorney for Defendants CVS Pharmacy, Inc., CVS Health Corporation, Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., AdvanceRx.com, L.L.C., and CaremarkPCS Pennsylvania Mail Pharmacy, LLC*