**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| CITY OF PHILADELPHIA,<br>        Plaintiff, | :<br>:<br>:  No. 2:25-cv-06185-GJP<br>: |
| vs. | :  ORAL ARGUMENT REQUESTED<br>: |
| CVS HEALTH CORPORATION; et al<br>        Defendants. | :<br>:<br>: |

**MEMORANDUM OF LAW SUPPORTING UNITEDHEALTH GROUP, INC., OPTUM,
INC., OPTUMINSIGHT, INC., OPTUMINSIGHT LIFE SCIENCES, INC., OPTUMRX
DISCOUNT CARD SERVICES, LLC, OPTUM PERKS, LLC, OPTUMHEALTH
NETWORKS, INC., OPTUMHEALTH CARE SOLUTIONS, LLC, AND
OPTUMHEALTH HOLDINGS, LLC'S
<u>MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 1

LEGAL STANDARD ............................................................................................... 4

ARGUMENT ........................................................................................................... 6

I.     THERE IS NO PERSONAL JURISDICTION OVER THE 12(B)(2) DEFENDANTS. ........................................................................................ 6

A.     The Court Lacks General Jurisdiction Over The 12(b)(2) Defendants Because None Is At Home In Pennsylvania. .......................................... 6

B.     The Court Lacks Specific Jurisdiction Over Defendants As A Matter Of Due Process.................................................................................... 7

1.     The City Has Not Pleaded Facts Showing That The 12(b)(2) Defendants Are Subject To Specific Jurisdiction. ...................... 8

2.     The City Fails To Establish Personal Jurisdiction Over Each 12(b)(2) Defendant Individually. ............................................. 10

C.     The RICO Claim Does Not Cure The Complaint's Jurisdictional Defects. ......... 11

II.    THE COURT SHOULD DISMISS CORPORATE-PARENT AND AFFILIATE ENTITIES WITH NO ALLEGED CONDUCT. ............................ 13

CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Anne Arundel County v. Express Scripts, Inc.*,
   2025 WL 254807 (D. Md. Jan. 21, 2025) ................................................................8

*Barth v. Walt Disney Parks & Resorts U.S., Inc.*,
   206 F. Supp. 3d 1026 (E.D. Pa. 2016) ............................................................6, 7

*Blanding v. Walmart Inc.*,
   2024 WL 3433321 (E.D. Pa. July 15, 2024) ..................................................9

*Calder v. Jones*,
   465 U.S. 783 (1984) ..............................................................................11

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ........................................................................5, 6, 7

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
   948 F.3d 124 (3d Cir. 2020)................................................................7

*Heartrepreneur, LLC v. Jones*,
   2020 WL 2839102 (E.D. Pa. May 29, 2020) ..........................................11

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998).............................................................5, 8

*In re EpiPen Direct Purchaser Litig.*,
   2022 WL 1017770 (D. Minn. Apr. 5, 2022) ........................................14

*Levy v. HFactor, Inc.*,
   2024 WL 4582882 (E.D. Penn. 2024) ................................................5

*Mallory v. Norfolk S. Ry. Co.*,
   600 U.S. 122 (2023)..................................................................2, 5, 6

*Marten v. Finchuam*,
   499 F.3d 290 (3d Cir. 2007)..........................................................5

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
   No. 21-cv-674 (S.D. Miss. Aug. 15, 2022)..........................................14

*Rush v. Savchuk*,
   444 U.S. 320 (1980)..................................................................4, 11

*Skolnick v. Evolution AB (Publ)*,
   2025 WL 1208905 (E.D. Penn. 2025) ..........................................4, 5, 6

*Smith v. Onsite Neonatal Partners, Inc.*,
  2023 WL 1864869 (E.D. Pa. Feb. 9, 2023) ...........................................................13

*United States v. Bestfoods*,
  524 U.S. 51 (1998).................................................................................................14

*United States v. Botefuhr*,
  309 F.3d 1263 (10th Cir. 2002) ...........................................................................13

*Walden v. Fiore*,
  571 U.S. 277 (2014).........................................................................................passim

*Waller v. Nelson*,
  2023 WL 4106250 (W.D. Va. June 21, 2023) ................................................12, 13

*Wedner v. Unemployment Comp. Bd. of Rev.*,
  449 Pa. 460 (1972).................................................................................................14

*Wolstenholme v. Bartels*,
  511 Fed.Appx. 215 (E.D. Penn. 2011).....................................................................7

*World Depot Corp. v. Onofri*,
  2017 WL 6003052 (D. Mass. Dec. 4, 2017) ..........................................................12

**RULES**

Federal Rule of Civil Procedure 12(b)(2) ...........................................................1, 4, 5

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1, 6, 12

**STATUTES**

42 Pa. Cons. Stat. § 5301(a)(2)(i) .............................................................................2

42 Pa. Cons. Stat. § 5322(b) .................................................................................5, 7

18 U.S.C. § 1965(b) ................................................................................................12

## INTRODUCTION

As explained in Defendants' contemporaneously filed 12(b)(6) motion to dismiss, the City of Philadelphia's claims against all twenty-four of the named Defendants fail. But the Court does not need to reach those arguments for four of those entities—OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, and OptumHealth Holdings, LLC (collectively, the "12(b)(2) Defendants")—because the City fails to establish that the Court has personal jurisdiction over them. The City fails to plead any particularized allegations against the 12(b)(2) Defendants to establish a nexus between them and the forum sufficient for personal jurisdiction. And the City's back-door attempt to establish personal jurisdiction by invoking RICO's nationwide service of process provision fails because (1) that claim is time barred and (2) the City has not alleged that any of the 12(b)(2) Defendants participated in the activity or course of conduct giving rise to its alleged "Formulary & UM Enterprise." The Court should therefore dismiss the complaint as to those entities under Federal Rule of Civil Procedure 12(b)(2).

The Court also should dismiss the City's complaint as to UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Networks, Inc., LLC, OptumHealth Care Solutions, LLC, and OptumHealth Holdings, LLC under Rule 12(b)(6) because the complaint does not plead any actionable conduct by these entities. Instead, it relies on impermissible group pleading, bare allegations of parent-subsidiary relationships, and other generalized allegations that are deficient.

## BACKGROUND

**OptumInsight, Inc. and OptumInsight Life Sciences, Inc.** OptumInsight, Inc. are data, analytics, and consulting providers. Compl. ¶ 158. The City refers to OptumInsight Life Sciences, Inc. collectively with OptumInsight, Inc. as "OptumInsight" without alleging which entity engaged in what conduct. *See* Compl. ¶ 121 ("OptumInsight, Inc. and OptumInsight Life Sciences, Inc., as

well as their predecessors, successors, affiliates, including but not limited to Innovus, Innovus Research, i3, QualityMetric, HTAnalytics, ChinaGate, and CanReg, are referred to herein as 'OptumInsight'"). The complaint alleges "OptumInsight" provided data and analysis to opioid manufacturers, which were used to market opioids and promote the use of opioids to treat pain. *E.g.*, Compl. ¶¶ 395-413, 827, 846.

The City makes individual reference to OptumInsight Life Sciences, Inc. only twice in the complaint—once in the paragraphs where it identifies OptumInsight Life Sciences, Inc. as a named defendant, *see* Compl. ¶¶ 119–23, and second in a paragraph describing a 2013 email to an opioid manufacturer, *id.* ¶ 259. Neither of these paragraphs mention Pennsylvania or allege any suit-related conduct by OptumInsight Life Sciences, Inc. that is at all related to Pennsylvania. Nor does the complaint allege that OptumInsight Life Sciences, Inc. is qualified as a foreign corporation in Pennsylvania. *See* 42 Pa. Cons. Stat. § 5301(a)(2)(i); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 134–36 (2023). The complaint goes one step further by then collectively defining OptumInsight and the remaining Optum entities as "Optum." Compl. ¶ 148.

The complaint's allegations about "OptumInsight" also describe interactions with pharmaceutical manufacturers only on a nationwide level. None of those allegations reflect or plausibly set forth any suit-specific nexus to or "substantial connection" with Pennsylvania, *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

**OptumRx Discount Card Services, LLC and Optum Perks, LLC.** OptumRx Discount Card Services, LLC and Optum Perks, LLC administer prescription discount cards. *See* Compl. ¶¶ 425–32. Other than the paragraphs discussing the two entities as named defendants, the only other allegations related to either entity come in a discussion of OptumRx's discount card program and says that the program is "governed by either Optum Perks, LLC or OptumRx Discount Card

Services, LLC," Compl. ¶ 425, and that "Optum was also unwilling to control any prescriptions administered by Optum Perks or Optum Discount Card Services," *id.* ¶ 430.

The allegations against OptumRx Discount Card Services, LLC and Optum Perks, LLC contain no suit-specific nexus to Pennsylvania. *Walden*, 571 U.S. at 284. The complaint also contains no allegation that either is qualified as a foreign corporation or entity in Pennsylvania. Indeed, aside from the two paragraphs noted above, the only other allegations related to OptumRx Discount Card Services, LLC and Optum Perks, LLC are through group pleading. The City refers to both entities along with several others collectively as "Optum." Compl. ¶ 148.

**UnitedHealth Group, Inc. ("UHG") and Optum, Inc.** These entities are parent entities and holding companies. Compl. ¶¶ 105–15. The complaint does not allege any particular conduct by Optum, Inc. or UnitedHealth Group, Inc. that ties them to the claims alleged. The only allegations related to Optum, Inc. describe the business of its subsidiaries. Compl. ¶¶ 112, 114-15, 148, 150. The UHG allegations describe Optum, Inc. and UnitedHealthcare (which is not a defendant). ¶¶ 108-09. The allegations related to UHG relate to a single email allegedly from a UHG employee to a Purdue employee, ¶ 242, and a vague one-paragraph description of a "clinical initiative," ¶ 401.

**OptumHealth Holdings, LLC**. This entity is also merely a parent entity and holding company. Compl. ¶ 141. The complaint does not allege any particular conduct by OptumHealth Holdings, LLC; the allegations note only its principal place of business in Minnesota. *Id.* This allegation quite obviously contains no suit-specific nexus to Pennsylvania. *Walden*, 571 U.S. at 284. Nor is there any allegation that OptumHealth Holdings, LLC is qualified as a foreign corporation or entity in Pennsylvania.

The remaining references are group pleading only. The complaint defines "OptumHealth

Care Solutions, LLC, Optum Health [sic] Holdings, LLC, and OptumHealth Networks, Inc." collectively as "OptumHealth," compl. ¶ 145, and includes OptumHealth Holdings, LLC in its collective definition of "Optum" with seven other entities. Compl. ¶ 148. This multi-level group pleading makes it impossible to assess any individual contacts with Pennsylvania. These allegations contain no suit-specific nexus to Pennsylvania sufficient for this Court to exercise personal jurisdiction over OptumHealth Holdings, LLC. *Walden*, 571 U.S. at 284.

**OptumHealth Care Solutions, LLC and Optum Health Networks, Inc.** OptumHealth Care Solutions, LLC and Optum Health Networks, Inc. provide healthcare services. Compl. ¶¶ 144-46. Optum Health Networks, Inc. further provides certain services to members of plans administered by other Optum entities, including "care management services, arranging for delivery of services, and managing client relationships and contracts for access to [such] services." Compl. ¶ 144. The complaint otherwise groups together OptumHealth Networks, Inc. and OptumHealth Care Solutions, LLC and Optum Health Holdings, LLC as "OptumHealth," and does not allege any particular conduct by Optum Health Networks, Inc. *See* Compl. ¶¶ 142-145, 148.

### LEGAL STANDARD

*Rule 12(b)(2).* The City bears the burden of establishing that the Court has personal jurisdiction over *each* defendant individually. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe*, however, must be met as to *each* defendant over whom a state court exercises jurisdiction.") (emphasis added). "[O]nce a defendant raises a jurisdictional defense, the burden shifts to the plaintiff to prove, by a preponderance of the evidence, that jurisdiction exists." *Skolnick v. Evolution AB (Publ)*, 2025 WL 1208905, *1 (E.D. Penn. 2025) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998)). When a court lacks personal jurisdiction over a defendant, Rule 12(b)(2) requires dismissal of the complaint. *Skolnick*, 2025 WL 1208905, at *1.

In determining personal jurisdiction, the court assesses (1) whether the relevant state long-arm statute allows the exercise of personal jurisdiction and (2) whether the exercise of jurisdiction comports with the Due Process Clause of the Constitution. *Id.* at *2. "Pennsylvania's long-arm statute extends jurisdiction to its constitutional limits, 42 Pa. C.S. § 5322(b)[.]" *Levy v. HFactor, Inc.*, 2024 WL 4582882, *2 (E.D. Penn. 2024) (citing *Marten v. Finchuam*, 499 F.3d 290, 296 (3d Cir. 2007)).

There can be either general or specific personal jurisdiction. *Skolnick*, 2025 2025 WL 1208905, at *2. General jurisdiction is found "when a nonresident defendant has maintained contacts with the forum state that are so systematic and continuous as to render it essentially at home." *Id.*; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (general jurisdiction exists as a matter of federal due process only if a business' contacts are so pervasive that it can be "fairly regarded as at home" in Pennsylvania). A company is "at home" in the state in which it is incorporated and where it has its principal place of business. *Daimler*, 571 U.S. at 137. Further, a foreign company that qualifies as a foreign corporation or entity under Pennsylvania law consents to general personal jurisdiction in Pennsylvania. *Mallory*, 600 U.S. at 134–36.

To establish specific jurisdiction, a defendant must "purposefully avail itself of the privilege of conducting activities within the forum State[,]" and the "litigation must 'arise out of or relate to' the activities." *Skolnick*, 2025 WL 1208905 at *4. The defendant's "suit-related conduct" must create "a substantial connection with the forum State." *Walden*, 571 U.S. at 284. "If these two requirements are met, the court considers whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *Skolnick*, 2025 WL 1208905, at *4. (cleaned up).

***Rule 12(b)(6)***. The standard for dismissal is set forth in Defendants' joint brief at page 4.

5

## ARGUMENT

### I.    THERE IS NO PERSONAL JURISDICTION OVER THE 12(B)(2) DEFENDANTS.

The City fails to allege any basis for exercising personal jurisdiction over the 12(b)(2) Defendants. There are no allegations that the 12(b)(2) Defendants are at home in Pennsylvania such that this Court can extend general jurisdiction. This Court also lacks specific jurisdiction over the 12(b)(2) Defendants because the City does not allege that any of those entities have suit-related contacts creating a substantial connection with Pennsylvania that would not offend traditional notions of fair play and substantial justice. Exercising jurisdiction over the 12(b)(2) Defendants would run afoul of both the Pennsylvania long-arm statute and federal due process. Finally, the Court lacks RICO jurisdiction over the 12(b)(2) Defendants, and, therefore, pendent jurisdiction over the City's other claims, because there are no factual allegations tying the 12(b)(2) Defendants to the alleged RICO enterprise.

### A.    The Court Lacks General Jurisdiction Over The 12(b)(2) Defendants Because None Is At Home In Pennsylvania.

General jurisdiction attaches only if a business has "affiliations with the State [that] are so 'continuous and systematic'" that it "is fairly regarded as at home" there. *Daimler*, 571 U.S. at 137–38 (quotation omitted). Generally, "the paradigm bases for general jurisdiction are the place of incorporation and the principal place of business." *Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 206 F. Supp. 3d 1026, 1029 (E.D. Pa. 2016). A foreign company qualified as a foreign corporation or entity under Pennsylvania law consents to general personal jurisdiction in Pennsylvania. *Mallory*, 600 U.S. at 134–36. General jurisdiction may also "arise in the 'exceptional case' where 'a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.'" *Barth*, 206 F. Supp. 3d at 1029 (quoting *Daimler*, 571 U.S.

at 138, n.19).

The City concedes that none of the 12(b)(2) Defendants is incorporated in Pennsylvania. Compl. ¶¶ 119, 133, 135, 141. And none has its principal place of business in Pennsylvania. *Id*. Nor are any of the 12(b)(2) Defendants qualified as foreign corporations or entities under Pennsylvania law. *Id.* And the City does not make any allegations that this is an "exceptional case" where any of the 12(b)(2) Defendants are "at home" in Pennsylvania. *Daimler*, 571 U.S. at 137–38. The City fails to establish general jurisdiction over 12(b)(2) Defendants.

## B.    The Court Lacks Specific Jurisdiction Over Defendants As A Matter Of Due Process.

The Court also lacks specific personal jurisdiction over the 12(b)(2) Defendants. Specific jurisdiction exists only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *see also Wolstenholme v. Bartels*, 511 Fed.Appx. 215, 219 (E.D. Penn. 2011). Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. § 5322(b), reaches the constitutional limits of due process under the Fourteenth Amendment. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). "When a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden to come forward with sufficient facts to establish that jurisdiction is proper." *Id.* (citation omitted). "To meet this burden, the plaintiff must establish[ ] with reasonable particularity' three elements" to determine whether a court can exercise specific jurisdiction over a non-resident defendant: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice,

*i.e.*, it must be reasonable. *Id.* at 129–30. For intentional torts, "the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *IMO Industries*, 155 F.3d at 265-66.

The City has not come close to plausibly alleging that 12(b)(2) Defendants expressly aimed their conduct at Pennsylvania, never mind that the City's claims "arise from or relate to" anything that those defendants might have done in Pennsylvania.

Last year, another court reached the same conclusion in another case asserting similar opioid-related claims against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. *See Anne Arundel County v. Express Scripts, Inc.*, 2025 WL 254807, at *10 (D. Md. Jan. 21, 2025). There, the court explained that the burden is on the plaintiff to plead a prima facie basis for personal jurisdiction. *Id.* at *2. But "[n]one of the County's allegations referencing the OptumInsight Entities indicate that they transacted business within Maryland[,]" and "[t]he conduct alleged in the Amended Complaint does not establish that the OptumInsight Entities purposefully availed themselves of the privilege of conducting activities within Maryland, or that the County's claims arise out of those contacts." *Id.* at *3–4. Accordingly, "the County has not alleged any facts that suggest that this Court may have specific personal jurisdiction over the OptumInsight Entities." *Id.* at *4. The same result is warranted here.

### 1. The City Has Not Pleaded Facts Showing That The 12(b)(2) Defendants Are Subject To Specific Jurisdiction.

The City fails to allege facts showing that any of the 12(b)(2) Defendants acted in or purposefully directed any activities towards Pennsylvania, or that its claims arise from these defendants' purposeful contact or activities in connection with Pennsylvania. Indeed, the City fails to allege any Pennsylvania-specific suit-related conduct whatsoever. *See* Compl. ¶¶ 119, 133–37, 141. In fact, there are only a handful of paragraphs where the City actually mentions these entities

at all. None of these allegations establishes specific jurisdiction. *See, e.g.*, Compl. ¶¶ 119–23, 133–37, 141, 145, 148, 158–61, 259, 379–82, 397–406, 425, 430, 827, 846.

Paragraph 121 lumps OptumInsight Life Sciences, Inc, OptumInsight, Inc., "as well as their predecessors, successors, affiliates, including but not limited to Innovus, Innovus Research, i3, QualityMetric, HTAnalytics, ChinaGate, and CanReg," together as "OptumInsight," and alleges "OptumInsight is the Optum group that engages in data analytics." As explained above, that improper group pleading demonstrates that the City cannot establish jurisdiction over each defendant individually. *Blanding v. Walmart Inc.*, 2024 WL 3433321, *2 (E.D. Pa. July 15, 2024).

In any case, the allegations against "OptumInsight" do not suggest that those entities had any connection with Pennsylvania, let alone suit-related contacts creating a substantial connection with Pennsylvania. *Walden*, 571 U.S. at 284. *See, e.g.*, Compl. ¶ 123 ("OptumInsight" "partnered with various opioid manufacturers to create studies, marketing materials, educational programs, and even algorithms to simultaneously downplay opioids' addictive properties and expand their use and availability throughout the country, including in Pennsylvania."); *id.* ¶ 159 ("OptumInsight" worked with "opioid manufacturers to convince patients, prescribers, payors and the public that long term opioid use was appropriate for the treatment of chronic pain and that opioids were not addictive."); *id.* ¶ 160 (each opioid manufacturer assigned executives to "work with OptumInsight" and "used their relationships with OptumInsight to deepen their ties to the overall Optum corporate family."); *id.* ¶ 161 ("OptumInsight" "was paid tens of millions of dollars by the opioid manufacturers during the relevant time period for its work to expand the opioid market."); *id.* ¶¶ 379–82 (allegations that "OptumInsight" and Purdue worked together "to identify physicians from UHC and OptumInsight's database and then develop[ed] comprehensive education materials on the effectiveness of opioids in chronic pain treatment to send to these

physicians.").

Further, the City cannot, as a matter of law, impute opioid manufacturers' contacts to OptumInsight Life Sciences, Inc. *Walden*, 571 U.S. at 286. The City otherwise fails to explain how the alleged work completed by "OptumInsight" creates a substantial connection to Pennsylvania. In fact, the City does not allege *anywhere in the complaint* that "OptumInsight's" "work" had anything to do with Pennsylvania, never mind suit-related contacts creating a substantial connection with Pennsylvania. *Id.* at 284.

Paragraph 259 describes an alleged email from an OptumInsight Life Sciences, Inc. consultant relating to tracking certain physician, patient, and pharmacy data. That allegation, like most of the allegations in the complaint, does not even mention Pennsylvania or otherwise suggest that OptumInsight Life Sciences had any connection with Pennsylvania, let alone suit-related contacts creating a substantial connection with Pennsylvania. *Walden*, 571 U.S. at 284.

Paragraphs 425 through 432 make allegations related to Optum Perks, LLC or Optum Discount Card Services, LLC. Those allegations also do not mention Pennsylvania or any connection with Pennsylvania, nor any suit-related contacts creating a substantial connection with Pennsylvania. *Walden*, 571 U.S. at 284.

### 2. The City Fails To Establish Personal Jurisdiction Over Each 12(b)(2) Defendant Individually.

In its remaining allegations, the City fails to distinguish between the 12(b)(2) Defendants and instead groups them together as "Optum," "OptumInsight," or "OptumHealth." *See e.g.,* Compl. ¶¶ 121, 145. As this Court has explained, complaints that group together several defendants and then allege conduct and facts that pertain identically to all of them are insufficient to determine personal jurisdiction. *Heartrepreneur, LLC v. Jones*, 2020 WL 2839102, *3 (E.D. Pa. May 29, 2020) ("Plaintiffs refer to all Defendants collectively and do not separately allege how each

Defendant purposefully directed activities towards Pennsylvania. Plaintiffs may not simply lump Defendants together to establish jurisdiction."). In grouping together all the defendants, the City implicitly concedes that it cannot establish jurisdiction over each defendant individually. The complaint gives no basis for this Court to assess "*each* Defendant's contacts with Pennsylvania separately in order to determine whether [it] may exercise jurisdiction over that Defendant. *Id.* at *11 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Rush*, 444 U.S. at 332) (emphasis added).

Those allegations are also deficient because they fail to connect any of the 12(b)(2) Defendants to any alleged conduct in Pennsylvania. Generally, the City makes allegations including related to "Optum's" data-tracking capabilities, "ability to control drug utilization," awareness of the "opioid epidemic," profits "from keeping OxyContin on its standard formularies," and unwillingness to implement more robust restrictions. *See, e.g.*, Compl. ¶¶ 224–25, 228, 239–42, 280, 284, 300, 303, 421. Even crediting the multi-level group pleading, none of the allegations referencing "Optum" mention Pennsylvania or any suit-related contacts creating a substantial connection with Pennsylvania. *Walden*, 571 U.S. at 284. *See e.g.*, Compl. ¶¶ 119–22, 141, 145, 148, 158-61, 259, 379-82, 397–406 425, 430, 827, 846 (not referencing any conduct in Pennsylvania), ¶¶ 304; 433; 454–62; 486; 852 (listing various federal laws and Pennsylvania laws, without alleging anything about any of the 12(b)(2) Defendants). In sum, the complaint makes vague, conclusory, undifferentiated allegations that are woefully insufficient to establish the suit-related contacts for each individual Moving Defendant that is required for specific jurisdiction.

## C.    The RICO Claim Does Not Cure The Complaint's Jurisdictional Defects.

The City alleges that even if the Court lacks personal jurisdiction over any of the defendants, "the Court has personal jurisdiction over the PBM Defendants under 18 U.S.C. § 1965(b) as to Plaintiff's RICO claims and pendent personal jurisdiction over the PBM Defendants as to Plaintiff's other claims, all of which arise out of a common nucleus of operative

facts." Compl. ¶ 16. Neither RICO jurisdiction nor pendent jurisdiction, however, applies to the 12(b)(2) Defendants.

First, the City's RICO claims are unquestionably time-barred, as discussed in Defendants' Motion to Dismiss under Rule 12(b)(6). *See* Mem. Supporting Joint Mot. to Dismiss at Section I. But even if the RICO claims were timely, RICO's nationwide service of process is not supported where the RICO claim is demonstrably not viable. *Waller v. Nelson*, 2023 WL 4106250, *8 (W.D. Va. June 21, 2023). In fact, "'some RICO claims may be so 'implausible, insubstantial, or frivolous' that they fail to state a colorable RICO claim" and do not permit the exercise of nationwide service of process. *Id.* (cleaned up) (citation omitted); *see also id.* ("The court cannot exercise personal jurisdiction pursuant to RICO's nation-wide service of process provision because Plaintiffs' underlying RICO claim is not colorable as alleged in the amended complaint."). Courts have warned that "[b]ecause of the broad jurisdictional reach of the RICO statute, the courts should be particularly vigilant not to permit a plaintiff to assert a spurious RICO claim in order to try to obtain personal jurisdiction over other defendants." *World Depot Corp. v. Onofri*, 2017 WL 6003052, at *5 (D. Mass. Dec. 4, 2017). That describes this case perfectly.

The City's RICO claims against the 12(b)(2) Defendants are not merely implausible; they are nonexistent. According to the City, "the PBM Defendants" (undifferentiated) participated in a "Formulary & UM [RICO] Enterprise" through "through unfettered and preferential formulary access without UM in the PBM Defendants' standard offerings, despite the PBM Defendants' promises, representations and contractual obligations to take actions, including through cDUR, formulary decisions and UM decisions that were in their clients' best interests, to ensure safe and medically appropriate opioids were being dispensed, and to address opioid abuse, misuse and diversion" with opioid manufacturers. Compl. ¶ 789.

12

Although the City seeks to assert a RICO claim against all Defendants, it does not allege that the 12(b)(2) Defendants offered opioid manufacturers "preferential formulary positions," *id.* ¶ 790, contracted with opioid manufacturers "that gave them preferential formulary positions and prevented the implementation of UM," performed research for opioid manufacturers, *id.*, or manufactured, distributed, or dispensed controlled substances, *id.* ¶¶ 796–800. The 12(b)(2) Defendants are not PBMs, manufacturers, distributors, or dispensers; they do not offer any of the services listed. The City cannot allege otherwise. Without offering even a single factual allegation that the 12(b)(2) Defendants joined the purported "Formulary & UM Enterprise" or participated in any way in the conduct giving underlying the purported RICO claim, the City cannot invoke RICO jurisdiction. *Waller*, 2023 WL 4106250, at *8.

Nor can pendent jurisdiction save the City's other claims against the 12(b)(2) Defendants. As an initial matter, if the underlying RICO claim does not survive, then there is no federal claim for the City's state-law claims to "append" to. *See* Mem. Supporting Joint Mot. to Dismiss at Sections I.A., II (explaining that the claim is time-barred and otherwise fails to meet the pleading requirements); *Smith v. Onsite Neonatal Partners, Inc.*, 2023 WL 1864869, at *5 (E.D. Pa. Feb. 9, 2023) ("[W]hen the federal-law claims [anchoring pendent jurisdiction] have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case."); *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002) (finding that the district court abused its discretion by retaining pendent jurisdiction over claims after the anchor claim was dismissed).

## II.    THE COURT SHOULD DISMISS CORPORATE-PARENT AND AFFILIATE ENTITIES WITH NO ALLEGED CONDUCT.

The City asserts claims against Optum, Inc., OptumHealth Holdings, LLC, OptumInsight Life Sciences, Inc., Optum Health Networks, Inc., OptumRx Discount Card Services, LLC, and

Optum Perks, LLC by just lumping them in with other defendants. *See*, *supra* pages 1–4 . That is not enough to tag them with liability.

As to Optum, Inc., and OptumHealth Holdings, LLC, their status as corporate parents or holding companies does not on its own give rise to liability. "It is a general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Wedner v. Unemployment Comp. Bd. of Rev.*, 449 Pa. 460, 464 (1972) ("[C]ourt[s] must start from the general rule that the corporate entity should be recognized and upheld."). The City's conclusory assertions that certain of these entities had control over the other defendants' policies, allegations that some of the entities shared executives and conclusory invocation of "alter ego" status, *e.g.*, Compl. ¶¶ 109, 112, 693, also are insufficient. These are the precise type of allegations that other courts have rejected with respect to these same defendants. *See, e.g.*, Order at 14–16, ECF No. 112, *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, No. 21-cv-674, (S.D. Miss. Aug. 15, 2022) (**Exhibit A)** (dismissing OptumRx parents and affiliates, including UnitedHealth Group and OptumInsight for lack of personal jurisdiction and refusing to pierce the corporate veil and attribute OptumRx's conduct); *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770, at *10–12 (D. Minn. Apr. 5, 2022) (dismissing corporate parents of OptumRx). Because the City has alleged nothing more than standard parent-subsidiary relationships, the Court should dismiss these corporate-parent entities.

As to OptumInsight Life Sciences, Inc. and Optum Health Networks, Inc., the City does not allege any particular conduct by any of these entities at all.

The City's claims against OptumRx Discount Card Services, LLC and Optum Perks, LLC related to prescription discount cards fail for substantially the same reasons as the City's claims against the PBMs. Their conduct is far removed from the City's alleged injuries, and the City never

explains how these entities had any duty to refrain from administering prescription discount programs that help make prescription medications more affordable for individuals without insurance. Compl. ¶¶ 425-32. Indeed, imposing a novel, unbounded duty to restrict available discounts on lawful products to prevent potential social ills would harm commerce and consumers by opening up new avenues of liability and making needed products less affordable.

The City's claims against UHG and OptumHealth Care Solutions, LLC fail because they amount to little more than allegations of guilt by association. The complaint alleges that a UHG executive sent an email to an unknown person at Purdue about oxycontin, ¶ 242, and that UHG allegedly implemented a clinical initiative, ¶ 401. Neither allegation ties UHG to any wrongdoing. OptumHealth Care Solutions, LLC allegedly partnered with Purdue to "educate nurses and case managers . . . on the alleged undertreatment of pain," but never specifically says what misstatements were allegedly made, let alone who, if anyone, at OptumHealth Care Solutions, LLC knew or should have known they were false. Compl. ¶¶ 140, 407-13.

As to OptumInsight, Inc., the City does not allege any actionable conduct. At most, the City alleges that OptumInsight provided routine data and analytics services to non-party opioid manufacturers, which the City alleges used that information and those services to promote the use of opioid medications. *See* Compl. ¶¶ 395-413. The City's civil conspiracy and concerted action claims with respect to this conduct fail for the reasons set forth in Defendants' joint brief. *See* Mem. Supporting Joint Mot. to Dismiss at Section VII. The City's other claims against OptumInsight, Inc. should be dismissed because the City never connects its allegations against OptumInsight, Inc. to the elements of any claim.

## CONCLUSION

For these reasons, the Court should dismiss with prejudice the City's claims.

Dated: January 15, 2026

*/s/*  *Joseph I. Fontak*

Joseph I. Fontak
**LEADER BERKON COLAO &**
**SILVERSTEIN LLP**
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 755-0455
jfontak@leaderberkon.com

Brian D. Boone (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000
brian.boone@alston.com

Michael A. Kaeding (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
555 Fayetteville St., Suite 600
Raleigh, NC 27601
(919) 862 2200
mike.kaeding@alston.com

Debolina Das (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
(212) 210-9400
debolina.das@alston.com

Robert J. Giuffra, Jr. (admitted *pro hac vice*)
Jeffrey T. Scott (admitted *pro hac vice*)
Matthew J. Porpora (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10014
(212) 558-4000
giuffrar@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendants UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Networks, Inc., OptumHealth Care Solutions, LLC and OptumHealth Holdings, LLC*