**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CITY OF PHILADELPHIA,<br>        Plaintiff, | :<br>:<br>:   No. 2:25-cv-06185-GJP<br>: |
| vs. | :   ORAL ARGUMENT REQUESTED<br>: |
| CVS HEALTH CORPORATION; et al<br>        Defendants. | :<br>:<br>: |

**MEMORANDUM OF LAW SUPPORTING UNITEDHEALTH GROUP, INC., OPTUM, INC., OPTUMINSIGHT, INC., OPTUMINSIGHT LIFE SCIENCES, INC., OPTUMRX DISCOUNT CARD SERVICES, LLC, OPTUM PERKS, LLC, OPTUMHEALTH NETWORKS, INC., OPTUMHEALTH CARE SOLUTIONS, LLC, AND OPTUMHEALTH HOLDINGS, LLC'S
<u>MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

LEGAL STANDARD...................................................................................................... 4

ARGUMENT .................................................................................................................. 6

      I.      THERE IS NO PERSONAL JURISDICTION OVER THE 12(B)(2)
            DEFENDANTS. ......................................................................................... 6

      A.     The Court Lacks General Jurisdiction Over The 12(b)(2) Defendants
           Because None Is At Home In Pennsylvania. ............................................. 6

      B.     The Court Lacks Specific Jurisdiction Over Defendants As A Matter Of
           Due Process........................................................................................... 7

           1.     The City Has Not Pleaded Facts Showing That The 12(b)(2)
                  Defendants Are Subject To Specific Jurisdiction. ...................................... 8

           2.     The City Fails To Establish Personal Jurisdiction Over Each
                  12(b)(2) Defendant Individually. ............................................................. 10

      C.     The RICO Claim Does Not Cure The Complaint's Jurisdictional Defects. ......... 11

      II.     THE COURT SHOULD DISMISS CORPORATE-PARENT AND
            AFFILIATE ENTITIES WITH NO ALLEGED CONDUCT............................. 13

CONCLUSION.............................................................................................................. 15

## TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*Anne Arundel County v. Express Scripts, Inc.*,
    2025 WL 254807 (D. Md. Jan. 21, 2025)...............................................................8

*Barth v. Walt Disney Parks & Resorts U.S., Inc.*,
    206 F. Supp. 3d 1026 (E.D. Pa. 2016) ............................................................6, 7

*Blanding v. Walmart Inc.*,
    2024 WL 3433321 (E.D. Pa. July 15, 2024) ...................................................9

*Calder v. Jones*,
    465 U.S. 783 (1984)........................................................................................11

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...................................................................................5, 6, 7

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
    948 F.3d 124 (3d Cir. 2020)..............................................................................7

*Heartrepreneur, LLC v. Jones*,
    2020 WL 2839102 (E.D. Pa. May 29, 2020) ................................................11

*IMO Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998)..........................................................................5, 8

*In re EpiPen Direct Purchaser Litig.*,
    2022 WL 1017770 (D. Minn. Apr. 5, 2022)..................................................14

*Levy v. HFactor, Inc.*,
    2024 WL 4582882 (E.D. Penn. 2024) ............................................................5

*Mallory v. Norfolk S. Ry. Co.*,
    600 U.S. 122 (2023)...................................................................................2, 5, 6

*Marten v. Finchuam*,
    499 F.3d 290 (3d Cir. 2007)............................................................................5

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
    No. 21-cv-674 (S.D. Miss. Aug. 15, 2022)...................................................14

*Rush v. Savchuk*,
    444 U.S. 320 (1980)......................................................................................4, 11

*Skolnick v. Evolution AB (Publ)*,
    2025 WL 1208905 (E.D. Penn. 2025) ........................................................4, 5, 6

*Smith v. Onsite Neonatal Partners, Inc.*,
   2023 WL 1864869 (E.D. Pa. Feb. 9, 2023) ...................................................................13

*United States v. Bestfoods*,
   524 U.S. 51 (1998)...........................................................................................................14

*United States v. Botefuhr*,
   309 F.3d 1263 (10th Cir. 2002) .......................................................................................13

*Walden v. Fiore*,
   571 U.S. 277 (2014)............................................................................................... passim

*Waller v. Nelson*,
   2023 WL 4106250 (W.D. Va. June 21, 2023) ...........................................................12, 13

*Wedner v. Unemployment Comp. Bd. of Rev.*,
   449 Pa. 460 (1972)...........................................................................................................14

*Wolstenholme v. Bartels*,
   511 Fed.Appx. 215 (E.D. Penn. 2011).................................................................................7

*World Depot Corp. v. Onofri*,
   2017 WL 6003052 (D. Mass. Dec. 4, 2017) .....................................................................12

## RULES

Federal Rule of Civil Procedure 12(b)(2) .............................................................................1, 4, 5

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................1, 6, 12

## STATUTES

42 Pa. Cons. Stat. § 5301(a)(2)(i) ............................................................................................2

42 Pa. Cons. Stat. § 5322(b) .................................................................................................5, 7

18 U.S.C. § 1965(b) ..................................................................................................................12

## INTRODUCTION

As explained in Defendants' contemporaneously filed 12(b)(6) motion to dismiss, the City of Philadelphia's claims against all twenty-four of the named Defendants fail. But the Court does not need to reach those arguments for four of those entities—OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, and OptumHealth Holdings, LLC (collectively, the "12(b)(2) Defendants")—because the City fails to establish that the Court has personal jurisdiction over them. The City fails to plead any particularized allegations against the 12(b)(2) Defendants to establish a nexus between them and the forum sufficient for personal jurisdiction. And the City's back-door attempt to establish personal jurisdiction by invoking RICO's nationwide service of process provision fails because (1) that claim is time barred and (2) the City has not alleged that any of the 12(b)(2) Defendants participated in the activity or course of conduct giving rise to its alleged "Formulary & UM Enterprise." The Court should therefore dismiss the complaint as to those entities under Federal Rule of Civil Procedure 12(b)(2).

The Court also should dismiss the City's complaint as to UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Networks, Inc., LLC, OptumHealth Care Solutions, LLC, and OptumHealth Holdings, LLC under Rule 12(b)(6) because the complaint does not plead any actionable conduct by these entities. Instead, it relies on impermissible group pleading, bare allegations of parent-subsidiary relationships, and other generalized allegations that are deficient.

## BACKGROUND

**OptumInsight, Inc. and OptumInsight Life Sciences, Inc.** OptumInsight, Inc. are data, analytics, and consulting providers. Compl. ¶ 158. The City refers to OptumInsight Life Sciences, Inc. collectively with OptumInsight, Inc. as "OptumInsight" without alleging which entity engaged in what conduct. *See* Compl. ¶ 121 ("OptumInsight, Inc. and OptumInsight Life Sciences, Inc., as

well as their predecessors, successors, affiliates, including but not limited to Innovus, Innovus Research, i3, QualityMetric, HTAnalytics, ChinaGate, and CanReg, are referred to herein as 'OptumInsight'"). The complaint alleges "OptumInsight" provided data and analysis to opioid manufacturers, which were used to market opioids and promote the use of opioids to treat pain. *E.g.*, Compl. ¶¶ 395-413, 827, 846.

The City makes individual reference to OptumInsight Life Sciences, Inc. only twice in the complaint—once in the paragraphs where it identifies OptumInsight Life Sciences, Inc. as a named defendant, *see* Compl. ¶¶ 119–23, and second in a paragraph describing a 2013 email to an opioid manufacturer, *id.* ¶ 259. Neither of these paragraphs mention Pennsylvania or allege any suit-related conduct by OptumInsight Life Sciences, Inc. that is at all related to Pennsylvania. Nor does the complaint allege that OptumInsight Life Sciences, Inc. is qualified as a foreign corporation in Pennsylvania. *See* 42 Pa. Cons. Stat. § 5301(a)(2)(i); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 134–36 (2023). The complaint goes one step further by then collectively defining OptumInsight and the remaining Optum entities as "Optum." Compl. ¶ 148.

The complaint's allegations about "OptumInsight" also describe interactions with pharmaceutical manufacturers only on a nationwide level. None of those allegations reflect or plausibly set forth any suit-specific nexus to or "substantial connection" with Pennsylvania, *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

**OptumRx Discount Card Services, LLC and Optum Perks, LLC.** OptumRx Discount Card Services, LLC and Optum Perks, LLC administer prescription discount cards. *See* Compl. ¶¶ 425–32. Other than the paragraphs discussing the two entities as named defendants, the only other allegations related to either entity come in a discussion of OptumRx's discount card program and says that the program is "governed by either Optum Perks, LLC or OptumRx Discount Card

Services, LLC," Compl. ¶ 425, and that "Optum was also unwilling to control any prescriptions administered by Optum Perks or Optum Discount Card Services," *id.* ¶ 430.

The allegations against OptumRx Discount Card Services, LLC and Optum Perks, LLC contain no suit-specific nexus to Pennsylvania. *Walden*, 571 U.S. at 284. The complaint also contains no allegation that either is qualified as a foreign corporation or entity in Pennsylvania. Indeed, aside from the two paragraphs noted above, the only other allegations related to OptumRx Discount Card Services, LLC and Optum Perks, LLC are through group pleading. The City refers to both entities along with several others collectively as "Optum." Compl. ¶ 148.

**UnitedHealth Group, Inc. ("UHG") and Optum, Inc.** These entities are parent entities and holding companies. Compl. ¶¶ 105–15. The complaint does not allege any particular conduct by Optum, Inc. or UnitedHealth Group, Inc. that ties them to the claims alleged. The only allegations related to Optum, Inc. describe the business of its subsidiaries. Compl. ¶¶ 112, 114-15, 148, 150. The UHG allegations describe Optum, Inc. and UnitedHealthcare (which is not a defendant). ¶¶ 108-09. The allegations related to UHG relate to a single email allegedly from a UHG employee to a Purdue employee, ¶ 242, and a vague one-paragraph description of a "clinical initiative," ¶ 401.

**OptumHealth Holdings, LLC.** This entity is also merely a parent entity and holding company. Compl. ¶ 141. The complaint does not allege any particular conduct by OptumHealth Holdings, LLC; the allegations note only its principal place of business in Minnesota. *Id.* This allegation quite obviously contains no suit-specific nexus to Pennsylvania. *Walden*, 571 U.S. at 284. Nor is there any allegation that OptumHealth Holdings, LLC is qualified as a foreign corporation or entity in Pennsylvania.

The remaining references are group pleading only. The complaint defines "OptumHealth

Care Solutions, LLC, Optum Health [sic] Holdings, LLC, and OptumHealth Networks, Inc." collectively as "OptumHealth," compl. ¶ 145, and includes OptumHealth Holdings, LLC in its collective definition of "Optum" with seven other entities. Compl. ¶ 148. This multi-level group pleading makes it impossible to assess any individual contacts with Pennsylvania. These allegations contain no suit-specific nexus to Pennsylvania sufficient for this Court to exercise personal jurisdiction over OptumHealth Holdings, LLC. *Walden*, 571 U.S. at 284.

**OptumHealth Care Solutions, LLC and Optum Health Networks, Inc.** OptumHealth Care Solutions, LLC and Optum Health Networks, Inc. provide healthcare services. Compl. ¶¶ 144-46. Optum Health Networks, Inc. further provides certain services to members of plans administered by other Optum entities, including "care management services, arranging for delivery of services, and managing client relationships and contracts for access to [such] services." Compl. ¶ 144. The complaint otherwise groups together OptumHealth Networks, Inc. and OptumHealth Care Solutions, LLC and Optum Health Holdings, LLC as "OptumHealth," and does not allege any particular conduct by Optum Health Networks, Inc. *See* Compl. ¶¶ 142-145, 148.

## LEGAL STANDARD

*Rule 12(b)(2)*. The City bears the burden of establishing that the Court has personal jurisdiction over *each* defendant individually. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe*, however, must be met as to *each* defendant over whom a state court exercises jurisdiction.") (emphasis added). "[O]nce a defendant raises a jurisdictional defense, the burden shifts to the plaintiff to prove, by a preponderance of the evidence, that jurisdiction exists." *Skolnick v. Evolution AB (Publ)*, 2025 WL 1208905, *1 (E.D. Penn. 2025) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998)). When a court lacks personal jurisdiction over a defendant, Rule 12(b)(2) requires dismissal of the complaint. *Skolnick*, 2025 WL 1208905, at *1.

4

In determining personal jurisdiction, the court assesses (1) whether the relevant state long-arm statute allows the exercise of personal jurisdiction and (2) whether the exercise of jurisdiction comports with the Due Process Clause of the Constitution. *Id.* at *2. "Pennsylvania's long-arm statute extends jurisdiction to its constitutional limits, 42 Pa. C.S. § 5322(b)[.]" *Levy v. HFactor, Inc.*, 2024 WL 4582882, *2 (E.D. Penn. 2024) (citing *Marten v. Finchuam*, 499 F.3d 290, 296 (3d Cir. 2007)).

There can be either general or specific personal jurisdiction. *Skolnick*, 2025 2025 WL 1208905, at *2. General jurisdiction is found "when a nonresident defendant has maintained contacts with the forum state that are so systematic and continuous as to render it essentially at home." *Id.*; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (general jurisdiction exists as a matter of federal due process only if a business' contacts are so pervasive that it can be "fairly regarded as at home" in Pennsylvania). A company is "at home" in the state in which it is incorporated and where it has its principal place of business. *Daimler*, 571 U.S. at 137. Further, a foreign company that qualifies as a foreign corporation or entity under Pennsylvania law consents to general personal jurisdiction in Pennsylvania. *Mallory*, 600 U.S. at 134–36.

To establish specific jurisdiction, a defendant must "purposefully avail itself of the privilege of conducting activities within the forum State[,]" and the "litigation must 'arise out of or relate to' the activities." *Skolnick*, 2025 WL 1208905at *4. The defendant's "suit-related conduct" must create "a substantial connection with the forum State." *Walden*, 571 U.S. at 284. "If these two requirements are met, the court considers whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *Skolnick*, 2025 WL 1208905, at *4. (cleaned up).

***Rule 12(b)(6).*** The standard for dismissal is set forth in Defendants' joint brief at page 4.

**ARGUMENT**

## I.     THERE IS NO PERSONAL JURISDICTION OVER THE 12(B)(2) DEFENDANTS.

The City fails to allege any basis for exercising personal jurisdiction over the 12(b)(2) Defendants. There are no allegations that the 12(b)(2) Defendants are at home in Pennsylvania such that this Court can extend general jurisdiction. This Court also lacks specific jurisdiction over the 12(b)(2) Defendants because the City does not allege that any of those entities have suit-related contacts creating a substantial connection with Pennsylvania that would not offend traditional notions of fair play and substantial justice. Exercising jurisdiction over the 12(b)(2) Defendants would run afoul of both the Pennsylvania long-arm statute and federal due process. Finally, the Court lacks RICO jurisdiction over the 12(b)(2) Defendants, and, therefore, pendent jurisdiction over the City's other claims, because there are no factual allegations tying the 12(b)(2) Defendants to the alleged RICO enterprise.

### A.     The Court Lacks General Jurisdiction Over The 12(b)(2) Defendants Because None Is At Home In Pennsylvania.

General jurisdiction attaches only if a business has "affiliations with the State [that] are so 'continuous and systematic'" that it "is fairly regarded as at home" there. *Daimler*, 571 U.S. at 137–38 (quotation omitted). Generally, "the paradigm bases for general jurisdiction are the place of incorporation and the principal place of business." *Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 206 F. Supp. 3d 1026, 1029 (E.D. Pa. 2016). A foreign company qualified as a foreign corporation or entity under Pennsylvania law consents to general personal jurisdiction in Pennsylvania. *Mallory*, 600 U.S. at 134–36. General jurisdiction may also "arise in the 'exceptional case' where 'a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.'" *Barth*, 206 F. Supp. 3d at 1029 (quoting *Daimler*, 571 U.S.

6

at 138, n.19).

The City concedes that none of the 12(b)(2) Defendants is incorporated in Pennsylvania. Compl. ¶¶ 119, 133, 135, 141. And none has its principal place of business in Pennsylvania. *Id*. Nor are any of the 12(b)(2) Defendants qualified as foreign corporations or entities under Pennsylvania law. *Id.* And the City does not make any allegations that this is an "exceptional case" where any of the 12(b)(2) Defendants are "at home" in Pennsylvania. *Daimler*, 571 U.S. at 137–38. The City fails to establish general jurisdiction over 12(b)(2) Defendants.

**B.    The Court Lacks Specific Jurisdiction Over Defendants As A Matter Of Due Process.**

The Court also lacks specific personal jurisdiction over the 12(b)(2) Defendants. Specific jurisdiction exists only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *see also Wolstenholme v. Bartels*, 511 Fed.Appx. 215, 219 (E.D. Penn. 2011). Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. § 5322(b), reaches the constitutional limits of due process under the Fourteenth Amendment. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). "When a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden to come forward with sufficient facts to establish that jurisdiction is proper." *Id.* (citation omitted). "To meet this burden, the plaintiff must establish[ ] with reasonable particularity' three elements" to determine whether a court can exercise specific jurisdiction over a non-resident defendant: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice,

*i.e.*, it must be reasonable. *Id.* at 129–30. For intentional torts, "the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *IMO Industries*, 155 F.3d at 265-66.

The City has not come close to plausibly alleging that 12(b)(2) Defendants expressly aimed their conduct at Pennsylvania, never mind that the City's claims "arise from or relate to" anything that those defendants might have done in Pennsylvania.

Last year, another court reached the same conclusion in another case asserting similar opioid-related claims against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. *See Anne Arundel County v. Express Scripts, Inc.*, 2025 WL 254807, at *10 (D. Md. Jan. 21, 2025). There, the court explained that the burden is on the plaintiff to plead a prima facie basis for personal jurisdiction. *Id.* at *2. But "[n]one of the County's allegations referencing the OptumInsight Entities indicate that they transacted business within Maryland[,]" and "[t]he conduct alleged in the Amended Complaint does not establish that the OptumInsight Entities purposefully availed themselves of the privilege of conducting activities within Maryland, or that the County's claims arise out of those contacts." *Id.* at *3–4. Accordingly, "the County has not alleged any facts that suggest that this Court may have specific personal jurisdiction over the OptumInsight Entities." *Id.* at *4. The same result is warranted here.

### 1. The City Has Not Pleaded Facts Showing That The 12(b)(2) Defendants Are Subject To Specific Jurisdiction.

The City fails to allege facts showing that any of the 12(b)(2) Defendants acted in or purposefully directed any activities towards Pennsylvania, or that its claims arise from these defendants' purposeful contact or activities in connection with Pennsylvania. Indeed, the City fails to allege any Pennsylvania-specific suit-related conduct whatsoever. *See* Compl. ¶¶ 119, 133–37, 141. In fact, there are only a handful of paragraphs where the City actually mentions these entities

at all. None of these allegations establishes specific jurisdiction. *See, e.g.*, Compl. ¶¶ 119–23, 133–37, 141, 145, 148, 158–61, 259, 379–82, 397–406, 425, 430, 827, 846.

Paragraph 121 lumps OptumInsight Life Sciences, Inc, OptumInsight, Inc., "as well as their predecessors, successors, affiliates, including but not limited to Innovus, Innovus Research, i3, QualityMetric, HTAnalytics, ChinaGate, and CanReg," together as "OptumInsight," and alleges "OptumInsight is the Optum group that engages in data analytics." As explained above, that improper group pleading demonstrates that the City cannot establish jurisdiction over each defendant individually. *Blanding v. Walmart Inc.*, 2024 WL 3433321, *2 (E.D. Pa. July 15, 2024).

In any case, the allegations against "OptumInsight" do not suggest that those entities had any connection with Pennsylvania, let alone suit-related contacts creating a substantial connection with Pennsylvania. *Walden*, 571 U.S. at 284. *See, e.g.*, Compl. ¶ 123 ("OptumInsight "partnered with various opioid manufacturers to create studies, marketing materials, educational programs, and even algorithms to simultaneously downplay opioids' addictive properties and expand their use and availability throughout the country, including in Pennsylvania."); *id.* ¶ 159 ("OptumInsight" worked with "opioid manufacturers to convince patients, prescribers, payors and the public that long term opioid use was appropriate for the treatment of chronic pain and that opioids were not addictive."); *id.* ¶ 160 (each opioid manufacturer assigned executives to "work with OptumInsight" and "used their relationships with OptumInsight to deepen their ties to the overall Optum corporate family."); *id.* ¶ 161 ("OptumInsight" "was paid tens of millions of dollars by the opioid manufacturers during the relevant time period for its work to expand the opioid market."); *id.* ¶¶ 379–82 (allegations that "OptumInsight" and Purdue worked together "to identify physicians from UHC and OptumInsight's database and then develop[ed] comprehensive education materials on the effectiveness of opioids in chronic pain treatment to send to these

physicians.").

Further, the City cannot, as a matter of law, impute opioid manufacturers' contacts to OptumInsight Life Sciences, Inc. *Walden*, 571 U.S. at 286. The City otherwise fails to explain how the alleged work completed by "OptumInsight" creates a substantial connection to Pennsylvania. In fact, the City does not allege *anywhere in the complaint* that "OptumInsight's" "work" had anything to do with Pennsylvania, never mind suit-related contacts creating a substantial connection with Pennsylvania. *Id.* at 284.

Paragraph 259 describes an alleged email from an OptumInsight Life Sciences, Inc. consultant relating to tracking certain physician, patient, and pharmacy data. That allegation, like most of the allegations in the complaint, does not even mention Pennsylvania or otherwise suggest that OptumInsight Life Sciences had any connection with Pennsylvania, let alone suit-related contacts creating a substantial connection with Pennsylvania. *Walden*, 571 U.S. at 284.

Paragraphs 425 through 432 make allegations related to Optum Perks, LLC or Optum Discount Card Services, LLC. Those allegations also do not mention Pennsylvania or any connection with Pennsylvania, nor any suit-related contacts creating a substantial connection with Pennsylvania. *Walden*, 571 U.S. at 284.

## 2. The City Fails To Establish Personal Jurisdiction Over Each 12(b)(2) Defendant Individually.

In its remaining allegations, the City fails to distinguish between the 12(b)(2) Defendants and instead groups them together as "Optum," "OptumInsight," or "OptumHealth." *See e.g.,* Compl. ¶¶ 121, 145. As this Court has explained, complaints that group together several defendants and then allege conduct and facts that pertain identically to all of them are insufficient to determine personal jurisdiction. *Heartrepreneur, LLC v. Jones*, 2020 WL 2839102, *3 (E.D. Pa. May 29, 2020) ("Plaintiffs refer to all Defendants collectively and do not separately allege how each

10

Defendant purposefully directed activities towards Pennsylvania. Plaintiffs may not simply lump Defendants together to establish jurisdiction."). In grouping together all the defendants, the City implicitly concedes that it cannot establish jurisdiction over each defendant individually. The complaint gives no basis for this Court to assess "*each* Defendant's contacts with Pennsylvania separately in order to determine whether [it] may exercise jurisdiction over that Defendant. *Id.* at \*11 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Rush*, 444 U.S. at 332) (emphasis added).

Those allegations are also deficient because they fail to connect any of the 12(b)(2) Defendants to any alleged conduct in Pennsylvania. Generally, the City makes allegations including related to "Optum's" data-tracking capabilities, "ability to control drug utilization," awareness of the "opioid epidemic," profits "from keeping OxyContin on its standard formularies," and unwillingness to implement more robust restrictions. *See, e.g.*, Compl. ¶¶ 224–25, 228, 239–42, 280, 284, 300, 303, 421. Even crediting the multi-level group pleading, none of the allegations referencing "Optum" mention Pennsylvania or any suit-related contacts creating a substantial connection with Pennsylvania. *Walden*, 571 U.S. at 284. *See e.g.*, Compl. ¶¶ 119–22, 141, 145, 148, 158-61, 259, 379-82, 397–406 425, 430, 827, 846 (not referencing any conduct in Pennsylvania), ¶¶ 304; 433; 454–62; 486; 852 (listing various federal laws and Pennsylvania laws, without alleging anything about any of the 12(b)(2) Defendants). In sum, the complaint makes vague, conclusory, undifferentiated allegations that are woefully insufficient to establish the suit-related contacts for each individual Moving Defendant that is required for specific jurisdiction.

### C.    The RICO Claim Does Not Cure The Complaint's Jurisdictional Defects.

The City alleges that even if the Court lacks personal jurisdiction over any of the defendants, "the Court has personal jurisdiction over the PBM Defendants under 18 U.S.C. § 1965(b) as to Plaintiff's RICO claims and pendent personal jurisdiction over the PBM Defendants as to Plaintiff's other claims, all of which arise out of a common nucleus of operative

facts." Compl. ¶ 16. Neither RICO jurisdiction nor pendent jurisdiction, however, applies to the 12(b)(2) Defendants.

First, the City's RICO claims are unquestionably time-barred, as discussed in Defendants' Motion to Dismiss under Rule 12(b)(6). *See* Mem. Supporting Joint Mot. to Dismiss at Section I. But even if the RICO claims were timely, RICO's nationwide service of process is not supported where the RICO claim is demonstrably not viable. *Waller v. Nelson*, 2023 WL 4106250, *8 (W.D. Va. June 21, 2023). In fact, "'some RICO claims may be so 'implausible, insubstantial, or frivolous' that they fail to state a colorable RICO claim" and do not permit the exercise of nationwide service of process. *Id.* (cleaned up) (citation omitted); *see also id.* ("The court cannot exercise personal jurisdiction pursuant to RICO's nation-wide service of process provision because Plaintiffs' underlying RICO claim is not colorable as alleged in the amended complaint."). Courts have warned that "[b]ecause of the broad jurisdictional reach of the RICO statute, the courts should be particularly vigilant not to permit a plaintiff to assert a spurious RICO claim in order to try to obtain personal jurisdiction over other defendants." *World Depot Corp. v. Onofri*, 2017 WL 6003052, at *5 (D. Mass. Dec. 4, 2017). That describes this case perfectly.

The City's RICO claims against the 12(b)(2) Defendants are not merely implausible; they are nonexistent. According to the City, "the PBM Defendants" (undifferentiated) participated in a "Formulary & UM [RICO] Enterprise" through "through unfettered and preferential formulary access without UM in the PBM Defendants' standard offerings, despite the PBM Defendants' promises, representations and contractual obligations to take actions, including through cDUR, formulary decisions and UM decisions that were in their clients' best interests, to ensure safe and medically appropriate opioids were being dispensed, and to address opioid abuse, misuse and diversion" with opioid manufacturers. Compl. ¶ 789.

12

Although the City seeks to assert a RICO claim against all Defendants, it does not allege that the 12(b)(2) Defendants offered opioid manufacturers "preferential formulary positions," *id.* ¶ 790, contracted with opioid manufacturers "that gave them preferential formulary positions and prevented the implementation of UM," performed research for opioid manufacturers, *id.*, or manufactured, distributed, or dispensed controlled substances, *id.* ¶¶ 796–800. The 12(b)(2) Defendants are not PBMs, manufacturers, distributors, or dispensers; they do not offer any of the services listed. The City cannot allege otherwise. Without offering even a single factual allegation that the 12(b)(2) Defendants joined the purported "Formulary & UM Enterprise" or participated in any way in the conduct giving underlying the purported RICO claim, the City cannot invoke RICO jurisdiction. *Waller*, 2023 WL 4106250, at *8.

Nor can pendent jurisdiction save the City's other claims against the 12(b)(2) Defendants. As an initial matter, if the underlying RICO claim does not survive, then there is no federal claim for the City's state-law claims to "append" to. *See* Mem. Supporting Joint Mot. to Dismiss at Sections I.A., II (explaining that the claim is time-barred and otherwise fails to meet the pleading requirements); *Smith v. Onsite Neonatal Partners, Inc.*, 2023 WL 1864869, at *5 (E.D. Pa. Feb. 9, 2023) ("[W]hen the federal-law claims [anchoring pendent jurisdiction] have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case."); *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002) (finding that the district court abused its discretion by retaining pendent jurisdiction over claims after the anchor claim was dismissed).

## II.    THE COURT SHOULD DISMISS CORPORATE-PARENT AND AFFILIATE ENTITIES WITH NO ALLEGED CONDUCT.

The City asserts claims against Optum, Inc., OptumHealth Holdings, LLC, OptumInsight Life Sciences, Inc., Optum Health Networks, Inc., OptumRx Discount Card Services, LLC, and

Optum Perks, LLC by just lumping them in with other defendants. *See*, *supra* pages 1–4 . That is not enough to tag them with liability.

As to Optum, Inc., and OptumHealth Holdings, LLC, their status as corporate parents or holding companies does not on its own give rise to liability. "It is a general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Wedner v. Unemployment Comp. Bd. of Rev.*, 449 Pa. 460, 464 (1972) ("[C]ourt[s] must start from the general rule that the corporate entity should be recognized and upheld."). The City's conclusory assertions that certain of these entities had control over the other defendants' policies, allegations that some of the entities shared executives and conclusory invocation of "alter ego" status, *e.g.*, Compl. ¶¶ 109, 112, 693, also are insufficient. These are the precise type of allegations that other courts have rejected with respect to these same defendants. *See, e.g.*, Order at 14–16, ECF No. 112, *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, No. 21-cv-674, (S.D. Miss. Aug. 15, 2022) (**Exhibit A)** (dismissing OptumRx parents and affiliates, including UnitedHealth Group and OptumInsight for lack of personal jurisdiction and refusing to pierce the corporate veil and attribute OptumRx's conduct); *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770, at \*10–12 (D. Minn. Apr. 5, 2022) (dismissing corporate parents of OptumRx). Because the City has alleged nothing more than standard parent-subsidiary relationships, the Court should dismiss these corporate-parent entities.

As to OptumInsight Life Sciences, Inc. and Optum Health Networks, Inc., the City does not allege any particular conduct by any of these entities at all.

The City's claims against OptumRx Discount Card Services, LLC and Optum Perks, LLC related to prescription discount cards fail for substantially the same reasons as the City's claims against the PBMs. Their conduct is far removed from the City's alleged injuries, and the City never

explains how these entities had any duty to refrain from administering prescription discount programs that help make prescription medications more affordable for individuals without insurance. Compl. ¶¶ 425-32. Indeed, imposing a novel, unbounded duty to restrict available discounts on lawful products to prevent potential social ills would harm commerce and consumers by opening up new avenues of liability and making needed products less affordable.

The City's claims against UHG and OptumHealth Care Solutions, LLC fail because they amount to little more than allegations of guilt by association. The complaint alleges that a UHG executive sent an email to an unknown person at Purdue about oxycontin, ¶ 242, and that UHG allegedly implemented a clinical initiative, ¶ 401. Neither allegation ties UHG to any wrongdoing. OptumHealth Care Solutions, LLC allegedly partnered with Purdue to "educate nurses and case managers . . . on the alleged undertreatment of pain," but never specifically says what misstatements were allegedly made, let alone who, if anyone, at OptumHealth Care Solutions, LLC knew or should have known they were false. Compl. ¶¶ 140, 407-13.

As to OptumInsight, Inc., the City does not allege any actionable conduct. At most, the City alleges that OptumInsight provided routine data and analytics services to non-party opioid manufacturers, which the City alleges used that information and those services to promote the use of opioid medications. *See* Compl. ¶¶ 395-413. The City's civil conspiracy and concerted action claims with respect to this conduct fail for the reasons set forth in Defendants' joint brief. *See* Mem. Supporting Joint Mot. to Dismiss at Section VII. The City's other claims against OptumInsight, Inc. should be dismissed because the City never connects its allegations against OptumInsight, Inc. to the elements of any claim.

## CONCLUSION

For these reasons, the Court should dismiss with prejudice the City's claims.

Dated: January 15, 2026            /s/  *Joseph I. Fontak* _____

Joseph I. Fontak
**LEADER BERKON COLAO &
SILVERSTEIN LLP**
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 755-0455
jfontak@leaderberkon.com

Brian D. Boone (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000
brian.boone@alston.com

Michael A. Kaeding (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
555 Fayetteville St., Suite 600
Raleigh, NC 27601
(919) 862 2200
mike.kaeding@alston.com

Debolina Das (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
(212) 210-9400
debolina.das@alston.com

Robert J. Giuffra, Jr. (admitted *pro hac vice*)
Jeffrey T. Scott (admitted *pro hac vice*)
Matthew J. Porpora (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10014
(212) 558-4000
giuffrar@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendants UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Networks, Inc., OptumHealth Care Solutions, LLC and OptumHealth Holdings, LLC*

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE STATE OF MISSISSIPPI, EX REL.                    PLAINTIFF
LYNN FITCH, ATTORNEY GENERAL

V.                            CIVIL ACTION NO. 3:21-CV-674-KHJ-MTP

ELI LILLY AND COMPANY, et al.,                    DEFENDANTS

ORDER

Before the Court is Defendants Optum, Inc., OptumInsight, Inc. ("OptumInsight"), OptumRx Holdings, LLC ("ORx Holdings"), and UnitedHealth Group, Inc.'s ("UnitedHealth") motion to dismiss. [87]. For the following reasons, the Court grants the motion.

I.      Facts and Procedural History

This case is about insulin drug prices. Plaintiff, The State of Mississippi, ex rel. Lynn Fitch, its Attorney General, ("the State") originally sued in Hinds County Chancery Court, alleging that the "Manufacturer Defendants"[1] conspired with the "Pharmacy Benefit Manager Defendants" (also called, "PBM Defendants")[2] to

_____

[1] Eli Lilly and Company, Novo Nordisk, Inc., and Sanofi-Aventis U.S. LLC, collectively.
[2] CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, L.L.C., ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc., UnitedHealth Group, Inc., Optum Inc., and OptumRx, Inc., collectively.

artificially inflate the price of insulin drugs and other diabetes medications. *See* Second Amend. Compl. at ¶ ¶ 5–16.

The State alleges that the Manufacturer Defendants manufacture the "vast majority of insulins and other diabetic medications available in Mississippi." Third Amend. Compl. [71] at ¶ 5. Likewise, the State alleges that the PBM Defendants "manage the pharmacy benefits for the vast majority of individuals in Mississippi." *Id.* at ¶ 6. As part of this work, the State alleges, the PBM Defendants "establish standard formulary offerings" that determine which of the Manufacturer Defendants' diabetes medications are covered "by nearly every payor in Mississippi." *Id.* at ¶¶ 6–7. The State alleges that the Manufacturer Defendants and the PBM Defendants engaged in an "Insulin Pricing Scheme" to increase each type of Defendant groups' profits. *Id.* at ¶¶ 12, 19.

The heart of the "Insulin Pricing Scheme" as alleged by the State is that the Manufacturer Defendants "artificially and willingly" raise their prices to gain formulary access for their respective diabetic treatments from the PBM Defendants. *Id.* at ¶ 20. The State alleges that the Manufacturer Defendants pay a "significant, yet undisclosed, portion of that false list price back to the PBM [Defendants]." *Id.* at ¶ 20. The reason this system exists, the State alleges, is so the Manufacturer Defendants can pay rebates to the PBM Defendants in exchange for formulary access without sacrificing their profit margin. *Id.* at ¶ 23. The PBM Defendants in turn retain a significant percentage of these undisclosed rebates, while using the false list

price to generate additional profits from their own pharmacies and pharmacies in their networks. *Id.* at ¶ 24.

The State alleges that the Manufacturer Defendants' prices "have become so untethered from the actual prices realized by either Defendant group" that they "constitute a false price." *Id.* at ¶ 21. The State alleges, then, the price of certain insulins has increased by more than 1000% since 2003—the same year in which the PBM Defendants "began their rise to power." *Id.* at 278. As a result, the State sued the Defendants, alleging that it has been overcharged millions of dollars per year in its position as a payor for the at-issue drugs through its employee health plans and as a purchaser of the drugs for its state-run facilities. *Id.* at ¶ 28. The State also sued to protect its "sovereign interest in the health and economic interests of its residents, its own interests, and the integrity of its marketplace." *Id.* at ¶ 39.

The State brought claims against the Defendants for violating the Mississippi Consumer Protection Act ("MCPA"), common-law conspiracy, and unjust enrichment. *Id.* at ¶¶ 1, 518–551. Defendants UnitedHealth, Optum, Inc., ORx Holdings, and OptumInsight contend that the State only sued them in their capacity as OptumRx's parent companies. Mem. in Support of Mot. to Dismiss [88] at 1. They assert that the State failed to establish personal jurisdiction under both the Mississippi long arm statute and the purposeful availment prong of constitutional due process.

## II. Standard

Under Rule 12(b)(2), a lawsuit may be dismissed for a lack of personal jurisdiction. *See* Fed. R. Civ. 12(b)(2). "When a nonresident defendant moves to

3

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 577 (S.D. Miss. 2012) (quoting *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996)). The Court must take the "allegations contained in the complaint, except insofar as controverted by opposing affidavits," as true. *Colwell Realty Invs., Inc. v. Triple T Inns of Az., Inc.*, 785 F.2d 1330, 1333 (5th Cir. 1986). If the Court does not rely on an evidentiary hearing but decides the motion based on the pleadings and exhibits on file, the plaintiff need only present a prima facie case of personal jurisdiction. *DeCarlo v. Bonus Stores, Inc.*, 413 F. Supp. 2d 770, 775 (S.D. Miss. 2006) (citing *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982)). When deciding whether a prima facie case has been established, all conflicts in the facts alleged in the complaint and opposing affidavits must be resolved in the plaintiff's favor. *DeCarlo*, 413 F. Supp. 2d at 775 (citing *Thompson v. Chrysler Motors, Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) and *DeMelo v. Toche Marine Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983)).

"The prima-facie-case requirement does not require the court to credit conclusory allegations." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

III.    Analysis

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over the defendant; and (2) exercise of such jurisdiction by the forum state

4

is consistent with due process under the United States Constitution." *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

A. Mississippi's Long Arm Statute

Mississippi's long-arm statute provides,

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57.

Mississippi courts have interpreted the statute to contain three components: contract, tort, and "doing-business." *Fitch v. Wine Express*, Inc., 297 So. 3d 224, 228 (Miss. 2020). In other words, to exercise jurisdiction, the Court must find that: (1) the Moving Defendants entered into a contract to be performed, in whole or in part, in Mississippi, (2) the Moving Defendants committed a tort, in whole or in part, in Mississippi, or (3) the Moving Defendants were "doing business" in Mississippi. *Farani v. File*, 565 F. Supp. 3d 804, 808 (S.D. Miss. 2021). Only one of these components need be present to confer personal jurisdiction under the statute. *Id.*

The Moving Defendants assert that the State provided no actual allegations that UnitedHealth, Optum, Inc., ORx Holdings, or OptumInsight contracted with any Mississippi resident, committed a tort in Mississippi, or did business in Mississippi. [88] at 5–6. The State contends that each Moving Defendant committed a tort and

does business in Mississippi. [102] at 9–11. The Court addresses the long-arm statute's applicability for each Moving Defendant.

### 1. UnitedHealth

UnitedHealth is a Delaware corporation with its principal place of business in Minnesota. [71] at ¶ 189. The State alleges that UnitedHealth "was directly involved in the conduct that caused the Insulin Pricing Scheme and as a result had a direct effect in Mississippi and damaged diabetic Mississippians and the State." *Id.* at ¶ 193. Although the Amended Complaint alleges that United Health met with executive teams from each Manufacturer Defendant to discuss "strategic initiatives" and "prioritized opportunities," the State fails to allege facts to support that these meetings were in furtherance of the alleged Insulin Pricing Scheme. *Id.* at ¶ 197. The State therefore fails to allege that UnitedHealth committed a tort in Mississippi.

The State also fails to allege that UnitedHealth does business in Mississippi. Although the State alleges that UnitedHealth has an "enterprise-wide commitment to Mississippi" with over "500 Mississippi-based employees," the State does not allege to which corporate entity these employees belong. It is not enough to simply rest on the use of a collective term, such as "Defendants," in the allegations to determine personal jurisdiction. *Smith v. Antler Insanity, LLC*, 58 F. Supp. 3d 716, 723 (S.D. Miss. 2014) (citing *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 793 (5th Cir. 2007) (citation omitted)). Here, the State fails to differentiate between each Moving Defendant's role in employing Mississippi residents. The State

fails to establish that UnitedHealth did business in Mississippi for the purposes of the long-arm statute.

## 2. Optum, Inc.

Optum, Inc. is a Delaware corporation with principal place of business in Minnesota. [71] at ¶ 200. The State alleges that Optum, Inc. is "directly involved in company policies that inform its PBM services and formulary construction, including with respect to the at-issue drugs and related to the Insulin Pricing Scheme." *Id.* at ¶ 202. The State also alleges that other companies in the UnitedHealth corporate family report to Optum, Inc. to "inform the at-issue formulary construction and mail order activities." *Id.* at ¶ 203. The State does not allege facts explaining how Optum, Inc.'s involvement in company policy necessarily constitutes involvement in the alleged Insulin Pricing Scheme. Nor does the State allege facts suggesting that Optum, Inc. did business in Mississippi.

These factual allegations do not allege a contract to be performed in Mississippi, a tort committed in Mississippi, or that Optum, Inc. did business in Mississippi. *See Farani*, 565 F. Supp. at 808. The Court therefore holds that the long-arm statute does not confer jurisdiction as to Optum, Inc.

## 3. ORx Holdings

ORx Holdings is a Delaware limited liability corporation with its principal place of business in California. [71] at ¶ 210. The State alleges that ORx Holdings "provides pharmacy benefit management services through its subsidiaries to various health insurance entities in Mississippi." *Id.* at ¶ 211. This is the extent of the State's

7

allegations about ORx Holdings individually. The Court finds that these allegations do not allege that ORx Holdings entered or performed a contract, committed a tort, or did business in Mississippi. The Court therefore finds that Mississippi's long-arm statute does not confer jurisdiction as to ORx Holdings.

### 4. OptumInsight

OptumInsight is a Delaware corporation with its principal place of business in Minnesota. *Id.* at ¶ 205. It is registered to do business in Mississippi and holds an active Third-Party Administrator license in Mississippi. *Id.* at ¶¶ 206–7. OptumInsight allegedly "provides data, analytics and consulting to companies with[in] the healthcare industry, including the Manufacturer Defendants." *Id.* ¶ 208. The State alleges that OptumInsight "coordinated directly with Manufacturer Defendants in furtherance of the Insulin Pricing Scheme" and "advised the Manufacturers with regard to the profitability of the Insulin Pricing Scheme to the benefit of all Defendants." *Id.* at ¶ 209.

A defendant is not necessarily subject to Mississippi's long-arm statute because it is licensed to do business in Mississippi. *See Thrash Aviation, Inc. v. Kelber Turbine, Inc.*, 72 F. Supp. 2d 709, 715 (S.D. Miss. 1999). Rather, to meet the "doing business" prong of the long-arm statute, a defendant's presence in Mississippi must be "of such a continuing and substantial nature" and "for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object." *Id.* The State fails to provide facts that any of the alleged "coordination" or "advising" took place in Mississippi, that OptumInsight conducted business in Mississippi that was "continuing and

substantial," or that it tried to "realize a pecuniary benefit" or "otherwise accomplish an object" in Mississippi. *See id.* The Court therefore finds that the State failed to allege facts that OptumInsight did business in Mississippi.

Fraud is a tort in Mississippi, but the State must allege facts with particularity for the Court to find personal jurisdiction under the long-arm statute. Pursuant to Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Generally, this requires the plaintiff to plead "the who, what, when, where, and how" of the fraud. *Benchmark Elecs. V. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

The State fails to allege, however, how, when, or where of any alleged fraud occurred by OptumInsight specifically. As a result, the Court finds that the State did not allege facts sufficient to confer jurisdiction under the long-arm statute for OptumInsight.

### B. Due Process under the United States Constitution

Even if the long-arm statute provided the Court with personal jurisdiction over the Moving Defendants, exercising jurisdiction would not comport with federal due process. "The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink*, 190 F.3d at 336 (quoting *Latshaw v. Johnston*, 167 F.3d

208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945))).

Personal jurisdiction is either general or specific. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "If a defendant's contacts with the forum state are continuous and systematic, a court may exercise general jurisdiction over any action brought against that defendant, regardless of whether the action is related to the forum contacts." *Id.* (internal quotations and citation omitted). "If a defendant has relatively few contacts, a court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Id.* (internal quotations and citation omitted). Only specific jurisdiction is at issue.

Courts in the Fifth Circuit may exercise specific personal jurisdiction when three conditions are met. First, the nonresident defendant must "purposefully avail itself of the privilege of conducting activities in the forum state." *Johnson v. TheHuffingonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021) (cleaned up) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). Second, the plaintiff's claim "must arise out of or relate to" those purposeful contacts. *Id.* Third, the Court's exercise of jurisdiction must be "fair and reasonable" to the nonresident defendant. *Id.* citing *Seiferth*, 472 F.3d at 271.

The Moving Defendants solely assert that they did not purposefully avail themselves in Mississippi. "The analysis here begins and ends with the minimum-contacts question." *Rush v. STIHL, Inc.*, 2020 WL 1276103, at *2 (S.D. Miss. Mar. 17, 2020).

For the Court to exercise specific jurisdiction, the defendant must purposefully avail itself in the forum state by having minimum contacts; these contacts must not be "random, isolated, or fortuitous." *Ford Motor Co.*, 141 S. Ct. at 1025 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Rather, the contacts must stem from the defendant's choice to "reach[] out beyond" its home, such as "exploiting a market" in the forum state or entering a contractual relationship there. *Id.* (cleaned up) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

To determine whether a defendant has "minimum contacts" with a forum state, the Court must identify "some act whereby it purposely availed itself of the privilege of conducting activities there, thus invoking the benefits and protections of its laws." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469–70 (5th Cir. 2006) (cleaned up). The defendant's actions must show that it "reasonably anticipates being haled into court" in Mississippi. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The State asserts that the Court should apply the "effects test" established in *Calder v. Jones*, 465 U.S. 783, 788–89 (1984). For the reasons stated below, however, the Court finds that the State inadequately alleges the "effects" caused by each individual Moving Defendant. And "[e]ach defendant's contacts with the forum State must be assessed individually." *Id.* at 790.

The Court addresses each Moving Defendants' minimum contacts in turn.

    1. UnitedHealth

Considering all allegations in the State's Amended Complaint, and for the reasons stated in III.A.1, the Court finds that UnitedHealth has not purposefully availed itself in Mississippi by having minimum contacts. The State does not identify "some act whereby [UnitedHealth] purposely availed itself of the privilege of conducting activities [in Mississippi], thus invoking the benefits and protections of its laws" for specific jurisdiction in this case. *See Luv N' Care, Ltd.*, 438 F.3d at 469–70.

The State alleges that UnitedHealth once sued in Mississippi, alleging that it "contracted with Mississippi residents and directly engaged in PBM business and programs in Mississippi related to 'advancing the health and well-being of individuals and communities,' and that UnitedHealth['s] business interests in Mississippi included providing PBM services to the State." [71] at ¶ 199. The State contends that this lawsuit is evidence that UnitedHealth availed itself of Mississippi laws. The Court disagrees. Taking the State's allegations of the prior complaint's contents as true, the State does not allege facts to support that these contacts were not "random, isolated, or fortuitous." *See Ford Motor Co.*, 141 S. Ct. at 1025. Just because a defendant sues in a Mississippi court does not mean that the defendant itself "reasonably anticipates being haled into court" in Mississippi. *See World Wide Volkswagen Corp*, 444 U.S. at 297.

The Court finds that it does not have personal jurisdiction over UnitedHealth because the long-arm statute does not apply, and the State's allegations do not show that UnitedHealth has sufficient minimum contacts with Mississippi.

12

2.   Optum, Inc.

Considering all allegations in the State's Third Amended Complaint, and for the reasons stated in III.A.2, the Court finds that Optum, Inc. has not purposefully availed itself in Mississippi through minimum contacts. There are no allegations in the State's Amended Complaint that support Optum, Inc. had any contact with Mississippi or had any participation in the alleged Insulin Pricing Scheme. *See* [71] at ¶¶ 200–204. The Court finds that it does not have personal jurisdiction over Optum, Inc. because the long-arm statute does not apply, and the State's allegations do not show that Optum, Inc. has minimum contacts with Mississippi.

3.   ORx Holdings

Considering all allegations in the State's Third Amended Complaint, and for the reasons stated in III.A.3, the Court finds that ORx Holdings has not purposefully availed itself in Mississippi through minimum contacts. The State does not allege that ORx Holdings had any contacts in Mississippi or engaged in the alleged Insulin Pricing Scheme in any way. *See id.* at ¶¶ 210–211.

4.   OptumInsight

Considering all allegations in the State's Third Amended Complaint, and for the reasons stated in III.A.4, the Court finds that OptumInsight has not purposefully availed itself in Mississippi through minimum contacts. Aside from holding a Mississippi Third-Party Administrator license and being registered to do business in Mississippi, the State does not allege facts that ORx Holdings had any actual contact with Mississippi that was not "random, isolated, or fortuitous." *See Ford Motor Co.,*

13

141 S. Ct. at 1025. The Court finds that it does not have personal jurisdiction over OptumInsight because the long-arm statute does not apply, and the State's allegations do not show that OptumInsight has minimum contacts in Mississippi.

    C.  Veil Piercing

    The State argues that even if none of the Moving Defendants individually are subject to personal jurisdiction, the Court should pierce the corporate veil and attribute OptumRx, Inc.'s contacts to each Moving Defendant, and each Moving Defendant's alleged contacts to each other, as alter egos. [102] at 13.

    "It is a general principle of corporate law deeply ingrained in our economic legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotations a citation omitted). "Mississippi case law generally favors maintaining corporate entities and avoids attempts to pierce the corporate veil." *Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (Miss. 2012) (citation omitted).

    "[A] plaintiff's complaint alleging a piercing of the corporate veil will survive a Rule 12(b)(2) motion to dismiss only when the complaint sets forth factual allegations indicating: (1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." *Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111, 1116–16 (Miss. 2012); *see also Rush v. STIHL, Inc.*, 3:17-

cv-915-DPJ-FKB, 2020 WL 1276103, at *7 (quoting *Waltman*, 94 So. at 1115). "In order to make a prima facie case of jurisdiction, the plaintiff must make sufficiently particularized allegations demonstrating the applicability of the piercing doctrine to the facts of the case." *Id.*

The Court finds that the State failed to make such particularized allegations. The State does not particularly allege any frustration of expectation of performance, a flagrant disregard for corporate formalities by any of the Moving Defendants, or a demonstration of fraud by any Moving Defendant.

At most, the State alleges that the Moving Defendants and OptumRx, Inc. share corporate officers, company policies, and stock ownership. [71] at ¶¶ 216–17. "The conclusory allegation that the parent companies exercise substantial control over [subsidiary companies] . . . does not make out a prima facie showing of an alter-ego relationship." *Alexander v. Global Tel Link Corp.*, 2018 WL 8997440, at *4 (S.D. Miss. May 14, 2018). "The Fifth Circuit has noted that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between . . . corporations." *Samples v. Vanguard Healthcare, LLC*, 2008 WL 4371371, at *3 (N.D. Miss. Sept. 18, 2008) (citing *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978). "Moreover, generally our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Id.* (cleaned up) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). The State makes no such allegations.

15

The next factors are also relevant in determining whether a corporation constitutes an instrumentality or alter ego:

> (1) The parent corporation owns all or a majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*North American Plastics, Inc. v. Inland Shoe Mfg. Co., Inc.*, 592 F. Supp. 875, 879 (N.D. Miss. 1984) (citation omitted). Again, the State fails to allege facts supporting that each Moving Defendant is an alter ego of each other or OptumRx, Inc. And the State fails to meet its added burden under Mississippi law of providing particularized allegations detailing frustration of expectation of performance, flagrant disregard for corporate formalities by any of the Moving Defendants, or demonstration of fraud by the Moving Defendants.

As a result, the Court finds it is inappropriate to pierce the corporate veil. The Court finds it lacks personal jurisdiction over all Moving Defendants.

IV.     Conclusion

This Court has considered all of parties' arguments. Those the Court does not address would not have changed the outcome. The Court GRANTS Moving Defendants' Motion to Dismiss [87].

SO ORDERED AND ADJUDGED this the 15th day of August, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE