**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| City of Philadelphia,<br><br>                    Plaintiff,<br><br>v.<br><br>CVS Health Corporation *et al*.,<br><br>                    Defendants. | Case No.: 2:25-cv-6185-GJP<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS' JOINT BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD .......................................................................................................... 4

I.      THE COURT SHOULD DISMISS THE CITY'S TIME-BARRED CLAIMS. .................. 4

      A.    The RICO Claim Should Be Dismissed Because The City Knew Or Should Have Known Of Its Injuries More Than Four Years Before It Filed Suit. .......................... 5

      B.    The City's State Law Claims Are Also Untimely And Should Be Dismissed. ......... 7

      C.    The City's Asserted Tolling Doctrines Do Not Apply. ........................................... 8

           1.    The Doctrine Of *Nullum Tempus* Does Not Apply. ............................ 8

           2.    The Discovery Rule, Fraudulent Concealment, And Equitable Estoppel Do Not Apply. ............................................................................................ 10

           3.    The Continuing Violation Doctrine Does Not Apply. ..................................... 11

II.     THE COURT SHOULD DISMISS THE CITY'S RICO CLAIM. .................................... 12

      A.    The City Cannot Seek Equitable Relief Under The RICO Statute. ........................ 12

      B.    The City Lacks Standing To Sue Under RICO. ..................................................... 12

           1.    The City Has Not Plausibly Alleged Proximate Cause. .................................. 13

           2.    The City Has Not Plausibly Alleged Injury To Its Property. ........................... 14

III.    THE CITY'S PUBLIC-NUISANCE CLAIM FAILS. ...................................................... 14

      A.    The City Cannot Premise Its Public-Nuisance Claim On Distribution Of A Lawful Product. ................................................................................................................ 15

      B.    The City Fails To Allege That Defendants Controlled Any Alleged Nuisance. ..... 17

      C.    The City Fails To Allege Special Injury. ............................................................... 19

IV.    THE CITY'S NEGLIGENCE CLAIM FAILS. ................................................................ 20

      A.    The PBM Defendants Do Not Owe A Duty Of Care To The City. ........................ 20

B.    The PBM Defendants Did Not Proximately Cause The City's Alleged Harms. ..... 23

C.    The City Has Suffered No Cognizable Damage. ...................................................... 24

D.    The City's Negligence Claim Against The Mail-Order Pharmacies Also Fails. ...... 24

V.    THE CITY'S UTPCPL CLAIM SHOULD BE DISMISSED. ............................................. 25

A.    The City Is Not A "Person" That Can Bring This Private Cause Of Action. .......... 25

B.    The City Is Not A Consumer For Purposes Of The UTPCPL. ............................... 26

C.    The City's Claims Under Sections 201-2(4)(ii) And (v) Of The UTPCPL Do Not
Apply To The City's Allegations. ............................................................................. 27

D.    The City Has Failed To Allege Facts That State A Claim Under The UTPCPL. ..... 28

1.    The PBM Defendants' Alleged Representations Are Not Deceptive. ............ 28

2.    The City Fails To Allege Justifiable Reliance. ................................................. 29

VI.    THE CITY'S PCPO CLAIM SHOULD BE DISMISSED. ................................................. 31

A.    The City's Enactment Of The PCPO. ..................................................................... 31

B.    The PCPO Is Preempted By The UTPCPL. ........................................................... 32

1.    The UTPCPL's Enforcement Scheme Preempts The Field. ........................... 33

2.    The PCPO Irreconcilably Conflicts And Interferes With The UTPCPL's
Enforcement Scheme. ...................................................................................... 35

VII.   THE CITY'S CONSPIRACY AND CONCERTED ACTION CLAIMS FAIL. ................ 37

VIII.  FEDERAL LAW PREEMPTS THE CITY'S STATE-LAW CLAIMS WITH RESPECT
TO ERISA AND MEDICARE PART D HEALTH PLANS. ............................................ 37

CONCLUSION ..................................................................................................................... 40

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Alaska v. Express Scripts, Inc.*,
2024 WL 2321210 (D. Alaska May 22, 2024) ................................................................39, 40

*Alaska v. Express Scripts, Inc.*,
774 F. Supp. 3d 1150 (D. Alaska 2025) ...................................................................................8

*Allegheny Gen. Hosp.* v. *Philip Morris, Inc.*,
228 F.3d 429 (3d Cir. 2000)....................................................................................................19

*Althaus ex rel. Althaus v. Cohen*,
756 A.2d 1166 (Pa. 2000).......................................................................................................21

*Álvarez-Maurás v. Banco Popular of Puerto Rico*,
919 F.3d 617 (1st Cir. 2019)....................................................................................................6

*Am. Soc'y Composers v. Pataki*,
930 F. Supp. 873 (S.D.N.Y. 1996) ..........................................................................................8

*In re Asbestos Sch. Litig.*,
768 F. Supp. 146 (E.D. Pa. 1991) ...................................................................................4, 9, 10

*Atl. Richfield Co. v. County of Montgomery*,
294 A.3d 1274 (Pa. Commw. 2023) ......................................................................................16

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
804 F.3d 633 (3d Cir. 2015)....................................................................................................13

*Baker v. Family Credit Counseling Corp.*,
440 F. Supp. 2d 392 (E.D. Pa. 2006) .....................................................................................27

*Balderston v. Medtronic Somafor Danek, Inc.*,
285 F.3d 238 (3d Cir. 2002)....................................................................................................26

*Bayless v. Philadelphia Nat'l League Club*,
579 F.2d 37 (3d Cir. 1978)........................................................................................................7

*County of Beaver ex rel. Beaver Cnty. Bd. of Comm'rs v. Sainovich*,
96 A.3d 421 (Pa. Commw. Ct. 2014) .......................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................4

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
    818 N.E.2d 1140 (N.Y. 2004) ................................................................30

*Blue Mountain Pres. Ass'n v. Township of Eldred*,
    867 A.2d 692 (Pa. Commw. Ct. 2005) ...................................................15

*Bohus v. Beloff*,
    950 F.2d 919 (3d Cir. 1991)...................................................................10

*Borough of W. Fairview v. Hess*,
    568 A.2d 709 (Pa. 1989) ........................................................................10

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
    273 F.3d 536 (3d Cir. 2001)...................................................................15

*Canyon County v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) .................................................................14

*Caruso-Long v. Reccek*,
    243 A.3d 234 (Pa. Super. Ct. 2020).........................................................4

*Castrol Inc. v. Pennzoil Co.*,
    987 F.2d 939 (3d Cir. 1993)...................................................................28

*Chhaya Mgmt., LLC v. Cigar Wala, LLC*,
    241 A.3d 422 (Pa. Super. Ct. 2020).......................................................37

*Chirikos v. Yellow Cab Co.*,
    410 N.E.2d 61 (Ill. App. Ct. 1980) ........................................................30

*City & County of San Francisco v. Purdue Pharma L.P.*,
    491 F. Supp. 3d 610 (N.D. Cal. 2020) ...................................................13

*City of Boston v. Express Scripts, Inc.*,
    765 F. Supp. 3d 31 (D. Mass. 2025) ...................................5, 6, 8, 10, 11, 12

*City of Philadelphia v. Beretta U.S.A. Corp.*,
    126 F. Supp. 2d 882 (E.D. Pa. 2000)..................15, 19, 21, 22, 23, 24, 25

*City of Philadelphia v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002)..............................15, 17, 18, 23, 24, 25

*City of Philadelphia v. Holmes Elec. Protective Co. of Phila.*,
    6 A.2d 884 (Pa. 1939) ..............................................................................9

*City of Philadelphia v. Lead Indus. Ass'n*,
    1991 WL 170810 (E.D. Pa. Aug. 26, 1991) ...........................................9

*City of Philadelphia v. Lead Indus. Ass'n, Inc.*,
  994 F.2d 112 (3d Cir. 1993) ...................................................................................9

*City of Pittsburgh* v. *Equitable Gas Co.*,
  512 A.2d 83 (Pa. Commw. Ct. 1986) .....................................................................24

*City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*,
  161 A.3d 160 (Pa. 2017) ......................................................................................34

*Commonwealth v. Barnes & Tucker Co.*,
  319 A.2d 871 (Pa. 1974) ......................................................................................15

*Commonwealth v. Golden Gate National Senior Care LLC*,
  194 A.3d 1010 (Pa. 2018) ....................................................................................26

*Commonwealth v. Parisi*,
  873 A.2d 3 (Pa. Commw. Ct. 2005) ......................................................................27

*Coyle v. JSL Mech., Inc.*,
  2023 WL 5985273 (E.D. Pa. Sept. 14, 2023) ........................................................28

*Dep't of Licenses & Inspections, Bd. of License & Inspection Rev. v. Weber*,
  147 A.2d 326 (Pa. 1959) ......................................................................................35

*Diess v. Pennsylvania Dep't of Transp.*,
  935 A.2d 895 (Pa. Commw. Ct. 2007) ..................................................................19

*Do Sung Uhm v. Humana Inc.*,
  540 F.3d 980 (9th Cir. 2008) ...........................................................................39, 40

*Duquesne Light Co. v. Pennsylvania Am. Water Co.*,
  850 A.2d 701 (Pa. Super. Ct. 2004) .....................................................................24

*E. Me. Med. Ctr. v. Walgreen Co.*,
  331 A.3d 380 (Me. 2025) .................................................................................19, 21

*In re EpiPen ERISA Litig.*,
  2020 WL 4501925 (D. Minn. Aug. 5, 2020) .........................................................37

*In re EpiPen*,
  44 F.4th 959 (10th Cir. 2023) .........................................................................22, 38

*Feld v. Merriam*,
  485 A.2d 742 (Pa. 1984) ......................................................................................20

*Fine v. Checcio*,
  870 A.2d 850 (Pa. 2005) .................................................................................10, 11

*FMC Corp. v. Holliday*,
    498 U.S. 52 (1990) ................................................................................38

*Forbes v. Eagleson*,
    228 F.3d 471 (3d Cir. 2000) ....................................................................5

*Forish v. Paul*,
    2 Pa. D. & C.4th 413 (Com. Pl. 1989) ...................................................25

*Fross v. County of Allegheny*,
    20 A.3d 1193 (Pa. 2011) ........................................................................33

*Fusco v. Uber Techs., Inc.*,
    2018 WL 3618232 (E.D. Pa. July 27, 2018) .........................................29

*Gabriel v. Giant Eagle, Inc.*,
    124 F. Supp. 3d 550 (W.D. Pa. 2015) ....................................................25

*Gabriel v. O'Hara*,
    534 A.2d 488 (Pa. Super. Ct. 1987) .........................................................4

*Gagliardi v. Kratzenberg*,
    404 F. Supp.2d 858 (W.D. Pa. 2005) .......................................................5

*Germinaro v. Fid. Nat'l Title Ins. Co.*,
    107 F. Supp. 3d 439 (W.D. Pa. 2015) ...............................................4, 6, 8

*Gleason v. Borough of Moosic*,
    15 A.3d 479 (Pa. 2011) ..........................................................................10

*Gobeille v. Liberty Mut. Ins. Co.*,
    577 U.S. 312 (2016) ...............................................................................38

*Gurfein v. Sovereign Grp.*,
    826 F. Supp. 890 (E.D. Pa. 1993) ......................................................8, 11

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ...................................................................................13

*Henderson v. Matthews*,
    2020 WL 6485094 (E.D. Pa. Nov. 4, 2020) .............................................7

*Hengle v. Treppa*,
    19 F.4th 324 (4th Cir. 2021) ..................................................................12

*Heraeus Med. GmbH v. Esschem, Inc.*,
    927 F.3d 727 (3d Cir. 2019) ..............................................................11, 12

*Hoffman Min. Co., Inc. v. Zoning Hearing Bd. of Adams Twp.*,
   32 A.3d 587 (Pa. 2011) ..............................................................................33

*Hoffman v. Nordic Naturals, Inc.*,
   837 F.3d 272 (3d Cir. 2016) ..........................................................................4

*Holmes v. SIPC*,
   503 U.S. 258 (1992) ....................................................................................13

*Holt's Cigar Co., Inc. v. City of Philadelphia*,
   10 A.3d 902 (Pa. 2011) ..............................................................................33

*Hunt v. U.S. Tobacco Co.*,
   538 F.3d 217 (3d Cir. 2008).....................................................................29, 36

*Ingersoll-Rand Co. v. McLendon*,
   498 U.S. 133 (1990) ....................................................................................39

*In re Insulin Pricing Litig.*,
   2020 WL 831552 (D.N.J. Feb. 20, 2020) ....................................................12

*K.R. by N.R. v. Visionquest Nat'l, Ltd.*,
   2018 WL 1960857 (E.D. Pa. Apr. 25, 2018) ..............................................20

*Katz v. Aetna Cas. & Sur. Co.*,
   972 F.2d 53 (3d Cir. 1992).......................................................................26, 29

*Kopstein v. Independence Blue Cross*,
   339 F. App'x 261 (3rd Cir. 2009) ..............................................................39

*Kovalev v. Lidl US, LLC*,
   647 F. Supp. 3d 319 (E.D. Pa. 2022) ..........................................................30

*Commonwealth ex rel. Krasner v. Attorney General*,
   309 A.3d 265 (Pa. Cmwlth. Ct. 2024) .....................................................31, 35

*A.D.A. ex rel. L.R.A. v. Johnson & Johnson*,
   912 S.E.2d 37 (W. Va. Ct. App. 2024) ........................................................22

*Landau v. Viridian Energy PA LLC*,
   223 F. Supp. 3d 401 (E.D. Pa. 2016) ..........................................................28

*Magnum v. Archdiocese of Philadelphia*,
   2006 WL 3359642 (E.D. Pa. Nov. 17, 2006) ..............................................12

*Mathews v. Kidder, Peabody & Co.*,
   260 F.3d 239 (3d Cir. 2001)..........................................................................4

*In re McNeil Consumer Healthcare*,
2011 WL 2802854 (E.D. Pa. July 15, 2011)..............................................................27

*Medical Marijuana, Inc. v. Horn*,
604 U.S. 593 (2025)................................................................................................13

*Meyer v. Cmty. Coll. of Beaver Cnty.*,
93 A.3d 806 (Pa. 2014)...........................................................................................26

*Montanya v. McGonegal*,
757 A.2d 947 (Pa. Super. Ct. 2000).........................................................................4

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997)....................................................................................19

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*,
130 F.4th 91 (4th Cir. 2025) ..................................................................................13

*Nw. Inst. of Psychiatry, Inc. v. Travelers Ins. Co.*,
1992 WL 236257 (E.D. Pa. Sep. 3, 1992) ........................................................38, 39

*O'Boyle v. Braverman*,
337 F. App'x 162 (3d Cir. 2009) ...............................................................................4

*In re Ocugen, Inc. Sec. Litig.*,
659 F. Supp. 3d 574 (E.D. Pa. 2023) .........................................................................6

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
193 F.3d 781 (3d Cir. 1999)....................................................................................37

*Ostuni v. Wa Wa's Mart*,
532 F. App'x 110 (3d Cir. 2013) ...............................................................................8

*Pennsylvania Tpk. Comm'n v. Atl. Richfield Co.*,
394 A.2d 491 (Pa. 1978).............................................................................................9

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization
Transactions, Inc.*,
730 F.3d 263 (3d Cir. 2013)......................................................................................5

*Pharm. Care Mgmt. Ass'n v. Mulready*,
78 F.4th 1183 (10th Cir. 2023) .....................................................................37, 38, 39

*Philadelphia Elec. Co. v. Hercules, Inc.*,
762 F.2d 303 (3d Cir. 1985)....................................................................................15

*Phillips v. Cricket Lighters*,
841 A.2d 1000 (Pa. 2003).......................................................................................22

*Prime Energy & Chem. LLC v. Tucker Arensberg, P.C.*,
    2024 WL 4441492 (3d Cir. Oct. 8, 2024) .............................................................10

*Randall v. City of Philadelphia L. Dep't*,
    919 F.3d 196 (3d Cir. 2019) ......................................................................11, 12

*Religious Tech. Ctr. v. Wollersheim*,
    796 F.2d 1076 (9th Cir. 1986) ................................................................12

*Retail Indus. Leaders Ass'n v. Fielder*,
    475 F.3d 180 (4th Cir. 2007) ...................................................................38

*Riad v. Wells Fargo Bank*,
    2020 WL 4530698 (E.D. Pa. Aug. 6, 2020) ..........................................11

*Rice v. Diocese of Altoona-Johnstown*,
    255 A.3d 237 (Pa. 2021) ........................................................................11

*Robinson v. Johnson*,
    313 F.3d 128 (3d Cir. 2002) .............................................................10, 11

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
    592 U.S. 80 (2020) .......................................................................17, 37, 38

*San Miguel Hosp. Corp. v. Publix Supermarket, Inc.*,
    2025 WL 872972 (D.N.M. Mar. 19, 2025) ...........................................13

*Seldon v. Home Loan Servs., Inc.*,
    647 F. Supp. 2d 451 (E.D. Pa. 2009) .....................................................30

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983) .................................................................................38

*Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999) ...................................................................13

*Town of Brookline v. Operation Rescue*,
    762 F. Supp. 1521 (D. Mass. 1991) .......................................................14

*Town of West Hartford v. Operation Rescue*,
    915 F.2d 92 (2d Cir. 1990) .....................................................................14

*Twp. of Indiana* v. *Acquisitions & Mergers, Inc.*,
    770 A.2d 364 (Pa. Commw. Ct. 2001) .....................................................8

*W. Pa. Restaurant Assoc. v. City of Pittsburgh*,
    77 A.2d 616 (Pa. 1951) ..........................................................................36

*Walters v. UPMC Presbyterian Shadyside*,
    187 A.3d 214 (Pa. 2018) ........................................................................20, 21, 22

*Weinberg v. Sun Co., Inc.*,
    777 A.2d 442 (Pa. 2001) .................................................................................30

*Welborn v. Bank of N.Y. Mellon Corp.*,
    557 F. App'x 383 (5th Cir. 2014) ....................................................................14

*West Virginia v. Moore*,
    895 F. Supp. 864 (S.D.W. Va. 1995) ..............................................................14

*Witthoeft v. Kiskaddon*,
    733 A.2d 623 (Pa. 1999) ...........................................................................22, 25

*Woodward v. Nudy*,
    2025 WL 662802 (E.D. Pa. Feb. 28, 2025) ..................................................4, 37

## Statutes, Rules and Ordinances

18 U.S.C. § 1964 ..............................................................................12, 13, 14

29 U.S.C. § 1144 .......................................................................................37

42 U.S.C. § 1395w-26 ................................................................................39

42 U.S.C. § 1395w-112 ..............................................................................39

42 C.F.R. § 423.100 ...................................................................................39

42 C.F.R. § 423.120 ..............................................................................39, 40

42 C.F.R. § 423.153.14 ..............................................................................39

42 C.F.R. § 423.440 ...................................................................................39

73 P.S. § 201-1 ...........................................................................................4

73 P.S. § 201-2 .....................................................................................27, 28

73 P.S. § 201-3 .................................................................................30, 34, 36

73 P.S. § 201-4 .................................................................................25, 34, 35

73 P.S. § 201-4.1 ...................................................................................34, 36

73 P.S. § 201-8 .....................................................................................34, 36

73 P.S. § 201-9.2 ................................................................................10, 25, 26, 27, 34, 36

53 Pa. C.S.A. § 2961 ...........................................................................................................33

53 Pa. C.S.A. § 2962 ...........................................................................................................33

Phila. Code § 9-6301 ...............................................................................................4, 31, 32

Phila. Code § 9-6302 ....................................................................................................32, 36

Phila. Code § 9-6303 ...........................................................................................................32

Phila. Code § 9-6304 ..............................................................................................32, 35, 36

Phila. Code § 9-6305 ...........................................................................................................36

Phila. Code § 9-6306 .............................................................................................................4

Phila. Code § 9-6307 ....................................................................................................31, 36

Federal Rule of Civil Procedure 9(b) ..................................................................................28

Federal Rule of Civil Procedure 12(b)(6) ............................................................................4

## Other Authorities

*Hearing Before the Committee on Commerce & Economic Development, Council
    of the City of Philadelphia on Bill No. 240118, etc.* (May 13, 2024) (statement
    of Renee Garcia), at 4:6–25, *available at*
    https://www.transcriptroom.org/tr/CAF/PDFFile/6130426?docType=30 .............................31

## **INTRODUCTION**

The City of Philadelphia seeks to hold Defendants liable for a host of societal problems allegedly arising from the misuse by third parties of a lawful product—prescription opioids. The City already sued manufacturers and distributors of opioids, as well as retail pharmacies, in four separate lawsuits filed years ago. The City now sets its sights on pharmacy benefit managers ("PBMs"), which administer prescription-drug benefits for their clients. The City also asserts claims against various corporate parents and affiliates of the PBMs, including mail-order pharmacies and data-analytics companies. The City asserts sweeping theories of liability for alleged injuries resulting from third-party individuals' misuse of both prescription and illegal opioids, including the increased cost of government services like healthcare and law enforcement.

The complaint asserts seven causes of action against all Defendants: (1) violation of the federal RICO statute, (2) public nuisance, (3) negligence, (4) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), (5) violation of the Philadelphia Consumer Protection Ordinance ("PCPO"), (6) civil conspiracy, and (7) concerted action. Each of these claims is time-barred. The complaint's allegations, the City's prior lawsuits against opioid manufacturers, distributors, and pharmacies going back nearly a decade, and numerous other highly publicized lawsuits against many of these same Defendants all show that the City has long been on notice of its claims but failed to timely file this lawsuit.

The City's claims also fail on the merits. The RICO claim fails because the City cannot seek equitable relief under the statute, and in any event, lacks standing to sue. Its public-nuisance claim fails because binding Third Circuit law does not recognize such claims based on the distribution of a lawful product, and the complaint fails to allege control over the source of the alleged nuisance, which arises from multiple third parties' misconduct. The City similarly fails to state a negligence claim because (i) Pennsylvania law does not impose a duty to police the conduct

1

of the many third parties whose conduct allegedly contributed to the City's opioid-related injuries, (ii) the causal link between Defendants' alleged actions and the alleged harm simply is too attenuated to support liability, and (iii) in all events, the City has not pleaded cognizable damages. The City's UTPCPL claim fails because the City does not have standing to sue under that law and, further, it has failed to allege deceptive conduct or justifiable reliance. The City's claim under its copycat local law, the PCPO, fails for the same reasons as the UTPCPL claim and is also preempted by the UTPCPL. And the City's civil conspiracy and concerted action claims fail because the City has not pleaded any underlying unlawful conduct. Finally, federal law preempts the City's state-law claims as to employee benefit plans under ERISA and Medicare Part D health plans under the Medicare Act. All of these claims should be dismissed with prejudice.[1]

## <u>BACKGROUND</u>

This is the latest of many opioid lawsuits by the City. Between January 2018 and June 2021, the City filed three lawsuits against opioid manufacturers and distributors, alleging that they were responsible for many of the same harms alleged here. *See* Compl., *City of Philadelphia v. Allergan plc*, No. 180102718 (Phila. Ct. Com. Pl. Jan. 17, 2018) (**Exhibit A**); Writ of Summons, *City of Philadelphia v. Par Pharm., Inc.*, No. 190606450 (Phila. Ct. Com. Pl. June 17, 2019) (**Exhibit B**); Compl., *City of Philadelphia v. Allergan Ltd.*, No. 210601660 (Phila Ct. Com. Pl. June 23, 2021) (**Exhibit C**). In September 2021, the City also sued retail pharmacies, including Defendant CVS Pharmacy, Inc., alleging harms supposedly stemming from the distribution and dispensing of prescription opioids. *See* Compl., *City of Philadelphia v. CVS Ind., LLC, et al.,* No.

---

[1] CVS Health Corporation, Caremark Rx, L.L.C., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, and OptumHealth Holdings, LLC join this motion without waiving their defense of a lack of personal jurisdiction.

210902183 (Phila. Ct. Com. Pl. Sep. 28, 2021) (**Exhibit D**). The City waited another four years—and over seven years after filing its initial 2018 lawsuit—to file this suit.

Defendants CaremarkPCS Health, L.L.C., Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., and OptumRx, Inc. ("PBM Defendants") are PBMs. PBMs "do not manufacture, market, or prescribe opioid medications." Order, *In re Nat'l Prescription Opiate Litig.*, No. 17-md-2804, ECF 1848 at 2 (N.D. Ohio July 15, 2019) (**Exhibit E**); *see* Compl. ¶¶ 162–66. Instead, PBMs are hired by plan sponsors, including "health insurers, self-insured employers, and state and federal government agencies," to process claims for insurance coverage of prescription medicines. Compl. ¶¶ 3, 24–32, 38–40, 46–50, 68–78, 124–32. The City alleges that the PBM Defendants "exert significant influence over prescriptions" by offering "formularies," which are lists of medications that health plans cover with insurance, and utilization management ("UM") services, which can limit coverage of medications. *Id.* ¶¶ 163, 203.

The City also asserts claims against Caremark, L.L.C, CVS Pharmacy, Inc., AdvancedRx.com, L.L.C., CaremarkPCS Pennsylvania Mail Pharmacy, LLC, OptumRx, Inc., ESI Mail Order Processing, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and Express Scripts Specialty Distribution Services, Inc., as providers of mail-order pharmacy services. *Id.* ¶¶ 24–45, 51–54, 79–92, 124–26. The City asserts that the mail-order pharmacies failed to comply with the federal Controlled Substances Act ("CSA") and related Pennsylvania statutes when dispensing prescribed opioids to patients. *Id.* ¶¶ 470–86. The complaint names Defendants OptumInsight, Inc., OptumInsight Life Sciences, Inc., and OptumHealth Care Solutions, LLC, who provide data-analytics services, *id.* ¶¶ 116–23, 138–40, 395–413, and Defendants Optum Perks, LLC and Optum Discount Card Services, LLC, who administer prescription discount cards, *id.* ¶¶ 133–37, 425–32. The remaining Defendants are parent entities

and holding companies. *Id.* ¶¶ 65–67, 105–15, 141–44. The City seeks actual, punitive, and treble damages, civil penalties, and equitable and injunctive relief. *Id*. ¶¶ 701–861, XIV.

## LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a motion to dismiss, courts may consider the complaint's allegations, exhibits attached to the complaint, and "matters of public record," *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 280 & n.52 (3d Cir. 2016), including public court filings "insofar as they inform the Court's inquiry as to what was known to Plaintiffs" and "when such information was known." *Germinaro v. Fid. Nat'l Title Ins. Co.*, 107 F. Supp. 3d 439, 450 (W.D. Pa. 2015); *see O'Boyle v. Braverman*, 337 F. App'x 162, 164–65 (3d Cir. 2009) (district court properly considered state court records for purposes of adjudicating motion to dismiss on statute of limitations grounds).

## I.    THE COURT SHOULD DISMISS THE CITY'S TIME-BARRED CLAIMS.

The City's RICO claim has a four-year statute of limitations. *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 245 (3d Cir. 2001). The public-nuisance and negligence claims are governed by a two-year statute of limitations. *See Caruso-Long v. Reccek*, 243 A.3d 234, 239 (Pa. Super. Ct. 2020) (nuisance); *Montanya v. McGonegal*, 757 A.2d 947, 950 (Pa. Super. Ct. 2000) (negligence). The civil conspiracy and concerted action claims likewise have a two-year limitations period because they are founded on "negligent, intentional, or otherwise tortious conduct." *See In re Asbestos Sch. Litig.*, 768 F. Supp. 146, 150 (E.D. Pa. 1991) (civil conspiracy); *Woodward v. Nudy*, 2025 WL 662802, at *5 (E.D. Pa. Feb. 28, 2025) (concerted action). The alleged violations of the UTPCPL, 73 P.S. §§ 201-1–201-9.3, and PCPO, Phila. Code § 9-6301(I)–(XXII), are governed by six-year statutes of limitations. *Gabriel v. O'Hara*, 534 A.2d 488, 495 (Pa. Super. Ct. 1987) (UTPCPL); Phila. Code § 9-6306 (PCPO). None of these claims was timely filed.

A.    **The RICO Claim Should Be Dismissed Because The City Knew Or Should Have Known Of Its Injuries More Than Four Years Before It Filed Suit.**

The District of Massachusetts recently dismissed as time-barred a materially similar RICO claim about prescription opioids filed by the City of Boston in January 2024 against many of the same defendants here, including Express Scripts and Optum. *City of Boston v. Express Scripts, Inc.*, 765 F. Supp. 3d 31 (D. Mass. 2025). The RICO claim in this case was filed twenty-one months later—in October 2025—and thus is even more untimely. A civil RICO claim accrues when a plaintiff knew or should have known of his injury. *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000). "[D]iscovery of the injury, not discovery of the other elements of a claim, . . . starts the clock." *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 274 (3d Cir. 2013). "Nothing more is required to trigger the running of the four-year limitations period . . . ." *Gagliardi v. Kratzenberg*, 404 F. Supp.2d 858, 866 (W.D. Pa. 2005).

The complaint's allegations confirm the City knew of its alleged injuries for many years, and far earlier than October 2021. The City alleges that "the PBM Defendants worked closely with opioid manufacturers, distributors, and pharmacies to increase the prescribing, dispensing, and sales of prescription opioids across the nation *for more than two decades*." Compl. ¶ 1 (emphasis added); *see also id.* ¶¶ 231, 242 (alleging that opioids have been causing a public health crisis for "decades"). The City also alleges that it "established a task force" in 2016 to "investigate the opioid epidemic in Philadelphia" and that, in 2017, the task force had concluded that "[o]pioid use and addiction . . . have reached epidemic proportions." *Id.* ¶ 488. The Mayor then issued an "Opioid Emergency Response Executive Order" identifying the "catastrophic effect of the opioid epidemic on public rights." *Id.* ¶ 490. It is therefore clear on the face of the complaint that the City was aware of its injuries since at least 2017, which means its RICO claim is untimely. *See Gagliardi*, 404 F. Supp.2d at 860 (dismissing RICO claim on statute of limitations grounds).

Further, the City's prior opioid lawsuits—all of which are public records subject to judicial notice on a motion to dismiss, *In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 3d 574, 587 & n.13 (E.D. Pa. 2023)—confirm that it has been on notice of its injuries for many years. In 2018, the City alleged that it was "struggling with a public health and safety crisis . . . arising out of the deceptive marketing and sale of prescription opioids" and sought to recover, among other things, "its costs of increased municipal services." **Exhibit A ¶¶** 1, 11. In 2021, the City sought restitution from opioid manufacturers for the "significant increased costs" it allegedly incurred for public services associated with opioid addiction. **Exhibit C ¶¶** 409–10. And the City's 2021 lawsuit against retail pharmacies was based on the alleged "deterioration of public health and safety caused by the opioid epidemic." **Exhibit D ¶** 678.

The City alleges the exact same injuries here. *See* Compl. ¶¶ 703, 817 (alleging "deterioration in public order, public safety, economic productivity, and quality of life" and seeking recovery for "costs [incurred] for providing healthcare and medical care . . . and other treatments for patients suffering from opioid-related addiction or disease"). Those allegations, and the City's allegations in this suit that it has taken action for *years* "to combat the opioid epidemic," "leave no doubt that the City knew or should have known of its injuries" more than four years before it filed suit. *City of Boston*, 765 F. Supp. 3d at 42–44 (cleaned up) (dismissing similar RICO claim), *appeal filed* No. 25-1258 (1st Cir. 2025) (no appeal of RICO dismissal). As the district court in *City of Boston* held in dismissing materially identical claims based on these same facts, knowledge of claims against PBMs in 2019 was "widespread." *Id.* at 42. Indeed, the court noted that, by 2018, "all the 'telltale warning signs' were present that the City suffered injury" as a result of the PBMs' alleged role in the opioid crisis. *Id*. at 43 (quoting *Álvarez-Maurás v. Banco Popular of Puerto Rico*, 919 F.3d 617, 628 (1st Cir. 2019)). The same is true here.

6

**B.**    **The City's State Law Claims Are Also Untimely And Should Be Dismissed.**

For the City's state-law claims, "the limitations period begins to run from the time that the plaintiff knows or reasonably should know the cause of his injury." *Bayless v. Philadelphia Nat'l League Club*, 579 F.2d 37, 39 (3d Cir. 1978); *see Henderson v. Matthews*, 2020 WL 6485094, at *2 (E.D. Pa. Nov. 4, 2020). As shown above, the City has long been on notice of its alleged injuries. And since at least 2018, it has been on notice of Defendants' alleged role in causing them.

In its prior opioid complaints, the City described the role of PBMs *in detail*, alleging that they "have acted as middlemen in these prescription drug benefits transactions . . . since the mid-1990s." **Exhibit A** ¶ 402. In January 2018, Webb County, Texas, filed the first opioid complaint against PBMs, which was promptly transferred to the national prescription opioid multi-district litigation ("MDL")—the same MDL through which the City alleges that it "learn[ed] that it had been injured by the PBM Defendants' actions." Compl. ¶ 673; *see* Compl., *Webb County v. Purdue Pharma, L.P.,* No. 1:18-op-45175 (N.D. Ohio Jan. 25, 2018), ECF 1 (**Exhibit F**). The Webb County complaint publicly alleged that PBMs, including Express Scripts, CVS, and Optum, "control the majority of this country's prescriptions through their formularies" and caused nationwide harm by having "[t]heir fingerprints on nearly every opioid prescription filled." **Exhibit F** ¶¶ 20, 25. Webb County's counsel filed public letters *on the MDL docket in 2018* to shine a spotlight on their new lawsuit "nam[ing] a critical defendant group—pharmacy benefit managers ('PBMs')." *In re Nat'l Prescription Opiate Litig.*, No. 17-md-2804 (N.D. Ohio Jan. 31, 2018), ECF 108 (**Exhibit G**); *id.*, ECF 168 (Mar. 6, 2018) (**Exhibit H**); *id.*, ECF 978-6 (Sept. 14, 2018) (**Exhibit I**).

Webb County's allegations echoed across dozens of other publicly filed lawsuits by local governments from around the country in 2018 and 2019. *See* **Exhibit J** (listing over 60 cases filed against PBMs in the MDL before October 30, 2019). The claims became so prominent that PBMs

were named as defendants in the amended complaint filed publicly in an MDL bellwether case in September 2019. *See* Third Am. Compl., *City of Huntington v. AmerisourceBergen Drug Corp.*, No. 1:17-op-45054 (N.D. Ohio Sept. 10, 2019), ECF 76 (**Exhibit K**). Thus, by 2018 and 2019, knowledge of claims against PBMs was "widespread." *City of Boston*, 765 F. Supp. 3d at 42–44 (dismissing City of Boston's public-nuisance claim as time-barred). If the claims filed in January 2024 in *City of Boston* were untimely, the City's claims filed twenty-one months later in October 2025 are necessarily untimely too. *See Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111 (3d Cir. 2013) (dismissing time-barred claim); *Germinaro*, 107 F. Supp. 3d at 450 (same); *Gurfein v. Sovereign Grp.*, 826 F. Supp. 890, 918–20 (E.D. Pa. 1993) (same).

## C.    The City's Asserted Tolling Doctrines Do Not Apply.

The City invokes several theories to excuse its tardiness. Compl. ¶¶ 670–91. None applies.

### 1.    The Doctrine Of *Nullum Tempus* Does Not Apply.

The doctrine of *nullum tempus* provides that state statutes of limitations do not bar actions brought by the Commonwealth or its agencies. *County of Beaver ex rel. Beaver Cnty. Bd. of Comm'rs v. Sainovich*, 96 A.3d 421, 427 (Pa. Commw. Ct. 2014). The doctrine is inapplicable for three reasons. *First*, it does not apply to the RICO claim because it is a state-law doctrine that cannot excuse the City from compliance with a federal statute of limitations. *See Alaska v. Express Scripts, Inc.*, 774 F. Supp. 3d 1150, 1162–63 (D. Alaska 2025) (*nullum tempus* did not apply to federal RICO claim in similar opioid-related suit); *Am. Soc'y Composers v. Pataki*, 930 F. Supp. 873, 879 (S.D.N.Y. 1996) ("Under the Supremacy Clause, the state has no power to resist Congress's determination of fairness as embodied in the federal statute of limitations . . . .").

*Second*, the doctrine does not apply to the PCPO claim because local governments may invoke *nullum tempus* only when acting on behalf of the Commonwealth, *see Twp. of Indiana v. Acquisitions & Mergers, Inc.*, 770 A.2d 364, 371 (Pa. Commw. Ct. 2001), and the ordinance itself

contains a statute of limitations that applies expressly to the City, *see* Phila. Code § 9-6303-6; *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 119 (3d Cir. 1993).

   *Third*, the doctrine does not apply to the City's claims for public nuisance, negligence, civil conspiracy, concerted action, or violation of the UTPCPL, because the City is not seeking to enforce "strictly public rights." *City of Philadelphia v. Holmes Elec. Protective Co. of Phila.*, 6 A.2d 884, 887 (Pa. 1939). Claims that are "not exclusively within the governmental function" are not subject to *nullum tempus*. *City of Philadelphia v. Lead Indus. Ass'n*, 1991 WL 170810, at *10 (E.D. Pa. Aug. 26, 1991), *opinion modified on other grounds*, 1992 WL 23450 (E.D. Pa. Feb. 3, 1992), *aff'd sub nom. City of Philadelphia*, 994 F.2d at 112; *see also Pennsylvania Tpk. Comm'n v. Atl. Richfield Co.*, 394 A.2d 491 (Pa. 1978). When a municipality sues as any private litigant could, it is not acting in an exclusively governmental way to enforce strictly public rights. *See City of Philadelphia*, 994 F.2d at 120 (doctrine did not apply to claims against lead-pigment manufacturers that could be filed "by any private litigant"); *In re Asbestos Sch. Litig.*, 768 F. Supp. 146, 152 (E.D. Pa. 1991) (same for school districts' actions about asbestos).

   Here, the City seeks to recover damages for alleged harms like "social services costs, treatment costs, emergency costs, equipment costs, costs to clean up neighborhoods, streets, and City properties, and medical and prescription costs," Compl. ¶ 727, and "millions of dollars in connection with the purchase or reimbursement of prescription opioids or the treatment for opioid addiction, OUD, or any other opioid-related adverse health effect involving the opioid epidemic," *id*. ¶ 745. These are not "strictly public rights"; they are common law tort claims "which could be filed against the defendants by any private litigant." *City of Philadelphia*, 994 F.2d at 120. "Although the Plaintiffs may be acting in a governmental role . . . they are not acting in a role that is 'exclusively governmental . . . but rather [are] seeking a judgment against alleged [tortious

actors], just as any private litigant having standing could do.'" *In re Asbestos Sch. Litig.*, 768 F. Supp. at 152 (cleaned up).

Notably, the City is *expressly* suing as a private party under the UTPCPL. *See* Compl. ¶ 746 (citing the UTPCPL's private suit provision, 73 P.S. § 201-9.2(a)); *see also id*. ¶ 743 (alleging that "[t]he City operates as a consumer"). Thus, the City is barred from invoking the doctrine of *nullum tempus* for its UTPCPL claim. *Borough of W. Fairview v. Hess*, 568 A.2d 709, 713 (Pa. 1989). The same is true for the City's public-nuisance claim, which is not based on "strictly public rights" but rather alleged "special harm" to the City for which it seeks "punitive damages" and "abatement damages" for specific losses allegedly incurred. Compl. ¶¶ 727–28.

### 2. The Discovery Rule, Fraudulent Concealment, And Equitable Estoppel Do Not Apply.

The "discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises." *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). "Pennsylvania's formulation of the discovery rule reflects a narrow approach 'to determining accrual for limitations purposes' and places a greater burden upon Pennsylvania plaintiffs vis-à-vis the discovery rule than most other jurisdictions." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011). The same is true of equitable tolling and fraudulent concealment. *See Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991) (fraudulent concealment is "a corollary to the discovery rule"); *Prime Energy & Chem. LLC v. Tucker Arensberg, P.C.*, 2024 WL 4441492, at *2 (3d Cir. Oct. 8, 2024) ("same standard of reasonable diligence applies" to discovery rule and fraudulent concealment); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (reasonable diligence required for equitable tolling).

Because the City clearly knew of its alleged injury by 2018, it cannot invoke any of these tolling doctrines. *See* Section I.A, above; *see also City of Boston*, 765 F. Supp. 3d at 42–44. At

minimum, by October 2019 the City had "inquiry notice," *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021), and "should have known on the exercise of reasonable diligence of [its] injury and its cause," *Fine*, 870 A.2d at 858; *see* Section I.B, above. Indeed, while the City alleges that it "did not learn" of its potential claims "until only recently, when documents revealing those facts were produced in discovery by various entities in [the MDL]," Compl. ¶ 673, the MDL had *spotlighted* materially similar claims against PBMs throughout 2018 and 2019. *See* **Exhibits G–K**; *City of Boston*, 765 F. Supp. 3d at 42 ("Significantly, municipalities filed cases against these Defendants and other PBMs in 2018 and 2019 in the highly publicized MDL"). That is sufficient to defeat the City's invocation of the discovery rule, equitable tolling, and fraudulent concealment. *See Riad v. Wells Fargo Bank*, 2020 WL 4530698, at \*7 (E.D. Pa. Aug. 6, 2020), *aff'd* 2023 WL 8676234 (3d Cir. Dec. 15, 2023) ("statute of limitations begins to run when the injured party knows *or reasonably should know* of his injury and its cause" (emphasis added)); *Robinson*, 313 F.3d at 135 (rejecting equitable tolling doctrine for time-barred claim where there were no allegations of diligence); *Gurfein*, 826 F. Supp. at 920 (dismissing time-barred claims where plaintiffs failed to allege facts to invoke fraudulent concealment and discovery rule).

### 3.    The Continuing Violation Doctrine Does Not Apply.

"The continuing violation doctrine applies only to a narrow class of continuing violations for which courts have concluded that a claim accrues over time as a result of a 'continuing pattern, practice, [or] policy' that is unlawful in nature." *Heraeus Med. GmbH v. Esschem, Inc.*, 927 F.3d 727, 740 (3d Cir. 2019) (cleaned up). The doctrine focuses on continuing acts, not effects. *Randall v. City of Philadelphia L. Dep't*, 919 F.3d 196, 199 (3d Cir. 2019). An injury that is "the lingering effect of past unlawful conduct is not a continuing violation." *Heraeus*, 927 F.3d at 741. The City seeks to excuse its untimeliness based on allegations that "[t]he opioid epidemic continues today in Philadelphia and the City continues to suffer harm." Compl. ¶ 687. But those are allegations of

11

continuing *harm*, not misconduct. *See Randall*, 919 F.3d at 199. In fact, the complaint acknowledges that the volume of opioid drugs distributed in Philadelphia returned to pre-2006 levels in 2019. Compl. ¶¶ 296, 496; *see City of Boston*, 765 F. Supp. 3d at 40 (rejecting continuing violation doctrine where "most recent actions alleged are remedial measures Defendants took to address the opioid epidemic, not actionable misconduct"). The continuing violation doctrine does not salvage the City's time-barred claims. *See Heraeus*, 927 F.3d at 741.

## II.    THE COURT SHOULD DISMISS THE CITY'S RICO CLAIM.

The Court should also dismiss the City's untimely RICO claim because (1) the City cannot seek equitable relief under the statute; and (2) the City lacks standing to sue.

### A.    The City Cannot Seek Equitable Relief Under The RICO Statute.

The City seeks "all legal and equitable relief as allowed by law." Compl. ¶ 821. But, as the Fourth and Ninth Circuits have held, 18 U.S.C. § 1964 does not authorize private plaintiffs to pursue equitable relief for RICO violations. *See Hengle v. Treppa*, 19 F.4th 324, 353–56 (4th Cir. 2021); *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1082–83 (9th Cir. 1986). While the Third Circuit has not addressed the issue, courts in this Circuit have concluded the same. *See, e.g.*, *In re Insulin Pricing Litig.,* 2020 WL 831552, at *11 (D.N.J. Feb. 20, 2020) (collecting cases). The City thus cannot seek equitable relief for its RICO claim.

### B.    The City Lacks Standing To Sue Under RICO.

The City brings its RICO claim under 18 U.S.C. § 1964(c), Compl. at 252, which provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore . . . ." 18 U.S.C. § 1964(c). To have standing to sue under this provision, a "plaintiff must first allege (1) that he suffered an injury to his 'business or property' (2) proximately caused by defendant's RICO violation." *Magnum v. Archdiocese of Philadelphia*, 2006 WL 3359642, at *3 (E.D. Pa. Nov. 17, 2006), *aff'd*, 253 F. App'x 224 (3d Cir. 2007).

### 1.    The City Has Not Plausibly Alleged Proximate Cause.

The "by reason of" language in § 1964 "demands 'some direct relation between the injury asserted and the injurious conduct alleged." *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (quoting *Holmes v. SIPC*, 503 U.S. 258, 268 (1992)). "The key word is 'direct'; foreseeability does not cut it." *Id.* (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12 (2010)). "Whenever the plaintiff's theory of causation requires moving 'well beyond the first step,' it 'cannot meet RICO's direct relationship requirement.'" *Id.* (quoting *Hemi*, 559 U.S. at 10).

Here, the City fails to allege anything but "indirect injuries" that "make it difficult to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors." *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 642 (3d Cir. 2015). The City's alleged injuries derive solely from separate alleged injuries to third-party individuals suffering from opioid addiction, Compl. ¶¶ 817–18, and, going well beyond the first step, depend on a lengthy causal chain involving many intervening actors, including manufacturers, distributors, hospitals, clinics, doctors, patients, and criminals. *See City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610 (N.D. Cal. 2020) (dismissing opioid-related RICO claims for lack of proximate cause); *see also MSP Recovery Claims, Series LLC v. Lundbeck LLC,* 130 F.4th 91, 107 (4th Cir. 2025) ("[T]he injury for which a plaintiff may seek damages under RICO cannot be contingent on or derivative of harm suffered by a different party."); *San Miguel Hosp. Corp. v. Publix Supermarket, Inc.*, 2025 WL 872972, at *9 (D.N.M. Mar. 19, 2025) (rejecting as "too indirect or remote" plaintiff's bid for "additional compensation for treating personal injuries to third parties (opioid users)"). Because the City does not—and cannot—plausibly allege that its injuries are the *direct* result of Defendants' alleged conduct, its RICO claim should be dismissed. *See Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999).

### 2.      The City Has Not Plausibly Alleged Injury To Its Property.

The City alleges it has been "damaged in its business and property" in the form of governmental expenditures related to public services it provided to address the "opioid epidemic," such as costs of healthcare, law enforcement, and judicial functions; lost tax revenues; and diminished real property values in neighborhoods. Compl. ¶¶ 816–17. But government plaintiffs "cannot rely on [public] expenditures" made in their "sovereign and/or quasi-sovereign capacities" to satisfy the RICO statute because such expenditures are not injuries to "business or property." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976, 979 (9th Cir. 2008); *see also Welborn v. Bank of N.Y. Mellon Corp.,* 557 F. App'x 383, 387 (5th Cir. 2014) ("[T]he 'business or property' element requires that the injury 'refer to commercial interests or enterprises.'") (citation omitted); *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 103–04 (2d Cir. 1990) (injury to business or property under RICO statute exists only when government functions "as a party to a commercial transaction"); *Town of Brookline v. Operation Rescue*, 762 F. Supp. 1521, 1522–23 (D. Mass. 1991) (increased police expenses are not injury to business or property). Nor do purported lost tax revenues constitute injury to business or property under RICO. *See West Virginia v. Moore*, 895 F. Supp. 864, 872 (S.D.W. Va. 1995) ("past due taxes" do not constitute injury to "business or property" under RICO). Further, the City's general allegations of diminished neighborhood property values fail. Compl. ¶ 817(m). RICO requires a plaintiff to allege damages to "his" own property, not someone else's property. 18 U.S.C. § 1964(c).

## III.    THE CITY'S PUBLIC-NUISANCE CLAIM FAILS.

Binding Third Circuit caselaw requires dismissal of the City's public nuisance claim. The Third Circuit affirmed the dismissal of a mirror-image public nuisance claim brought by the City against gun manufacturers alleging that the manufacturers created a public nuisance by marketing and distributing handguns such that they "f[e]ll into the hands of criminals and children, creating

14

and contributing to their criminal use in Philadelphia." *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 419, 426 (3d Cir. 2002). There is no daylight between the City's public-nuisance claim here and its flawed claim in *Beretta*: the distribution and individual misuse of a product does not implicate public rights, and a defendant cannot be liable when it does not control the nuisance.

### A.    The City Cannot Premise Its Public-Nuisance Claim On Distribution Of A Lawful Product.

A "public nuisance is 'an unreasonable interference with a right common to the general public.'" *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 539 (3d Cir. 2001) (quoting *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 315 (3d Cir. 1985)); *see also Commonwealth v. Barnes & Tucker Co.*, 319 A.2d 871, 882 (Pa. 1974) (acid-mine runoff into public waterway violated a public right because "the public has a sufficiency interest in clean streams"). A public nuisance harms the public in the first instance, "produc[ing] no greater injury to one person than to another." *Blue Mountain Pres. Ass'n v. Township of Eldred*, 867 A.2d 692, 704 (Pa. Commw. Ct. 2005) (citation omitted). In line with this requirement, no Pennsylvania case has allowed a public-nuisance claim premised on "lawful products that are lawfully placed in the stream of commerce." *Beretta*, 277 F.3d at 421 (quoting *Camden County*, 273 F.3d at 540). Such a claim implicates *individual*, not *public*, rights. *See City of Philadelphia v. Beretta U.S.A. Corp.*, 126 F. Supp. 2d 882, 909 (E.D. Pa. 2000).

The City's public-nuisance claim is founded on individual injuries allegedly flowing from individuals' misuse of FDA-approved prescription opioid medications. *See, e.g.*, Compl. ¶¶ 722 (alleging that increased opioid use led to "[a]ddicted persons turning from prescription pills to heroin and fentanyl"); *id.* ¶¶ 508, 512, 517–18, 531. Under *Beretta*, that does not give rise to a public-nuisance claim. The distribution of products to individuals cannot support a public nuisance claim because only *individual* rights are affected even if many individuals are harmed. *See Beretta*,

277 F.3d at 419 (costs associated with ameliorating harms from distribution to individuals did not implicate a public right); *Atl. Richfield Co. v. County of Montgomery*, 294 A.3d 1274, 1285, 1289 (Pa. Commw. 2023) (dismissing public-nuisance claim based on alleged lead poisoning in homes because it implicated only individual, not public, rights).

*Beretta* is not alone in reaching this conclusion. In *Atlantic Richfield*, the Pennsylvania Commonwealth Court dismissed a similar public-nuisance claim based on widespread lead-paint poisoning. 294 A.3d at 1289. There, Montgomery County alleged that lead paint, present in nearly 65 percent of county homes, constituted a public nuisance because, among other injuries, "lead poisoning creates a cumulative, deleterious effect on whole communities by depriving them of well-adjusted, happy and productive citizens." *Id.* at 1277. Despite lead paint's ubiquitous presence and its clear adverse effects, the Commonwealth Court held that the County failed to state a claim. *Id.* at 1289. That is because no public right is implicated when one individual or home "may be adversely impacted by lead paint, while others nearby may not be impacted at all." *Id.* at 1285. For that reason, "[t]he manufacture and distribution of products rarely, if ever, causes a violation of a public right as that term has been understood in the law of public nuisance." *Id.* (citation omitted).

The City cannot evade this reality by pointing to the consequences of aggregated individual harms. For example, the City's claim of interference with public spaces is still founded on a collection of individual injuries, like opioid addiction. *See id.* ("Even if the owners of a fast-food chain were to sell millions of defectively produced hamburgers causing harm to millions of people who ate them, the violation of rights is a series of separate violations of private rights . . . ." (cleaned up)).[2] Aside from the City's scattershot allegations pertaining to mail-order pharmacies,

---

[2] In November 2024, the Pennsylvania Superior Court granted CVS's petition for permission to appeal an order denying its preliminary objections to a public-nuisance claim brought by the City based on dispensing of opioid medications by CVS. The trial court's ruling was directly contrary

which dispense opioid medications in accordance with prescriptions by licensed doctors, *see, e.g.*, Compl. ¶¶ 304, 306, 469, 476, 479, 480, 484, nothing in the complaint about Defendants' conduct even directly concerns opioids. Rather, the complaint takes aim at upstream formulary design and utilization management that affect only insurance coverage of medications prescribed by doctors and dispensed by pharmacies. *See, e.g.*, *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83–84 (2020) ("Generally speaking, PBMs serve as intermediaries between prescription-drug plans and the pharmacies that beneficiaries use."). Defendants are even further removed from the end use of the product than the defendants in *Beretta*, and unlike firearms in the hands of criminals, FDA-approved opioid medications have a "legitimate medical purpose" and are prescribed only pursuant to a doctor-patient relationship. Compl. ¶ 695. *Beretta* requires dismissal of the claim.

### B. The City Fails To Allege That Defendants Controlled Any Alleged Nuisance.

The City's public-nuisance claim should also be dismissed because the City does not (and cannot) allege that Defendants "exercise significant control over the source of the interference with the public right." *Beretta*, 277 F.3d at 422. As in *Beretta*, Defendants here do not control how opioids are used and whether they are abused. The City's claimed harms necessarily derive from individual injuries stemming from misuse by third parties. Because Defendants do not exercise control over the alleged nuisance, the City's claim fails on this ground, too.

The City's theory of control and causation underscores how attenuated the nuisance and harm are from Defendants' alleged conduct. The City alleges that Defendants amassed data related to prescription use, *see, e.g.*, Compl. ¶ 217, failed to implement formulary and utilization management limits on insurance coverage, *id.* ¶ 262, and engaged in deceptive marketing practices

---

to *Beretta*. That appeal remains pending. *CVS Pharmacy Inc. v. City of Philadelphia*, No. 3093 EDA 2024 (Pa. Super. Ct.).

with manufacturers, *id.* ¶ 365. The City claims that these actions contributed to widespread abuse of opioids in Philadelphia. *Id.* ¶ 7. But Defendants are far removed from the City's alleged harms, stemming from overdoses, *id.* ¶ 492; addiction and disease, *id.* ¶¶ 498, 502; and crime, *id.* ¶ 505. Defendants, who are multiple levels upstream from these harms, do not control the doctors who prescribe opioid medications, the individuals that use them, or the criminals who divert them.

The *Beretta* courts rejected the City's public-nuisance claim on exactly this ground. There, as here, "the injurious acts with their harmful consequences are not created by the [defendants], but by criminals and others unlawfully" using the products. *Beretta*, 126 F. Supp. 2d at 910–11. There, as here, Defendants "do not wrongfully 'use' their products"—third parties do. *Id.* There, as here, and "as in most products liability actions, the defendants are no longer in control of the instrument of the nuisance"—opioids in this case and firearms in *Beretta*. *Id.* at 911. Put simply, this case is nothing like the classic public-nuisance cases where a defendant controls the "source of the nuisance." *Id.*; *accord Beretta*, 277 F.3d at 422. If anything, the case for dismissal here is even stronger than in *Beretta*. The crux of the complaint concerns upstream business dealings far removed from the actual prescribing, use, or abuse of opioids, as well as the many follow-on criminal actions that give rise to the City's alleged harms. If the sale of guns to dealers connected to criminals does not result in the "control" necessary for a public nuisance claim, the City's claim here—which is even more attenuated—must likewise be dismissed.

Recognizing this weakness, the City, in conclusory fashion and with a broad brush that sweeps up every defendant no matter its role, pleads that "[t]he PBM Defendants were in control of the 'instrumentality' of the nuisance, namely the dissemination of prescription opioids, their collusion with manufacturers in promoting opioids, and standard formulary and drug UM offerings that increased utilization of opioids." Compl. ¶ 720(a). Of course, the Court "need not credit" such

18

a "bald assertion[]." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Indeed, PBMs do not control the "instrumentality" of the nuisance because PBMs never have physical possession or control of the medications, and they do not control what doctors prescribe or what network pharmacies dispense, let alone how patients use medications. S*ee Diess v. Pennsylvania Dep't of Transp.*, 935 A.2d 895, 905 (Pa. Commw. Ct. 2007) (rejecting public-nuisance claim where plaintiffs did not allege that defendant "owned" fly ash that caused alleged nuisance or "had the power to control the property on which [it] had been deposited."). And the City's assertion that Defendants are in "control" of the instrumentality of the nuisance is also belied by other allegations in the complaint referencing many players in the opioid supply chain—including "opioid manufacturers, distributors, and pharmacies," *id.* ¶ 1, as well as doctors and patients, *id.* ¶ 545 ("Mayor's Task Force made various recommendations to . . . *change the behaviors of doctors and patients regarding opioid prescribing and use*." (emphasis added)). By contrast, the City admits that Defendants are far removed from the opioid use at the heart of their theory. *See, e.g., id.* ¶ 162 (focusing on the PBM Defendants' "offering standard formularies and UM programs to their clients"). Defendants "lack direct control over how end-purchasers use (or misuse)" opioids, and even assuming they could have taken further steps to "ensure that purchasers . . . do not misuse or illegally sell their products," nothing in public-nuisance law suggests that "those steps are . . . required." *Beretta*, 126 F. Supp. 2d at 911.

## C.    The City Fails To Allege Special Injury.

The City alleges a private claim for public nuisance based on alleged injury in the form of "social services costs, treatment costs, emergency costs, equipment costs, costs to clean up neighborhoods, streets, and City properties. . . ." Compl. ¶ 727. These are precisely the kinds of derivative injuries that cannot constitute a special injury under Pennsylvania law. *Allegheny Gen. Hosp.* v. *Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000); *accord E. Me. Med. Ctr. v.*

*Walgreen Co.*, 331 A.3d 380, 393 (Me. 2025). Because the City premises its claim on derivative harm to individuals, it fails to allege special injury for its public-nuisance claim.

## IV.    THE CITY'S NEGLIGENCE CLAIM FAILS.

### A.    The PBM Defendants Do Not Owe A Duty Of Care To The City.

The City asserts that the PBM Defendants had a "duty to create formulary and UM offerings based on the health and safety of the public." Compl. ¶ 771. In other words, the City claims the PBM Defendants had a duty to attempt to influence the behavior of third parties including doctors, patients, and others to prevent the diversion and abuse of prescription opioids. The City asserts that providers of discount cards had a similar duty. *Id.* ¶ 425. But Pennsylvania law is clear that "there is no duty to control the conduct of a third party to protect another from harm" absent a "special relationship" or preexisting legal duty. *K.R. by N.R. v. Visionquest Nat'l, Ltd.*, 2018 WL 1960857, at *2 (E.D. Pa. Apr. 25, 2018). Here, neither exception applies, and it would be improper to create a duty through judicial policymaking.

***Special Relationship***. Pennsylvania law limits the "special relationships" giving rise to a duty to control the conduct of third parties to "[1] a parent's duty to control a child, [2] a master's duty to control a servant, [3] a possessor of land's duty to control a licensee, and [4] those in charge of individuals with dangerous propensities to control those individuals." *Visionquest*, 2018 WL 1960857, at *2. The first three plainly do not apply. The last applies only where, unlike here, the third party is "confined, submissive or otherwise fully subjected to the control of the defendant." *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 234 (Pa. 2018) (quotations omitted).

***Preexisting Duty***. A duty of care may arise from a preexisting obligation when "[o]ne undertakes . . . to render services to another . . . necessary for the protection of the other's person or things" and the other person "reli[es] upon the undertaking." *Feld v. Merriam*, 485 A.2d 742, 746–47 (Pa. 1984). Not only does the City fail to plead any facts showing that the PBM Defendants

"assumed a duty to create formulary and UM offerings based on the health and safety of the public," Compl. ¶ 771, or that discount card providers assumed any duty to limit access to discounts on prescription medications, Compl. ¶¶ 425-32, but the City does not even allege that Defendants owe a duty *to the City itself. See Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000) ("The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff."). Moreover, the City fails to plead how it could have relied on the PBM Defendants to curb opioid abuse when their clients maintained ultimate control over formularies. Compl. ¶ 171. The City's contract with CVS does not change the analysis. As explained in CVS's separate brief, CVS did not agree to assume the kind of duty the City alleges, and any claim for breach would duplicate the City's breach-of-contract claim.

*Judicial Policymaking*. Pennsylvania courts are reluctant to impose novel tort duties. *Walters*, 187 A.3d at 222. To impose such a duty, a court must weigh: (1) the parties' relationship; (2) the social utility of the defendant's conduct; (3) the foreseeability of the harm; (4) the consequences of imposing a duty; and (5) the overall public interest. *Id*. Here, each factor counsels against the City's unprecedented expansion of common law. *First*, Optum and Express Scripts have no relationship with the City. CVS's relationship is specifically delineated by contract, Compl. ¶ 549, and it has no relationship with the City relevant to its agreements with other clients. Further, the at-issue conduct—formularies adopted by Defendants' clients, including the City, and mail-order filling of prescriptions—is "several steps removed" from any alleged harm resulting from the actions of third parties. *See Beretta*, 126 F. Supp. 2d at 899 (no duty where defendant had "tenuous relationship with the city"); *E. Me. Med. Ctr.*, 331 A.3d at 389–90 (opioid sellers owe no duty to hospitals for harms from opioid misuse). *Second*, the social utility of the PBM Defendants' conduct is obvious, as they help make doctor-prescribed medications affordable for patients who

21

need them. *See* Compl. ¶ 175 n.22; *In re EpiPen*, 44 F.4th 959, 967 (10th Cir. 2023) ("PBMs lower prescription drug costs."). *Third*, Pennsylvania courts are hesitant to impose "liab[ility] to the public at large," as the City urges here, *see Witthoeft v. Kiskaddon*, 733 A.2d 623, 630 (Pa. 1999), and third-party conduct attenuates any link between the PBM Defendants' conduct and the City's alleged harm, *see Beretta*, 126 F. Supp. 2d at 900. *Fourth*, the societal cost of imposing a duty on the PBM Defendants to override the decisions of doctors by restricting prescription benefits would be enormous. It would likely create perverse incentives throughout the healthcare industry to limit health insurance coverage and prescription benefits. *See Walters*, 187 A.3d at 238 (balancing costs and benefits of proposed duty); *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1009–10 (Pa. 2003) (same).

The City's proposed duty is exactly the kind of "unbounded," "amorphous" duty the Pennsylvania Supreme Court has refused to impose. *Walters*, 187 A.3d at 242. In refusing to impose a duty on a staffing agency to report the illegal diversion of opioids by a temporary worker hired out to a hospital, the court cautioned that imposing a "generalized duty . . . unbounded by the terms or requirements of a federal regulation," would be "too amorphous," too prone to "controversies" in its application, and "too difficult to anticipate" and apply *ex ante*. *Id.* The court imposed only a reporting duty on the hospital in that case because it had a statutory duty to report drug diversions. *Id.* at 240–42. Like the agency, but unlike the hospital, the PBM Defendants and discount card providers are not subject to any statutory duties with respect to opioids and do not directly control their supply or use. It would be similarly misguided to impose on them a sweeping duty to police the prescribing, dispensing, and use of all medications. *See, e.g.*, *A.D.A. ex rel. L.R.A. v. Johnson & Johnson*, 912 S.E.2d 37, 61–62 (W. Va. Ct. App. 2024) (opioid manufacturers and distributors owe no "general duty of care" to the public).

**B.      The PBM Defendants Did Not Proximately Cause The City's Alleged Harms.**

The City alleges that the PBM Defendants' purported negligence caused it "to incur[] excessive costs to treat the opioid epidemic" including "increased costs of police, emergency, health, prosecution, corrections, rehabilitation, and other services . . . over and above [its] ordinary public services." Compl. ¶ 783. But these kinds of indirect harms are "too remote" based on consideration of the six factors that this Court must consider:

> (1) the causal connection between the defendant's wrongdoing and the plaintiff's harm; (2) the specific intent of the defendant to harm the plaintiff; (3) the nature of the plaintiff's alleged injury and whether it relates to the purposes of tort law; (4) whether the claim for damages is highly speculative; (5) the directness or indirectness of the alleged injury; and (6) the aim of keeping the scope of complex trials within judicially manageable limits.

*Beretta*, 277 F.3d at 423–25.

Factors one and five weigh against liability because the PBM Defendants have, at most, a tenuous connection to City's alleged injury. The downstream society-wide effects of the misuse or diversion of opioid medications by third parties, Compl. ¶¶ 463, 487–521, 545, 740, are far removed from administering claims for insurance coverage of prescription medications prescribed by licensed doctors, *see Beretta*, 126 F. Supp. 2d at 904 (gun manufacturers' connection to City's injuries from crimes too "distant and infirm").

As to factor two, the City does not allege that the PBM Defendants intended to increase the City's cost of delivering social services. *Compare* Compl. ¶¶ 780–81, 786, *with Beretta*, 126 F. Supp. 2d at 904 (no allegation gun makers intended criminal misuse of firearms). Factor three likewise weighs against liability because tort law is not a remedy for societal problems where, as here, the product at issue (opioid medication) is heavily regulated, and the PBM Defendants' conduct is alleged to have contributed to the alleged problems indirectly. *See Beretta*, 126 F. Supp. 2d at 904–05 (tort law not a substitute for "carefully calibrated set of regulations to govern the gun

23

industry"). The City's failure to "provide a reasonable approximation of [its] damages" weighs against liability under factor four. *See id.* at 905. Despite devoting 11 pages to alleging supposed "costs," Compl. ¶¶ 522–47, the City offers no estimate of its damage. And, even if the City could reasonably quantify its harm, "[i]t would be difficult, if not impossible, to calculate how [much of that harm] could have been avoided had the [PBM Defendants] adopted different policies," making the City's injury too remote to support liability. *Beretta*, 126 F. Supp. 2d at 905. Finally, as in *Beretta*, factor six weighs against liability here because the number of different wrongdoers whose actions are necessary to produce the City's alleged harm makes "apportion[ing] damages to avoid multiple recoveries" exceedingly challenging. *Beretta*, 277 F.3d at 426.

## C. The City Has Suffered No Cognizable Damage.

Under Pennsylvania law, "[t]he cost of public services for protection from a safety hazard is to be borne by the public as a whole, not assessed against a tortfeasor whose negligence creates the need for the service." *Beretta*, 126 F. Supp. 2d at 894 (quoting *City of Pittsburgh* v. *Equitable Gas Co.*, 512 A.2d 83, 84 (Pa. Commw. Ct. 1986)). The City asserts that its injury is not "the sort a political subdivision would reasonably expect to occur." Compl. ¶ 784. But providing "health services" and "police and law enforcement to protect its citizens from criminals" "unquestionably are municipal costs which cannot be recovered." *Beretta*, 126 F. Supp. 2d at 895. Further, the City's alleged injuries are unrecoverable economic losses that depend on and are derivative of alleged injuries to others from opioid abuse. *Duquesne Light Co. v. Pennsylvania Am. Water Co.*, 850 A.2d 701, 703–04 (Pa. Super. Ct. 2004).

## D. The City's Negligence Claim Against The Mail-Order Pharmacies Also Fails.

The City's negligence claim based on the Defendants' mail-order pharmacies' dispensing practices, *see* Compl. ¶¶ 470–76, 768–71, also fails. "Pennsylvania courts have specifically limited the duty a pharmacist owes its customers to filling prescriptions in a safe manner" and "have

rejected arguments seeking to expand the duties imposed by law beyond this narrow scope," including to reject the attempt to "expand the duty of . . . pharmacists to include them being responsible for a third party's criminal activities." *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 563 (W.D. Pa. 2015) (citing *Forish v. Paul*, 2 Pa. D. & C.4th 413, 417 (Com. Pl. 1989) ("[C]ourts are precluded from imposing duties [on pharmacists] in addition to those which the legislative branch has chosen to set forth.")). Further, even assuming that the pharmacies violated some statutory duty related to dispensing opioids, Compl. ¶¶ 470–76—which the City fails to adequately allege in any event—Pennsylvania courts do not impose liability where "the statute benefits the public at large," rather than "a particular class" that includes the plaintiff. *Witthoeft*, 733 A.2d 623 at 627 (cleaned up). Similarly, the City's allegation that it suffered harm from the society-wide effects of opioid abuse does not establish the required "direct relation between the injury asserted and the injurious conduct alleged." *Beretta*, 277 F.3d at 423 (cleaned up). The City's claim is also barred by the municipal cost recovery rule. *Beretta*, 126 F. Supp. 2d at 895.

## V.    THE CITY'S UTPCPL CLAIM SHOULD BE DISMISSED.

The UTPCPL protects consumer purchasers of goods and services—not municipal entities seeking to recover for harms suffered by some residents. Moreover, two of the three UTPCPL prohibitions the City invokes do not apply to the City's allegations against the PBM Defendants, and even if it could bring a claim under the UTPCPL, the City has failed to allege sufficient facts to support its claim. As a result, the City's UTPCPL claims must be dismissed.

### A.    The City Is Not A "Person" That Can Bring This Private Cause Of Action.

The UTPCPL authorizes two kinds of actions: (1) actions in the name of the Commonwealth, pursuant to 73 P.S. § 201-4; and (2) private actions by "persons" pursuant to 73 P.S. § 201-9.2(a). This action does not fit in either category. First, the City has not sued in the name of the Commonwealth and cannot do so. *See, e.g.*, Compl. ¶ 746. Second, the Pennsylvania

Supreme Court has held that the City may not bring an action under the UTPCPL because it is not a "person" as defined under Section 9.2(a). *Meyer v. Cmty. Coll. of Beaver Cnty.*, 93 A.3d 806, 814 (Pa. 2014) ("legislature did not intend to define 'person' as including political subdivisions").

The City may assert that *Meyer* is limited by *Commonwealth v. Golden Gate National Senior Care LLC,* 194 A.3d 1010 (Pa. 2018), but that case is inapposite. In *Golden Gate,* the question was whether the Pennsylvania Attorney General suing in the name of the Commonwealth could seek, under Section 4.1 of the UTPCPL, to have funds restored to the Commonwealth as a "person in interest." *Id.* at 1032–35. The Supreme Court held that funds could be restored to the Commonwealth as a "person in interest," a different and statutorily undefined term which it deemed "broader" than the statutorily defined term "person." *Id.* at 1034. That has no bearing on the holding in *Meyer*, which addresses the *statutory* definition of "person" and bars the City—a political subdivision—from bringing an action under the UTPCPL.

### B.    The City Is Not A Consumer For Purposes Of The UTPCPL.

Even if the City could qualify as a "person," it cannot bring a cause of action under the UTPCPL. The UTPCPL permits only private actions by "any person who purchases . . . goods or services primarily for personal, family or household purposes." 73 P.S. § 201-9.2(a). The statute thus "unambiguously permits only persons who have purchased or leased goods or services to sue." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

The City does not itself purchase goods or services from Defendants "for personal, family or household purposes," and unlike some other benefit providers it cannot pursue such a claim on behalf of its residents. First, the City has expressly disclaimed suing in a representative capacity. *See* Compl. ¶ 13 ("The claims asserted herein are brought solely by the City . . . and are wholly independent of any claims for injuries that individual users of opioids may have."); *see also Balderston v. Medtronic Somafor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002) ("a *non-*

*representative* plaintiff[]" lacks standing to bring a claim "based on others' 'personal uses'" of a good (emphasis added)). Second, even if it could sue as a representative, the City fails to "identify the precise products" purchased and reimbursed, which defeats such a claim. *See In re McNeil Consumer Healthcare*, 2011 WL 2802854, at *14 (E.D. Pa. July 15, 2011). Third, the City claims that it "operates as a consumer" because it reimburses for prescription opioids, Compl. ¶ 743, but it does so only for one Defendant (CVS), so this claim must be dismissed with respect to all the other Defendants. Moreover, as discussed below, the complaint challenges specific statements by the PBMs only relating to PBM services—which the City does not (and cannot) allege are services it purchased for "personal, family or household purposes" as the statute requires. 73 P.S. § 201-9.2(a). In short, because the City does not (and cannot) sue in a representative capacity, the City cannot base its claim on allegations that the PBM Defendants created a likelihood of confusion or misunderstanding *on the part of consumers*.

### C.    The City's Claims Under Sections 201-2(4)(ii) And (v) Of The UTPCPL Do Not Apply To The City's Allegations.

Two of the three UTPCPL prohibitions the City invokes do not apply to the City's allegations against the PBM Defendants. 73 P.S. § 201-2(4)(ii) and (v) apply only to claims of *false advertising* of *goods*, but the complaint does not allege that the PBM Defendants advertised or made false statements about the qualities of *opioids*. *See Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 412 (E.D. Pa. 2006) ("Sections (ii) and (v) of the UTPCPL prohibit false advertising."); *Commonwealth v. Parisi*, 873 A.2d 3, 13 (Pa. Commw. Ct. 2005) (dismissing claims against certain defendants under particular UTPCPL subparagraph where the plaintiff had "not sufficiently pleaded a cause of action under [that subparagraph] against them").

### D.    The City Has Failed To Allege Facts That State A Claim Under The UTPCPL.

The remaining provision—the catchall provision, 73 P.S. § 201-2(4)(xxi), fares no better. It prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," but the complaint does not adequately allege such conduct.

### 1.    The PBM Defendants' Alleged Representations Are Not Deceptive.

A plaintiff must plead the elements of fraud under Federal Rule of Civil Procedure 9(b) if its UTPCPL claim rests upon allegations of fraud. *See Coyle v. JSL Mech., Inc.*, 2023 WL 5985273, at *4 (E.D. Pa. Sept. 14, 2023) ("Rule 9(b)'s heightened particularity standard may apply not only to claims expressly pleaded as 'fraud,' but also to claims under the [] UTPCPL . . . where such claims sound in putatively fraudulent activity or representations."). Here, the City's UTPCPL claim rests upon and incorporates the complaint's fraud allegations. *See* Compl. ¶¶ 6(a), 247, 368, 561, 564, 613, 657, 660–61, 680–85. This is true notwithstanding the City's conclusory assertion that the UTPCPL claim "does not sound in fraud." *Id.* ¶ 730.

The City fails to allege specific facts about any alleged conduct or representations by the PBM Defendants that were purportedly fraudulent or deceptive in violation of paragraph (xxi) of the UTPCPL. The complaint identifies only one set of specific statements by the PBM Defendants that could possibly relate to any purported "misrepresentations"—namely, several broad, public-facing statements regarding their formulary offerings. *See* Compl. ¶¶ 355–60. But Pennsylvania courts distinguish between "misdescriptions or false representations of specific characteristics of a product," which potentially are actionable, and statements "expressed in broad, vague, and commendatory language," which are not. *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 416 (E.D. Pa. 2016) (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)).

The alleged statements are, at most, representations that "convey[] only the [PBM Defendants'] judgment" or generic "claim[s] of superiority," and are therefore not actionable.

28

*Fusco v. Uber Techs., Inc.*, 2018 WL 3618232, at *8 (E.D. Pa. July 27, 2018). For example, the City cites a statement by one PBM promoting itself as "uniquely positioned to deliver significant benefits to plan sponsors . . . and promote healthier and more cost-effective behaviors." Compl. ¶ 356. Similarly, the complaint cites a statement by another PBM that it is "dedicated to making the use of prescription drugs safer and more affordable for plan sponsors." *Id.* To the extent the City alleges elsewhere in the complaint that statements made by the PBM Defendants were misleading, those statements are all of a similar character. *See, e.g.*, *id.* ¶ 285 (statement by CVS Caremark executive that the company "is committed to mitigating drug abuse"); *id.* ¶ 635 (alleging Express Scripts' representation "that it was leading the fight against prescription drug fraud, waste and abuse"). Finally, to the extent the City suggests it paid for prescriptions that should not have been filled due to the PBM Defendants' alleged failures to maintain effective controls against diversion at mail-order pharmacies, the City identifies no specific statements to consumers at all, let alone misrepresentations on which it relied to pay for prescriptions from those pharmacies.

### 2.    The City Fails To Allege Justifiable Reliance.

To state a claim under the UTPCPL, the City must allege that it (a) justifiably relied on the defendant's wrongful conduct or representation and (b) suffered harm as a result of that reliance. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221–23 (3d Cir. 2008). The City fails to plead this element for three reasons. *First*, the City does not allege it ever read or relied on the PBM Defendants' statements, or that the City's reliance on the PBM Defendants' statements was "reasonably foreseeable." *Katz*, 972 F.2d at 56–57. The only specific statements alleged in the complaint were made in regulatory filings or in statements to other government authorities, but there is no allegation that the City was ever aware of these statements before it brought suit. *See, e.g.*, Compl. ¶ 356 (citing statements from SEC filings); *id.* ¶ 357 (citing Express Scripts' letter to Pennsylvania House of Representatives committee). Further, the UTPCPL prohibits unfair or deceptive conduct

in "trade or commerce," 73 P.S. § 201-3(a), defined as "the advertising, offering for sale, sale or distribution of any services [or] any property," *id*. § 201-2(3). Thus, even if the City *had* alleged reliance, the PBM Defendant's alleged statements were not made in "trade or commerce" and thus would not fall within the purview of the statute. *Cf. Chirikos v. Yellow Cab Co.*, 410 N.E.2d 61, 67 (Ill. App. Ct. 1980) (analyzing substantially similar consumer protection statute to find that statements to city council were not made in connection with trade or commerce).

*Second*, there are no plausible allegations that the City "altered [its] behavior due to the confusion that allegedly resulted from defendants' conduct." *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451 (E.D. Pa. 2009). The City has challenged general statements that amount only to puffery, so it cannot plausibly allege reliance. *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 352 (E.D. Pa. 2022) (statements of puffery "negate[] the reliance element" by "dissuad[ing] any reasonable consumer from placing reliance thereon as fact" (second alteration in original)).

*Third*, because the City does not allege that *it* was deceived by the PBM Defendants, it theorizes that *others*—such as physicians and patients—were allegedly misled, and that the City suffered economic harm as a derivative consequence. *See, e.g.*, Compl. ¶ 737; *id.* ¶¶ 375, 377 (describing allegedly misleading materials sent to *physicians*). But as discussed above, the City is not suing in a representative capacity. Accordingly, the City's alleged injuries are not actionable unless the City itself was misled or influenced. *See, e.g.*, *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001) (dismissing claim where the plaintiff alleged that an advertisement might have misled others but "the plaintiff himself was neither deceived nor influenced"); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1145 (N.Y. 2004) (dismissing deceptive practices claim by third-party payor against tobacco manufacturers because plaintiff's loss "arose wholly as a result of smoking related illnesses suffered" by its subscribers).

## VI.    THE CITY'S PCPO CLAIM SHOULD BE DISMISSED.

In addition to its UTPCPL claim, the City also asserts a cause of action under the newly enacted PCPO, Phila. Code § 9-6301 *et seq.* The PCPO applies "retroactively to any conduct that occurred up to six years before the date of enactment . . . provided that at the time such conduct occurred *it would also constitute a violation of the [UTPCPL]*." *Id.* § 9-6307 (emphasis added). The City's claim under the PCPO should therefore be dismissed for the same reasons the UTPCPL claim fails, and Defendants incorporate by reference those arguments as if fully set forth herein. *See* Section V, above. The PCPO claim also fails for the additional reason that the UTPCPL preempts the PCPO.

### A.    The City's Enactment Of The PCPO.

The PCPO was first introduced before the City Council on February 29, 2024, less than five weeks after the Commonwealth Court held in an opioid-related case that the Attorney General's authority under the UTPCPL is superior to the authority of the Philadelphia District Attorney. *See Commonwealth ex rel. Krasner v. Attorney General*, 309 A.3d 265 (Pa. Cmwlth. Ct. 2024). The City's Solicitor described the proposed PCPO as an "important piece of legislation" because, among other reasons:

> Philadelphia currently depends on the Pennsylvania [UTPCPL], which allows enforcement through either the attorney general or the [DA]. The absence of specialized local mechanism within the mayor's purview exposes Philadelphians to the adverse effects of frauds and scams. *As the city does not currently have standing for enforcement under Pennsylvania law, the Consumer Protection ordinance empowers the law department to investigate potential violations, working alongside an agency designated by the mayor*.

*Hearing Before the Committee on Commerce & Economic Development, Council of the City of Philadelphia on Bill No. 240118, etc.* (May 13, 2024) (statement of Renee Garcia), at 4:6–25, *available at* https://www.transcriptroom.org/tr/CAF/PDFFile/6130426?docType=30 (emphasis

added). After additional public hearings, the City Council unanimously approved the PCPO, and it was signed by the Mayor on June 5, 2024. *See* Phila. Code § 9-6301 *et seq*.

In several respects, the PCPO tracks the language of the UTPCPL nearly verbatim, prohibiting "unfair or deceptive acts or practices" in trade or commerce "directly or indirectly impacting one or more individuals in the City." Phila. Code § 9-6302(1). Indeed, the complaint alleges violations of the very same substantive provisions under the PCPO and UTPCPL. *Compare* Compl. ¶ 752, *with id.* ¶ 731. But unlike the UTPCPL, the PCPO confers upon the City's Law Department the power to investigate potential violations and "file an action in the name of the City" seeking injunctive relief, civil penalties of $2,000 for each violation, compensatory damages and restitution for alleged victims, and attorneys' fees and costs. Phila. Code §§ 9-6303, 9-6304. The City also granted itself the unique power to seek multiplication of the number of violations based on the greatest of the "number of days on which an individual statement, description or other representation or omission" is "distributed, broadcast, posted, published, or otherwise exposed to the public" or the "number of Philadelphia consumers reached by such statement, description or other representation or omission." *Id.* at § 9-6302(3).

On November 13, 2024, the City Council amended the PCPO so that it applied "retroactively to any conduct that occurred up to six years before the date of enactment . . . *provided that at the time such conduct occurred it would also constitute a violation of the [UTPCPL]*." *Id.* at § 9-6307 (emphasis added). The retroactivity amendment removes any doubt that the PCPO purports to confer on the City the identical governmental enforcement authority that the UTPCPL reserved for the Attorney General and district attorneys.

**B.      The PCPO Is Preempted By The UTPCPL.**

The City is a "home rule" municipality and its power to enact the PCPO is derived from Article IX, § 2, of the Pennsylvania Constitution, which permits a municipality to "exercise any

power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." Although "grants of municipal power to a home rule municipality are to be 'liberally construed in favor of the municipality,'" that power is not limitless. *See Holt's Cigar Co., Inc. v. City of Philadelphia*, 10 A.3d 902, 906 (Pa. 2011) (quoting 53 Pa. C.S.A § 2961). 53 Pa. C.S.A. § 2962(c) sets those limits and provides that a municipality "shall not . . . (2) Exercise powers contrary to or in limitation or enlargement of powers granted by statutes which are applicable in every part of this Commonwealth." In 53 Pa. C.S.A. § 2962(e), the General Assembly also directed that statutes that "are uniform and applicable in every part of this Commonwealth shall remain in effect and shall not be changed or modified by this subpart. *Statutes shall supersede any municipal ordinance or resolution on the same subject*." (emphasis added).

Generally, there are three forms of preemption: express, field, and conflict preemption. *See Holt's Cigar*, 10 A.3d at 907. Relevant here are field and conflict preemption. Field preemption applies when a "statute is silent on supersession, but proclaims a course of regulation and control which brooks no municipal intervention." *Id.* Conflict preemption applies when a "local ordinance contradicts, contravenes, or is inconsistent with a state statute." *Id.*; *Hoffman Min. Co., Inc. v. Zoning Hearing Bd. of Adams Twp.*, 32 A.3d 587, 594 (Pa. 2011). A local ordinance is preempted if it stands "'as an obstacle to the execution of the full purposes and objectives' of the General Assembly, as expressed in a state law," which requires an assessment of "the effect of the challenged ordinance on the proper functioning and application of the state enactment." *Fross v. County of Allegheny*, 20 A.3d 1193, 1203 (Pa. 2011) (citation omitted).

### 1.    The UTPCPL's Enforcement Scheme Preempts The Field.

The UTPCPL is a law of statewide applicability, that "shall supersede any municipal ordinance or resolution on the same subject." 53 P.S. § 2962(e). "By including the word 'supersede'" in 53 P.S. § 2962(e), "the General Assembly emphasizes that statutes of statewide

application predominate over enactments of home rule municipalities." *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 161 A.3d 160, 171 (Pa. 2017).

The UTPCPL prohibits a wide swath of conduct through its definitions of "unfair methods of competition" and "unfair or deceptive acts or practices" and it further empowers the Attorney General to adopt rules and regulations necessary for enforcement and administration. *See* 73 P.S. §§ 201-3, 201-3.1. Pursuant to 73 P.S. § 201-4, only the Attorney General or a district attorney has authority to bring in the name of the Commonwealth an action to restrain conduct in violation of the UTPCPL. If a court issues a permanent injunction, the "court may in its discretion" order restitution "under terms and conditions to be established by the court." 73 P.S. § 201-4.1. If a court finds a willful violation of the UTPCPL, "the Attorney General or the appropriate District Attorney, acting in the name of the Commonwealth of Pennsylvania, may recover, on behalf of the Commonwealth of Pennsylvania, a civil penalty" not exceeding $1,000 per violation, in addition to any injunctive relief or restitution. 73 P.S. § 201-8. The UTPCPL also permits limited private actions by "any person who purchases . . . goods or services primarily for personal, family or household purposes." 73 P.S. § 201-9.2(a).

The General Assembly made a conscious decision when it conferred the governmental enforcement power of the UTPCPL on the Attorney General or a district attorney. There is no municipal involvement in the investigation or enforcement of the UTPCPL. Unlike the statute at issue in *Mars Emergency Medical Services, Inc. v. Township of Adams*, where the General Assembly indicated an "intent that entities other than the state legislature and the Department of Health be involved in effectuating the purposes of" an act governing contracting for EMS services, the UTPCPL contains no such indication of similar intent. 740 A.2d 193, 196 (Pa. 1999). To the contrary, actions brought by the Attorney General or a district attorney under the UTPCPL "must

34

be in the 'public interest,' rather than any private or personal interest" as the "true party in interest is the Commonwealth, and not the local jurisdiction." *Krasner*, 309 A.3d at 273. With the Attorney General or a District Attorney possessing exclusive power to represent and protect the "public interest" without any municipal involvement, the UTPCPL "proclaims a course of regulation and control which brooks no municipal intervention." *Dep't of Licenses & Inspections, Bd. of License & Inspection Rev. v. Weber*, 147 A.2d 326, 327 (Pa. 1959). In short, the UTPCPL preempts the field of any local ordinance regulating and penalizing identical conduct.

### 2. The PCPO Irreconcilably Conflicts And Interferes With The UTPCPL's Enforcement Scheme.

The PCPO fundamentally conflicts with the UTPCPL because it gives the City, rather than the Attorney General or district attorneys, the authority to bring governmental actions for violations of the UTPCPL. In fact, the Philadelphia District Attorney's action alleging opioid-related violations of the UTPCPL against CVS and other retail chain pharmacy companies, *Commonwealth ex rel. Krasner v. CVS Indiana L.L.C. et al.*, No. 22-502337 (Pa. Ct. Com. Pl. Phila.), has been stayed pending the Supreme Court's review of *Commonwealth ex rel. Krasner v. Attorney General,* 309 A.3d 265 (Pa. Cmwlth. Ct. 2024).

There are numerous additional irreconcilable conflicts between the UTPCPL and the PCPO that result in conflict preemption of the PCPO. Under the UTPCPL, the Attorney General or a district attorney may bring an enforcement action only when it is in the "public interest," 73 P.S. § 201-4, while the PCPO requires only that the suit be in the City's localized interests, Phila. Code § 9-6304. The UTPCPL allows only the Attorney General or a district attorney to obtain injunctive relief to restrain conduct deemed unlawful, 73 P.S. § 201-4; whereas the City granted itself the power to pursue injunctive relief, including for violations of the UTPCPL, Phila. Code § 9-6304(1). The UTPCPL also gives a court discretion to order restitution only after issuing a

permanent injunction at the request of the Attorney General or District Attorney, 73 P.S. § 201-4.1, yet the PCPO makes restitution *mandatory*, Phila. Code § 9-6304. Moreover, after a court finds a willful violation of the UTPCPL, the Attorney General or a district attorney may recover on behalf of the Commonwealth a civil penalty no greater than $1,000 per violation. 73 P.S. § 201-8(b). But the PCPO doubles that amount and provides a mechanism for "multiplying" the number of violations that does not exist in the UTPCPL, and the City is the payee of civil penalties. Phila. Code § 9-6302, 9-6304; *see W. Pa. Restaurant Assoc. v. City of Pittsburgh*, 77 A.2d 616, 620 (Pa. 1951) (City ordinance's "penal provisions" were preempted because they were "more drastic" and the "fines to be imposed for violations are made payable to the city instead of, as in the statute, to the county where the restaurant is located.").

The UTPCPL gives a court discretion to award attorneys' fees and costs to a private plaintiff (but not to the Attorney General or district attorney), whereas the PCPO mandates an award to the City's Law Department. *Compare* 73 P.S. § 201-9.2, *with* Phila. Code § 9-6304(4). The PCPO also permits the City's Law Department to promulgate regulations necessary to effectuate the purpose of PCPO, Phila. Code § 9-6305, which is in direct conflict with the General Assembly's grant of the same power to the Attorney General, 73 P.S. § 201-3, 201-3.1 Unlike a private "person" bringing a UTPCPL claim, the PCPO permits the City to establish a violation without pleading and proving "justifiable reliance." *See Hunt*, 538 F.3d at 221–23. Finally, the PCPO provides for retroactive effect "up to six years before" November 13, 2024, so long as "at the time such conduct occurred it would also constitute a violation of the [UTPCPL]," Phila. Code § 9-6307, whereas the City lacks authority to establish a UTPCPL violation on behalf of the Commonwealth.

The conflicts between the PCPO and the UTPCPL are numerous, pervasive, and irreconcilable. The PCPO claim should be dismissed.

## VII.    THE CITY'S CONSPIRACY AND CONCERTED ACTION CLAIMS FAIL.

The City's civil conspiracy and concerted action claims fail because its other claims fail. Without a properly pleaded underlying unlawful act, there can be no independent claims for either claim. *See Chhaya Mgmt., LLC v. Cigar Wala, LLC*, 241 A.3d 422 (Pa. Super. Ct. 2020) (dismissing conspiracy claim in the absence of underlying tort); *Nudy*, 2025 WL 662802 at *5 ("[C]oncert of action claims—like conspiracy claims—cannot survive without an underlying tort."). Because the City has alleged no viable underlying claims, both because they are time-barred and due to substantive deficiencies, its claims for civil conspiracy and concerted action cannot stand. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 788–92 (3d Cir. 1999) (dismissing conspiracy and concert of action claims because "[t]he established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability").

## VIII.    FEDERAL LAW PREEMPTS THE CITY'S STATE-LAW CLAIMS WITH RESPECT TO ERISA AND MEDICARE PART D HEALTH PLANS.

ERISA and the Medicare Act also preempt the City's state-law claims with respect to ERISA and Medicare Part D health plans, which constitute the vast majority of the PBM Defendants' clients. *Rutledge*, 592 U.S. at 89 n.1 ("PBMs contract with a variety of healthcare plans and programs . . . including Medicaid, Medicare, military, and market place plans."); *In re EpiPen ERISA Litig.*, 2020 WL 4501925, at *4 (D. Minn. Aug. 5, 2020) (Express Scripts, OptumRx, and other PBMs manage benefits for "thousands" of ERISA plans). Those health plans are governed by uniform federal benefits laws, not state law. *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1209 (10th Cir. 2023) (holding ERISA and Medicare Part D preempt state law regulating PBMs).

***ERISA Preemption***. ERISA preempts "any and all State laws" that "relate to any employee benefit plan." 29 U.S.C. § 1144(a), and its "provisions operate to preempt both common law and

37

state statutory causes of action." *Nw. Inst. of Psychiatry, Inc. v. Travelers Ins. Co.*, 1992 WL 236257, at \*6 (E.D. Pa. Sep. 3, 1992). ERISA's "pre-emption clause is conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990).

*First*, because the City's claims have a "connection with" ERISA plans, they "relate[] to" the plans. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016). "[A] state law claim has an 'impermissible connection' with an ERISA plan" if the law "governs a central matter of plan administration or interferes with nationally uniform plan administration"—for example, if the law seeks to "require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits. *Rutledge*, 592 U.S. at 86–87 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983)). The City's claims have such a "connection" because they allege PBMs should have administered ERISA plans differently, such as through the design of health-plan formularies and utilization management practices. *See, e.g.*, Compl. ¶¶ 6, 613, 656, 680, 694. The City thus attempts to do what courts have "readily and routinely" disallowed, *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 192 (4th Cir. 2007): "force an ERISA plan to adopt a certain scheme of substantive coverage," *Rutledge*, 592 U.S. at 87 (quoting *Gobeille*, 577 U.S. at 320). The City's allegations "strik[e] at the heart of . . . benefit design" and are therefore preempted. *Mulready*, 78 F.4th at 1209.

*Second*, ERISA preempts the City's claims because they make "reference to" ERISA plans, such that "the existence of ERISA plans is essential to [the claim's] operation." *Gobeille*, 577 U.S. at 319–20. As discussed, ERISA plans represent the bulk of the PBM Defendants' clients, and those clients retain ultimate decision-making authority regarding benefit design. Compl. ¶¶ 3, 162, 171; *In re EpiPen*, 44 F.4th at 965–69. But the City attacks the PBM Defendants' role in administering those plans, such as by allegedly giving opioids "unrestricted formulary status on

their standard formularies" "without maintaining effective controls against diversion." Compl. ¶¶ 325, 711; *see also, e.g.*, *id.* ¶¶ 305, 309, 433, 694, 712. It follows that there "simply is *no* cause of action if there is no [ERISA] plan" for the PBM Defendants to administer. *Nw. Inst. of Psychiatry*, 1992 WL 236257 at *7 (quoting *Ingersoll-Rand Co. v. McLendon*, 498 U.S. 133, 140 (1990)). Although other federal courts have held that similar claims did not give rise to ERISA preemption, the allegations in this case are distinct. *See, e.g.*, *Alaska v. Express Scripts, Inc.*, 2024 WL 2321210, at *10 (D. Alaska May 22, 2024). The complaint in *Alaska*, for example, did not allege that the PBM Defendants "failed to . . . timely implement opioid limits that would have drastically reduced the inappropriate prescribing and dispensing of opioids," Compl. ¶ 262—allegations that seek to "dictate a[] particular scheme of coverage." *Alaska*, 2024 WL 2321210, at *10. In any event, that decision was wrong on this issue.

*Medicare Act Preemption.* Like ERISA, Medicare preemption is "unmistakably broad." *Mulready*, 78 F.4th at 1205–06. Part D's preemption clause provides that the "standards established under [Part D] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency)." 42 U.S.C. § 1395w-26(b)(3); *see also* 42 U.S.C. § 1395w-112(g); 42 C.F.R. § 423.440(a); *Kopstein v. Independence Blue Cross*, 339 F. App'x 261, 264 (3rd Cir. 2009) (citing *Do Sung Uhm v. Humana Inc.,* 540 F.3d 980, 991 (9th Cir. 2008)).

The City attempts to impose liability on the PBM Defendants based on how prescription opioids were selected, priced, and covered—including by Medicare Part D plans. But the PBM Defendants and their Part D clients administer pharmacy benefits according to regulations adopted by the Centers for Medicare and Medicaid Services (CMS). CMS has adopted detailed standards governing Part D formularies, drug coverage, and utilization management. *E.g.*, 42 C.F.R. §§ 423.100, 423.120(b)(2)(i)–(iii), 423.153.14 Indeed, CMS approves the very drug formularies

for which the City seeks to hold the PBM Defendants liable. 42 C.F.R. § 423.120(b)(2)(iv); *see Alaska*, 2024 WL 2321210, at *11 (Part D preempted Alaska's opioid-related claims with respect to "Express Scripts' administration of Part D plans" because the state sought to "impose liability for the structure of formularies which CMS requires be developed and reviewed in a specific manner"). By second-guessing the content of formularies and related PBM policies adopted under CMS standards and approved by CMS itself, the City's claims run headlong into Part D's preemption clause. *See Alaska*, 2024 WL 2321210, at *11; *Do Sung Uhm*, 620 F.3d at 1157 (Part D preempts state-law claims that "would directly undermine CMS's prior determination").

## <u>CONCLUSION</u>

For these reasons, the Court should dismiss the complaint. Defendants respectfully request oral argument on this joint motion.

40

Dated: January 15, 2026

*s/ Joseph I. Fontak*
Joseph I. Fontak
LEADER BERKON COLAO
& SILVERSTEIN LLP
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 755-0455
jfontak@leaderberkon.com

Brian D. Boone (admitted *pro hac vice*)
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000
brian.boone@alston.com

Michael A. Kaeding (admitted *pro hac vice*)
ALSTON & BIRD LLP
555 Fayetteville St., Suite 600
Raleigh, NC 27601
(919) 862 2200
mike.kaeding@alston.com

Debolina Das (admitted *pro hac vice*)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400
debolina.das@alston.com

Robert J. Giuffra, Jr. (admitted *pro hac vice*)
Jeffrey T. Scott (admitted *pro hac vice*)
Matthew J. Porpora (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendants UnitedHealth Group, Inc.;
Optum, Inc.; OptumInsight, Inc.; OptumInsight Life
Sciences, Inc.; OptumRx, Inc.; OptumRx Discount
Card Services, LLC; Optum Perks, LLC;
OptumHealth Care Solutions, LLC; OptumHealth
Holdings, LLC; and Optum Health Networks, Inc.*

Respectfully submitted,

*s/ Elisabeth Miller*
Elisabeth Miller
David Mader (*pro hac forthcoming*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
(212) 849-7000
elisabethmiller@quinnemanuel.com
davidmader@quinnemanuel.com

Michael Lyle (admitted *pro hac vice*)
Jonathan G. Cooper (admitted *pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Defendants Express Scripts, Inc.,
Express Scripts Administrators, LLC, Medco Health
Solutions, Inc., ESI Mail Order Processing, Inc., ESI
Mail Pharmacy Service, Inc., Express Scripts
Pharmacy, Inc., Evernorth Health, Inc., Express
Scripts Specialty Distribution Services, Inc.*

*s/ Mark Villanueva*
Mark Villanueva (PA 89892)
Robert J. Norcia (PA 321509)
STRADLEY RONON STEVEN
& YOUNG LLP
205 Market Street, Suite 2600
Philadelphia, PA 19106
(215) 564-8159
mvillanueva@stradley.com
rnocia@stradley.com

Blair G. Brown (admitted *pro hac vice*)
Steven N. Herman
Ivano M. Ventresca
Brian J. Beaton, Jr. (admitted *pro hac vice*)
Aaron Chou (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400

41

Washington, DC 20037
(202) 778-1800
bbrown@zuckerman.com
sherman@zuckerman.com
iventresca@zuckerman.com
bbeaton@zuckerman.com
achou@zuckerman.com

Conor B. O'Croinin (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-0444
cocroinin@zuckerman.com

*Attorneys for Defendants CVS Pharmacy, Inc., CVS
Health Corporation, Caremark Rx, L.L.C.,
Caremark, L.L.C., CaremarkPCS Health, L.L.C.,
AdvanceRx.com, L.L.C., and CaremarkPCS
Pennsylvania Mail Pharmacy, LLC*