**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CITY OF PHILADELPHIA,<br><br>        Plaintiff,<br><br>vs.<br><br>CVS HEALTH CORPORATION, et al.<br><br>        Defendants. | Civil Action No.: 2:25-cv-01685-GJP |

**PLAINTIFF CITY OF PHILADELPHIA'S RESPONSE IN OPPOSITION TO
OPTUM DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 2

LEGAL STANDARD........................................................................................... 3

ARGUMENT ....................................................................................................... 4

    I.    THE COURT HAS PERSONAL JURISDICTION OVER THE 12(b)(2)
         DEFENDANTS ........................................................................................ 4

         A.    Plaintiff's RICO Allegations Confer Personal Jurisdiction on the
            12(b)(2) Defendants ................................................................... 5

         B.    The Court's Exercise of Specific Jurisdiction Over the 12(b)(2)
            Defendants for All Claims is Proper ........................................... 7

            1.    The Complaint Does Not Engage in Improper Group
                Pleading........................................................................... 7

            2.    The City Has Pled Sufficient Facts Establishing the
                12(b)(2) Defendants' Minimum Contacts with
                Pennsylvania ................................................................... 8

                i.    OptumInsight Life Sciences, Inc.......................... 9

                ii.    OptumHealth Holdings, LLC........................... 10

                iii.    The Discount Card Defendants ......................... 11

         C.    In The Alternative, This Court Should Allow Jurisdictional
            Discovery .................................................................................. 11

    II.    PLAINTIFF ALLEGES SUFFICIENT FACTS SUPPORTING ITS
         CLAIMS AGAINST THE CORPORATE-PARENT AND AFFILIATE
         ENTITIES .............................................................................................. 12

                i.    Optum, Inc. and OptumHealth Holdings, LLC................. 12

                ii.    OptumInsight Life Sciences, Inc., OptumInsight,
                   Inc. and OptumHealth Networks, Inc. .............................. 13

                iii.    OptumRx Discount Card Services, LLC and Optum
                   Perks, LLC ........................................................................ 14

                iv.    UnitedHealth Group, Inc. and OHC ................................ 14

CONCLUSION..................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anjelino v. N.Y. Times Co.*,
    200 F.3d 73 (3d Cir. 1999)...........................................................................................3

*Blanding v. Walmart Inc.*,
    2024 WL 3433321 (E.D. Pa. July 15, 2024)..............................................................7

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985)..................................................................................................4, 8

*Calder v. Jones*,
    465 U.S. 783 (1984)............................................................................................8, 9, 11

*Colur World, LLC v. Supmedic, Inc.*,
    801 F. Supp. 3d 524 (E.D. Pa. 2025) ........................................................................3

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..................................................................................................13

*Farber v. Tennant Truck Lines, Inc.*,
    84 F. Supp. 3d 421 (E.D. Pa. 2015) ..........................................................................4

*GMAC v. Keller*,
    737 A.2d 279 (Pa. Super. 1999).................................................................................8

*Heartrepreneur, LLC v. Jones*,
    No. CV 18-2417, 2020 WL 2839102 (E.D. Pa. May 29, 2020) ...............................7

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
    822 F.3d 125 (3d Cir. 2016).......................................................................................3

*In re EpiPen Direct Purchaser Litig.*,
    2022 WL 1017770 (D. Minn. Apr. 5, 2022) ...........................................................13

*Laurel Gardens, LLC v. Mckenna*,
    948 F.3d 105 (3d Cir. 2020).......................................................................................5

*McCaffrey v. Windsor at Windermere Ltd. P'ship*,
    No. CV 17-460, 2017 WL 5483772 (E.D. Pa. Nov. 15, 2017)...............................13

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004).........................................................................................3

*Mississippi v. Eli Lilly & Co*,
    No. 3:21-cv-674-KHJ-MTP (S.D. Miss. Aug. 15, 2022) ......................................................13

*Skolnick v. Evolution AB (Publ)*,
    No. 2:24-CV-0326, 2025 WL 1208905 (E.D. Pa. Apr. 24, 2025)........................................3, 4

*Sky Motor Cars v. Auto Sport Designs, Inc.*,
    No. CIV.A. 09-4055, 2012 WL 3024006 (E.D. Pa. July 23, 2012)........................................8

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003)........................................................................................11, 12

*United States v. Bestfoods*,
    524 U.S. 51 (1998)............................................................................................................13

*Walden v. Fiore*,
    571 U.S. 277 (2014)..........................................................................................................10

**Statutes**

18 U.S.C. § 1965(b) ..............................................................................................................1, 4, 5

28 U.S.C. § 1367 ...........................................................................................................................5

42 Pa. C.S. § 5322(b) ....................................................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(2)........................................................................................................1, 3, 4, 10

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 3, 12

## INTRODUCTION

The City of Philadelphia (hereinafter "Plaintiff" or the "the City") has sued several Pharmacy Benefit Managers ("PBMs"), alleging they helped fuel Philadelphia's opioid crisis by putting profits over patient safety, causing significant harm to the City and its residents. Now, nine of these defendants, UnitedHealth Group, Inc. ("UHG"); Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Networks, Inc., LLC; OptumHealth Care Solutions, LLC; and OptumHealth Holdings, LLC ("Defendants"), move to dismiss the allegations against them under Rule 12(b)(6). ECF 84-1 ("Br."). Additionally, four of these Defendants, OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; and OptumHealth Holdings, LLC, (the "12(b)(2) Defendants"), challenge this Court's exercise of personal jurisdiction.

In essence, the 12(b)(2) Defendants contend that the Complaint fails to allege that they had sufficient minimum contacts with Pennsylvania, or that any of the alleged contacts relate to the City's claims. But as explained below, the Complaint details the many ways in which the 12(b)(2) Defendants misused their various services and increased opioid use in Philadelphia, creating higher rates of addiction, overdoses, and death. In addition, the City has pled a RICO claim which provides an independent basis for jurisdiction under 18 U.S.C. § 1965(b) over all the 12(b)(2) Defendants. Defendants' 12(b)(6) arguments also fail because they ignore large swaths of the Complaint that explain the factual basis for each Defendant's liability.

This Court should reject the Moving Defendants' efforts to avoid responsibility for their role in an enormously destructive opioid crisis that caused significant harm in Philadelphia. As to the 12(b)(2) Defendants, if the Court believes there is a question as to whether those Defendants have sufficient contacts with Pennsylvania, the Court should allow jurisdictional discovery so the parties can further explore this issue.

1

**BACKGROUND**

The City has brought claims for Public Nuisance, Negligence, violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, violations of the Philadelphia Consumer Protection Ordinance, Civil RICO, Civil Conspiracy, and Concerted Action, stemming from Defendants' central role in fueling the opioid crisis in Philadelphia. ECF 1, Complaint ("Compl.") ¶¶ 701-861. Defendants are PBMs and related entities. *Id.* ¶ 3. PBMs "provide a variety of pharmacy benefit management services . . . to prescription drug benefit plans sponsored by health insurers, self-insured employers, and state and federal government agencies." *Id*. Among their services, PBMs design and implement prescription drug "formularies," which are lists of drugs covered by pharmacy benefit plans, and control which drugs are available to plan members. *Id.* ¶¶ 152, 162. "PBMs also collect and maintain all of the data associated with all of the prescriptions dispensed to their covered lives, giving them granular insight into the ongoing health and pharmaceutical patterns of these patients." *Id.* ¶ 164. Importantly, "PBMs sit at the center of prescription drug dispensing because they contract with the manufacturers who make the drugs, the pharmacies who dispense them, and the third-party payors who pay for them." *Id.* ¶ 3.

The City alleges Defendants, both independently and in collaboration with opioid manufacturers, undertook a variety of measures to promote and facilitate the use of opioids at unsafe levels. *Id.* ¶ 1. Specifically, the City alleges Defendants: (1) colluded with Purdue and other opioid manufacturers to fraudulently and deceptively market prescription opioids in Pennsylvania, downplaying their risks (*id.* ¶ 6); (2) colluded with Purdue and other manufacturers to eliminate utilization management tools ("UMs") that restricted opioid usage (e.g. quantity limits, prior authorization requirements, etc.) (*id.*); (3) colluded with Purdue and other opioid manufacturers to increase opioid sales through favorable placement of prescription opioids on national formularies (*id.*); (4) dispensed vast quantities of prescription opioids in Pennsylvania by expanding the use of

mail-order pharmacies (*id.*), and (5) disseminated discount card and cash card services allowing patients to bypass restrictive formulary and UM tools. *Id.* ¶¶ 425-432. The City also alleges that the Moving Defendants and certain opioid manufacturers formed an association in fact enterprise "to profit from the increased and unrestricted prescribing, dispensing, and sale of prescription opioids without regard for public safety." *Id.* ¶¶ 559-560; *see also id.* ¶¶ 561-669, 787-821.

The consequences have been devastating. Defendants created a public health crisis in Philadelphia, resulting in increased rates of addiction, substance abuse, neonatal harm, overdoses, and death. *Id.* ¶¶ 492-544. All this has come at a substantial financial cost to the City. *Id.*

No one Defendant could have taken so many actions and caused such misery. Instead, as explained below, each Defendant played a unique role in creating and powering this crisis.

## LEGAL STANDARD

"In deciding motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2), district courts must accept as true the allegations of the pleadings and all reasonable inference drawn therefrom." *Colur World, LLC v. Supmedic, Inc.*, 801 F. Supp. 3d 524, 529 (E.D. Pa. 2025). The same is true when considering dismissal pursuant to Rule 12(b)(6). *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016). A district court may not "weigh[] the credibility of the parties' positions on" "a question of disputed material fact[]" at the motion to dismiss stage, but rather "should . . . le[ave] such considerations to a jury." *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 97 (3d Cir. 1999).

Unless there is an evidentiary hearing, the City need "only establish a *prima facie* case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citation omitted). "Determining personal jurisdiction is a two-step inquiry." *Skolnick v. Evolution AB (Publ)*, No. 2:24-CV-0326, 2025 WL 1208905, at *2 (E.D. Pa. Apr. 24, 2025). "First, the court assesses whether the relevant state long-arm statute allows the exercise of personal

3

jurisdiction. Second, the court determines if the exercise of jurisdiction comports with the Due Process Clause of the Constitution." *Id.* (citations omitted). Because the Pennsylvania long-arm statute extends jurisdiction "to the fullest extent allowed under the Constitution[,]" 42 Pa. C.S. § 5322(b), this Court may exercise personal jurisdiction over a defendant as long as (1) the defendant has "minimum contacts" with the Commonwealth and (2) exercising jurisdiction would comport with "traditional notions of fair play and substantial justice." *Burger King v. Rudzewicz*, 471 U.S. 462, 474-75 (1985); *see also Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 426 (E.D. Pa. 2015) (same).

## ARGUMENT

## I.   THE COURT HAS PERSONAL JURISDICTION OVER THE 12(b)(2) DEFENDANTS

The 12(b)(2) Defendants make two arguments in favor of dismissing Plaintiff's claims against them. First, these Defendants contend (at 6) that the City has not alleged that any of them "have suit-related contacts creating a substantial connection with Pennsylvania that would not offend traditional notions of fair play and substantial justice" as is necessary to establish specific jurisdiction. (The City does not contend there is general jurisdiction over the 12(b)(2) Defendants.) Second, the 12(b)(2) Defendants argue that the Court lacks jurisdiction over them under RICO, and lacks pendent jurisdiction over the City's other claims, "because there are no factual allegations tying the 12(b)(2) Defendants to the alleged RICO enterprise." *Id.* But Defendants are wrong on both counts. As explained below, the Complaint provides sufficient facts establishing that all four 12(b)(2) Defendants took actions that were directed "throughout the country, including in Pennsylvania," with the knowledge that the harmful consequences of these actions would impact Philadelphia. Further, this Court has nationwide jurisdiction over them pursuant to 18 U.S.C. § 1965(b) of the RICO statute.

**A. Plaintiff's RICO Allegations Confer Personal Jurisdiction on the 12(b)(2) Defendants**

As a threshold matter, this Court has personal jurisdiction over the 12(b)(2) Defendants under RICO. It is well established that 18 U.S.C. § 1965(b) provides for nationwide service of process for civil RICO claims, while 28 U.S.C. § 1367 provides federal courts with supplemental jurisdiction to adjudicate any related state-law claims. *See, e.g., Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 120 (3d Cir. 2020) ("[w]hen a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice") (citation omitted). "Section 1965(b) authorizes nationwide service so that at least one court will have jurisdiction over everyone connected with any RICO enterprise," including cases "in which there is no district with personal jurisdiction over all defendants." *Id*. at 120-21 (citations omitted).

The 12(b)(2) Defendants nevertheless contend (at 12) that there is no RICO or pendent jurisdiction over them because the City's RICO claims are "demonstrably not viable" and time barred. But as explained in the City's Opposition to Defendants' Joint Motion, its RICO claims are timely and viable. *See* Joint Opp., Sections I.A and II. The 12(b)(2) Defendants also argue (at 12-13) that the RICO claim against them is implausible because the City allegedly did not offer factual allegations that they joined the Formulary & UM Enterprise or participated in the conduct underlying the RICO claim. But that is a *substantive* argument about the City's RICO claim, not a jurisdictional one, and Defendants offer no precedent indicating that personal jurisdiction under RICO does not exist when a defendant alleges that it did not participate in the Enterprise.

Moreover, the 12(b)(2) Defendants cherry-pick certain allegations (at 12-13) to make it seem like the Enterprise is limited to formulary access and the prevention of UM limits. But the facts pertaining to the Enterprise include a broad range of actions taken by the 12(b)(2) Defendants, described below in Section I.B.2.  For example, the conduct of the Enterprise included "working

with the opioid manufacturers to disseminate the false marketing and to support their detailing of prescription opioid prescribers." Compl. ¶ 560; *see also id.* ¶¶ 622-627 (Defendants facilitated and disseminated the Opioid Enterprise Manufacturers' marketing messages to health care providers and provided data allowing them to track high prescribers for additional marketing to drive increased sales); *id.* ¶ 665 (transmittal through U.S. Mail and wire facilities of these marketing materials to further the Enterprise's "fraudulent scheme").  This is the same conduct that the City alleges 12(b)(2) Defendants Optum Insight Life Sciences, Inc. and OptumHealth Holdings, LCC engaged in.  *See infra* Section I.B.2.i & ii; *see also* Compl. ¶ 159. In addition, Optum Perks, LLC and Optum Discount Card Services, LCC (the "Discount Card Defendants") advanced the interests of the Enterprise by allowing patients to circumvent UM and other restrictions when purchasing prescription opioids. *See infra* Section I.B.2.iii. These actions furthered the common purpose of the Enterprise by "facilitat[ing] easier and increased opioid dispensing and sales." Compl. ¶ 560; *see also id.* ¶ 666 (to further the Enterprise's common purpose, Defendants "hid from their clients . . .[their] intent to make formulary and UM decisions that failed to limit the medically unnecessary and inappropriate prescribing, sales, or dispensing of prescription opioids"); *id.* ¶ 815 (Enterprise members "utilized the mail and wires as part of their fraud, in order to increase prescribing of prescription opioids . . . without limits from UM").

Thus, even if the City were required to prove that certain Defendants were members of the Enterprise to establish personal jurisdiction under RICO—which it is not—the Complaint sufficiently alleges that the 12(b)(2) Defendants participated in the Enterprise. Because there is personal jurisdiction under RICO, the Court also has jurisdiction over the City's other claims.

**B. The Court's Exercise of Specific Jurisdiction Over the 12(b)(2) Defendants for All Claims is Proper**

**1. The Complaint Does Not Engage in Improper Group Pleading**

The 12(b)(2) Defendants repeatedly argue (at 9-10) that the City's consolidation of OptumInsight, Inc. and OptumInsight Life Sciences, Inc. into "OptumInsight," and the inclusion of the other 12(b)(2) Defendants in the "OptumHealth" and/or "Optum" monikers, is improper and defeats the exercise of personal jurisdiction over them. Defendants (at 11) rely on *Heartrepreneur, LLC v. Jones*, No. CV 18-2417, 2020 WL 2839102, *3 (E.D. Pa. May 29, 2020), to contend that the Complaint does not allow the Court to assess each of these Defendant's contacts with Pennsylvania. But the court in *Heartrepreneur* articulated no blanket rule prohibiting the consolidation of several defendants under a singular moniker so that certain allegations could be levied in one fell swoop against defendants who, similarly situated, are alleged to have engaged in the same bad acts. *Id.* Instead, the court held that it was improper for plaintiffs to "refer to *all [d]efendants* collectively," without "separately alleg[ing] how each [d]efendant purposefully directed activities towards Pennsylvania." *Id.* (emphasis added). Similarly, *Blanding v. Walmart Inc.*, 2024 WL 3433321, *2 (E.D. Pa. July 15, 2024), also cited by Defendants (at 9) for the proposition that "group pleading[s] demonstrate[] that the City cannot establish jurisdiction over each defendant individually," articulates no such prohibition.

Here, Plaintiff does not rely on any passages in its Complaint in which *all* Defendants are lumped together and referred to collectively as "Optum" to make its jurisdictional arguments— i.e., those linking the acts of individual defendants to Pennsylvania. *See infra* Section I.A.2.i-iii. Instead, the City identifies the paragraphs that collectively refer to the two OptumInsight Defendants (OptumInsight, Inc. and OptumInsight Life Sciences, Inc.) as "OptumInsight" (Compl. ¶ 121), and which describe the activities that *both* Defendants engaged in concerning the creation

of false marketing and education materials that led to the expansion of the opioid market "throughout the country, including in Pennsylvania." *Id.* ¶ 123. Similarly, the Complaint collectively refers to the three OptumHealth Defendants (OptumHealth Care Solutions, LLC, Optum Health Holdings, LLC, and OptumHealth Networks, Inc.) as "OptumHealth" (*id.* ¶ 145), and describes their *collective* efforts to create educational programs that downplayed the risks associated with OxyContin. *Id.* ¶¶ 140, 147, 407. In other words, the Complaint leaves no mystery as to which allegations concern which Defendants, and how those Defendants' contacts with Pennsylvania subject them to this Court's jurisdiction. And at no time does Plaintiff rely on the consolidation of *all* Optum Defendants into the singular "Optum" moniker in order to establish jurisdiction against each 12(b)(2) Defendant individually. *See* below.

### 2. The City Has Pled Sufficient Facts Establishing the 12(b)(2) Defendants' Minimum Contacts with Pennsylvania

The Complaint contains sufficient facts to establish specific jurisdiction over the 12(b)(2) Defendants. Specific jurisdiction "is focused upon the particular acts of the defendant which gave rise to the underlying cause of action." *GMAC v. Keller*, 737 A.2d 279, 281 (Pa. Super. 1999) (citation omitted). Where a defendant intentionally directs its tortious conduct towards a forum state, and does so with the knowledge that the harmful effects of that conduct will be felt in the state, the defendant "must reasonably anticipate being haled into court there.'" *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Sky Motor Cars v. Auto Sport Designs, Inc.*, No. CIV.A. 09-4055, 2012 WL 3024006, at *4 (E.D. Pa. July 23, 2012) (citing *Burger King*, 471 U.S. at 476).

As demonstrated below, Plaintiff has pled sufficient facts establishing all four 12(b)(2) Defendants intentionally directed their tortious conduct towards Pennsylvania, knowing that the harmful effects of that conduct—i.e. fueling the opioid crisis—would be felt in Philadelphia.

i.    OptumInsight Life Sciences, Inc.

Despite conceding the City has personal jurisdiction over OptumInsight, Inc., Defendants argue that Plaintiff's allegations "do not suggest that that" *either* OptumInsight Defendant (including OptumInsight Life Sciences, Inc.) "had any connection with Pennsylvania, let alone suit-related contacts creating a substantial connection with Pennsylvania." Br. at 9; *see also id.* at 10. This is categorically false, since Defendants concede that there is personal jurisdiction over OptumInsight, Inc.   In addition, the City not only expressly alleges that both OptumInsight Defendants' actions expanded the use of addictive opioids "throughout the country" (Compl. ¶¶ 397, 846), but also that they created a variety of materials to downplay the dangers of opioids and expand their use and availability "*in Pennsylvania*." *Id*. ¶ 123 (emphasis added); *see also id.* ¶¶ 158-161, 259, 379-382, 397-413, 827, 846. Critically, the City alleges these specific actions contributed to the opioid crisis in Philadelphia, causing significant harm to its residents. *See, e.g., id* ¶¶ 703, 706-07, 709, 718-19, 722, 724-25, 727 (linking the creation of fraudulent marketing materials to Philadelphia's public nuisance claim); *id.* ¶¶ 745, 748, 764, 786 (linking the creation of fraudulent marketing materials to Philadelphia's RICO claim); *id.* ¶¶ 826-27 (linking the creation of algorithms, fraudulent marketing and educational materials, and misleading studies to the City's civil conspiracy claim); *id.* ¶¶ 843-46 (linking these same items to Philadelphia's concerted action claim). By performing these actions, both OptumInsight Defendants helped accelerate the opioid crisis with the knowledge and intent that Pennsylvania would be harmed, such that they should reasonably anticipate being subject to this Court's jurisdiction.  *Calder*, 465 U.S. at 789.

The 12(b)(2) Defendants (at 10) contend that the City cannot impute opioid manufacturers' contacts to OptumInsight Life Sciences, Inc. But Plaintiff does no such thing. As demonstrated above, the Complaint draws a direct line between the fraudulent marketing, educational, and

medical materials created and disseminated by both OptumInsight Defendants and the growth of the opioid crisis in Philadelphia. *Walden*, on which Defendants rely, is not about whether a party's contacts with a forum can be imputed to another party. *Walden v. Fiore*, 571 U.S. 277 at 284-85 (2014) ("relationship must arise out of contacts that the defendant *himself* creates with the forum") (emphasis in original). Here, the City alleges, *inter alia,* that both OptumInsight Defendants, including OptumInsight Life Sciences, Inc., took steps to disseminate fraudulent marketing and educational materials to boost opioid sales throughout the country, including in Pennsylvania. This misconduct and the resulting harm are alleged to have occurred *in Pennsylvania.*

       ii.    OptumHealth Holdings, LLC

Curiously, the 12(b)(2) Defendants do not raise any argument regarding why OptumHealth Holdings, LLC is not subject to specific jurisdiction. Instead, Defendants just broadly state (at 8), without further discussion as to OptumHealth Holdings, LLC, that "[t]he City fails to allege facts showing that *any* of the 12(b)(2) Defendants acted in or purposefully directed any activities towards Pennsylvania." Based on this conclusory statement and lack of argument, this Court should deny OptumHealth Holdings, LLC's request for dismissal under Rule 12(b)(2).

In any event, the Complaint alleges that OptumHealth Holdings, LLC, along with OptumHealth Care Solutions, LLC ("OHC"), and OptumHealth Networks, Inc. (collectively, "the OptumHealth Defendants"), "partnered with Purdue to educate many case managers, nurse practitioners, and medical directors," and these educational programs "contained the similar dangerous messaging regarding the use of OxyContin that led to Purdue's guilty plea in 2007." Compl. ¶ 140; *see also id.* ¶¶ 147, 407-413. The City also alleges these specific actions contributed to Philadelphia's opioid crisis, causing significant harm. *See, e.g., id.* ¶¶ 707-709, 737-742, 759-763, 774, 777-778, 806, 813, 816-820, 826-27, 843-46 (linking the creation of educational

materials to Philadelphia's claims). OptumHealth Holdings, LLC intended and knew that its acts would harm Pennsylvania, making jurisdiction over it appropriate. *Calder*, 465 U.S. at 789.

### iii. The Discount Card Defendants

The Complaint expressly alleges that the Discount Card Defendants disseminated "cash cards" which allowed patients to obtain prescription opioids at a discount without traditional controls (e.g. prior authorization requirements, quantity limits, etc.). Compl. ¶¶ 425-43. Defendants incorrectly argue (at 10) that these allegations fail to establish "a substantial connection with Pennsylvania." Defendants are mistaken. The City alleges that the entire purpose of the discount card and cash card scheme was to allow patients to circumvent UM restrictions when purchasing prescription opioids. *See*, *e.g.*, *id.* ¶ 425 ("Cash cards neither adhere to formularies, nor do they have traditional UM controls."); *id.* ¶ 426 ("Optum issues cash cards for opioids despite knowing that this allows individuals an 'end run around' dispensing controls."); *see also id.* ¶ 430. Moreover, this discount card and cash card scheme contributed to the very aims of the Formulary & UM [RICO] Enterprise to "tak[e] UM actions that would facilitate easier and increased opioid dispensing and sales" (*id.* ¶ 560), such that there would be "as little impediment as possible to opioid prescribing and dispensing." *Id.* ¶ 570. And critically, the Complaint details the numerous ways in which the RICO Enterprise allegedly harmed the City, creating a nexus between the Discount Card Defendants' suit-related conduct and the forum state. *See id.* ¶¶ 816-19.

### C. In The Alternative, This Court Should Allow Jurisdictional Discovery

Should this Court determine that the Complaint's allegations do not establish a basis for personal jurisdiction against any of the 12(b)(2) Defendants, the City respectfully requests the opportunity to conduct reasonable jurisdictional discovery. "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R"*

*Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (citation omitted). Necessary discovery should include the 12(b)(2) Defendants' Pennsylvania activities and any additional discovery necessary to determine the corporate relationship among all the Defendants and the extent of UHG's and Optum, Inc.'s control over their subsidiaries.

## II. PLAINTIFF ALLEGES SUFFICIENT FACTS SUPPORTING ITS CLAIMS AGAINST THE CORPORATE-PARENT AND AFFILIATE ENTITIES

All Moving Defendants briefly contend (at 13-15) that Plaintiff's claims should be dismissed under Rule 12(b)(6). But as explained below, Defendants' arguments conveniently ignore large swaths of the Complaint.

### i.    Optum, Inc. and OptumHealth Holdings, LLC

Defendants assert (at 14) that Optum, Inc. and OptumHealth Holdings, LLC, are corporate parents or holding companies for whom "the City has alleged nothing more than standard parent-subsidiary relationships." Defendants are wrong. The Complaint makes no allegations related to OptumHealth Holdings, LLC's status as a corporate parent, nor does it even *nominally* ascribe liability to OptumHealth Holdings, LLC for the bad acts of its subsidiaries. And Plaintiff's allegations regarding OptumHealth Holdings, LLC go well beyond a "standard parent-subsidiary relationship." As detailed above, OptumHealth Holdings, LLC (together with OHC and OptumHealth Networks, Inc. (*see id.* ¶ 145)) worked with Purdue on "educational programs" for medical professionals that included dangerous messages about the undertreatment of pain in order to expand opioid use. *Id.* ¶¶ 140, 147, 407-413. These very acts fueled Philadelphia's opioid crisis. *See, e.g., id.* ¶¶ 707-709, 737-742, 759-763, 774, 777-778, 806, 813, 816-820, 826-27, 843-46.

With respect to Optum, Inc., Plaintiff alleges that it is registered to do business in Pennsylvania (*id.* ¶ 113), that it "manag[es] the subsidiaries that administer United Health Group's pharmacy benefits," (*id.* ¶ 112), and "engage[s] in five types of business activities: (1) data analytics; (2) pharmacy benefit management; (3) healthcare services; (4) mail-order pharmacy dispensing; and (5) medical discount card services." *Id.* ¶ 115.

The general principle that Defendants (at 14) cite, that "a parent corporation . . . is not liable for the acts of its subsidiaries," only applies where—unlike here—the parent company's "control" of the subsidiary is limited to "ownership of another corporation's stock." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Meanwhile, it is well established that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135, n.13 (2014); *see also McCaffrey v. Windsor at Windermere Ltd. P'ship,* No. CV 17-460, 2017 WL 5483772, at *5 (E.D. Pa. Nov. 15, 2017) (owner of apartment building, registered to do business in Pennsylvania, can be liable for acts of subsidiary management company).  *Mississippi v. Eli Lilly & Co*, No. 3:21-cv-674-KHJ-MTP (S.D. Miss. Aug. 15, 2022), and *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770, at *10-12 (D. Minn. Apr. 5, 2022), are inapplicable.  Br. at 14.  Those out-of-circuit decisions concern entirely different state laws, different contacts with those states, and different facts. Under Pennsylvania law, Plaintiff has met its burden as to Optum, Inc. and OptumHealth Holdings, LLC.

> ii.    OptumInsight Life Sciences, Inc., OptumInsight, Inc. and OptumHealth Networks, Inc.

Regarding OptumInsight Life Sciences, Inc. and Optum Health Networks, Inc., Defendants curiously argue "the City does not allege any particular conduct by any of these entities at all." Br. 14. But, as explained above, the City expressly alleges OptumInsight Life Sciences, Inc. (along with OptumInsight, Inc. (Compl. ¶ 121)) created all kinds of materials that downplayed the dangers

of opioids while ensuring their expanded use and availability in Pennsylvania. *Id*. ¶ 123; *see also, id.* ¶¶ 158-161, 259, 379-382, 397-413, 827, 846. Thus, Defendants are wrong in contending (at 15) that the City "never connects its allegations against OptumInsight, Inc. to the elements of any claim." Instead, these allegations detail how OptumInsight, Inc. was paid millions of dollars as it colluded with UHG and opioid manufacturers to spread misinformation and expand the opioid market. Similarly, the Complaint expressly alleges that OptumHealth Networks, Inc. (along with OptumHealth Holdings, LLC and OHC (*id.* ¶ 145)) worked with Purdue to expand the opioid market through its educational programs. *Id.* ¶¶ 140, 147, 407-413.

  iii. <u>OptumRx Discount Card Services, LLC and Optum Perks, LLC</u>

  Defendants argue that that the Discount Card Defendants had neither a "duty to refrain from administering prescription discount programs," nor a "duty to restrict available discounts on lawful products to prevent potential social ills." Br. 14-15. But these are not the duties the City alleges Defendants breached. As explained in the City's Opposition to Defendants' Joint Motion, all Defendants, including Optum's Discount Card Defendants, voluntarily undertook a legal duty to the City to use reasonable care and skill and to not create a foreseeable risk of harm. *See* Joint Opp., Section IV.A. As shown above, the City alleges that the discount and cash card schemes allowed patients to circumvent traditional drug quantity restrictions when purchasing prescription opioids, which also advanced the interests of the RICO enterprise by facilitating easier and increased opioid dispensing and sales. *See supra* Sections I.A.2.iii & I.B.ii.

  iv. <u>UnitedHealth Group, Inc. and OHC</u>

  Defendants argue (at 15) the claims against UHG and OHC should be dismissed because "they amount to little more than guilt by association." Defendants claim that neither of the two paragraphs they cite from the Complaint "tie[] UHG to any wrongdoing." *Id.* But the allegations concerning UHG go well beyond these two paragraphs. Plaintiff alleges UHG "controls the

enterprise-wide policies that inform both [UnitedHealthcare's ("UHC")] and Optum's lines of business" (Compl. ¶ 109), and that its "conduct had a direct effect in Pennsylvania, including Philadelphia." *Id.* ¶ 110. It was through UHG's "various enterprises" that OptumHealth partnered with Purdue to spread false messaging about OxyContin to prescribers (*id.* ¶ 140), despite UHG's knowledge as far back as 2001 that "Purdue ha[d] acted irresponsibly in over-promoting the use of oxycodone," leading to "an increase in patient morbidity and mortality." *Id.* ¶ 242. Nevertheless, in 2003, under the direct control of UHG (Compl. ¶ 109), "UHC and OptumInsight met with Purdue to . . . develop a comprehensive plan  . . . to re-educate physicians on opioid use." *Id.* ¶ 379.

Defendants acknowledge Plaintiff's allegations concerning OHC's miseducation of healthcare practitioners, but argue the Complaint "never specifically says what misstatements were allegedly made, let alone who, if anyone, at [OHC] knew or should have known they were false." Br. 15. But Defendants point to no authority requiring the City to name individual employees who knew of the falsity of these educational materials, as no such requirement exists. In any event, the City alleges the educational materials were misleading because they "downplay[ed] the addictive properties of opioids, including OxyContin" (Compl. ¶ 827) and attempted to "convince payors that long-term opioid use … did not lead to serious addiction" (*id.* ¶ 846), "long after their own data told them that the huge increases in opioid prescribing were creating a crisis of addiction, overdose, and death across the United States." *Id.* ¶ 844.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety.  In the alternative, the Court should deny this motion without prejudice and grant the City of Philadelphia leave to conduct jurisdictional discovery of the 12(b)(2) Defendants.  The City requests oral argument on this motion.

DATED: February 24, 2026

Respectfully Submitted,

THE CITY OF PHILADELPHIA LAW DEPT.

By: /s/Catherine Hancock Dorsey

Renee Garcia, City Solicitor
(PA Bar No. 315622)
Anne Taylor, Litigation Chair
(PA Bar No. 206057)
Lydia Furst, Chief Deputy City Solicitor
(PA Bar No. 307450)
Michael Pfautz, Deputy City Solicitor
(PA Bar No. 325323)
**CITY OF PHILADELPHIA LAW DEPT.**
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
Tel: (215) 683-5000
renee.garcia@phila.gov
anne.taylor@phila.gov
lydia.furst@phila.gov
michael.pfautz@phila.gov

Jerry R. DeSiderato (PA Bar No. 201097)
Timothy J. Ford (PA Bar No. 325290)
Silvio Trentalange (PA Bar No. 320606)
Stanford B. Ponson (PA Bar No. 322548)
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel.: (215) 575-7000
jdesiderato@dilworthlaw.com
tford@dilworthlaw.com
strentalange@dilworthlaw.com
sponson@dilworthlaw.com

Gregory B. Heller (PA Bar No. 61130)
**FELDMAN SHEPHERD
WOHLGELERNTER TANNER
WEINSTOCK DODIG LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Tel: (215) 567-8300
gheller@feldmanshepherd.com

Catherine Hancock Dorsey (pro hac vice)
**BARON & BUDD, P.C.**
2600 Virginia Ave. N.W. Suite 900
Washington, DC 20037
Tel.: (202) 333-4562
cdorsey@baronbudd.com

Russell W. Budd (pro hac vice)
Christine C. Mansour (pro hac vice)
**BARON & BUDD, P.C.**
3102 Oak Lawn Ave., Suite 100
Dallas, TX 75219
Tel.: (214) 521-3605
rbudd@baronbudd.com
cmansour@baronbudd.com

J. Burton Leblanc, IV (pro hac vice)
**BARON & BUDD, P.C.**
2600 CitiPlace Drive, Suite 400
Baton Rouge, LA 70808
Tel.: (225) 927-5441
bleblanc@baronbudd.com

Daniel Alberstone (pro hac vice)
Mark Pifko (pro hac vice)
Peter Klausner (pro hac vice)
Evan Zucker (pro hac vice)
Elizabeth Smiley (pro hac vice)
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Los Angeles, California 91436
Tel.: (818) 839-2333
dalberstone@baronbudd.com
mpifko@baronbudd.com
pklausner@baronbudd.com
ezucker@baronbudd.com
esmiley@baronbudd.com

Andrew B. Sacks (Pa Bar No. 41390)
John Weston (PA Bar No. 26314)
**SACKS LAW, LLC**
1 Liberty Place, 55th Floor
1650 Market Street
Philadelphia, PA 19103
Tel.: (215) 925-8200
asacks@sackslaw.com
jweston@sackslaw.com


Stephen A. Sheller (PA Bar No. 3270)
**SHELLER PC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel.: (215) 790-7300
sasheller@sheller.com


David Kairys (PA Bar No. 14535)
P.O. Box 4073
8225 Germantown Avenue
Philadelphia, PA 19118
dkairys@verizon.net

Anthony J. Majestro (pro hac vice)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite 807
Charleston, WV 25301
Tel.: (304) 346-2889
amajestro@powellmajestro.com


Peter J. Mougey (pro hac vice)
Jeffrey R. Gaddy (pro hac vice)
**LEVIN, PAPANTONIO, PROCTOR,
BUCHANAN, O'BRIEN, BARR &
MOUGEY P.A.**
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
(850) 435-7068
pmougey@levinlaw.com
jgaddy@levinlaw.com


*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2026, the foregoing was served upon counsel of record via the Court's electronic case filing system.

<u>/s/Catherine Hancock Dorsey</u>
Catherine Hancock Dorsey