**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Plaintiff, | : | No. 2:25-cv-06185-GJP |
| | : | |
| vs. | : | |
| | : | |
| CVS HEALTH CORPORATION, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**PLAINTIFF'S OPPOSITION TO THE CVS DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    I.     The Complaint Plausibly Alleges Breach of Contract. ........................................... 2

          A.     CVS Failed to Remit Rebates to the City. .................................................. 3

          B.     CVS Failed to Consider Changes to the Formulary. .................................. 4

          C.     CVS Breached Its DUR Obligation. ........................................................... 5

          D.     CVS's Mail-Order Pharmacies Breached their Duty to Dispense
                  Prescriptions Lawfully. ............................................................................... 6

          E.     CVS Breached the Implied Covenant of Good Faith and Fair
                  Dealing. ....................................................................................................... 6

    II.    The City's Breach of Contract Claim Should No Be Dismissed as
          Untimely. ............................................................................................................... 7

    III.   This Court Should Disregard CVS's Consent Decree with the
          Commonwealth. ................................................................................................... 10

    IV.   This Court Has Personal Jurisdiction Over the CVS Holding Companies. .......... 14

CONCLUSION .................................................................................................................. 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Zimmer US, Inc.*,
    943 F.3d 159 (3d Cir. 2019).....................................................................................7

*Ahmed v. Wells Fargo Bank, NA*,
    432 F. Supp. 3d 556 (E.D. Pa. 2020) ......................................................................11

*Alaska v. Express Scripts, Inc.*,
    774 F. Supp. 3d 1150 (D. Alaska 2025) ...................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................6

*Boehm v. Philadelphia*,
    59 Pa. Super. 441 (1915)..........................................................................................13

*City of Boston v. Express Scripts, Inc.*,
    765 F. Supp. 3d 31 (D. Mass. 2025) .........................................................................9

*Com., Dep't of Gen. Servs. v. Ogontz Area Neighbors Ass'n*,
    483 A.2d 448 (Pa. 1984) ...........................................................................................13

*Crouse v. Cyclops Indus.*,
    745 A.2d 606 (Pa. 2000) ........................................................................................7, 9

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002)..................................................................................................12

*Ferguson v. Valero Energy Corp.*,
    454 F. App'x 109 (3d Cir. 2011) ..............................................................................12

*Foster v. Watson*,
    Civ. No. 21-958, 2022 WL 3716573 (W.D. Pa. May 23, 2022)................................3

*Gallo v. PHH Mortg. Corp.*,
    916 F. Supp. 2d 537 (D.N.J. 2012) ...........................................................................7

*Gleason v. Borough of Moosic*,
    15 A.3d 479 (Pa. 2011).............................................................................................10

*Group Against Smog and Pollution, Inc. v. Shenango Inc.*,
    810 F.3d 116 (3d Cir. 2016)......................................................................................11

*Henkel of Am., Inc. v. Reliastar Life Ins. Co.*,
   Civ. No. 3:18-cv-00965, 2021 WL 2857503 (D. Conn. July 8, 2021) ..................................5

*Heraeus Medical GmbH v. Esschem, Inc.*,
   927 F. 3d 727 (3d Cir. 2019)..................................................................................................8

*In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*,
   No. 05-7097, 2008 WL 630883 (N.D. Ill. Mar. 5, 2008) ......................................................11

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)..........................................................................................10-11

*J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*,
   792 A.2d 1269 (Pa. Super. 2002).........................................................................................2

*Jackson v. Wells Fargo Bank, N.A.*,
   No. 2:12-cv-1262, 2013 WL 5945732 (W.D. Pa. Nov. 6, 2013)............................................6

*Kalan v. Farmers & Merchants Trust Co. of Chambersburg*,
   No. 15-1435, 2015 WL 13874056 (E.D. Pa. Nov. 23, 2015) .................................................11

*King County v. Express Scripts*,
   No. 24-cv-49-BJR, 2025 WL 1082130 (W.D. Wash. Apr. 10, 2025) .....................................9

*Com. ex rel. Krasner v. Att'y Gen.*,
   309 A.3d 265 (Pa. Cmwlth. 2024) ........................................................................................12

*McDevitt v. Borough of Clementon*,
   2020 WL 468405 (D.N.J. Jan. 28, 2020) ..............................................................................11

*Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*,
   619 F.2d 1001 (3d Cir. 1980).................................................................................................2

*Mest v. Cabot Corp.*,
   449 F.3d 502 (3d Cir. 2006)....................................................................................................8

*Montanez v. HSBC Mortg. Corp. (USA)*,
   876 F. Supp. 2d 504 (E.D. Pa. 2012) .................................................................................6, 7

*Muehlieb v. City of Philadelphia*,
   574 A.2d 1208 (Pa. Cmwlth. 1990) .....................................................................................13

*Nieves v. Hess Oil Virgin Islands Corp.*,
   819 F.2d 1237 (3d Cir. 1987).................................................................................................13

*Pacitti v. Macy's*,
   193 F.3d 766 (3d Cir. 1999)....................................................................................................3

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
    998 F.2d 1192 (3d Cir. 1993)...............................................................................11

*Somers v. Somers*,
    613 A.2d 1211 (Pa. Super. 1992)..........................................................................6

*State Farm Fire & Casualty Co. v. PECO Energy Co.*,
    Civ. No. 19-3288, 2020 WL 757857 (E.D. Pa. Feb. 13, 2020) ...........................3

*Worldcom, Inc. v. Graphnet, Inc.*,
    343 F.3d 651 (3d Cir. 2003).................................................................................11

**Statutes**

53 P.S. § 13101, *et seq.*...............................................................................................13

Phil. Code § 9-6304 .....................................................................................................13

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................10

## INTRODUCTION

The City of Philadelphia ("Plaintiff" or the "City") sued several pharmacy benefit managers ("PBMs") and related entities, including the CVS Defendants ("CVS"), for fueling Philadelphia's opioid crisis. The City's suit includes a breach of contract claim against CVS, which has provided PBM services to the City for 20 years. CVS's separate motion to dismiss (ECF 82) fails on every front. First, the City has plausibly alleged multiple breaches of its contracts with CVS, including misappropriation of rebates, formulary mismanagement, failure to properly perform drug utilization review ("DUR"), unlawful dispensing of controlled substances, and violations of the implied covenant of good faith and fair dealing. CVS's alternative reading of its contractual obligations is not sufficient to show that the City's factual allegations fail to state a claim as a matter of law. Second, the City's claims, including the contract claim, are timely under various tolling doctrines given CVS's systematic concealment of its continuing misconduct. Third, the Court should not consider the Consent Decree between CVS and the Commonwealth of Pennsylvania ("Commonwealth") but, even if the Court does, it does not preclude the City's claims. Finally, this Court has personal jurisdiction over all CVS Defendants.

## FACTUAL BACKGROUND

CVS has served as the City's PBM since 2006, under numerous written agreements covering thousands of current and former employees, for which the City has paid tens of millions of dollars. ECF 1 ("Compl.") ¶¶ 548-49.[1] Although the contracts' terms varied, each contract required CVS to provide the City with "formulary management, DUR [Drug Utilization Review], and mail service pharmacy services." *Id.* ¶¶ 550, 858. A formulary is a list of medications that

---

[1] The City hereby incorporates the statement of facts in the City's Opposition to Defendants' Joint Motion to Dismiss, Joint Opp. at 2-4, as well as the legal standards from its Joint Opposition and from its Opposition to the Optum Defendants' Motion to Dismiss. *See* Joint Opp. at 4-5; Optum Opp. at 3-4.

PBMs develop and approve for the health plans they administer, based on clinical safety, efficacy, and cost. *Id.* ¶¶ 162, 163, 169. The contracts imposed four duties on CVS that are relevant here. First, CVS was obligated to remit to the City manufacturer "rebates" for covered drugs. *Id.* ¶¶ 557, 858(d). Second, CVS was required to consider on at least a quarterly basis whether formulary changes were necessary, based upon factors such as customer safety, clinical appropriateness, efficacy, new clinical information, changes in the pharmaceutical industry or practices, and new legislation and regulations. *Id.* ¶¶ 551, 858(a). Third, the contracts required CVS to provide "automated concurrent DUR" to alert the City to potentially problematic prescriptions by its health plan members, such as duplicative prescriptions, excessive drug use, or early refills. *Id.* ¶¶ 553, 858(b). Fourth, CVS's mail-order pharmacies were required to comply with the law and exercise "good pharmacy practices." *Id.* ¶¶ 555-56, 858(c); *see also id.* ¶¶ 166, 170-71, 433-477, 481.

The City alleges that CVS breached these provisions, which damaged the City in that it (1) paid millions of dollars for PBM services that did not comply with the contracts; (2) did not receive the promised rebates; and (3) has borne significant costs because of the opioid epidemic created, in part, by CVS's oversupply of opioids. *Id.* ¶¶ 558, 859-60.

## ARGUMENT

### I.    The Complaint Plausibly Alleges Breach of Contract.

To plead a breach of contract claim, a plaintiff must allege: (1) the existence of a contract, (2) a breach of a duty imposed by it, and (3) resulting damages. *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002). CVS challenges only the breach element, asserting that the City misconstrues CVS's contractual duties. *See* ECF 82-1 at 7-10. At the pleading stage, however, any ambiguity as to the contract's meaning precludes dismissal. *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011-12 (3d Cir. 1980). Thus, unless "the contract's terms are subject only to one reasonable interpretation," contract interpretation should

be left to the factfinder. *Foster v. Watson*, Civ. No. 21-958, 2022 WL 3716573, at *4 (W.D. Pa. May 23, 2022) (quoting *Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir. 1999)); *see also State Farm Fire & Casualty Co. v. PECO Energy Co.*, Civ. No. 19-3288, 2020 WL 757857, at *3 (E.D. Pa. Feb. 13, 2020) (contract was not "so unambiguous" that breach of contract claim could be resolved as a matter of law). At this stage of proceedings, the Court cannot conclude that the contracts unambiguously bar the City's claims. *Foster*, 2022 WL 3716573, at *5.

Defendants submit excerpts from two of the at-issue contracts to support their motion to dismiss. *See* ECF 82-2, 82-3. Those contract excerpts are *not* inconsistent with the City's allegations, but in any event, the Court should not delve into the contracts at the motion to dismiss stage. Indeed, it would be inappropriate to do so, given that there are a series of agreements and the terms of those agreements varied, Compl. ¶ 550, but Defendants submitted only sections of two of those agreements to the Court. This Court has no way of knowing whether those two agreements are substantively the same as the other agreements or whether the excerpted portions contain all the provisions relevant to the dispute. In short, Defendants' submissions highlight that that "the Court is simply not in a position 'to determine whose interpretation of the relevant provision is correct or even whether the provision is sufficiently ambiguous to warrant referral to the fact-finder.'" *Foster*, 2022 WL 3716573, at *4. As a result, "'it would be improper for this court to interpret the [contracts] finally in ruling upon a motion to dismiss.'" *State Farm*, 2020 WL 757857, at *3. Rather, because the City alleges plausible breaches based on a reasonable interpretation of the contracts, as explained below, this Court should deny dismissal.

### A.  CVS Failed to Remit Rebates to the City.

The City alleges that the contracts required CVS to pass through to the City any rebates that it received from prescription drug manufacturers. Compl. ¶¶ 557, 858. The City alleges that CVS breached this duty by relabeling some of the "rebates" it received as "fees," or

"compensation," so as to circumvent its obligation to pay those amounts to the City. *Id.* ¶¶ 558, 859; *see also id.* ¶¶ 174, 179-184, 345, 860. Those allegations plausibly state a breach of contract claim.

CVS does not dispute that it has a duty to remit rebates to the City. Instead, CVS asserts that, because it "disclosed" that it "may receive and retain fees or other compensation from pharmaceutical companies," which are separate from rebates, CVS was not required to remit these other fees to the City. ECF 82-1 at 10. But that is not an answer to the City's claim. The alleged breach is not based on a failure to remit "fees," but rather that CVS "mislabeled rebate payments" as "fees" to avoid paying the City all of the rebates owed. Compl. ¶ 558; *see also id.* ¶¶ 174, 179-184, 345, 860. The City alleges that CVS was able to do this because CVS controls the rebate negotiations, collects the payments, and chooses how to categorize rebates and fees under confidential agreements with drug manufacturers that the City lacks access to. *Id.* ¶¶ 166, 179-182, 345-46, 673, 681. CVS suggests (ECF 82-1 at 2-3) that the City's breach allegation is implausible because the City should have been able to detect any improperly withheld rebates through its contractual audit rights. But, as CVS well knows, the City's contractual audit rights permit the City to audit only "rebates," not "fees." Compl. ¶¶ 181-82.

**B.  CVS Failed to Consider Changes to the Formulary.**

The City alleges that CVS had a duty to determine, on at least a quarterly basis, whether certain factors, such as customer safety, efficacy, new clinical information, changes in industry practices, or new laws, warranted changes to its formulary. Compl. ¶¶ 551, 858. The City alleges that CVS abdicated this duty by deliberately refusing to consider any formulary changes that would have restricted opioid use because it knew that such changes would cut into its profits. *Id.* ¶¶ 552, 859; *see also id.* ¶¶ 172-175. In short, the City does not dispute that CVS has discretion regarding

formulary changes, ECF 82-1 at 8, but rather that it failed to exercise that discretion.  That states a plausible claim for breach.

### C.  CVS Breached Its DUR Obligation.

The City has also plausibly alleged that CVS breached the DUR provisions.  CVS was required to provide automated concurrent DUR services, which were to flag potentially problematic prescriptions, including those that indicated over-use, excessive drug use, and early refills.  Compl. ¶¶ 553, 858; *see also id.* ¶¶ 294-95.  But the City alleges that CVS failed to "properly" perform DUR to identify health plan beneficiaries with overuse or excessive drug use because it had a conflict of interest:  properly performing DUR would have prevented "over-utilization and excessive drug usage," which would have reduced its "profits."  *Id.* ¶¶ 554, 859; *see also id.* ¶¶ 166, 295-98, 305 (Defendants intentionally refused to use DUR to control opioid misuse).  That states a plausible claim that CVS breached its DUR duty.

CVS suggests that, because "the City does not allege that such services were not provided" at all, there can be no breach.  ECF 82-1 at 8. That is absurd; breach of contract is not limited to non-performance, but can include, for example, delayed performance or substandard performance.  CVS further argues that the City, not CVS, bore "the responsibility for acting on any of the information provided." ECF 82-1 at 9.  But that is no answer to the allegation that CVS failed to provide adequate DUR information on which the City could act. *See Henkel of Am., Inc. v. Reliastar Life Ins. Co.*, Civ. No. 3:18-cv-00965, 2021 WL 2857503, at *12 (D. Conn. July 8, 2021) (denying dismissal of breach of contract claim based on PBM's DUR duty to identify "circumstances reflecting inappropriate drug usage.").

### D. CVS's Mail-Order Pharmacies Breached their Duty to Dispense Prescriptions Lawfully.

The City alleges that its contracts required CVS's mail-order pharmacies to fill prescriptions in accordance with applicable law and consistent with good pharmacy practices. Compl. ¶¶ 555, 858. CVS breached this duty by "knowingly and intentionally dispens[ing] opioids outside the usual course of professional pharmacy practice," in violation of federal and Pennsylvania controlled substance laws. *See, e.g.*, Compl. ¶¶ 433, 438, 440, 446-452, 459-460, 463-466, 485-486, 556, 789, 799, 859. CVS argues (ECF 82-1 at 9) that the City's allegations fail to state a claim because the City has not identified specific unlawful prescriptions that CVS dispensed to the City's beneficiaries. But no such detail is required at the pleading stage. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### E. CVS Breached the Implied Covenant of Good Faith and Fair Dealing.

Pennsylvania law implies a covenant of good faith and fair dealing in every contract. *See Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. 1992). A breach occurs when a party, even acting within the literal terms of the contract, exercises discretion unreasonably, against the contract's purpose, or to benefit itself at the expense of the counterparty. *See Jackson v. Wells Fargo Bank, N.A.*, No. 2:12-cv-1262, 2013 WL 5945732, at *15 (W.D. Pa. Nov. 6, 2013) ("the duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations and it may be breached when a party exercises discretion authorized in a contract in an unreasonable way"); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 513 (E.D. Pa. 2012) (same). The City's allegations state a breach of this duty as well.

In performing its PBM services for the City, CVS chose to prioritize its own profits, by promoting opioid use and avoiding formulary restrictions on opioids, at the expense of the City's interests in protecting the health of its beneficiaries and designing formularies based on clinical

appropriateness, safety, and regulations. Compl. ¶¶ 261-285, 289-301. Instead of using the real-time prescription opioid claims and utilization data CVS collected to help the City curb opioid abuse among its beneficiaries, CVS sold the City's data to manufacturers to help them boost opioid sales. *Id.* ¶¶ 174, 182, 230, 362-386, 558, 673-681. Although CVS promised to remit its rebates to the City, CVS instead concealed the full extent of those rebates by relabeling some as "fees" to avoid payment of those amounts to the City. *Id.* ¶¶ 174, 179-184, 345, 557-58, 859-60. Taken together, along with the allegations discussed above, the City adequately alleges that CVS acted in bad faith, prioritizing self-interest over the City's contractual rights and plan members' safety, thereby breaching the implied covenant of good faith and fair dealing. *See, e.g., Montanez*, 876 F. Supp. 2d. at 512 (covenant breached when lender profited at the counterparty's expense); *Gallo v. PHH Mortg. Corp.*, 916 F. Supp. 2d 537, 552 (D.N.J. 2012) (covenant breached by charging fees in excess of actual costs and retaining kickbacks, even though the contract authorized discretion over fee setting).

## II.    The City's Breach of Contract Claim Should No Be Dismissed as Untimely.

Whether a claim is time-barred is typically a fact question that precludes dismissal at the pleading stage; dismissal is appropriate only if the claim's untimeliness is apparent on the face of the complaint. *Adams v. Zimmer US, Inc.*, 943 F.3d 159, 164 (3d Cir. 2019); *see also Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000) ("[O]nly where the facts are so clear that reasonable minds *cannot differ* may the … limitations period be determined as a matter of law.") (emphasis in original). CVS cannot meet that burden here.[2] Indeed, CVS concedes (ECF 82-1 at 1) that insofar as the City's contract claim is based on contracts after 2021, the claim is timely. And as to

---

[2] CVS contends that its statute of limitations arguments "apply to all of the claims." ECF 82-1 at 1. The City herein addresses only the timeliness of its contract claim, but incorporates by reference the timeliness arguments as to its other claims. *See* Joint Opp., Section I.

the claims based on contracts between 2006 and 2021, the City has plausibly alleged that its claims are timely under several tolling doctrines.

Under Pennsylvania's discovery rule, the limitations period does not run until "the plaintiff knows, or reasonably should know, (1) that he has been injured, ___**and**___ (2) that his injury has been caused by another party's conduct." *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (emphasis added). The limitations period may also be tolled by fraudulent concealment, which applies when "through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry," *id.* at 516, or by the continuing violations doctrine, which defers accrual for continued unlawful conduct, including earlier related acts that would otherwise be time-barred. *Heraeus Medical GmbH v. Esschem, Inc.*, 927 F. 3d 727, 741 (3d Cir. 2019).

The City has plausibly pled tolling under each doctrine. (The City does not invoke *nullum tempus* with respect to its contract claim.) It alleges that CVS deceived, misled, and purposefully concealed its unlawful conduct. Compl. ¶¶ 2, 671-691, 696-700, 739-744, 760-762, 859. CVS misrepresented that it was promoting safe opioid use, falsely assured the public that it was complying with its legal obligations, and concealed the nature of its relationships and agreements with opioid manufacturers. *Id.* ¶¶ 681, 675, 677, 680-685. CVS concealed that it was not reviewing formularies for potential opioid restrictions because such changes would have cut into its revenue. *Id.* ¶¶ 680, 771. CVS likewise concealed that it was not properly performing DUR because it had a financial incentive to *not* identify inappropriate opioid use. *Id.* ¶¶ 666, 680-681. Moreover, CVS mislabeled some of its "rebates" as "fees," obscuring the fact that it was withholding rebates owed to the City. As a result, the City did not discover, and could not have reasonably discovered through diligent inquiry, that CVS had breached its contract until, at the earliest, 2022, after the City obtained documents produced in the federal opioid MDL and other litigation in late 2021,

which revealed conduct by PBMs that led to the City's investigation of Defendants and discovery of its claims. *Id.* ¶¶ 1, 672-76. In addition, CVS's unlawful conduct was ongoing. *Id.* ¶¶ 686, 688, 690. Thus, it is not apparent from the face of the complaint that the City's breach of contract claim is untimely and CVS's motion to dismiss should be denied.

CVS relies on *City of Boston v. Express Scripts, Inc.*, 765 F. Supp. 3d 31 (D. Mass. 2025) (appeal pending), to argue that the City knew, or at least should have known, of its contract claim since at least 2018, based on other plaintiffs' causes of actions against PBMs and Philadelphia's earlier opioids suits against other opioid actors. *See* ECF 82-1 at 1, 5. There is no reason to think, though, that the facts that were found sufficient to put Boston on notice as to its public nuisance claim, 765 F. Supp. 3d at 42-43, are sufficient as a matter of law to have put the City on notice as to its *contract* claim, which is based on different facts. Moreover, as recognized in *Alaska v. Express Scripts, Inc.*, 774 F. Supp. 3d 1150 (D. Alaska 2025), "whether a different plaintiff's filing of a case against [a PBM] in 2018 was sufficient to give [Alaska] constructive knowledge of its claim is a factual question inappropriate for resolution on a motion to dismiss." *Id.* at 1166. Given the City's allegations that it could not have discovered its claim until after relevant facts were produced in the MDL and other litigation, Compl. ¶¶ 1, 673-75, this Court should likewise deny dismissal on statute of limitations grounds at this stage. *See also King County v. Express Scripts*, No. 24-cv-49-BJR, 2025 WL 1082130, at *3 (W.D. Wash. Apr. 10, 2025) (awareness of opioid-related harms or prior suits is not sufficient to establish accrual of claim as to a particular defendant).

Indeed, all of CVS's other arguments (ECF 82-1 at 5-6) raise factual issues that confirm that dismissal should be denied because the timeliness of the City's contract claim should be determined by the factfinder. *Crouse*, 745 A.2d at 611. In any event, CVS's alleged facts are

contradicted by the Complaint. For example, the City could not know CVS's formulary decisions were based on secret and collusive agreements rather than safety and efficacy, as CVS claimed. Compl. ¶¶ 181, 190, 284-86, 345. CVS asserts (ECF 82-1 at 6) that the City's "audit and inspection" rights should have triggered inquiry notice, but whether these limited audit rights could have uncovered the scheme, and whether the City exercised due diligence, are factual questions that preclude dismissal, especially given the allegations of obfuscation. Compl. ¶¶ 164, 168, 216, 683; *Gleason v. Borough of Moosic*, 15 A.3d 479, 487 (Pa. 2011) ("Whether [plaintiff] should have acted with greater diligence to investigate" or known earlier is "an issue of fact."). In addition, CVS claims the City could have reviewed manufacturer agreements, but the Complaint alleges they were confidential. Compl. ¶¶ 345, 673, 681. CVS's argument that the contracts "disclosed" fees is beside the point; the fees disclosed did not alert the City that CVS was mislabeling or concealing rebates owed to the City. *Id.* ¶¶ 174, 181, 182, 558, 859. For all these reasons, CVS cannot establish as a matter of law that the City's claims are time-barred.

## III.    This Court Should Disregard CVS's Consent Decree with the Commonwealth.

CVS invokes its Consent Decree with the Commonwealth as an affirmative defense, asserting that it bars a number of the City's claims.  In the Consent Decree, the Commonwealth's Attorney General released claims against CVS "to the 'maximum extent of [his] power'" by "any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign" capacity "on behalf of ... the general public."  ECF 82-1 at 11 (quoting Ex. 3).  CVS contends that this release encompasses the City's UTPCPL, Consumer Protection Ordinance (CPO), and public nuisance claims.  *Id.* (CVS does not argue that the Consent Decree bars the City's RICO, negligence, breach of contract, conspiracy, or concerted action claims.)

As an initial matter, this Court should not consider the Consent Decree.  Generally, courts may not consider matters extraneous to the pleadings on a Rule 12(b)(6) motion unless they are

undisputedly authentic *and* incorporated by reference in the complaint or relied upon by the plaintiff. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). But this narrow exception does not permit a defendant to attach other documents of its choosing to a motion to dismiss, unless its motion is converted into a summary judgment motion. *Pension Benefit*, 998 F.2d at 1196; *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, No. 05-7097, 2008 WL 630883, at *3 (N.D. Ill. Mar. 5, 2008).

This rule prohibits consideration of the Consent Decree, which is not relied upon, attached to, or incorporated in the Complaint. *See, e.g., Ahmed v. Wells Fargo Bank, NA*, 432 F. Supp. 3d 556, 561-62 (E.D. Pa. 2020) (declining to consider a settlement agreement not relied upon in complaint); *McDevitt v. Borough of Clementon*, 2020 WL 468405, at *4-5 (D.N.J. Jan. 28, 2020) (same). CVS's own case (ECF 82-1 at 11) does not suggest otherwise. *See Group Against Smog and Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (considering consent decree only after finding plaintiff attached "undisputedly authentic" portions to the complaint).

But even if the Court were to consider the Consent Decree, the Court cannot resolve CVS's affirmative defense without further factual development. "The facts necessary to establish an affirmative defense must generally come from matters outside the complaint." *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir. 2003). As a result, affirmative defenses can rarely be resolved on a motion to dismiss. *Id.* at 657-58; *see also Kalan v. Farmers & Merchants Trust Co. of Chambersburg*, No. 15-1435, 2015 WL 13874056 at *1 n.1 (E.D. Pa. Nov. 23, 2015) (because facts "outside of the complaint" are usually "necessary to establish an affirmative defense," "the matter should not be resolved through a motion to dismiss").

That is true here, where the Court would need to make numerous factual findings in CVS's favor before it could conclude that the Consent Decree bars any of the City's claims. For example, the Court would need to determine if the Consent Decree applies to the City. It does not, because the City is not a party to the Consent Decree. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2011) (settlement agreement containing a release cannot bind nonparties).

The Court would also need to determine whether the "'maximum extent of [the Attorney General's] power,'" ECF 82-1 at 11, includes the authority to release the City's private UTPCPL claim for damages. It does not. Contrary to CVS's suggestion, *Com. ex rel. Krasner v. Att'y Gen.*, 309 A.3d 265 (Pa. Cmwlth. 2024) (appeal pending), does not hold otherwise. *Krasner* addressed whether the UTPCPL authorizes the Attorney General, who has concurrent authority with district attorneys to bring UTPCPL public enforcement actions, could release a district attorney's already-filed public UTPCPL claim. *Id.* at 270. The court held that the Attorney General could do so because a UTPCPL public enforcement claim, regardless of whether it is brought by the Attorney General or by a district attorney, is the Commonwealth's claim. *Id.* at 279. *Krasner*, which did not involve either the City or CVS, provides no support for CVS's suggestion that the Attorney General has a free-ranging power to release other types of claims that belong to other plaintiffs, including the City's *private* UTPCPL action for damages. *See* Joint Opp., Section V. CVS's reliance on *Krasner*'s *dicta* that the Consent Decree "achieved all remedies for a *public* UTPCPL claim," ECF 82-1 at 12 (emphasis added), is therefore beside the point. Compl. ¶¶ 746-747, 749.

If this Court were to rule on CVS's affirmative defense it would also have to determine whether the Consent Decree, which releases all claims by a plaintiff acting in a sovereign or quasi-

sovereign capacity on behalf of the general public, encompasses the City's CPO claim.  It does not. Contrary to CVS's argument (ECF 82-1 at 11-12), the CPO is an exercise of municipal—not "sovereign or quasi-sovereign"—powers. *See* 53 P.S. § 13101, *et seq.*; *Com., Dep't of Gen. Servs. v. Ogontz Area Neighbors Ass'n*, 483 A.2d 448, 451 (Pa. 1984). And a CPO claim is not a "public" claim on behalf of the Commonwealth like a UTPCPL public enforcement action; instead, the CPO authorizes the City to bring damages suits *for individuals* in the City who are harmed by unlawful trade practices and to recover civil penalties for *the City*, not the Commonwealth.  *See* Phil. Code § 9-6304.

In the alternative, CVS argues (ECF 82-1 at 12) that the City's CPO claim is barred because the CPO violates the Contracts Clause of the U.S. Constitution by impairing CVS's Consent Decree with the Commonwealth. It does not. CVS ignores the three-step test for determining whether supposedly retroactive legislation constitutes an impairment of a contract, and cannot meet its threshold burden of showing that the CPO impairs its contract with the Attorney General, which, as explained above, does not apply to the City, a non-party. *See Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1243 (3d Cir. 1987).

Finally, if the Court were to rule on CVS's affirmative defense it would have to determine whether the Consent Decree bars the City's public nuisance claim as to CVS. ECF 82-1 at 13. It does not and CVS cites no authority that the Attorney General would have this power.  Moreover, the City's public nuisance claim seeks relief on behalf of Philadelphia, not the Commonwealth as a whole. *See, e.g., Muehlieb v. City of Philadelphia*, 574 A.2d 1208, 1211 (Pa. Cmwlth. 1990); *Boehm v. Philadelphia*, 59 Pa. Super. 441, 445 (1915); *see, e.g.*, Compl. ¶¶ 702-703, 705, 715, 718-19, 721, 723-27.  And res judicata does not apply because the City was not in privity with any settlement party. The City's reliance on *nullum tempus* likewise does not render the City's public

nuisance claim one brought by the Commonwealth. *See* Joint Opp., Section I.B.1 (explaining that *nullum tempus* may be invoked by public entities other than the Commonwealth).

In sum, CVS raises a host of factual (and legal) questions, all of which this Court would have to resolve in CVS's favor to determine that the Consent Decree bars the City's UTPCPL, CPO, and public nuisance claims against CVS. Because those questions cannot be resolved at this stage of proceedings, CVS's motion to dismiss based on the Consent Decree should be denied.

## IV.    This Court Has Personal Jurisdiction Over the CVS Holding Companies.

CVS asserts this Court lacks personal jurisdiction over CVS Health Corporation and Caremark Rx, L.L.C. because they are holding companies. ECF 82-1 at 14-15. But as shown in the City's Oppositions to Optum's and the Joint Defendants' Motions to Dismiss, this Court has jurisdiction over all Defendants under RICO, and that claim is timely. *See* Optum Opp. at 5-6; Joint Opp. at 5-7. CVS also contends that the City has not alleged "that either holding company itself engaged in any conduct that forms the basis for its claims," ECF 82-1 at 15, but that is a substantive argument that does not go to personal jurisdiction. *See* Optum Opp. at 5. Since jurisdiction exists under RICO, CVS's remaining arguments are irrelevant and the non-RICO cases it cites inapposite.

## CONCLUSION

For all of the foregoing reasons, the CVS Defendants' Motion to Dismiss Plaintiff's Complaint should be denied in its entirety. The City requests oral argument on this motion.

14

DATED: February 24, 2026

Respectfully Submitted,

THE CITY OF PHILADELPHIA LAW DEPT.

By: /s/Catherine Hancock Dorsey

<table>
<tr><td>

Renee Garcia, City Solicitor
(PA Bar No. 315622)
Anne Taylor, Litigation Chair
(PA Bar No. 206057)
Lydia Furst, Chief Deputy City Solicitor
(PA Bar No. 307450)
Michael Pfautz, Deputy City Solicitor
(PA Bar No. 325323)
**CITY OF PHILADELPHIA LAW DEPT.**
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
Tel: (215) 683-5000
renee.garcia@phila.gov
anne.taylor@phila.gov
lydia.furst@phila.gov
michael.pfautz@phila.gov

Jerry R. DeSiderato (PA Bar No. 201097)
Timothy J. Ford (PA Bar No. 325290)
Silvio Trentalange (PA Bar No. 320606)
Stanford B. Ponson (PA Bar No. 322548)
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel.: (215) 575-7000
jdesiderato@dilworthlaw.com
tford@dilworthlaw.com
strentalange@dilworthlaw.com
sponson@dilworthlaw.com

Gregory B. Heller (PA Bar No. 61130)
**FELDMAN SHEPHERD
WOHLGELERNTER TANNER
WEINSTOCK DODIG LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Tel: (215) 567-8300
gheller@feldmanshepherd.com

</td><td>

Catherine H. Dorsey (pro hac vice)
**BARON & BUDD, P.C.**
2600 Virginia Ave. N.W. Suite 612
Washington, DC 20037
Tel.: (202) 333-4562
cdorsey@baronbudd.com

Russell W. Budd (pro hac vice)
Christine C. Mansour (pro hac vice)
**BARON & BUDD, P.C.**
3102 Oak Lawn Ave., Suite 100
Dallas, TX 75219
Tel.: (214) 521-3605
rbudd@baronbudd.com
cmansour@baronbudd.com

J. Burton Leblanc, IV (pro hac vice)
**BARON & BUDD, P.C.**
2600 CitiPlace Drive, Suite 400
Baton Rouge, LA 70808
Tel.: (225) 927-5441
bleblanc@baronbudd.com

Daniel Alberstone (pro hac vice)
Mark Pifko (pro hac vice)
Peter Klausner (pro hac vice)
Evan Zucker (pro hac vice)
Elizabeth Smiley (pro hac vice)
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Los Angeles, California 91436
Tel.: (818) 839-2333
dalberstone@baronbudd.com
mpifko@baronbudd.com
pklausner@baronbudd.com
ezucker@baronbudd.com
esmiley@baronbudd.com

</td></tr>
</table>

Andrew B. Sacks (Pa Bar No. 41390)
John Weston (PA Bar No. 26314)
**SACKS LAW, LLC**
1 Liberty Place, 55th Floor
1650 Market Street
Philadelphia, PA 19103
Tel.: (215) 925-8200
asacks@sackslaw.com
jweston@sackslaw.com

Stephen A. Sheller (PA Bar No. 3270)
**SHELLER PC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel.: (215) 790-7300
sasheller@sheller.com

David Kairys (PA Bar No. 14535)
P.O. Box 4073
8225 Germantown Avenue
Philadelphia, PA 19118
dkairys@verizon.net

Anthony J. Majestro (pro hac vice)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite 807
Charleston, WV 25301
Tel.: (304) 346-2889
amajestro@powellmajestro.com

Peter J. Mougey (pro hac vice)
Jeffrey R. Gaddy (pro hac vice)
**LEVIN, PAPANTONIO, PROCTOR,
BUCHANAN, O'BRIEN, BARR &
MOUGEY P.A.**
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
(850) 435-7068
pmougey@levinlaw.com
jgaddy@levinlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2026, the foregoing was served upon counsel of record via the Court's electronic case filing system.

<u>*/s/Catherine Hancock Dorsey*</u>
Catherine Hancock Dorsey