# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| City of Philadelphia,<br><br>            Plaintiff,<br><br>v.<br><br>CVS Health Corporation *et al.*,<br><br>            Defendants. | Case No.: 2:25-cv-6185-GJP<br><br>ORAL ARGUMENT REQUESTED |

**REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM (ECF 85)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ii

INTRODUCTION ..............................................................................................................................1

ARGUMENT .....................................................................................................................................1

I.     THE CITY'S CLAIMS ARE TIME-BARRED. ...................................................................1

        A.    The City's RICO Claim Is Time-Barred. ..................................................................3

        B.    The City's Asserted Tolling Doctrines Do Not Apply. ..............................................4

II.    THE CITY ALL BUT CONCEDES THAT IT LACKS RICO STANDING. ........................6

III.   THE CITY'S PUBLIC-NUISANCE CLAIM FAILS. ...............................................................8

IV.  THE CITY'S NEGLIGENCE CLAIM FAILS. .........................................................................8

V.   THE CITY'S UTPCPL CONCESSION CONFIRMS PCPO PREEMPTION. ....................10

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Althaus ex rel. Althaus v. Cohen*,
   756 A.2d 1166 (Pa. 2000) ..................................................................................................... 9

*Atl. Richfield Co. v. County of Montgomery*,
   294 A.3d 1274 (Pa. Cmwlth. 2023) ....................................................................................... 8

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   804 F.3d 633 (3d Cir. 2015) .................................................................................................. 7

*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*,
   417 F. Supp. 3d 531 (E.D. Pa. 2019) ..................................................................................... 3

*Canyon County v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ................................................................................................. 7

*Cetel v. Kirwan Fin. Grp., Inc.*,
   460 F.3d 494 (3d Cir. 2006) .................................................................................................. 3

*Chambers Dev. Co., Inc. v. Browning-Ferris Indus.*,
   590 F. Supp. 1528 (W.D. Pa. 1984) ...................................................................................... 6

*City & County of San Francisco v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020) ................................................................................... 7

*City of Boston v. Express Scripts, Inc.*,
   --- F.4th ---, 2026 WL 575418 (1st Cir. Mar. 2, 2026) ............................................. 1, 2, 4, 5

*City of Boston v. Express Scripts, Inc.*,
   765 F. Supp. 3d 31 (D. Mass. 2025) ................................................................................. 1, 4

*City of Philadelphia v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3d Cir. 2002) .................................................................................................. 8

*City of Pittsburgh v. Equitable Gas Co.*,
   512 A.2d 83 (Pa. Cmwlth. 1986) ......................................................................................... 10

*Gabriel v. Giant Eagle, Inc.*,
   124 F. Supp. 3d 550 (W.D. Pa. 2015) ................................................................................... 9

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2020) .................................................................................................................. 7

*Hengle v. Treppa*,
    19 F.4th 324 (4th Cir. 2021) ................................................................................................. 6

*Henson v. Santander Consumer USA, Inc.*,
    582 U.S. 79 (2017) ................................................................................................................. 6

*Hoffman v. Nordic Naturals, Inc.*,
    837 F.3d 272 (3d Cir. 2016) ................................................................................................... 2

*In re Insulin Pricing Litig.*,
    2020 WL 831552 (D.N.J. Feb. 20, 2020) ............................................................................... 6

*Katz v. Aetna Cas. & Sur. Co.*,
    972 F.2d 53 (3d Cir. 1992) ................................................................................................... 10

*LabMD Inc. v. Boback*,
    47 F.4th 164 (3d Cir. 2022) ................................................................................................... 3

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000) ................................................................................................... 7

*Mathews v. Kidder Peabody & Co.*,
    260 F.3d 239 (3d Cir. 2001) ................................................................................................... 3

*Medical Marijuana, Inc. v. Horn*,
    604 U.S. 593 (2025) ............................................................................................................... 7

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ............................................................................................................... 5

*Neumann's Pharmacy, L.L.C. v. DEA*,
    --- F.4th ---, 2026 WL 411942 (5th Cir. Feb. 13, 2026) ........................................................ 9

*O'Boyle v. Braverman*,
    337 F. App'x 162 (3d Cir. 2009) ........................................................................................... 2

*In re Ocugen, Inc. Sec. Litig.*,
    659 F. Supp. 3d 572 (E.D. Pa. 2023) ..................................................................................... 2

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ................................................................................................. 2

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization
    Transactions, Inc.*,
    730 F.3d 263 (3d Cir. 2003) ................................................................................................... 3

*Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*,
    359 F.3d 226 (3d Cir. 2004) ................................................................................................... 3

*Religious Tech. Ctr. v. Wollersheim*,
    796 F.2d 1076 (9th Cir. 1986) ............................................................................................. 6

*Rice v. Diocese of Altoona-Johnstown*,
    255 A.3d 237 (Pa. 2021) ..................................................................................................... 5

*Rotella v. Wood*,
    528 U.S. 549 (2000) ............................................................................................................ 3

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
    181 F.3d 410 (3d Cir. 1999) ................................................................................................ 2

*Seebold v. Prison Health Servs., Inc.*,
    57 A.3d 1232 (Pa. 2012) ..................................................................................................... 8

*Stanley v. City of Stanford*,
    145 S. Ct. 2058 (2025) ........................................................................................................ 6

*Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999) ................................................................................................ 7

*Walters v. UPMC Presbyterian Shadyside*,
    187 A.3d 214 (Pa. 2018) ..................................................................................................... 8

## Rules / Statutes

21 C.F.R. § 1306.04 ..................................................................................................................... 9

53 P.S. § 13133 .......................................................................................................................... 10

73 P.S. § 201-9.2(a) ................................................................................................................... 10

## INTRODUCTION

The City's opposition makes several important concessions that confirm the complaint should be dismissed. The City does not seriously dispute that it knew of its alleged opioid-related injuries for years—and far more than four years—before filing this suit. Instead, it invokes a RICO accrual standard that is irreconcilable with Supreme Court precedent and that, in any event, does not save its claims. The City does not dispute that its own prior opioid complaints described PBMs in detail as early as 2018, and that dozens of opioid complaints around the country alleged similar claims against PBMs by the end of 2019. That is dispositive. Based on the same "undisputed public documents," the First Circuit has now affirmed the dismissal of materially identical claims in *City of Boston v. Express Scripts, Inc.*, --- F.4th ---, 2026 WL 575418, at *3 (1st Cir. Mar. 2, 2026), *aff'g* 765 F. Supp. 3d 31 (D. Mass. 2025).

On the merits, the opposition underscores fatal deficiencies in its complaint. The City ignores recent in-circuit precedent holding that the City cannot pursue RICO equitable relief. The City admits its theory of causation requires at least three links, which is insufficient to satisfy RICO's direct-relationship requirement. And the City identifies no Third Circuit authority holding that sovereign expenditures satisfy RICO's required injury to "business or property." The City fails to show that it has plausibly alleged claims for public nuisance and negligence, and it concedes it cannot state a UTPCPL claim against the Express Scripts and Optum Defendants, which requires dismissal of the UTPCPL as to those Defendants and underscores that the PCPO claim is preempted. The complaint should be dismissed.

## ARGUMENT

**I.    THE CITY'S CLAIMS ARE TIME-BARRED.**

The City argues that it is "improper" for the Court to consider "exhibits outside of the complaint." Opp. 8 n.2. But the City ignores binding precedent that it is proper to consider "matters

1

of public record" in deciding a motion to dismiss. *See, e.g.*, Joint Br. 4–6; *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 280 & n.52 (3d Cir. 2016) (affirming dismissal based on court filings that were "matters of public record"); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider . . . matters of public record."); *In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 3d 572, 587 & n.13 (E.D. Pa. 2023) (similar); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (similar). Indeed, the First Circuit has now affirmed the dismissal of materially identical claims in *City of Boston* based on "matter[s] of public record" and "undisputed public documents properly considered on the motion to dismiss," which "show that the City had ample reason to know of PBM wrongdoing and had ample means to discover the facts to support a claim against PBMs before 2021." *City of Boston*, 2026 WL 575418, at *3.

The City likewise ignores Defendants' citation to an on-point Third Circuit decision "*reject*[*ing*]" the argument that the court may not consider "public records that were outside the face of the complaint" and holding that it was proper "to take judicial notice of Tennessee court documents" in dismissing a complaint on statute of limitations grounds. *O'Boyle v. Braverman*, 337 F. App'x 162, 164–65 (3d Cir. 2009). The City's only cited authority—two unpublished district court orders—are not to the contrary. *See* Opp. 8 n.2. The parties in *Wellock v. Taylor Hospital, Inc.* improperly relied on *non*-public records. 2010 WL 11711521, at *1 n.1 (E.D. Pa. July 29, 2010). And *Kalan v. Farmers & Merchants Trust Co. of Chambersburg* involved a fact-intensive limitations question that could not be determined on a motion to dismiss. 2015 WL 13874056, at *1 n.1 (E.D. Pa. Nov. 23, 2015). That is not the case here, where "it is clear from the face of the complaint, *and matters of which the court may take judicial notice*, that the plaintiff's claims are barred as a matter of law." *O'Boyle*, 337 F. App'x at 164 n.2 (cleaned up).

2

### A. The City's RICO Claim Is Time-Barred.

The City contends that a civil RICO claim accrues "when the plaintiff knows, or should know of *both* its injury *and the source of its injury.*" Opp. 5 (citing *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004)). But the Supreme Court has made clear that "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock" for RICO claims. *Rotella v. Wood*, 528 U.S. 549, 555 (2000). The language in *Prudential* that requires discovery of both the injury and its source is irreconcilable with *Rotella* and has been called into doubt by the Third Circuit for that reason. *See LabMD Inc. v. Boback*, 47 F.4th 164, 179 n.10 (3d Cir. 2022).[1] And Third Circuit cases both before and after *Prudential* apply the proper *Rotella* test. *See, e.g.*, *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) ("In determining when a RICO claim accrues, we apply an injury discovery rule 'whereby a RICO claim accrues when plaintiffs knew or should have known of their injury.'" (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001))); *Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 549 (E.D. Pa. 2019).

Regardless, this Court need not address the "tension" between *Prudential*'s "source" language and *Rotella* because the City's RICO claim is untimely "under either the injury-discovery-rule or the injury-plus-source-discovery rule." *LabMD*, 47 F.4th at 179 n.10. The City does not dispute that it had notice of its alleged injury for many years. Opp. 5; Joint Br. 5–6. And, for two reasons, the City unquestionably had inquiry notice of the alleged source of that injury since 2018 or 2019. *See* Joint Br. 7–8. *First*, the City's own prior opioid complaints described

---

[1] Defendants' cited authorities did not articulate an inapplicable standard from the Second Circuit. Opp. 5 n.1. They reiterated the "general discovery accrual rule [that] applies to a RICO claim," quoting *Rotella*. *See Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 274 (3d Cir. 2003) (quoting *Rotella*, 528 U.S. at 555).

3

PBMs in detail. *See* Exhibit A ¶ 402. *Second*, as the City acknowledges, by the end of 2019, dozens of similarly situated local governments around the country filed highly publicized lawsuits against PBMs asserting claims indistinguishable from the City's. Opp. 8; *see* Joint Br. 7–8; Exhibits F–K. As the First Circuit held in *City of Boston*, "from 2018 to 2019, at least seventy-four lawsuits, all a matter of public record, were filed by other cities, towns, and counties not just against opioid manufacturers but also against the PBM defendants." *City of Boston,* 2026 WL 575418, at *3. There, as here, "[i]t is not plausible that the City was not aware of these prior litigations." *Id.* Indeed, letters "contained in the public record" in the opioid MDL *highlighted* these early lawsuits against PBMs. *See id.*; Exhibits G–I. The City was therefore on notice of its alleged injury and the PBMs' alleged role as a source of that injury more than four years before it filed suit.

The City's only basis for distinguishing *City of Boston* is that it purportedly applied the discovery-of-injury standard rather than the discovery-of-injury-plus-source standard. Opp. 6. But that is irrelevant because, as shown above, the court concluded, based on the same public records at issue here, that the City "knew or should have known well before 2021 of its alleged injuries *from defendants' actions* . . . ." *City of Boston*, 2026 WL 575418, at *1 (emphasis added) (citing 765 F. Supp. 3d at 38–39). As explained in the district court's "carefully reasoned opinion," *id.*, "[b]y 2018, all the 'telltale warning signs' were present that the City suffered injury *as a result of the PBMs' role* in the opioid epidemic." 765 F. Supp. 3d at 42 (emphasis added). So, even if the standard were discovery-of-injury-plus-source (it is not), *City of Boston* held it was satisfied and dictates dismissal here.

  **B.**  **The City's Asserted Tolling Doctrines Do Not Apply.**

To excuse the City's tardiness, the complaint invokes several tolling doctrines. Compl. ¶¶ 670–91. Now, the City concedes that *nullum tempus* does not apply to its RICO, UTPCPL, or PCPO claims, invoking it only for public nuisance, conspiracy, and concerted action. Opp. 7. As

4

to those claims, the City acknowledges the doctrine does not apply where a local government is not seeking to enforce "strictly public rights," such as where it "seek[s] damages." *Id*. at 8. But that is exactly what the City seeks here. The City seeks "millions of dollars" for alleged harms like "social services costs, treatment costs, … and medical and prescription costs." Compl. ¶¶ 727, 745. The City claims those are just forms of "equitable abatement relief." Opp. 8. But "what [the City] in fact seek[s] is nothing other than compensatory *damages*—monetary relief for [the] losses" allegedly sustained. *Mertens v. Hewitt Assocs*., 508 U.S. 248, 255 (1993) (emphasis in original). The City is not bringing its public-nuisance claim to enforce strictly public rights.

      The City likewise fails to show that any other doctrine saves its untimely state-law claims. The City does not dispute that if it had actual, constructive, or inquiry notice of its injuries, its invocations of the discovery rule, fraudulent concealment, and equitable estoppel all fail. Joint Br. 10; *see City of Boston*, 2026 WL 575418, at *2–3 (rejecting fraudulent concealment where plaintiff was on inquiry notice). As a result, the City's almost exclusive reliance on allegations concerning misrepresentations or fraud—which aren't sufficient in any event—is misguided. Opp. 8–9. And although the City acknowledges "other opioid suits filed against PBMs in 2018 or 2019," it claims it was not on notice of Defendants' alleged role until "critical documents on which those lawsuits were based" were produced in the MDL "in late 2021." Opp. 8. That is "not plausible" on its face. *City of Boston*, 2026 WL 575418, at *3. But even if it were, it would not satisfy the City's "*duty* to investigate." *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 253 (Pa. 2021) (emphasis added). The City's own prior opioids lawsuit described PBMs in detail, Joint Br. 7; Exhibit A ¶ 402, so it obviously could have brought this action by 2019, when dozens of other municipalities had sued PBMs. *See* Exhibits G–K; *City of Boston*, 2026 WL 575418, at *1.

## II. THE CITY ALL BUT CONCEDES THAT IT LACKS RICO STANDING.

On the merits, the City's defense of its RICO claim fails for three reasons. *First*, the City has no answer to Defendants' argument that the statute does not authorize private plaintiffs to seek equitable relief. The City concedes that the Third Circuit has not held equitable relief is available and that both the Fourth and Ninth Circuits have held that it is not. Opp. 12; *see* Joint Br. 12; *Hengle v. Treppa*, 19 F.4th 324, 353–56 (4th Cir. 2021); *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1082–87 (9th Cir. 1986). The City's lone supporting in-circuit authority is a 1984 district court decision that predates both *Wollersheim* and *Hengle*. *See Chambers Dev. Co., Inc. v. Browning-Ferris Indus.*, 590 F. Supp. 1528, 1540 (W.D. Pa. 1984). But the City ignores more recent in-circuit authority—part of a growing consensus in the circuit—holding that RICO does not establish a private right to seek equitable relief. *See, e.g.*, *In re Insulin Pricing Litig.*, 2020 WL 831552, at *3 (D.N.J. Feb. 20, 2020). The City's cited authority, moreover, expressly recognized that the statutory text does not authorize private plaintiffs to seek equitable relief, but ignored the text based on its view of the "purpose" of the RICO statute, *Chambers*, 590 F. Supp. at 1540–41, which the Supreme Court has repeatedly held is improper. *See, e.g.*, *Stanley v. City of Stanford*, 145 S. Ct. 2058, 2067 (2025); *Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79, 89 (2017).

*Second*, the City's causal chain is not sufficiently direct as a matter of law. By its own admission, the City's causal chain involves at least three links, which is two too many for a RICO claim. The City argues that (1) Defendants' "coordinated efforts" with opioid manufacturers "caused an oversupply of opioids"; (2) the alleged oversupply was "foreseeably diverted into an illegal market"; and (3) "the City bore the costs, including extraordinary costs to carry out its governmental functions, lost tax revenue, and diminished property values." Opp. 11. Even the City's already-attenuated three-step theory omits multiple independent decision-makers whose actions further sever any direct causal relationship: (1) doctors, (2) distributors, (3) individuals

6

who used and misused opioids, (4) individuals who diverted opioids into illegal markets, (5) individuals who purchased opioids illegally, and (6) individuals who supplied and used illicit opioids. *See* Joint Br. 13; *see also* Compl. ¶ 817; Opp. 13.

But even taken at face value, the City's causal chain is too attenuated. "[W]henever the plaintiff's theory of causation requires moving 'well beyond the first step,' it 'cannot meet RICO's direct relationship requirement.'" *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2020)). Because the City admits that its injuries are not the direct result of Defendants' alleged conduct (but rather a downstream effect of at least two other causal links), its RICO claim should be dismissed. *See Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 932 (3d Cir. 1999) (affirming dismissal of RICO claim for lack of direct relationship); *City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 658 (N.D. Cal. 2020) (same for opioid-related RICO claim).

*Third*, the City fails to cite any Third Circuit precedent supporting its view that RICO's required injury to "business or property" can include expenditures made in the City's sovereign or quasi-sovereign capacity. One of the City's cited cases affirmed the *dismissal* of a RICO claim for lack of standing. *Maio v. Aetna, Inc.*, 221 F.3d 472, 474 (3d Cir. 2000). The other, which did not involve a municipal plaintiff, reinforced that RICO requires a "concrete" injury, "not mere injury to a valuable intangible property interest." *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015) (citation omitted). Even if the City sufficiently alleged injury to its business or property, it acknowledges that, under *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008), its claim would be limited to any alleged harm the City suffered as a result of "doing business in the marketplace," *i.e.*, "purchasing opioids and naloxone." Opp. 10–11. Thus, at minimum, the Court should limit the City's RICO claim to that alleged harm.

## III. THE CITY'S PUBLIC-NUISANCE CLAIM FAILS.

The City's public-nuisance claim fails under binding precedent in *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 426 (3d Cir. 2002). Among the reasons *Beretta* mandates dismissal is because Defendants did not control the alleged nuisance. The City's opposition confirms as much. *See* Opp. 13 (admitting the alleged nuisance is based on, among other things, "opioid use and abuse," "drivers under the influence of opioids," and "used needles").

On February 27, 2026, the Superior Court issued its decision in *CVS Pharmacy, Inc. v. City of Philadelphia*, which affirmed the trial court's denial of a motion to dismiss. 2026 Pa. Super. 36 (Feb. 27, 2026). But that decision's discussion of the public-right element of a public-nuisance claim is neither binding nor persuasive. First, the defendants in that case have the right to seek further review of the decision in the Superior Court and the Pennsylvania Supreme Court. Second, the decision, which misapplies Pennsylvania public-nuisance law, directly conflicts with *Atlantic Richfield Co. v. County of Montgomery*, 294 A.3d 1274 (Pa. Cmwlth. 2023), on which Defendants rely. *See CVS Pharmacy*, 2026 Pa. Super. 36, at *11–15 (discussing the case at length). *Atlantic Richfield*, like *Beretta*, rejected the use of Pennsylvania's common law of public nuisance to establish liability for the manufacture and distribution of lawful products. *See Atl. Richfield*, 294 A.3d at 1285; *Beretta*, 277 F.3d at 421. And third, *CVS Pharmacy* involves distinct alleged conduct that is not at issue in this case. *See* 2026 Pa. Super. 36, at *2, 20 n.6.

## IV. THE CITY'S NEGLIGENCE CLAIM FAILS.

The City's opposition fails to refute the glaring deficiencies in its negligence claim. Opp. 18–26; Joint Br. 20–25. The City focuses its argument that PBMs owed a duty on foreseeability. Opp. 18–20. But "foreseeability . . . is not alone determinative." *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1249 (Pa. 2012); *accord Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 229 (Pa. 2018). Rather, it is only one of *five* factors courts consider that decisively counsel

8

against imposing a duty on PBMs here. Joint Br. 21–22. The City also argues that the PBMs voluntarily undertook to administer prescription benefits. Opp. 19–20. But voluntarily undertaken duties arise only where a defendant affirmatively undertakes some obligation *to a specific party*. *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000). The City cannot satisfy this requirement as to the Express Scripts and Optum Defendants, with whom it admits it had no relationship, Opp. 20, 27 & n.4, and the argument fails as to CVS because the City seeks to impose duties far beyond CVS's contracts with the City.

To gin up duties where none exist, the City asserts "Defendants also have express statutory duties as dispensers of controlled substances." Opp. 22. But, as the City concedes, *PBMs* have no relevant statutory duties because they are not dispensers. *See* Opp. 22. Even as to Defendants' mail-order pharmacies, the City admits (Opp. 22) that courts in this Circuit have held that pharmacies' duties are "specifically limited . . . to filling prescriptions in a safe manner" and do not extend to preventing third-party criminal conduct. *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 563–64 (W.D. Pa. 2015); *cf. Neumann's Pharmacy, L.L.C. v. DEA*, --- F.4th ---, 2026 WL 411942, at *5 (5th Cir. Feb. 13, 2026) (21 C.F.R. § 1306.04 imposes liability "only if" a pharmacist "knowingly" fills "an invalid prescription"). The City deflects by arguing that its negligence claim is not based on the acts of third parties. *See* Opp. 22. But that is directly contrary to the complaint, which is premised on numerous third-party acts including "criminal acts by addicted individuals." Compl. ¶ 505; *see* Part II, *supra*.

Finally, the City admits that the only Pennsylvania authority on the municipal cost recovery rule would bar the City's claim because it is premised on the costs of government operations. Relying on out-of-state authority, the City argues that the rule is inapplicable if the alleged harm

9

is great enough. Opp. 25–26. Under Pennsylvania law, however, what matters is not magnitude, but kind. *See City of Pittsburgh v. Equitable Gas Co.*, 512 A.2d 83, 84–85 (Pa. Cmwlth. 1986).

## V.   THE CITY'S UTPCPL CONCESSION CONFIRMS PCPO PREEMPTION.

Although the complaint pleads a cause of action under the UTPCPL against all Defendants, the City now asserts that it "is pursuing its UTPCPL claim against only CVS." Opp. 27 n.4. Presumably, that is because the City recognizes that it cannot plausibly allege it was a consumer of goods and services provided by the Express Scripts and Optum Defendants. *See* 73 P.S. § 201-9.2(a); *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992). The City's claim against CVS continues to fail for the reasons Defendants explained, including that the City has not plausibly alleged justifiable reliance on the alleged wrongful conduct of *any* Defendant. *See* Joint Br. 25–30. At minimum, however, the Court should dismiss the UTPCPL claim against the Express Scripts and Optum Defendants in light of the City's concession.

In addition, the City's conceded inability to bring a UTPCPL claim against the Express Scripts and Optum Defendants—while it continues to pursue its PCPO claim against all Defendants—confirms that the PCPO claim is preempted. *See* Joint Br. 33–36. Its concession highlights one of many irreconcilable conflicts between the PCPO and UTPCPL. *See* Joint Br. 35–36. By granting itself the power to pursue a claim that is otherwise barred under the UTPCPL, 73 P.S. § 201-9.2(a), the City has attempted to exercise power that is "contrary to" and an "enlargement of" powers granted by the General Assembly. 53 P.S. § 13133. The PCPO is a blatant power grab that clashes with the rights created by the General Assembly for certain plaintiffs to pursue claims under certain, limited circumstances that do not exist here.

## CONCLUSION

The Court should dismiss the complaint. Defendants respectfully request oral argument.

10

Dated: March 3, 2026

Respectfully submitted,

/s/ Joseph I. Fontak
Joseph I. Fontak
LEADER BERKON COLAO
& SILVERSTEIN LLP
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 755-0455
jfontak@leaderberkon.com

Brian D. Boone (admitted *pro hac vice*)
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000
brian.boone@alston.com

Michael A. Kaeding (admitted *pro hac vice*)
ALSTON & BIRD LLP
555 Fayetteville St., Suite 600
Raleigh, NC 27601
(919) 862 2200
mike.kaeding@alston.com

Debolina Das (admitted *pro hac vice*)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400
debolina.das@alston.com

Robert J. Giuffra, Jr. (admitted *pro hac vice*)
Jeffrey T. Scott (admitted *pro hac vice*)
Matthew J. Porpora (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendants UnitedHealth Group, Inc.; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.*

/s/ Elisabeth Miller
Elisabeth Miller (PA 335455)
David Mader (*pro hac forthcoming*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
(212) 849-7000
elisabethmiller@quinnemanuel.com
davidmader@quinnemanuel.com

Michael Lyle (admitted *pro hac vice*)
Jonathan G. Cooper (admitted *pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Defendants Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Processing, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Evernorth Health, Inc., Express Scripts Specialty Distribution Services, Inc.*

/s/ Robert J. Norcia
Robert J. Norcia (PA 321509)
STRADLEY RONON STEVEN
& YOUNG LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19106
(215) 564-8663
rnorcia@stradley.com

Steven N. Herman (PA 205832)
Blair G. Brown (admitted *pro hac vice*)
Ivano M. Ventresca
Brian J. Beaton, Jr. (admitted *pro hac vice*)
Aaron Chou (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
(202) 778-1800

11

       sherman@zuckerman.com
       bbrown@zuckerman.com
       iventresca@zuckerman.com
       bbeaton@zuckerman.com
       achou@zuckerman.com

Conor B. O'Croinin (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-0444
cocroinin@zuckerman.com

*Attorneys for Defendants CVS Pharmacy, Inc., CVS Health Corporation, Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., AdvanceRx.com, L.L.C., and CaremarkPCS Pennsylvania Mail Pharmacy, LLC*