**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| CITY OF PHILADELPHIA, *Plaintiff* —v— CVS HEALTH CORPORATION, *et al.*, *Defendants.* | Case No. 2:25–cv–06185–CFK The Honorable Chad F. Kenney |

**CVS DEFENDANTS' REPLY BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    THE COMMONWEALTH RELEASED THE SAME PUBLIC-NUISANCE CLAIM THE CITY ASSERTS AGAINST CVS. ..................................................................................1

II.   THE COMMONWEALTH CONSENT JUDGMENT PRECLUDES THE CITY'S ABILITY TO INVOKE *NULLUM TEMPUS* AGAINST CVS. ................................................2

III.  AS TO CVS, THE PHILADELPHIA CONSUMER PROTECTION ORDINANCE CLAIM VIOLATES THE CONTRACTS CLAUSE..........................................................................4

IV.   THE CITY'S BREACH OF CONTRACT COUNT FAILS..........................................................5

      A.    No Tolling Doctrine Saves the City's Time-Barred Breach of Contract Claims. ..............5

      B.    The City's Contract Claims Also Fail on the Merits. ............................................7

V.    CONCLUSION ...........................................................................................................8

The CVS Defendants submit this reply in support of their motion to dismiss.[1]

## I. THE COMMONWEALTH RELEASED THE SAME PUBLIC-NUISANCE CLAIM THE CITY ASSERTS AGAINST CVS.

The City admits that "public entities are precluded from seeking damages in a public nuisance action," ECF 89 at 8, but does not address the decisions that explain that when the City asserts a purely *public* nuisance claim it does so as a surrogate for the Commonwealth, ECF 82-1 at 13. Because the *actual* Commonwealth already released the Commonwealth's statewide public-nuisance claim against CVS, the consent judgment entered by the Commonwealth Court bars the City's attempt to assert a duplicative claim based on the same purported public rights.

Recognizing its problem, the City implores this Court to ignore the judgment entered by the Commonwealth Court. ECF 88 at 10. But, in doing so, the City relies on cases that involved settlement agreements, not judgments that are matters of public record. In fact, the City's own authority establishes that "[t]o decide a motion to dismiss, courts generally consider … matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The rest of the City's arguments are equally infirm. First, the City suggests that the Court needs to make a factual determination whether the consent judgment applies to the City. ECF 88 at 12. But the plain text of the judgment makes clear that it does. The Attorney General released claims brought by "any person … acting in a … capacity seeking relief on behalf of … the general public … or any Subdivision in the Commonwealth, whether or not any of them participate in the Agreement." ECF 82-4 at 11. The City does not deny that it is a subdivision of the Commonwealth.

Second, the City asserts that the Court must postpone a determination whether the Attorney General has the power to release public claims that belong to the State in the first instance. That too

---

[1] CVS Health Corporation and Caremark Rx, L.L.C. join without waiving their personal jurisdiction defense. Because the City's RICO claim fails, there is no basis for personal jurisdiction over these entities. *See* ECF 88 at 14.

is beyond dispute. The City ignores *City of Philadelphia v. Beretta U.S.A., Corp.*, which explained that when a subdivision asserts a public-nuisance claim on behalf of Pennsylvania citizens, it necessarily "seeks to exert traditional state power." 126 F. Supp. 2d 882, 893 (E.D. Pa. 2000). Put another way, when the City asserts a public-nuisance claim on behalf of Pennsylvania citizens that happen to reside in Philadelphia, the City acts as a "surrogate[]" for the Commonwealth. *Id.* Indeed, the only circumstance when the remedy for a public nuisance does not lie exclusively "in the hands of the [S]tate," is when a plaintiff asserts a private claim for public nuisance, which the City denies asserting in this case. *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 315 (3d Cir. 1985) (citing Prosser, *Private Action for Public Nuisance,* 52 Va. L. Rev. 997, 999 (1966)). The Attorney General is the "chief law officer" of the Commonwealth. Pa. Const. art. IV, § 4.1. The Attorney General clearly has the power to release a claim of the State. When the Attorney General settles a civil suit on behalf of the Commonwealth, she does so for the benefit of all counties (including Philadelphia).

Similarly, because the City is attempting to exercise state power, the City is in privity with the Commonwealth. The City is asserting the violation of the same purported public rights as the Attorney General. So the judgment means that res judicata also precludes the City's claim. *Fahs by Fahs v. Red Lion Area Sch. Dist.*, 2018 WL 8131758, at *4 (M.D. Pa. Mar. 8, 2018) (recognizing that there is privity between the Commonwealth and a school district when they assert the same legal right).

In short, the City's concession that it does not seek private damages through its public-nuisance claim, ECF 89 at 18, means that it is acting solely as a surrogate for the Commonwealth and *reasserting* the same public-nuisance claim that the Commonwealth already released on behalf of all of the Commonwealth's subdivisions—the City included.

## II.    THE COMMONWEALTH CONSENT JUDGMENT PRECLUDES THE CITY'S ABILITY TO INVOKE *NULLUM TEMPUS* AGAINST CVS.

As set forth in Defendants' joint brief, the doctrine of *nullum tempus* does not apply, ECF 85-1 at 8-10, but even if it did, it would not save the City's claims against CVS.

The City leaves unaddressed the preclusive effect of the Commonwealth consent judgment on its purported use of the sovereign sword of *nullum tempus* against CVS. ECF 82-1 at 1, 11, 13-14. As the Tenth and Eleventh Amendments to the U.S. Constitution confirm, States are sovereign entities. *Alden* v. *Maine*, 527 U.S. 706, 713 (1999). But "lesser entities," like cities and towns, are not. *Id.* at 756. As CVS explained in its opening motion—and which the City nowhere disputes—*nullum tempus* arises from the "prerogatives of the sovereign." *Pennsylvania Pub. Util. Comm'n v. Delaware Valley Reg'l Econ. Dev. Fund*, 255 A.3d 602, 614 (Pa. Commw. Ct. 2021). In fact, "[t]he maxim is sometimes expressed nullum tempus occurrit republicae ('time does not run against the state')." *Com., Dep't of Transp. v. J. W. Bishop & Co.*, 497 Pa. 58, 61 n.2 (Pa. 1981). *Nullum tempus* can be wielded only by the sovereign or an entity acting in a sovereign or quasi-sovereign capacity. *See id.* As the City's own authority establishes, "*nullum tempus* is invoked by the sovereign plaintiff and is employed as a sword to strike down the statute of limitations defense raised by the defendant whose conduct is alleged to have injured the sovereign in some manner." *Twp. of Indiana v. Acquisitions & Mergers, Inc.*, 770 A.2d 364, 372 (Pa. Commw. Ct. 2001).

Because the Commonwealth is a sovereign and the City is not, the sovereign can decide to lay down the sword of *nullum tempus* and deprive any entity that also claims harm to the public from using it. That is true whether the complaining entity asserts a public claim for nuisance or a public claim for negligence. By releasing all claims against CVS in connection with prescription opioids by any entity acting "in a … sovereign … capacity," ECF 82-4 at 7, the Commonwealth has exercised its prerogative to sheath its sword. As a result, *nullum tempus* is simply not available to the City for use against CVS in this or any similar action.

### III.   AS TO CVS, THE PHILADELPHIA CONSUMER PROTECTION ORDINANCE CLAIM VIOLATES THE CONTRACTS CLAUSE.

The City does not dispute that the Attorney General released all public UTPCPL claims against CVS. ECF 88 at 12. Yet in count three, the City invokes its Consumer Protection Ordinance which purports to apply "retroactively to any conduct that occurred up to six years before the date of enactment of this Section, provided that at the time such conduct occurred it would also constitute a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 et seq." 9 Phila. Code. § 9-6307. In its opposition, the City focuses on only its *private* UTPCPL claim, but fails to mention its attempt to retroactively resurrect and pursue released *public* UTPCPL claims via its recently enacted city ordinance. ECF 88 at 12.

In addition to contravening the judgment entered by the Commonwealth Court, the City's attempt to resurrect by ordinance public UTPCPL claims that the Attorney General has released violates the Contracts Clause. U.S. Const., Art. I., § 10, cl. 1. The Contracts Clause provides that "[n]o state shall ... pass any ... Law impairing the Obligation of Contracts." *Ashley Sveen v. Kaye Melin*, 584 U.S. 811, 818 (2018). "[T]he Clause applies to any kind of contract." *Id.*

Contrary to the City's position, each element of a Contracts Clause violation is plainly met. *See Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1243 (3d Cir. 1987). First, the ordinance substantially impairs CVS's contract with the Attorney General. CVS paid to settle the public UTPCPL claim with the entirety of the Commonwealth—including the City. *Id.* Second, the impairment is not justified—the Commonwealth made the determination that CVS's settlement payment was sufficient and achieved all necessary remedies on a statewide basis. ECF 82-4 at 6, 9. Third, the adjustment of rights affected by the City's use of its ordinance is not reasonable. No party would ever settle a public claim of any kind with the Commonwealth if that claim could later be resurrected against the settling defendant by any number of the Commonwealth's 67 subdivisions—even when the Commonwealth expressly released those claims as to all of its subdivisions. The framers ensured that States and their

4

subdivisions cannot pass retroactive laws that destroy contract rights. *Ashley Sveen*, 584 U.S. at 827-30 (Gorsuch, J. dissenting). Because the City's retroactive ordinance blatantly and unreasonably impairs CVS's preexisting contractual rights, the ordinance cannot be reconciled the Contracts Clause.

## IV.    THE CITY'S BREACH OF CONTRACT COUNT FAILS.

The City acknowledges that any contract claims based on a pre-2021 PBM contract must be saved by a tolling doctrine. ECF 88 at 7. It also does not deny that its breach of contract claims must be dismissed as to all CVS entities other than CaremarkPCS Health, L.L.C., the only entity with which it contracted. With those concessions, the City's opposition confirms that its contract claims fail.

### A.    No Tolling Doctrine Saves the City's Time-Barred Breach of Contract Claims.

The City acknowledges that *nullum tempus* does not apply to its contract claims. ECF 88 at 8. And it does not dispute that if it had actual, constructive, or inquiry notice of its injury then the discovery rule, fraudulent concealment, and equitable estoppel are inapplicable. *See* ECF 85-1 at 10-11; ECF 82-1 at 4-7; *City of Boston v. Express Scripts, Inc.*, 169 F.4th 58, 60, 62-63 (1st Cir. Mar. 2, 2026), *aff'g*, 765 F. Supp. 3d 31 (D. Mass. 2025). That is the case here. By 2018, municipalities began suing CVS as a PBM in a widely publicized MDL on theories identical to those that form the basis for the alleged breaches here. ECF 85-1 at 7; ECF 85-7 (Webb County 2018 complaint against PBMs) ¶¶ 255 ("Even when they were asked to limit accessibility to opioids, PBMs refused."), 253 ("[T]he top three PBMs have almost exclusive control over the dissemination of opioids" and "[i]n concert with drug manufacturers who give them rebates as an incentive, they choose which drugs will be on a … formulary"). What's more, the City's counsel was part of the Plaintiffs' Executive Committee in the very same MDL. Ex. 7 at 1 (motion to substitute counsel showing Baron & Budd has been on the PEC since January 2018). That same year, a coordinated proceeding involving opioid-related lawsuits began in Delaware County. Ex. 8 (Case Management Order No. 1). The City and its counsel were a part of that proceeding from its inception. *See id.* at 15 (identifying a case brought by the City as part

5

of the proceeding); *id.* at 5-6 (identifying case brought by Philadelphia DA represented by City's counsel). And CVS was a defendant in three of the four bellwether cases in the coordinated proceeding. *All* parties to the coordinated proceeding were served with *every filing* in that proceeding, *id.* at 5, so the City and its counsel received numerous filings concerning CVS.

And in 2021, years after CVS had been sued in the opioid-related Pennsylvania Coordinated Proceeding by other municipalities, the City *itself* sued CVS as a pharmacy and distributor.[2] It alleged, like here, that CVS "failed to maintain effective controls over the diversion of prescription opioids." ECF 85-5 (2021 Philadelphia complaint against CVS) ¶ 2. In that same lawsuit, the City highlighted "the formulary decisions of PBMs" with respect to opioid medications, *id.* ¶ 693f, and referred to CVS statements concerning its PBM business and opioids, *id.* ¶ 176 & n. 48. It's no surprise, then, that the City does not deny that it knew of its injury and that CVS allegedly caused it.[3]

This Court recently dismissed an action as time-barred in similar circumstances. *See Roofers Loc. No. 149 Pension Fund v. GSK PLC*, 2026 WL 602784, at *11 (E.D. Pa. Mar. 4, 2026). In *Roofers Local*, the Court held that the plaintiffs' claims accrued outside the limitations period because "at a minimum, there were 'storm warnings' that 'would have prompted a reasonably diligent plaintiff to begin investigating' the basis" of the claims at that point. *Id.* at *5. Just like here, many of those "storm warnings" that should have prompted investigation were the result of other lawsuits, including an MDL. *See id.* ("a reasonably diligent plaintiff" would have "investigate[d] the MDL action and potential securities fraud claims"); *id.* at *6 (considering that "plaintiffs in another sprawling action had alleged" facts that would have prompted notice or triggered inquiry); *id.* ("Complaints that were filed in state

---

[2] The City's complaint—just like here—contained boilerplate tolling allegations. ECF 85-5 ¶¶ 634-637 (alleging equitable estoppel) & ¶¶ 638-646 (alleging fraudulent concealment).

[3] Contrary to the City's apparent suggestion, that the City brings breach-of-contract claima]s premised on much of the same conduct as its other claims *heightens* its notice. Indeed, as CVS explained, the City had even more notice of the facts underlying its claims *by dint of the contracts between it and CaremarkPCS Health, L.L.C. See, e.g.*, ECF 82-1 at 6-7.

courts … similarly revealed the factual underpinnings of Plaintiffs' claims."). In fact, the case for dismissal on timeliness grounds here is even stronger. The City had inquiry notice because it—not another plaintiff— *already sued CVS years ago* for alleged opioid-related conduct. ECF 85-1 at 6.

The City cannot salvage its breach-of-contract claims by relying on allegations of misrepresentations or concealment by CVS. The City had notice of its injury, irrespective of anything CVS did or did not do. ECF 88 at 8-10. Moreover, the very same actions that put the City on notice or prompted the duty to investigate contained allegations of deception by CVS and others. Thus, the City cannot now claim that any alleged misrepresentations prevented it from uncovering the bases for its claim. *See, e.g.*, *Roofers Local*, 2026 WL 602784, at *10 ("Plaintiffs could no longer depend on [the defendant's] denials or reassurances to delay the running of the limitations clock, given the existence of other public records pointing to alleged deception."); ECF 85-5 ¶ 639 (City alleging CVS "conceal[ed] [its] behavior and active role in the deceptive marketing and the oversupply of opioids"); ECF 85-7 ¶¶ 314-326 (allegations of concealment by CVS and others).

The City's reliance on the continuing-violation doctrine is further afield. The Third Circuit has explained that "the mere fact that the repudiation of a contract has continuing effect does not trigger the … doctrine." *Steudtner v. Duane Reade, Inc.*, 629 F. App'x 389, 392 (3d Cir. 2015) (applying identical New York law). The City attempts to resurrect decades old contract claims—stretching as far back as *2006*—premised on separate contracts covering distinct periods obligating CaremarkPCS Health, L.L.C. only while such contracts were in effect. Nothing could be less continuous.

## B.    The City's Contract Claims Also Fail on the Merits.

Even if the City's breach claims were timely, they fail. *See* ECF 82-1 at 7-10. CVS responds briefly to two issues raised by the City in its opposition and otherwise rests on its opening brief.

*First*, the Court should not disregard the *actual* contract language, including examples submitted by CVS, as the City suggests. The City asserts that there are more than two contracts at issue, their

7

terms vary, and there *could be* other relevant provisions. ECF 88 at 3. But its Complaint alleges that the contracts contain materially similar formulary management, DUR, mail-service, and rebate provisions. Compl. ¶¶ 550, 551, 553, 555, 557. The relevant provisions are materially similar across the contracts, and CVS properly submitted excerpts to show why the City's claims fail. ECF 82-1 at 2-3.

*Second*, for the first time in its opposition, the City claims that CVS violated the implied covenant of good faith and fair dealing. This is not an independent claim. "Pennsylvania law does not recognize a separate claim for breach of implied covenant of good faith and fair dealing." *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 400-01 (E.D. Pa. 2002). And a claim for its breach "is subsumed in a breach of contract claim" and cannot be used to "create independent substantive rights." *Burton v. Teleflex Inc.*, 707 F.3d 417, 432–33 (3d Cir. 2013).

The City attempts to create additional rights that are not found in its contracts. *See, e.g.*, *Benchmark Grp., Inc. v. Penn Tank Lines, Inc.*, 612 F. Supp. 2d 562, 583-84 (E.D. Pa. 2009) (the implied covenant is nothing more than "an interpretive tool" and "a party is generally precluded from maintaining separate claims for breach of contract and breach of the covenant"). As CVS explained, the contracts simply do not obligate CaremarkPCS Health, L.L.C. as the City suggests. ECF 82-1 at 7-10. Indeed, the City does not dispute that it *approved* the very formulary design it now makes central to its claims, and it *admits* that the contracts provide CaremarkPCS Health, L.L.C. with discretion as to formulary changes. *Id.*; ECF 88 at 4-5. And it never, remotely, suggests that CaremarkPCS Health, L.L.C. did not provide the DUR services it agreed to provide. ECF 88 at 5. The City cannot rewrite its detailed contracts and impose new duties under the guise of the implied covenant. *See, e.g., Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 (3d Cir. 2000). Pennsylvania law does not allow it.

## V.    CONCLUSION

For these additional reasons, the Court should grant CVS's motion to dismiss.

8

Dated: July 17, 2026

Respectfully submitted,

*s/ Robert J. Norcia*

Robert J. Norcia (PA 321509)
STRADLEY RONON STEVEN
   & YOUNG LLP
205 Market Street, Suite 2600
Philadelphia, PA
(215) 564-8159
rnocia@stradley.com

Blair G. Brown (admitted pro hac vice)
Steven N. Herman (PA 205832)
Ivano M. Ventresca (PA 316256)
Brian J. Beaton, Jr. (admitted pro hac vice)
Aaron Chou (admitted pro hac vice)
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
(202) 778-1800
bbrown@zuckerman.com
sherman@zuckerman.com
iventresca@zuckerman.com
bbeaton@zuckerman.com
achou@zuckerman.com

Conor B. O'Croinin (admitted pro hac vice)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-0444
cocroinin@zuckerman.com

*Attorneys for Defendants CVS Pharmacy, Inc., CVS Health Corporation, Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., AdvanceRx.com, L.L.C., and CaremarkPCS Pennsylvania Mail Pharmacy, LLC*

9

## CERTIFICATE OF SERVICE

I hereby certify that, on July 17, 2026, I caused the foregoing to be served on counsel of record via the Court's electronic case filing system.

s/ Robert J. Norcia

Robert J. Norcia

*Attorney for Defendants CVS Pharmacy, Inc., CVS Health Corporation, Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., AdvanceRx.com, L.L.C., and CaremarkPCS Pennsylvania Mail Pharmacy, LLC*

10