**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| City of Philadelphia, | |
| Plaintiff, | Case No.: 2:25-cv-6185-CFK |
| v. | ORAL ARGUMENT REQUESTED |
| CVS Health Corporation *et al.*, | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE**
**COMPLAINT FOR FAILURE TO STATE A CLAIM (ECF 85)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................................ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.     THE CITY'S CLAIMS ARE TIME-BARRED. .................................................................... 2

     A.     The City's RICO Claim Is Time-Barred. .................................................................. 3

     B.     The City's State-Law Claims Are Untimely. ............................................................. 5

II.    THE CITY'S CAUSATION AND DAMAGES THEORIES CONFIRM IT LACKS RICO STANDING. .......................................................................................................................... 8

III.   THE CITY'S PUBLIC-NUISANCE CLAIM FAILS. ........................................................ 11

IV.    THE CITY'S NEGLIGENCE CLAIM FAILS. ................................................................... 12

V.     THE CITY'S UTPCPL CONCESSION CONFIRMS PCPO PREEMPTION. .................... 14

VI.    FEDERAL LAW PREEMPTS THE CITY'S STATE-LAW CLAIMS WITH RESPECT TO ERISA AND MEDICARE PART D HEALTH PLANS. ................................................. 15

CONCLUSION ............................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ahn v. Cigna Health & Life Ins. Co.*,
179 F.4th 187 (3d Cir. 2026) ............................................................................................... 15

*Alaska v. Express Scripts, Inc.*,
2024 WL 2321210 (D. Alaska May 22, 2024) ...................................................................... 16

*Althaus ex rel. Althaus v. Cohen*,
756 A.2d 1166 (Pa. 2000) ..................................................................................................... 12

*Atlantic Richfield Co. v. County of Montgomery*,
294 A.3d 1274 (Pa. Commw. Ct. 2023) ............................................................................... 11

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
804 F.3d 633 (3d Cir. 2015) ................................................................................................. 10

*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*,
417 F. Supp. 3d 531 (E.D. Pa. 2019) ..................................................................................... 3

*Canyon County v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ............................................................................................... 10

*Cetel v. Kirwan Fin. Grp., Inc.*,
460 F.3d 494 (3d Cir. 2006) ................................................................................................... 3

*Chambers Dev. Co., Inc. v. Browning-Ferris Indus.*,
590 F. Supp. 1528 (W.D. Pa. 1984) ..................................................................................... 10

*City & County of San Francisco v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020) .................................................................................... 9

*City of Boston v. OptumRx, Inc.*,
169 F.4th 58 (1st Cir. 2026) ................................................................................. 1, 2, 4, 5, 6, 7

*City of Boston v. Express Scripts, Inc.*,
765 F. Supp. 3d 31 (D. Mass. 2025) ....................................................................................... 5

*City of Erie v. Nw. Pa. Food Council*,
322 A.2d 407 (Pa. Commw. Ct. 1974) .................................................................................. 14

*City of Pittsburgh v. Equitable Gas Co.*,
512 A.2d 83 (Pa. Commw. Ct. 1986) .................................................................................... 14

*Coyle by Coyle v. Richardson-Merrell, Inc.*,
584 A.2d 1383 (Pa. 1991) ..................................................................................................... 13

*CVS Pharmacy, Inc. v. City of Philadelphia*,
  354 A.3d 537 (Pa. Super. Ct. 2026) ....................................................................... 11

*Do Sung Uhm v. Humana, Inc.*,
  620 F.3d 1134 (9th Cir. 2010) ............................................................................... 16

*Duff v. Northampton Twp.*,
  532 A.2d 500 (Pa. Commw. Ct. 1987) .................................................................... 14

*In re Express Scripts, Inc.*,
  176 F.4th 301 (4th Cir. 2026) ................................................................................... 6

*Express Scripts, Inc. v. Anne Arundel County*,
  353 A.3d 1084 (Md. 2026) ................................................................................ 11, 12

*Flowers v. Caremark PCS Health, LLC*,
  --- F.4th ---, 2026 WL 1859929 (8th Cir. June 29, 2026) ................................ 15, 16

*Gabriel v. Giant Eagle, Inc.*,
  124 F. Supp. 3d 550 (W.D. Pa. 2015) ..................................................................... 13

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ...................................................................................................... 9

*Hengle v. Treppa*,
  19 F.4th 324 (4th Cir. 2021) ................................................................................... 10

*Hoffman v. Nordic Naturals, Inc.*,
  837 F.3d 272 (3d Cir. 2016) ..................................................................................... 2

*Jannuzzio v. Danby*,
  2022 WL 2541678 (E.D. Pa. July 7, 2022) .......................................................... 9, 10

*LabMD Inc. v. Boback*,
  47 F.4th 164 (3d Cir. 2022) .................................................................................... 3, 4

*Maio v. Aetna, Inc.*,
  221 F.3d 472 (3d Cir. 2000) ................................................................................... 10

*Mathews v. Kidder Peabody & Co.*,
  260 F.3d 239 (3d Cir. 2001) ..................................................................................... 3

*McKee Foods Corp. v. BFP Inc.*,
  173 F.4th 242 (6th Cir. 2026) ............................................................................. 15, 16

*Medical Marijuana, Inc. v. Horn*,
  604 U.S. 593 (2025) .................................................................................................. 9

iii

*MSP Recovery Claims v. Abbott Labs.*,
2021 WL 2177548 (D.N.J. May 28, 2021) .................................................................. 11

*Neumann's Pharmacy, L.L.C. v. DEA*,
167 F.4th 320 (5th Cir. 2026) ...................................................................................... 13

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ......................................................................................... 2

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization
Transactions, Inc.*,
730 F.3d 263 (3d Cir. 2013) ....................................................................................... 3, 8

*Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*,
359 F.3d 226 (3d Cir. 2004) ......................................................................................... 3

*Religious Tech. Ctr. v. Wollersheim*,
796 F.2d 1076 (9th Cir. 1986) ..................................................................................... 10

*Rice v. Diocese of Altoona-Johnstown*,
255 A.3d 237 (Pa. 2021) .............................................................................................. 7

*Robert L. Kroenlein Trust v. Kirchhefer*,
764 F.3d 1268 (10th Cir. 2014) ..................................................................................... 3

*Roofers Local No. 149 Pension Fund v. GSK PLC*,
2026 WL 602784 (E.D. Pa. Mar. 4, 2026) ................................................... 2, 3, 6, 7, 8

*Rotella v. Wood*,
528 U.S. 549 (2000) ..................................................................................................... 3

*Seebold v. Prison Health Servs., Inc.*,
57 A.3d 1232 (Pa. 2012) ............................................................................................. 12

*Shooter Pops LLC v. Wells Fargo Bank, N.A.*,
649 F. Supp. 3d 62 (E.D. Pa. 2023) ............................................................................ 13

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1999) ......................................................................................... 9

*Sullivan v. Truist Bank*,
715 F. Supp. 3d 668 (E.D. Pa. 2024) ..................................................................... 12, 13

## Rules / Statutes

18 U.S.C. § 1964 ........................................................................................................ 10

21 C.F.R. § 1306.04 .................................................................................................... 13

iv

42 C.F.R. § 423.100 .................................................................................................................... 16

42 C.F.R. § 423.120 .................................................................................................................... 16

42 C.F.R. § 423.153 .................................................................................................................... 16

53 P.S. § 13133 .......................................................................................................................... 14

73 P.S. § 201-9.2 ........................................................................................................................ 14

**INTRODUCTION**

The City's opposition to Defendants' joint motion to dismiss makes several critical concessions that confirm the complaint should be dismissed. The City does not meaningfully dispute that it knew of its alleged injuries more than six years before filing this lawsuit on October 30, 2025. Instead, it invokes a RICO accrual standard that is irreconcilable with Supreme Court precedent and that, in any event, does not save its claims. The City does not dispute that its own prior opioid lawsuits described PBMs in detail as early as 2018 and that dozens of opioid cases nationwide alleged similar claims against PBMs by October 2019—six years before this lawsuit. That is more than enough to dismiss this case. Indeed, based on the same "undisputed public documents," the First Circuit has now affirmed the dismissal on statute-of-limitations grounds of materially identical opioid claims. *City of Boston v. OptumRx, Inc.*, 169 F.4th 58, 62 (1st Cir. 2026).

On the merits, the City admits its theory of causation requires at least three links, which cannot satisfy RICO's direct-relationship requirement. The City also identifies no Third Circuit authority that overrides the majority rule that its claimed expenditures do not satisfy RICO's required injury to "business or property," and it ignores in-circuit precedent establishing that the City cannot pursue equitable relief under RICO. The City separately fails to show that it has plausibly alleged claims for public nuisance and negligence. And the City concedes that it cannot state a UTPCPL claim against the Express Scripts and Optum Defendants, which requires dismissal as to those Defendants and underscores that the City's inconsistent PCPO claim is preempted by the UTPCPL and must be dismissed as to all Defendants. The City's UTPCPL claim against CVS continues to fail for the reasons Defendants explained in their motion, including that the City has not plausibly alleged justifiable reliance. Finally, the City fails to meaningfully rebut ERISA and Medicare Act preemption.

1

## ARGUMENT

### I.    THE CITY'S CLAIMS ARE TIME-BARRED.

More than six years before the City filed its action, numerous filings in a widely publicized MDL concerning prescription opioids alleged the role of PBMs in contributing to opioid abuse. Joint Br. 7–8 (ECF 85-1); Exhibits F–K. And the City *itself* filed lawsuits against manufacturers and distributors of opioids, referencing the alleged role of PBMs and relying on the same alleged injuries it now asserts. *See* Joint Br. 5–6; Exhibits A–C. In fact, the City sued CVS as a distributor and pharmacy for opioid-related conduct more than four years before it initiated this action. *See* Joint Br. 6; Exhibit D. The City undeniably knew of its injuries and had notice of the facts underlying its claims, and so its complaint should be dismissed as time-barred.

Left with little to say in the face of obvious notice, the City argues that it is "improper" for the Court to consider prior lawsuits, as they are "exhibits outside of the [c]omplaint." Opp. 8 n.2 (ECF 90). But under binding precedent, it is proper to consider filings in prior cases and similar "matters of public record" in deciding a motion to dismiss. *See* Joint Br. 4–6; *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 280 & n.52 (3d Cir. 2016) (affirming dismissal based on court filings that were "matters of public record"); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider . . . matters of public record."); *see also Boston*, 169 F.4th at 62–63 (affirming dismissal on statute of limitations grounds based on "matter[s] of public record" and "undisputed public documents properly considered on the motion to dismiss"). Indeed, this Court recently dismissed untimely claims at the pleading stage based on "multiple public records," including publicly filed complaints and litigation documents on another court's docket. *Roofers Local No. 149 Pension Fund v. GSK PLC*, 2026 WL 602784, at *6–8 (E.D. Pa. Mar. 4, 2026) (Kenney, J.). In doing so, this Court recognized that "'matters of public record . . . [can] reveal that the claims in the Original

2

Complaint were untimely.'" *Id.* at *4 (quoting *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 271 (3d Cir. 2013)).

### A.    The City's RICO Claim Is Time-Barred.

The City contends that a civil RICO claim accrues "when the plaintiff knows, or should know, of *both* its injury *and the source of its injury*." Opp. 5 (citing *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004)). The Supreme Court has made clear, however, that "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock[]" for RICO claims. *Rotella v. Wood*, 528 U.S. 549, 555 (2000). The language in *Prudential* that requires discovery of both the injury and its source is irreconcilable with *Rotella* and has been called into doubt by the Third Circuit for that reason. *See LabMD Inc. v. Boback*, 47 F.4th 164, 179 n.10 (3d Cir. 2022); *see also Robert L. Kroenlein Trust v. Kirchhefer*, 764 F.3d 1268, 1278 (10th Cir. 2014) (holding that, under *Rotella*, "a RICO victim need not have actual knowledge of exactly who committed the RICO predicate act resulting in the injury for a civil RICO claim to accrue").[1] And Third Circuit cases both before and after *Prudential* apply the proper *Rotella* test. *See, e.g.*, *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) ("In determining when a RICO claim accrues, we apply an injury discovery rule 'whereby a RICO claim accrues when plaintiffs knew or should have known of their injury.'" (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001))); *Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 549 (E.D. Pa. 2019) (same).

---

[1] Defendants' cited authorities do not articulate an inapplicable standard from the Second Circuit. Opp. 5 n.1. They reiterate the "general discovery accrual rule [that] applies to a RICO claim, whereby the 'discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.'" *Pension Tr. Fund*, 730 F.3d at 274 (quoting *Rotella*, 528 U.S. at 555).

Regardless, the City's RICO claim is untimely "under either the injury-discovery-rule or the injury-plus-source-discovery rule[.]" *LabMD*, 47 F.4th at 179 n.10. The City does not dispute that it had actual notice of its alleged injury for many years. Opp. 5; Joint Br. 5–6. And, for two independent reasons, the City unquestionably had inquiry notice of the PBMs being the alleged source of that injury since 2018 or 2019. *See* Joint Br. 7–8. *First*, the City's own prior opioid complaints described PBMs in detail. *See* Exhibit A ¶ 402. *Second*, as the City acknowledges, by October 2019, dozens of similarly situated local governments across the country filed highly publicized lawsuits against PBMs asserting claims indistinguishable from the City's. Opp. 8; *see* Joint Br. 7–8; Exhibit F (January 2018 complaint against PBMs); Exhibits G–I (letters publicly filed on MDL docket in 2018 highlighting opioid claims against PBMs); Exhibit J (list of 64 opioid lawsuits publicly filed against PBMs before October 30, 2019); Exhibit K (MDL bellwether complaint filed under seal in July 2019 against PBMs and others and made public in September 2019). As the First Circuit held in *Boston*, "from 2018 to 2019, at least seventy-four lawsuits, all a matter of public record, were filed by other cities, towns, and counties not just against opioid manufacturers but also against the PBM defendants." 169 F.4th at 63.[2] There, as here, "[i]t is not plausible that the City was not aware of these prior litigations." *Id.*

That conclusion is "bolstered by the fact" that the City's counsel began filing opioid claims against PBMs at least as early as July 2019. *Boston*, 169 F.4th at 63 ("conclusion" that Boston was "aware of these prior litigations" was "bolstered by the fact that" Boston's lawyers received notice of claims against PBMs from their work for other clients in the opioid MDL). Since at least June 2019, the City has been represented in opioid litigation by Baron & Budd, P.C. *See* Exhibits B–D

---

[2] The First Circuit's count of 74 cases includes 10 cases filed in November or December 2019. There are 64 such cases filed before October 30, 2019. *See* Exhibit J.

(various opioid complaints filed by the City in 2019 and 2021 signed by Baron & Budd attorneys). Those same attorneys represent the City here. *See* Compl. at 277. And those same attorneys signed the July 2019 MDL bellwether complaint alleging claims against the PBMs. Exhibit K at 469.

The City tries to distinguish *Boston*, arguing that it purportedly applied the discovery-of-injury standard rather than the discovery-of-injury-plus-source standard. Opp. 6. Discovery-of-injury is the proper standard, as discussed above. But the City's attempted distinction is also irrelevant. The First Circuit concluded, based on the same public records at issue here, that the City "knew or should have known well before 2021 of its alleged injuries *from defendants' actions*[.]" *Boston*, 169 F.4th at 60 (emphasis added) (citing 765 F. Supp. 3d 31, 38–39 (D. Mass. 2025)). As explained in the district court's "carefully reasoned opinion," *id.*, "[b]y 2018, all the 'telltale warning signs' were present that the City suffered injury *as a result of the PBMs'* [alleged] *role* in the opioid epidemic." 765 F. Supp. 3d at 42 (emphasis added). So, even if the standard were discovery-of-injury-plus-source (it is not), *Boston* held it was satisfied. The same is true here.[3]

### B.    The City's State-Law Claims Are Untimely.

Just as the City's RICO claim is untimely, so are its state-law claims. Joint Br. 7–8; *Boston*, 169 F.4th at 64 (affirming dismissal of opioid-related public-nuisance claim as time-barred). In response, the City invokes several tolling doctrines. Opp. 7–9.

One is *nullum tempus*, which the City concedes does not apply to its RICO, UTPCPL, or PCPO claims; it invokes the doctrine only for public nuisance, conspiracy, and concerted action. Opp. 7. As to those latter claims, the City acknowledges that *nullum tempus* is inapplicable where

---

[3] The district court in *Boston* dismissed as time-barred both a RICO claim and a public-nuisance claim. 765 F. Supp. 3d at 38–43. Boston appealed only the dismissal of its public-nuisance claim, so the First Circuit did not expressly address the RICO claim. 169 F.4th at 60 n.1. But the First Circuit endorsed the district court's reasoning that undergirded the dismissal of both claims based on the public records of prior opioid lawsuits.

a local government "seek[s] damages." *Id*. at 8. Yet damages are exactly what the City seeks here: "millions of dollars" to compensate it for the costs of treating alleged downstream harms from opioids, including "social services costs, treatment costs, . . . and medical and prescription costs." Compl. ¶¶ 727, 745. The City insists this is "equitable abatement relief." Opp. 8. But the Fourth Circuit recently rejected that argument in another opioid case, holding that such compensatory monetary relief is "textbook legal damages." *In re Express Scripts, Inc.*, 176 F.4th 301, 315 (4th Cir. 2026) ("[The requested abatement remedy] is legal, not equitable. The fund would target not merely the oversupply of opioids (the alleged public nuisance) but the treatment of people who have suffered on account of that oversupply. Such treatment would constitute compensation for the downstream harm that the nuisance caused—textbook legal damages.").[4]

The City likewise fails to show that any other doctrine saves its untimely state-law claims. The City does not dispute that its invocations of the discovery rule, fraudulent concealment, and equitable estoppel cannot overcome a showing that it was on actual, constructive, or inquiry notice. Joint Br. 10; *see Boston*, 169 F.4th at 62–63 (rejecting fraudulent concealment where plaintiff was on inquiry notice). As a result, the City's nearly exclusive reliance on allegations concerning misrepresentations or fraud, Opp. 8–9, is misguided. *See Roofers Local*, 2026 WL 602784, at *10 ("Plaintiffs could no longer depend on [the defendant's] denials or reassurances to delay the running of the limitations clock, given the existence of other public records pointing to alleged deception."). And although the City acknowledges "other opioid suits filed against PBMs in 2018 or 2019," it claims it was not on notice of Defendants' alleged role until "critical documents on which those lawsuits were based" were produced in the MDL "in late 2021." Opp. 8. That is "not

---

[4] The City offers no authority that merely alleging the violation of a public right means that it is suing in an "exclusively governmental way." Opp. 7. In any event, the City fails to plausibly allege such a violation as explained in Part III, below.

plausible" on its face, *Boston*, 169 F.4th at 63, especially given that the City's *own counsel* signed an MDL bellwether complaint pleading opioid claims (including a public-nuisance claim) against the PBMs back in July 2019 and asserting tolling doctrines such as fraudulent concealment, *see* Exhibit K at ¶¶ 284–89, 1200–08, 1401–50 & p. 468–69. But even if the City's assertion were plausible, it would not satisfy the City's "duty to investigate." *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 253 (Pa. 2021). The City's own prior opioids lawsuit filed in January 2018 described PBMs in detail, Joint Br. 7; Exhibit A ¶ 402, so it obviously could have brought this action by 2019, when dozens of other municipalities had already sued PBMs. *See* Exhibits G–K; *Boston*, 169 F.4th at 63.

That is exactly what this Court held in *Roofers Local No. 149*. The plaintiffs there sued GlaxoSmithKline (GSK) in 2025 for alleged misrepresentations regarding cancer risks associated with the heartburn medication Zantac. 2026 WL 602784, at *1–2. GSK moved to dismiss, arguing, among other things, that the plaintiffs' claims were barred by a two-year statute of limitations. *Id.* at *3–4. After reviewing the complaint's allegations and numerous publicly available records and litigation documents, this Court held "that reasonably diligent plaintiffs would have discovered the facts giving rise to Plaintiffs' securities fraud claims prior to February 4, 2023, and thus Plaintiffs' claims are time barred." *Id.* at *4. The Court "beg[a]n[] with" the complaint's own allegations, which "demonstrate that, at a minimum, there were 'storm warnings' that would have prompted a reasonably diligent plaintiff to begin investigating the basis for the instant . . . claims in August 2022." *Id.* at *5 (cleaned up). The Court referenced allegations referring to litigation in the "MDL products liability action" regarding Zantac, which "would have prompted a reasonably diligent plaintiff to investigate the MDL action and potential securities fraud claims[.]" *Id.* "Next, the Court turn[ed] to publicly available records," including complaints "filed in the MDL proceeding" and

7

various state courts in 2021 and 2022, which "alleged almost the exact same theory years before" plaintiffs filed suit. *Id.* at *6, 9. Based on these public records, the Court concluded that "there were ample 'storm warnings' prior to February 4, 2023 that would have led reasonably diligent plaintiffs to discover the facts and elements giving rise to" their claims. *Id.* at *8 (quoting *Pension Tr. Fund for Operating Eng'rs*, 730 F.3d at 275)).

The same types of public records exist here and compel the same conclusion. *See* Joint Br. 3–8. Here, as in *Roofers Local No. 149*, dozens of publicly filed complaints in the MDL— including one in an MDL bellwether signed by the City's own counsel—alleged the same facts and asserted the same theories years before the City brought suit. *See* Exhibits F, J, K. Letters publicly filed on the MDL docket in 2018 spotlighted those lawsuits as "nam[ing] a critical defendant group—pharmacy benefit managers ('PBMs')." Exhibit G; *see also* Exhibits H, I. Those public records "would have prompted a reasonably diligent plaintiff to begin investigating the basis" for its claims. *Roofers Local No. 149*, 2026 WL 602784, at *5 (citation omitted). And that does not even account for the City's *own* prior opioid lawsuits, which described the role of PBMs in detail as early as 2018. *See* Exhibit A ¶ 402. There is thus no question that "a reasonably diligent plaintiff conducting a timely investigation would have uncovered" the facts giving rise to the City's claims by at least October 30, 2019 (and likely well earlier), so all its claims for relief are time-barred. *Roofers Local No. 149*, 2026 WL 602784, at *8 (citation omitted).

## II.   THE CITY'S CAUSATION AND DAMAGES THEORIES CONFIRM IT LACKS RICO STANDING.

On the merits, the City's defense of its RICO claim fails for three reasons. *First*, the City's causation theory is too indirect as a matter of law. The City admits its causal chain involves at least three links, which is two too many for a RICO claim. It argues that (1) Defendants' "coordinated efforts" with opioid manufacturers "caused an oversupply of opioids"; (2) the alleged oversupply

8

was "foreseeably diverted into an illegal market"; and (3) "the City bore the costs, including extraordinary costs to carry out its governmental functions, lost tax revenue, and diminished property values." Opp. 11. That three-step theory omits multiple independent decisionmakers, including doctors who prescribed opioid medications, individuals who unlawfully diverted opioid medications into illegal markets, and individuals who unlawfully obtained opioid medications and illicit opioids (e.g., heroin and fentanyl) from illegal markets, abused them, and imposed the costs the City complains of on government functions, tax revenues, and property values in Philadelphia. *See* Joint Br. 13; *see also* Compl. ¶ 817; Opp. 13.

Even taken at face value, the City's three-step causal chain is too attenuated. "[W]henever the plaintiff's theory of causation requires moving 'well beyond the first step,' it 'cannot meet RICO's direct relationship requirement.'" *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010)); *see also Jannuzzio v. Danby*, 2022 WL 2541678, at *9 (E.D. Pa. July 7, 2022) (Kenney, J.) ("[I]n order to show [RICO] proximate cause, the claimed injury must be the next link in the chain of causation after the predicate act."). Because the City admits that its injuries are not the direct result of Defendants' alleged conduct—but rather a downstream effect of at least two intervening causal links—the Court should dismiss the RICO claim. *See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 932–33 (3d Cir. 1999) (affirming dismissal of RICO claim for lack of direct relationship); *Jannuzzio*, 2022 WL 2541678, at *11 (dismissing RICO claim for, among other things, lack of proximate cause); *City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 658–59 (N.D. Cal. 2020) (same for opioid-related RICO claim).

*Second*, the City's alleged injuries—costs expended on government services and lost tax revenue—do not satisfy RICO's requirement that a plaintiff suffer injury to its "business or

9

property." 18 U.S.C. § 1964(c); Joint Br. 14; *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976, 979 (9th Cir. 2008). In response, the City does not identify any Third Circuit precedent supporting its view that RICO's required injury to "business or property" can include expenditures made in the City's governmental capacity. One of the City's cited cases affirmed the *dismissal* of a RICO claim for lack of standing. *Maio v. Aetna, Inc.*, 221 F.3d 472, 474 (3d Cir. 2000). The other, which did not involve a municipal plaintiff, reinforced that RICO requires a "concrete" injury, "not mere injury to a valuable intangible property interest." *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015) (citation omitted).

Even if the City sufficiently alleged injury to its business or property, it acknowledges that, under *Canyon County*, its claim would be limited to any alleged harm the City suffered as a result of "doing business in the marketplace," *i.e.*, "purchasing opioids and naloxone." Opp. 10–11. Thus, at minimum, the Court should limit the City's RICO claim to that alleged harm. *See Jannuzzio*, 2022 WL 2541678, at *8 (RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property" (cleaned up)).

*Third*, the City has no answer to Defendants' argument that RICO does not authorize private plaintiffs to seek equitable relief. *See* Compl. ¶ 821 (seeking "all legal and equitable relief as allowed by law" for RICO claim, including, among other things, orders "enjoining" certain conduct). The City concedes that the Third Circuit has not held that equitable relief is available and that the Fourth and Ninth Circuits have held it is not. Opp. 12; *see* Joint Br. 12; *Hengle v. Treppa*, 19 F.4th 324, 353–56 (4th Cir. 2021); *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1082–87 (9th Cir. 1986). The City's lone supporting in-circuit authority is a 1984 district-court decision that predates *Hengle* and *Wollersheim* and rests its atextual analysis on the purported "purpose" of the RICO statute. *Chambers Dev. Co., Inc. v. Browning-Ferris Indus.*, 590 F. Supp.

10

1528, 1540 (W.D. Pa. 1984). More recent in-circuit authority holds that RICO does not establish a private right to equitable relief. *See MSP Recovery Claims v. Abbott Labs.*, 2021 WL 2177548, at *9 (D.N.J. May 28, 2021) (collecting cases).

## III.    THE CITY'S PUBLIC-NUISANCE CLAIM FAILS.

The Third Circuit's binding decision in *City of Philadelphia v. Beretta U.S.A. Corp.*, mandates dismissal of the City's public-nuisance claim because Defendants did not control the alleged nuisance. 277 F.3d 415, 425–26 (3d Cir. 2002). The City's opposition confirms as much. *See* Opp. 13 (admitting the alleged nuisance is based on third parties' "use and abuse" of opioids, including "drivers under the influence of opioids," and "used needles").

The Pennsylvania Superior Court's decision affirming the denial of a motion to dismiss in *CVS Pharmacy, Inc. v. City of Philadelphia*, 354 A.3d 537 (Pa. Super. Ct. 2026), which is pending further review, is neither binding nor persuasive. The decision does not address the issue of control over the instrumentality of the nuisance, which was dispositive in *Beretta* and is dispositive here. On the public-right issue, the Superior Court's decision misapplies Pennsylvania public-nuisance law and directly conflicts with *Atlantic Richfield Co. v. County of Montgomery*, 294 A.3d 1274 (Pa. Commw. Ct. 2023), on which Defendants rely. *See CVS Pharmacy*, 354 A.3d at 543–45 (discussing the case at length). *Atlantic Richfield*, like *Beretta*, rejected the use of Pennsylvania's common law of public nuisance to establish liability for the manufacture and distribution of lawful products. *See Atl. Richfield*, 294 A.3d at 1285; *Beretta*, 277 F.3d at 421.

By contrast, after the Superior Court's decision in *CVS Pharmacy*, the Supreme Court of Maryland rejected a materially similar opioid public-nuisance claim against pharmacies and PBMs, holding that "the licensed dispensing of, or administration of benefit plans for, a controlled substance does not constitute an actionable public nuisance." *Express Scripts, Inc. v. Anne Arundel County*, 353 A.3d 1084, 1087, 1130–31 (Md. 2026). Even under the "expansive" definition of

11

public nuisance "contained in § 821B of the Second Restatement," the court held that a plaintiff could not plausibly allege a public-nuisance claim because—whether the Defendants' activities were done lawfully or unlawfully—there is no "broad public right to be free from all potential harms associated with the prescribing and dispensing of opioids." *Id.* at 1128, 1133; *contra* Opp. 15. Although it applied Maryland law, *Anne Arundel County* is squarely in line with *Beretta* and *Atlantic Richfield* and supports dismissal here.

## IV.     THE CITY'S NEGLIGENCE CLAIM FAILS.

The City's opposition fails to identify an applicable legal duty that could support its negligence claim. Opp. 18–26; Joint Br. 20–25. The City focuses its duty argument for PBMs on foreseeability. Opp. 18–20. But "foreseeability . . . is not alone determinative[.]" *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1249 (Pa. 2012). Rather, it is only one of *five* factors that courts consider—all of which decisively counsel against imposing a duty on PBMs here. Joint Br. 21–22. The City also argues that the PBMs voluntarily undertook to administer prescription benefits. Opp. 19–20. But voluntarily undertaken duties arise only where a defendant affirmatively undertakes some obligation *to a specific party. Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000). The City cannot satisfy this requirement as to the Express Scripts and Optum Defendants, with whom it admits it had no relationship. Opp. 20, 27 & n.4. And the argument fails as to the CVS Defendants because the City seeks to impose duties far beyond CVS's contracts with the City. *See Sullivan v. Truist Bank*, 715 F. Supp. 3d 668, 675 (E.D. Pa. 2024) (Kenney, J.) (applying Pennsylvania law to dismiss negligence claim against bank based on, among other factors, a lack of special relationship with a customer who was the victim of an online extortion scheme).

The City claims that "Defendants also have express statutory duties as dispensers of controlled substances[.]" Opp. 22. But, as the City concedes, *PBMs* have no relevant statutory duties because they are not dispensers. *See id*. Even as to Defendants' mail-order pharmacies, the

City admits, *id.*, that courts in this Circuit have held that pharmacies' duties are "specifically limited . . . to filling prescriptions in a safe manner" and do not extend to preventing criminal acts by third parties who use or abuse the medications. *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 563–64 (W.D. Pa. 2015); *see also Coyle by Coyle v. Richardson-Merrell, Inc.*, 584 A.2d 1383, 1387 (Pa. 1991) ("[I]t would ill-serve the needs of the public to impose a duty on pharmacists under which, to avoid potential liability, they might refuse to fill prescriptions, notwithstanding decisions by licensed physicians that a particular drug was necessary and appropriate for their patients' medical treatment."); *cf. Neumann's Pharmacy, L.L.C. v. DEA*, 167 F.4th 320, 328–29 (5th Cir. 2026) (21 C.F.R. § 1306.04 imposes liability "only if" a pharmacist "knowingly" fills "an invalid prescription"). In its opposition, the City asserts that its negligence claim is not based on the acts of third parties. Opp. 22. But its complaint says otherwise, premising the negligence claim on numerous third-party acts, including "criminal acts by addicted individuals." Compl. ¶ 505; *see also id.* ¶¶ 520, 695, 722, 838, 850–51. There is no reason to depart from the "[g]eneral[]" rule not "to impose a duty to protect a member of the general public from the harmful acts of third parties[.]" *Sullivan*, 715 F. Supp. 3d at 675 (quotations omitted); *see Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp. 3d 62, 69 (E.D. Pa. 2023) (Kenney, J.) (bank owed no duty to prevent fraud by third parties in the absence of a "special relationship").

Finally, the City admits that the only Pennsylvania authority on the municipal cost recovery rule would bar the City's claim because it is premised on the costs of government operations. Relying on out-of-state authority, the City argues that the rule is inapplicable if the alleged harm is great enough. Opp. 25–26. Under Pennsylvania law, however, what matters is not magnitude, but kind. *See City of Pittsburgh v. Equitable Gas Co.*, 512 A.2d 83, 84–85 (Pa. Commw. Ct. 1986).

13

## V.     THE CITY'S UTPCPL CONCESSION CONFIRMS PCPO PREEMPTION.

Although the complaint purports to plead a cause of action under the UTPCPL against all Defendants, the City now asserts that it "is pursuing its UTPCPL claim against only CVS." Opp. 27 n.4. The City's claim against CVS continues to fail for the reasons Defendants explained, including that the City has not plausibly alleged justifiable reliance. *See* Joint Br. 25–30. At minimum, however, the Court should dismiss the UTPCPL claim against the Express Scripts and Optum Defendants in light of the City's concession.

In addition, the City's conceded inability to bring a UTPCPL claim against the Express Scripts and Optum Defendants—while it continues to pursue its PCPO claim against all Defendants—confirms that the PCPO claim is preempted. Its concession highlights one of many irreconcilable conflicts between the PCPO and UTPCPL. *See* Joint Br. 35–36. By purporting to grant itself the power to pursue a claim that is expressly barred under the UTPCPL, 73 P.S. § 201-9.2(a), the City is exercising power that is "contrary to" and an "enlargement of" the powers granted by the General Assembly. 53 P.S. § 13133. Allowing the City's PCPO claim to proceed would open the door for municipalities and counties across the Commonwealth to pursue conflicting standards in an area where the General Assembly plainly desired uniformity. *See Duff v. Northampton Twp.*, 532 A.2d 500, 507 (Pa. Commw. Ct. 1987) ("To permit each municipality to enact its own laws and regulations would create a lattice of additional rules as to when and where [certain conduct] would be permissible and would be in direct opposition to the legislative mandate."); *City of Erie v. Nw. Pa. Food Council*, 322 A.2d 407, 411 n.5 (Pa. Commw. Ct. 1974) ("If the City of Erie could regulate meat packages, so could every borough and township in Pennsylvania. Reduced to absurdity, there could be hundreds of different meat package requirements throughout Pennsylvania.").

14

## VI.    FEDERAL LAW PREEMPTS THE CITY'S STATE-LAW CLAIMS WITH RESPECT TO ERISA AND MEDICARE PART D HEALTH PLANS.

The City acknowledges that its state-law claims challenge "Defendants' formularies and UM practices, which might be used by ERISA plans." Opp. 37. By challenging the PBMs' formulary design and UM practices, the City is seeking to impose liability on the PBMs based at least in part on their administration of ERISA health plans, which represent the bulk of the PBM Defendants' clients. Joint Br. 38. That is exactly the sort of "impermissible connection" that ERISA preempts—as demonstrated by several recent appellate decisions. *Ahn v. Cigna Health & Life Ins. Co.*, 179 F.4th 187, 191 (3d Cir. 2026) (state-law defamation claim challenging the "communication of claim adjudications" was preempted by ERISA).

"[B]ecause PBMs manage benefits on behalf of plans," appellate courts have held that "a regulation of PBMs functions as a regulation of an ERISA plan itself." *Flowers v. Caremark PCS Health, LLC*, --- F.4th ---, 2026 WL 1859929, at *4 (8th Cir. June 29, 2026) (citation omitted). Accordingly, the Eighth Circuit recently held that ERISA preempted Arkansas state laws that would require PBMs "to tailor substantive benefits to the particularities of multiple jurisdictions." *Id.* Likewise, the Sixth Circuit recently held that ERISA preempted Tennessee state laws regulating PBM pharmacy networks, copays, and coinsurance rates. *McKee Foods Corp. v. BFP Inc.*, 173 F.4th 242, 262–69 (6th Cir. 2026). The court explained that PBMs "perform certain functions for ERISA health benefit plans[]" and when state laws "encroach" on a plan's "autonomy" to "structure and design [benefits] as they see fit[,] . . . ERISA prevents such state-level interference." *Id.* at 266.

Like the PBM regulations in *Flowers* and *McKee Foods*, the City's claims seek to use Pennsylvania law to "bulldoze through [ERISA's] objectives" and require "PBMs to tailor and retailor their" formulary decisions and claims processing for prescription opioids to match the City's preferences, even as those preferences differ from the preferences of ERISA plans across the

15

country. *Flowers*, 2026 WL 1859929, at *4. In other words, the City's claims contend that PBMs must force their ERISA plan clients "to structure [their] benefit plans in [particular] ways," *McKee Foods*, 173 F.4th at 263, including by imposing stricter "quantity limits," "pill limitations and/or formulation requirements" on prescription opioids. Compl. ¶¶ 421, 423. ERISA preempts claims like this that seek to encroach on such central matters of plan design and administration.

The Medicare Act preempts the City's claims for similar reasons. *See* Joint Br. 39–40. The City argues that it does "not seek to substantively regulate or set standards for how Defendants design their formularies[.]" Opp. 39. But the City does not dispute that its claims seek to impose liability on the PBM Defendants for developing Medicare Part D formularies that include prescription opioids or that CMS regulates and approves all formularies for Medicare Part D plans. *See* 42 C.F.R. §§ 423.100, 423.120(b)(2), 423.153. The Medicare Act therefore preempts the City's claims with respect to Part D plans. *See Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1157 (9th Cir. 2010) (Medicare Part D preempts state-law claims that "would directly undermine CMS's prior determination"); *Alaska v. Express Scripts, Inc.*, 2024 WL 2321210, at *11 (D. Alaska May 22, 2024) (Medicare Act preempts Alaska's opioid claims with respect to "Express Scripts' administration of Part D plans[]" because the state sought to "impose liability for the structure of formularies which CMS requires be developed and reviewed in a specific manner").

## CONCLUSION

The Court should dismiss the complaint with prejudice. Defendants respectfully request oral argument.

16

Dated: July 17, 2026

/s/ Joseph I. Fontak
Joseph I. Fontak
LEADER BERKON COLAO
& SILVERSTEIN LLP
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 755-0455
jfontak@leaderberkon.com

Brian D. Boone (*pro hac vice*)
Matthew P. Hooker (*pro hac vice*)
ALSTON & BIRD LLP
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000
brian.boone@alston.com
matthew.hooker@alston.com

Michael A. Kaeding (*pro hac vice*)
ALSTON & BIRD LLP
555 Fayetteville St., Suite 600
Raleigh, NC 27601
(919) 862 2200
mike.kaeding@alston.com

Debolina Das (*pro hac vice*)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400
debolina.das@alston.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Jeffrey T. Scott (*pro hac vice*)
Matthew J. Porpora (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendants UnitedHealth Group, Inc.; Optum, Inc.; OptumInsight, Inc.;*

Respectfully submitted,

/s/ Elisabeth Miller
Elisabeth Miller (PA 335455)
David Mader (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
(212) 849-7000
elisabethmiller@quinnemanuel.com
davidmader@quinnemanuel.com

Michael Lyle (*pro hac vice*)
Jonathan G. Cooper (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Defendants Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Processing, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Evernorth Health, Inc., Express Scripts Specialty Distribution Services, Inc.*

/s/ Robert J. Norcia
Robert J. Norcia (PA 321509)
STRADLEY RONON STEVEN
& YOUNG LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19106
(215) 564-8663
rnorcia@stradley.com

Steven N. Herman (PA 205832)
Blair G. Brown (*pro hac vice*)
Ivano M. Ventresca
Brian J. Beaton, Jr. (*pro hac vice*)
Aaron Chou (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400

17

*OptumInsight Life Sciences, Inc.; OptumRx, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.*

Washington, DC 20037
(202) 778-1800
sherman@zuckerman.com
bbrown@zuckerman.com
iventresca@zuckerman.com
bbeaton@zuckerman.com
achou@zuckerman.com

Conor B. O'Croinin (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-0444
cocroinin@zuckerman.com

*Attorneys for Defendants CVS Pharmacy, Inc., CVS Health Corporation, Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., AdvanceRx.com, L.L.C., and CaremarkPCS Pennsylvania Mail Pharmacy, LLC*

18