**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| CITY OF PHILADELPHIA, | : | |
| Plaintiff, | : | No. 2:25-cv-06185-CFK |
| | : | |
| vs. | : | ORAL ARGUMENT REQUESTED |
| | : | |
| CVS HEALTH CORPORATION; et al | : | |
| Defendants. | : | |
| | : | |

**REPLY SUPPORTING UNITEDHEALTH GROUP INCORPORATED, OPTUM, INC.,
OPTUMINSIGHT, INC., OPTUMINSIGHT LIFE SCIENCES, INC., OPTUMRX
DISCOUNT CARD SERVICES, LLC, OPTUM PERKS, LLC, OPTUMHEALTH
NETWORKS, INC., OPTUMHEALTH CARE SOLUTIONS, LLC, AND
OPTUMHEALTH HOLDINGS, LLC'S
<u>MOTION TO DISMISS (ECF 84)</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.      THE CITY'S OPPOSITION CONFIRMS THERE IS NO PERSONAL JURISDICTION OVER THE 12(b)(2) DEFENDANTS. ..................................... 2

          A.      The City Cannot Plausibly Allege Specific Jurisdiction Over Defendants. ........................................................................................... 2

          B.      The City Has Not Pleaded Facts Showing That The 12(b)(2) Defendants Are Subject To Specific Jurisdiction. ...................................... 3

          C.      The RICO Claim Does Not Cure The Jurisdictional Defects. .................... 7

          D.      There Is No Basis for Jurisdictional Discovery. ........................................ 8

    II.      THE CITY'S OPPOSITION CONFIRMS THAT ITS CLAIMS AGAINST CORPORATE-PARENT AND AFFILIATE ENTITIES WITH NO ALLEGED CONDUCT FAIL. ................................................................ 9

CONCLUSION ...................................................................................................................... 11

**TABLE OF AUTHORITIES**

CASES                                                                                                                    PAGE(S)

*Anne Arundel County v. Express Scripts, Inc.*,
   2025 WL 254807 (D. Md. Jan. 21, 2025)................................................................1, 3, 5

*Blanding v. Walmart Inc.*,
   2024 WL 3433321 (E.D. Pa. July 15, 2024) ...............................................................5

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
   948 F.3d 124 (3d Cir. 2020)........................................................................................3

*Heartrepreneur, LLC v. Jones*,
   2020 WL 2839102 (E.D. Pa. May 29, 2020) .............................................................5

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998)........................................................................................3

*Malik v. Cabot Oil & Gas Corp.*,
   710 F. App'x. 561 (3d Cir. 2017) ...............................................................................8

*Mallory v. Norfolk S. Ry. Co.*,
   600 U.S. 122 (2023).....................................................................................................4

*Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*,
   359 F.3d 226 (3d Cir. 2004)........................................................................................7

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ....................................................................................................6

*Rush v. Savchuk*,
   444 U.S. 320 (1980).....................................................................................................4

*Schrotberger v. Doe*,
   2022 WL 4072962 (E.D. Penn. 2022) ........................................................................8

*Smith v. Onsite Neonatal Partners, Inc.*,
   2023 WL 1864869 (E.D. Pa. Feb. 9, 2023) ...............................................................7

*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003)........................................................................................8

*United States v. Botefuhr*,
   309 F.3d 1263 (10th Cir. 2002) ..................................................................................7

*Walden v. Fiore*,
   571 U.S. 277 (2014)..............................................................................................4, 5, 6

*Waller v. Nelson*,
  2023 WL 4106250 (W.D. Va. June 21, 2023) .........................................................................7

**RULES**

Federal Rule of Civil Procedure 12(b)(2) ......................................................................3

Federal Rule of Civil Procedure 12(b)(6) ......................................................................1

**INTRODUCTION**

The City of Philadelphia's opposition to the Optum Defendants' Motion to Dismiss confirms that the City cannot establish personal jurisdiction over OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, or OptumHealth Holdings, LLC (the "12(b)(2) Defendants"), and it cannot state plausible claims against the remaining Optum Defendants under Rule 12(b)(6). Rather than cure these deficiencies, the opposition concedes critical points, ignores dispositive authority, and mischaracterizes the City's own complaint.

*First*, the City fails to allege any basis for personal jurisdiction over the 12(b)(2) Defendants and relies on RICO jurisdiction to its detriment. As discussed extensively in the Defendants' joint motion to dismiss and contemporaneously filed reply, the City's RICO claim is untimely and meritless and therefore provides no basis for personal jurisdiction. Joint Br. Sections I.A., II (ECF No. 85-1); Joint Reply Sections I.A., II. *Second*, the City's opposition never addresses *Anne Arundel County v. Express Scripts, Inc.*, 2025 WL 254807 (D. Md. Jan. 21, 2025)—a materially identical opioid case where the district court dismissed claims against these same OptumInsight entities for lack of personal jurisdiction. Nor does the City engage with the opening brief's arguments that a non-colorable RICO claim cannot serve as a basis for nationwide service of process or pendent personal jurisdiction. *Third*, the opposition's own citations to the Complaint repeatedly prove, rather than rebut, the group-pleading deficiencies identified in the opening brief: nearly every allegation the City musters is attributed to a collectively defined umbrella term ("OptumInsight," "OptumHealth," "Optum") that lumps the 12(b)(2) Defendants together with non-moving entities and non-party predecessors, not to any individual 12(b)(2) Defendant's own Pennsylvania-directed conduct. *Fourth*, the opposition requests jurisdictional discovery without providing any facts with reasonable particularity as to what such discovery would show. *Finally*,

1

as to certain corporate parent and affiliated entities, the opposition continues with the same conclusory allegations that improperly lump various Defendants together.

**ARGUMENT**

**I.    THE CITY'S OPPOSITION CONFIRMS THERE IS NO PERSONAL JURISDICTION OVER THE 12(b)(2) DEFENDANTS.**

The City fails to allege any basis for exercising personal jurisdiction over the 12(b)(2) Defendants and relies on its meritless RICO claim in an attempt to cure this deficiency.

The City admits that there is no general jurisdiction over the 12(b)(2) Defendants. Opp. at 4 (ECF 87). And its opposition also confirms that the Court lacks specific jurisdiction because the City does not allege that any of those entities have suit-related contacts creating a substantial connection with Pennsylvania that would not offend traditional notions of fair play and substantial justice. Exercising jurisdiction over the 12(b)(2) Defendants would run afoul of both Pennsylvania's long-arm statute and federal due process. Finally, the City's reliance on RICO jurisdiction over the 12(b)(2) Defendants, and, therefore, pendent jurisdiction over the City's other claims, fails because there are no factual allegations tying the 12(b)(2) Defendants to the alleged RICO enterprise.

The City's fallback request for jurisdictional discovery "in the alternative"—should "the Court believe[] there is a question" as to contacts—underscores that the City's own pleading does not establish personal jurisdiction. A speculative request for discovery is not a substitute for the factual allegations that must appear in the complaint itself.

**A.    The City Cannot Plausibly Allege Specific Jurisdiction Over Defendants.**

The Court lacks specific personal jurisdiction over the 12(b)(2) Defendants because the City has not come close to plausibly alleging that the 12(b)(2) Defendants expressly aimed their conduct at Pennsylvania, much less that the City's claims "arise out of or relate to" anything that

2

those defendants might have done in Pennsylvania. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 256, 265–66 (3d Cir. 1998) (explaining that for intentional torts, "the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity."). Notably, the City does not even attempt to address the dismissal in *Anne Arundel County* on personal jurisdiction grounds—another case asserting similar opioid-related claims against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. 2025 WL 254807, at *2–4, 10 ("[n]one of the County's allegations referencing the OptumInsight Entities indicate that they transacted business within Maryland[,]" and "[t]he conduct alleged in the Amended Complaint does not establish that the OptumInsight Entities purposefully availed themselves of the privilege of conducting activities within Maryland, or that the County's claims arise out of those contacts.").

**B.      The City Has Not Pleaded Facts Showing That The 12(b)(2) Defendants Are Subject To Specific Jurisdiction.**

The City fails to allege any Pennsylvania-specific suit-related conduct by the 12(b)(2) Defendants and, in fact, barely mentions these entities at all. *See, e.g.*, Compl. ¶¶ 119–23, 133–37, 141, 145, 148, 158–61, 259, 379–82, 397–406, 425, 430, 827, 846.

### 1.  OptumInsight Life Sciences, Inc.

The City's lead argument on OptumInsight Life Sciences, Inc. rests on a deliberate conflation of two separate corporate entities. The opposition asserts that "Defendants concede that there is personal jurisdiction over OptumInsight, Inc." and that this somehow demonstrates jurisdiction over OptumInsight Life Sciences, Inc. Opp. at 9. This is a non sequitur. OptumInsight, Inc. did not move to dismiss under Rule 12(b)(2) because it is registered to do business in Pennsylvania, Compl. ¶ 118, which independently confers consent-based general jurisdiction

under *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134–36 (2023). OptumInsight Life Sciences, Inc., however, is a separate Rhode Island corporation with no Pennsylvania registration. Compl. ¶ 119. The City's suggestion that Defendants' "silence" as to one corporate entity establishes jurisdiction over a legally distinct entity finds no support in the law and should be rejected. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (jurisdictional analysis must proceed "as to each defendant").

As to OptumInsight Life Sciences, Inc., the City incorrectly claims—without any citation to any specific paragraph—that "the Complaint draws a direct line between the fraudulent marketing, educational, and medical materials created and disseminated by both OptumInsight Defendants and the growth of the opioid crisis in Philadelphia." Opp. at 9–10. The City fails to explain how the alleged work completed by OptumInsight Life Sciences, Inc. creates a substantial connection to Pennsylvania or that OptumInsight Life Sciences, Inc.'s "work" had anything to do with Pennsylvania, let alone suit-related contacts creating a substantial connection with Pennsylvania. *See* Opp. at 10; *Walden v. Fiore*, 571 U.S. 277, 284 (2014). *See, e.g.*, Compl. ¶¶ 123, 159, 160, 161, 259, 379–82.

As to the substance, the opposition claims that the complaint establishes that both OptumInsight Defendants' actions expanded the use of opioids "throughout the country, including in Pennsylvania." Opp. at 8 (citing Compl. ¶ 123). But the opposition mischaracterizes that paragraph. Paragraph 123 states that "*OptumInsight* partnered with various opioid manufacturers to create studies, marketing materials, educational programs, and even algorithms to simultaneously downplay opioids' addictive properties and expand their use and availability throughout the country, including in Pennsylvania." Compl. ¶ 123 (emphasis added). "OptumInsight" is a collectively defined term that, through paragraph 121, lumps together

4

OptumInsight, Inc., OptumInsight Life Sciences, Inc., *and* numerous non-party predecessor entities including "Innovus, Innovus Research, i3, QualityMetric, HTAnalytics, ChinaGate, and CanReg." Compl. ¶ 121.

This is precisely the kind of impermissible group pleading that cannot establish an individual defendant's contacts with the forum. *See Heartrepreneur, LLC v. Jones*, 2020 WL 2839102, at *3 (E.D. Pa. June 1, 2020); *Blanding v. Walmart Inc.*, 2024 WL 3433321, at *2, 5 (E.D. Pa. July 15, 2024). The *only* individualized allegation naming OptumInsight Life Sciences, Inc. specifically is paragraph 259, which contains allegations about a 2013 email from an "OptumInsight Life Sciences, Inc. consultant" to opioid manufacturer Endo about physician prescriber data. That paragraph does not mention Pennsylvania at all. Compl. ¶ 259. A single out-of-forum communication to an out-of-forum third party cannot establish the "substantial connection" with Pennsylvania required under *Walden*, 571 U.S. at 284.

Critically, the City never responds to *Anne Arundel County*, where the District of Maryland in a materially identical opioid case dismissed claims against these same OptumInsight entities for lack of personal jurisdiction. Br. at 6–7. Just as in *Anne Arundel County*, none of the City's allegations referencing the 12(b)(2) Defendants "indicated that they transacted business within" Pennsylvania or that they "purposefully availed themselves of the privilege of conducting activities within" Pennsylvania. 2025 WL 254807 at *2–4, 10. The City's silence as to this directly on-point authority should be treated as a concession that the decision is unrebutted.

### 2. OptumRx Discount Card Services, LLC and Optum Perks, LLC

The opposition asserts that the Discount Card Defendants "advanced the interests of the Enterprise by allowing patients to circumvent UM and other restrictions." Opp. at 6. But the opposition does not identify any allegation that either Discount Card Defendant itself offered opioid manufacturers preferential formulary positions, contracted with manufacturers to prevent

UM implementation, or manufactured, distributed, or dispensed controlled substances—the specific conduct that complaint paragraphs 790 and 796 through 800 define as constituting participation in the "Formulary & UM Enterprise." "Advancing the interests" of an enterprise is not the legal standard; a RICO defendant must participate in the *operation or management* of the enterprise through a *pattern of racketeering activity*. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

Moreover, the opposition mischaracterizes the discount-card allegations, Compl. ¶¶ 425–432, as specific to OptumRx Discount Card Services, LLC and Optum Perks, LLC, Opp. at 11. In fact, nearly every operative sentence in that section refers only to "Optum" generically (*e.g.*, "Optum also collects . . . ," "Optum issues cash cards . . . ," "Optum was also unwilling to control any prescriptions administered by Optum Perks or Optum Discount Card Services"). Compl. ¶¶ 425–432. The two entities are named only in passing in paragraphs 425 and 430—merely to identify which entity "governs" the cash card program—and neither paragraph alleges any Pennsylvania-specific act. This is insufficient to establish specific jurisdiction. *See Walden*, 571 U.S. at 284.

### 3.  OptumHealth Holdings, LLC

The opposition relies on complaint paragraph 140 to argue OptumHealth Holdings, LLC's individual conduct and specific jurisdiction, quoting that the OptumHealth Defendants "partnered with Purdue to educate many case managers, nurse practitioners, and medical directors." Opp. at 10 (citing Compl. ¶ 140). But that citation proves the group-pleading problem. "OptumHealth" is a collectively defined term that paragraph 145 defines to jointly include OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and OptumHealth Networks, Inc.—with no way to discern which entity did what. Compl. ¶ 145.

6

In fact, complaint paragraph 141—the only paragraph naming OptumHealth Holdings, LLC individually—alleges nothing but its state of formation and principal place of business (Minnesota). No conduct. No Pennsylvania connection. Compl. ¶ 141. The opposition's reliance on collectively defined allegations thus proves, rather than rebuts, the improper group-pleading problem identified in the opening brief.

**C.　　The RICO Claim Does Not Cure The Jurisdictional Defects.**

The City's attempts to rely on RICO's nationwide service of process fail. First, the City's RICO claims are unquestionably time-barred. *See* Joint Br. at Section I. The City's opposition merely points back to its argument that a "RICO claim accrues when the plaintiff knows, or should know, of *both* its injury *and the source of its injury*," citing to *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004). Opp. at 5 (citing Joint Opp., Sections I.A and II.). As explained in Defendants' joint reply, the City mistakenly applies this standard, and in any event, the City's claim is still time-barred based on the 2018 and 2019 suits brought against PBMs. Joint Reply at 2–5.

Further, RICO's nationwide service of process is not supported where, like here, the RICO claim is demonstrably not viable. *Waller v. Nelson*, 2023 WL 4106250, *8 (W.D. Va. June 21, 2023). Despite relisting the elements of a RICO claim, the City still fails to explain how any of the 12(b)(2) Defendants participated in any alleged RICO enterprise. *See, e.g.*, Joint Opp. at 11 ("Defendants' coordinated efforts with opioid manufacturers"); Compl. ¶¶ 789–800. And the City fails to address that pendent jurisdiction cannot save the City's other claims against the 12(b)(2) Defendants since the underlying RICO claim cannot survive. *See* Joint Brief at Sections I.A., II; *Smith v. Onsite Neonatal Partners, Inc.*, 2023 WL 1864869, at *5 (E.D. Pa. Feb. 9, 2023); *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002).

7

### D.    There Is No Basis for Jurisdictional Discovery.

Recognizing that its jurisdictional arguments fail, the City asks the Court to allow jurisdictional discovery. Opp. at 11–12. But the City is not entitled to jurisdictional discovery as a matter of right. To obtain discovery from out-of-state defendants, the plaintiff must "present[] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state." *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x. 561, 565 (3d Cir. 2017) (affirming denial of request for jurisdictional discovery (cleaned up)); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). The City cites to *Toys "R" Us, Inc.* for the proposition that jurisdictional discovery is allowed except where a plaintiff's claim is clearly frivolous. Opp. at 11–12. But the City ignores a critical point in *Toys "R" Us, Inc.*: a plaintiff must make the "required threshold showing" of "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state." 318 F.3d at 456. Even then, a court "has discretion to refuse to grant jurisdictional discovery and may deny jurisdictional discovery where a plaintiff has failed to meet its burden of making out a threshold prima facie case of personal jurisdiction." *Schrotberger v. Doe*, 2022 WL 4072962, *7 (E.D. Penn. 2022) (cleaned up).

Here, the City has failed to present any allegations—much less with reasonable particularity—as to why discovery might reveal suit-related contacts between the 12(b)(2) Defendants and Pennsylvania. Accordingly, the Court should deny the City's request for jurisdictional discovery. *See Malik*, 710 F. App'x at 565 (affirming district court order granting motion to dismiss for lack of personal jurisdiction and denying request for jurisdictional discovery since a plaintiff may not "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery."); *see also Anne Arundel County*, 2025 WL 254807, at *4 (denying request for jurisdictional discovery in opioid litigation as "unjustified because the County

8

has not alleged any facts that suggest that this Court may have specific personal jurisdiction over the OptumInsight Entities").

**II.    THE CITY'S OPPOSITION CONFIRMS THAT ITS CLAIMS AGAINST CORPORATE-PARENT AND AFFILIATE ENTITIES WITH NO ALLEGED CONDUCT FAIL.**

The City asserts claims against Optum, Inc., OptumHealth Holdings, LLC, OptumInsight Life Sciences, Inc., Optum Health Networks, Inc., OptumRx Discount Card Services, LLC, and Optum Perks, LLC by improperly lumping them in with other defendants. As with its personal jurisdiction arguments, the opposition does not cure this deficiency—it repeats it. The same pattern of reliance on boilerplate, conclusory, and collective allegations that infected the complaint runs throughout the opposition.

As to Optum, Inc., and OptumHealth Holdings, LLC, their status as corporate parents or holding companies does not on its own give rise to liability. Just as in the complaint, the opposition provides nothing to support its allegations that Optum, Inc. itself engaged in wrongdoing. Opp. at 13. As to OptumHealth Holdings, LLC, the opposition asserts that the City's allegations go "well beyond a 'standard parent-subsidiary relationship'" without engaging at all with alter-ego case law. Opp. at 12–13. The City's statement that it "makes no allegations related to OptumHealth Holdings, LLC's status as a corporate parent, nor does it even nominally ascribe liability to OptumHealth Holdings, LLC for the bad acts of its subsidiaries" does not change the fact that the City relies on this relationship alone in making its conclusory allegations. *Id.* at 12.

As to OptumInsight, Inc., OptumInsight Life Sciences, Inc. and Optum Health Networks, Inc., the City's opposition offers nothing beyond the same vague and conclusory collective allegations. Opp. at 13–14. It acknowledges that each entity is referenced only as part of a defined group. *Id.* ("OptumInsight Life Sciences, Inc. (along with OptumInsight, Inc. (Compl. ¶ 121)) created all kinds of materials that downplayed the dangers of opioids . . ."; "OptumHealth

9

Networks, Inc. (along with OptumHealth Holdings, LLC and OHC (id. ¶ 145)) worked with Purdue to expand the opioid market . . .").

The City's claims against OptumRx Discount Card Services, LLC and Optum Perks, LLC related to prescription discount cards are far removed from the City's alleged injuries. Consistent with its strategy to improperly lump all Defendants together, the City's Opposition states that, "all Defendants [undifferentiated], including Optum's Discount Card Defendants [undifferentiated], voluntarily undertook a legal duty to the City to use reasonable care and skill and to not create a foreseeable risk of harm." Opp. at 14.

As to UnitedHealth Group Incorporated, the City relies on Paragraphs 109 and 110 of the complaint, which confirm that these are allegations of guilt by association. Opp. at 14–15; Compl. ¶¶ 109–110 ("UnitedHealth Group, through its executives and employees, controls the enterprise-wide policies that inform both UHC and Optum's lines of business in order to maximize profits across the corporate family . . . UnitedHealth Group's conduct had a direct effect in Pennsylvania, including Philadelphia."). Paragraph 109 is a description of corporate structure, not an allegation of wrongful conduct. And Paragraph 110's conclusory assertion that conduct "had a direct effect in Pennsylvania" is recycled *verbatim* for unrelated Defendants throughout the complaint. *See, e.g.*, Compl. ¶ 67 ("Evernorth's conduct had a direct effect in Pennsylvania, including Philadelphia.").

As to OptumHealth Care Solutions, LLC, the City argues that "no such requirement exists" to provide any specifics as to the alleged miseducation of healthcare practitioners. Opp. at 15. However, the City misses the point; it does not need to allege each and every detail as to the alleged miseducation, but it must provide more than vague and conclusory allegations of wrongdoing. *See* Compl. ¶¶ 140, 407–13. It fails to do so.

10

**CONCLUSION**

The Court should dismiss with prejudice the City's claims.

Dated: July 17, 2026

/s/ Joseph I. Fontak

Joseph I. Fontak
**LEADER BERKON COLAO &
SILVERSTEIN LLP**
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 755-0455
jfontak@leaderberkon.com

Brian D. Boone (*pro hac vice*)
Matthew P. Hooker (*pro hac vice*)
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000
brian.boone@alston.com
matthew.hooker@alston.com

Michael A. Kaeding (*pro hac vice*)
**ALSTON & BIRD LLP**
555 Fayetteville St., Suite 600
Raleigh, NC 27601
(919) 862 2200
mike.kaeding@alston.com

Debolina Das (*pro hac vice*)
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
(212) 210-9400
debolina.das@alston.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Jeffrey T. Scott (*pro hac vice*)
Matthew J. Porpora (*pro hac vice*)
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10014
(212) 558-4000
giuffrar@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

11

*Attorneys for Defendants UnitedHealth Group Incorporated, Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Networks, Inc., OptumHealth Care Solutions, LLC and OptumHealth Holdings, LLC*