**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Plaintiff, | : | No. 2:25-cv-06185-CFK |
| | : | |
| vs. | : | |
| | : | |
| CVS HEALTH CORPORATION, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO**
**DISMISS FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    I.      THE CITY'S CLAIMS ARE NOT TIME-BARRED............................................ 1

          A.     The City's RICO Claim is Timely.................................................................. 1

          B.     The City's State Law Claims are Timely. ....................................................... 4

    II.    THE CITY HAS RICO STANDING. ...................................................................... 6

          A.     The City Adequately Alleges Proximate Cause .......................................... 6

          B.     Municipal Expenses Constitute Injury to Business or Property ................. 7

          C.     Equitable Relief Is Available ...................................................................... 7

    III.   THE CITY HAS ALLEGED PUBLIC NUISANCE. ............................................. 8

    IV.   THE CITY HAS STATED A CLAIM FOR NEGLIGENCE................................. 9

    V.    THE CITY HAS STATED A UTPCPL CLAIM AGAINST CVS ...................... 10

    VI.   THE CITY'S CPO CLAIM IS NOT PREEMPTED ............................................ 10

    VII.  THE CITY'S CLAIMS ARE NOT PREEMPTED BY ERISA OR
         MEDICARE............................................................................................................11

CONCLUSION.................................................................................................................. 12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Althaus ex rel. Althaus v. Cohen*,
756 A.2d 1166 (Pa. 2000) ........................................................................................................9

*Atlantic Richfield Co. v. County of Montgomery*,
294 A.3d 1274 (Pa. Cmwlth. 2023) ..........................................................................................8

*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*,
417 F. Supp. 3d 531 (E.D. Pa. 2019) ...............................................................................2, 3, 4

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ..................................................................................................................7

*Cantwell v. Allegheny Cnty.*,
483 A.2d 1350 (Pa. 1984) .........................................................................................................9

*Canyon County v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ....................................................................................................7

*Cetel v. Kirwan Fin. Grp., Inc.*,
460 F.3d 494 (3d Cir. 2006) ................................................................................................ 2-3

*Cincinnati v. Beretta U.S.A. Corp.*,
768 N.E.2d 1136 (Ohio 2002) .................................................................................................10

*City of Boston v. OptumRx, Inc.*,
169 F.4th 58 (1st Cir. 2026) ......................................................................................................6

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*,
719 F.2d 322 (9th Cir. 1983) ...................................................................................................10

*City of Huntington v. AmerisourceBergen Drug Corp.*,
157 F.4th 547 (4th Cir. 2025) ...................................................................................................5

*City of Philadelphia v. Beretta U.S.A. Corp.*,
277 F.3d 415 (3d Cir. 2002) ......................................................................................................8

*City of Pittsburgh v. Equitable Gas Co.*,
512 A.2d 83 (Pa. Cmwlth. 1986) .............................................................................................10

*CVS Pharmacy, Inc. v. City of Philadelphia*,
354 A.3d 537 (Pa. Super. 2026) ...............................................................................................8

*Express Scripts, Inc. v. Anne Arundel County*,
    353 A.3d 1084 (Md. 2026) ..................................................................... 8-9

*Farabaugh v. Pennsylvania Tpk. Comm'n*,
    911 A.2d 1264 (Pa. 2006) ........................................................................9

*Flowers v. Caremark PCS Health, LLC*,
    180 F.4th 1084 (8th Cir. 2026) ...............................................................11

*Forbes v. Eagleson*,
    228 F.3d 471 (3d Cir. 2000).......................................................................2

*In re Express Scripts, Inc.*,
    176 F.4th 301 (4th Cir. 2026) .................................................................4, 5

*Jannuzzio v. Danby*,
    2022 WL 2541678 (E.D. Pa. July 7, 2022)..............................................6

*LabMD Inc. v. Boback*,
    47 F.4th 164 (3d Cir. 2022) ......................................................................2

*Machipongo Land & Coal Co. v. Com.*,
    799 A.2d 751 (Pa. 2002) ...........................................................................9

*McKee Foods Corp. v. BFP Inc.*,
    173 F.4th 242 (6th Cir. 2026) .................................................................11

*Medical Marijuana, Inc. v. Horn*,
    604 U.S. 593 (2025).................................................................................6

*MSP Recovery Claims, Series LLC v. Abbott Labs.*,
    Civ. No. 19-21607, 2021 WL 2177548 (D.N.J. May 28, 2021).............7, 8

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization*
    *Transactions, Inc.*,
    730 F.3d 263 (3d Cir. 2013).....................................................................3

*Pharmaceutical Care Mgmt. Ass'n v. Mulready*,
    78 F.4th 1183 (10th Cir. 2023) ...............................................................12

*Pharmaceutical Care Mgmt. Ass'n v. Wehbi*,
    18 F.4th 956 (8th Cir. 2021) ...................................................................12

*Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*,
    359 F.3d 226 (3d Cir. 2004).................................................................1, 2

*Roofers Local No. 149 Pension Fund v. GSK PLC*,
    Civ. No. 25-00618, 2026 WL 602784 (E.D. Pa. 2026) ....................3, 4, 5

*Rotella v. Wood*,
    528 U.S. 549 (2000). Dkt. 109................................................................................2

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)......................................................................................7

*Spokane v. Nationwide Life Ins. Co.*,
    617 F. Supp. 3d 290 (E.D. Pa. 2022) ..........................................................4

*Stafford Invs., LLC v. Vito*,
    Nos. 06-1112, 06-4424, 2008 WL 5062136 (E.D. Pa. Dec. 1, 2008)........................4

*Straw v. Fair*,
    187 A.3d 966 (Pa. Super. 2018).................................................................9

*United States v. Kubrick*,
    444 U.S. 111 (1979).....................................................................................2

*Wisniewski v. Fisher*,
    857 F.3d 152 (3d Cir. 2017).......................................................................8

## Other Authorities

Restatement (Second) of Torts § 324A................................................................9

Restatement (Second) of Torts § 821B................................................................8

iv

**INTRODUCTION**

Defendants' reading of the City's opposition is an exercise in wishful thinking. According to Defendants, the City's RICO claim would be untimely *if* the governing accrual standard was different, *if* the City was omniscient, or *if* the City was not afforded any time to investigate "storm warnings" before its claim accrued. Similarly, they contend that the City's public nuisance claim would be untimely *if* the City's action was a private action for damages rather than a public enforcement action for equitable abatement. But none of these preconditions is true.

Defendants also suggest that the City's RICO claim is deficient on the merits, relying on more restrictive, extra-Circuit authority that is neither controlling nor persuasive, and which runs contrary to the principle that the RICO statute should be construed broadly. Contrary to Defendants' arguments, the City has properly pled a claim for public nuisance, including that Defendants' conduct directly contributed to the oversupply of prescription opioids in Philadelphia that interfered with the public rights of health, safety, and the use of public spaces. The City has likewise properly alleged that Defendants owed the City a duty of reasonable care, which they breached. Defendants fail to counter the City's arguments on its UTPCPL claim against CVS, and cannot show clear evidence that the General Assembly intended to preempt the Consumer Protection Ordinance (CPO). Finally, the recent decisions Defendants cite do not support their argument for ERISA (or Medicare) preemption.

**ARGUMENT**

**I.    THE CITY'S CLAIMS ARE NOT TIME-BARRED.**

**A.  The City's RICO Claim is Timely.**

Defendants argue that the "injury discovery rule" in *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004), which provides that a civil RICO claim accrues when the plaintiff knows, or should know, of both its injury and the source of that injury, is

1

"irreconcilable" with *Rotella v. Wood*, 528 U.S. 549 (2000). Dkt. 109 at 3. Not true. *Rotella* simply rejected an alternative accrual standard—the injury and pattern discovery rule—but did not "settle upon a final rule." 528 U.S. at 554 n.2, 555-60. Indeed, as *Prudential* expressly recognized, the Third Circuit "adopted the injury discovery rule in *Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000)" "*[a]fter Rotella*." 359 F.3d at 233 (emphasis added); *see also Forbes*, 228 F.3d at 484 (discussing *Rotella* in choosing accrual rule). And the Third Circuit continues to apply that "injury discovery rule" today. *See, e.g.*, *LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022) ("The statute of limitations begins to run when the plaintiff knows or should know of both its injury and the source of its injury.") (citing *Prudential* and *Forbes*). The Third Circuit, therefore, has concluded that the injury discovery rule adopted in *Forbes* and applied in *Prudential* is consistent with *Rotella*.[1]

Contrary to Defendants' suggestion, Dkt. 109 at 3, both *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006), and *Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 549 (E.D. Pa. 2019), applied the Third Circuit's injury discovery rule.[2] *See* 460 F.3d at 507 ("we apply an injury discovery rule," citing *Forbes*); 417 F. Supp. 3d at 549 (citing *Forbes*). The fact that neither case specifically discussed discovery of the source of the injury, apart from the injury itself, is hardly surprising, since the source of the injury was not in question in either case. *See Cetel*, 460 F.3d at 500-501 (when plaintiffs purchased life insurance policies

---

[1] *LabMD*'s acknowledgment that "[t]here may be some tension between the accrual rule" in *Prudential* and *Rotella* does not establish otherwise. 47 F.4th at 179 n.10 (quoting *Rotella*, 528 U.S. at 555). Indeed, *Rotella* itself made clear that a plaintiff must know both "that he has been hurt and who has inflicted the injury" for a claim to accrue, 528 U.S. at 556 (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)), which is consistent with the Third Circuit's injury discovery rule.

[2] Defendants' assertion that these cases apply "the proper *Rotella* test," Dkt. 109 at 3, exhibits their misunderstanding of *Rotella*. There is no "*Rotella* test"; *Rotella* did not adopt a standard, but rejected one. 528 U.S. at 554 n.2, 555-60; *see also Forbes*, 228 F.3d at 484.

that lacked their advertised tax benefits, defendants were those who created, marketed, and sold the policies to them); *Blue Cross*, 417 F. Supp. 3d at 537 (when health insurance companies were injured by purchasing adulterated drugs, defendant was the manufacturer who misrepresented its manufacturing process and sold them the drugs).  In other words, there was no doubt that when plaintiffs discovered their injury, they also discovered its source.

Here, in stark contrast, although the City knew of its injury, the City did not discover *Defendants'* role in that injury until much later, after the City investigated allegations in other opioid complaints and eventually, in late 2021, obtained specific evidence produced in other opioid litigation that provided the necessary factual information for the City to file its complaint.  *See* Dkt. 90 at 5-6; *see also Roofers Local No. 149 Pension Fund v. GSK PLC*, Civ. No. 25-00618, 2026 WL 602784, at *4 (E.D. Pa. 2026) ("A fact is considered 'discovered' when a 'reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.'") (quoting *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013)). Indeed, the City's own prior complaints against other actors in the opioid supply chain alleged that PBMs were *victims* of the opioid manufacturers' fraudulent marketing, not co-conspirators. *See, e.g.*, Dkt. 85-2, ¶¶ 400-417, 424-25.

Even if other opioid complaints filed against PBMs in 2018 and 2019 constituted "storm warnings" that put the City on inquiry notice, as Defendants contend, Dkt. 109 at 4, that does not mean that the statute of limitations began to run at that time. *See Pension Tr. Fund*, 730 F.3d at 275 ("[W]e caution that the inquiry notice standard can only play a supporting role because the limitations period does not begin to run until the plaintiff discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation.") (internal quotation marks omitted);

3

*Roofers*, 2026 WL 602784, at *8 ("the limitations period does not automatically begin to run when a plaintiff is merely put on inquiry notice or when there are storm warnings") (internal quotation marks omitted).  Instead, the Court must determine when a reasonably diligent plaintiff *should* have discovered his injury (and its source), which is a factual question that cannot be resolved on a motion to dismiss.  *See Blue Cross Blue Shield*, 417 F. Supp. 3d at 549-550 ("Whether a party should have known of his injury by exercising reasonable diligence is a factual determination and should 'ordinarily' be resolved by a jury.") (quoting *Stafford Invs., LLC v. Vito*, Nos. 06-1112, 06-4424, 2008 WL 5062136, at *3 (E.D. Pa. Dec. 1, 2008)); *Spokane v. Nationwide Life Ins. Co.*, 617 F. Supp. 3d 290, 307 (E.D. Pa. 2022) ("whether Plaintiffs exercised due diligence on their RICO claims . . . must be left for the jury to resolve at trial").

### B.  The City's State Law Claims are Timely.

Defendants contend that the City may not invoke nullum tempus for its public nuisance claim (and its related conspiracy and concerted action claims) because the City does not seek to enforce public rights, but *private* rights, as evidenced by its request for damages.  Dkt. 109 at 5-6. Defendants are incorrect.

The City's public nuisance claim seeks to protect public health, safety, and use and enjoyment of public spaces, which are well-recognized public rights in Pennsylvania.  *See* Dkt. 90 at 13-14 (citing cases).  And the City does *not* seek damages, but equitable abatement relief.  *See* Dkt. 90 at 8 (citing Complaint and noting that public entities are precluded from seeking damages in public nuisance action).

*In re Express Scripts, Inc.*, 176 F.4th 301 (4th Cir. 2026), is not to the contrary.  In that case, the Fourth Circuit addressed the narrow question of whether the defendant had a Seventh Amendment right to a jury trial in a public nuisance claim brought by West Virginia local governments.  *Id.* at 305.  To answer that question, the court examined whether, *at the time of the*

4

*nation's founding*, a court of equity could award "money damages to redress the downstream harms of a public nuisance," and held that it could not. *Id.* The Fourth Circuit expressly recognized, however, that its analysis about equitable relief available in 1791 is not determinative of equitable relief available today. *Id.* at 314 (under West Virginia law, "the remedy of abatement" includes "requir[ing] a defendant to pay money to fund efforts to eliminate the resulting harm to the public") (quoting *City of Huntington v. AmerisourceBergen Drug Corp.*, 157 F.4th 547, 574 (4th Cir. 2025)) (internal quotation marks omitted). *Express Scripts*, therefore, does not support Defendants' assertion (Dkt. 109 at 6) that the City's requested equitable relief is for legal damages, which would preclude the application of nullum tempus.

As to the City's other claims, Defendants contend that, under *Roofers*, 2026 WL 602784, at *10, the City cannot rely on any tolling doctrines. Dkt. 109 at 6. But *Roofers*' tolling analysis addressed whether the defendants' denials of wrongdoing "dissipated any supposed storm warnings of their wrongdoing" so as "to delay the running of the limitations clock." 2026 WL 602785 at *10 (internal quotation marks omitted). That analysis is inapplicable here, where the City does not allege that it failed to investigate its claim because it (unreasonably) relied on Defendants' "denials or reassurances."

Instead, the City alleges that Defendants concealed that they allowed manufacturers to influence their formulary management, including the drugs listed on the formulary and the applicable utilization management measures, solely to increase sales, despite known concerns about the safety and effectiveness of opioids. *See, e.g.*, Dkt.1 ("Compl."), ¶¶ 677-85. Even if opioid complaints filed in 2018 and 2019 provided "storm warnings" and put the City on inquiry notice of such conduct, the City's subsequent investigation did not uncover evidence of Defendants' conflict of interest, collusion with the opioid manufacturers, and self-dealing until

5

documents produced in late 2021 revealed that Defendants knew that the opioid manufacturers were misrepresenting the risks of prescription opioids, but nevertheless permitted them to influence Defendants' formularies and formulary management, helped them promote opioids, and sold them Defendants' data to help them expand the opioid market. Dkt. 90 at 8; Compl. ¶¶ 1-2, 673-74. After the City obtained that evidence, the City promptly filed suit. As discussed above, whether the City should have discovered Defendants' role in its injury sooner is a factual matter that cannot be resolved on a motion to dismiss. *See supra* at 3-4; *see also* Dkt. 90 at 9 (citing cases).[3]

## II.   THE CITY HAS RICO STANDING.

### A.   The City Adequately Alleges Proximate Cause

Defendants contend that the City's three-step causation chain is too indirect as a matter of law to establish proximate cause. Dkt. 109 at 9. But Defendants' cited authorities do not support that proposition. *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025), addresses only whether RICO's injury to business or property requirement excludes "business and property loss that derives from a personal injury," which is not at issue here. *Id.* at 596. And its discussion of proximate cause, *id.* at 612-13, is dicta. *Jannuzzio v. Danby*, 2022 WL 2541678 (E.D. Pa. July 7, 2022), is similarly not applicable where the court found that the corporation, rather than the individual shareholders, was the party that was directly injured by the alleged misconduct. *Id.* at *11-12.

---

[3] Defendants contend that because the City's counsel signed pleadings against Defendants on behalf of other clients in the MDL as early as 2019, it is "not plausible" for the City to contend that it could not have brought suit earlier. Dkt. 109 at 6-7 (quoting *City of Boston v. OptumRx, Inc.*, 169 F.4th 58, 63 (1st Cir. 2026)). But Defendants ignore the fact that protective orders in the MDL precluded MDL counsel from sharing documents with parties outside the MDL, which includes the City.

In any event, the City's claim satisfies RICO's direct relationship requirement because the City's alleged injury—including governmental expenditures and lost tax revenue—"is the direct result of" Defendants' conduct. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) (where injury was "foreseeable and natural consequence" of defendants' conduct, direct relationship requirement was satisfied); *see also, e.g.*, Compl. ¶¶ 810, 813, 817-19. There is "no more immediate victim [that] is better situated to sue." *Bridge*, 553 U.S. at 658. Indeed, the City is the only party that suffered these injuries.

**B.  Municipal Expenses Constitute Injury to Business or Property**

Defendants argue that governmental expenditures cannot establish injury to business or property in the absence of any Third Circuit case finding that they do. Dkt. 109 at 9-10 (citing *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008)). But given that RICO is a remedial statute to be construed broadly, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985), the presumption should be the opposite: absent controlling, limiting precedent akin to *Canyon County* (holding that governmental expenditures are *not* an injury to business or property), there is no reason this Court should conclude that governmental expenditures are insufficient as a matter of law to confer RICO standing. And because the Third Circuit has not adopted the *Canyon County* approach, there is no reason to limit the City's RICO claim to only marketplace harms, as Defendants suggest, Dkt. 109 at 10.

**C.  Equitable Relief Is Available**

Similarly, Defendants point to no controlling authority that precludes equitable relief under RICO, relying on only Fourth and Ninth Circuit cases. Dkt. 109 at 10; Dkt. 90 at 12. Although *MSP Recovery Claims, Series LLC v. Abbott Labs.*, Civ. No. 19-21607, 2021 WL 2177548 (D.N.J. May 28, 2021), denied equitable relief, the court did not engage in any independent analysis of the issue, but simply followed the lead of other district courts in New Jersey that had followed the

7

Ninth Circuit. *Id.* at \*9. Moreover, *MSP Recovery* expressly acknowledged that "[n]either the Supreme Court nor the Third Circuit have considered whether equitable relief is available to private parties under RICO." *Id.* at \*8.

### III.    THE CITY HAS ALLEGED PUBLIC NUISANCE.

Defendants assert that *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir. 2002), requires dismissal of the City's public nuisance claim because Defendants lacked control over the source of the nuisance. Dkt. 109 at 11. But the City has alleged that Defendants exercised significant control over the flow of opioids into Philadelphia that caused the public nuisance. Dkt. 90 at 16-17. At the motion to dismiss stage, the Court must accept these allegations as true. *See, e.g.*, *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017). Defendants' mischaracterization of the City's complaint, *see* Dkt. 109 at 11 (citing Dkt. 90 at 13), therefore, does not carry the day.

Contrary to Defendants' suggestion, Dkt. 109 at 11, *CVS Pharmacy, Inc. v. City of Philadelphia*, which is factually very similar to this case, is highly persuasive as to whether the City has alleged that Defendants interfered with public rights under Pennsylvania law. 354 A.3d 537 (Pa. Super. 2026) (City adequately alleged that pharmacies interfered with public rights). And *CVS* does not conflict with *Atlantic Richfield Co. v. County of Montgomery*, 294 A.3d 1274 (Pa. Cmwlth. 2023), but instead explains in detail why *Atlantic Richfield* is distinguishable. *CVS*, 354 A.3d at 543-45.[4]

The Maryland Supreme Court's recent decision, *Express Scripts, Inc. v. Anne Arundel County*, 353 A.3d 1084 (Md. 2026), does not change this analysis. *Anne Arundel* recognized that Maryland's public nuisance law is strictly limited to its common-law contours and has not adopted the more "expansive" definition of public nuisance in § 821B of the Second Restatement, 353 A.3d

---

[4] Defendants in *CVS* have petitioned the Pennsylvania Supreme Court for discretionary review of the Pennsylvania Superior Court's decision.

at 1087, 1108, 1123-24, that Pennsylvania courts apply, *see, e.g.*, *Machipongo Land & Coal Co. v. Com.*, 799 A.2d 751, 773 (Pa. 2002).

## IV.    THE CITY HAS STATED A CLAIM FOR NEGLIGENCE.

Defendants rely on *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000), to incorrectly contend that Defendants did not owe the City any legal duty under a voluntary undertaking theory because such duties arise only if a defendant has affirmatively undertaken obligations to a specific party. Dkt. 109 at 12. But *Althaus* does not discuss voluntary undertaking and is inapplicable. Instead, Pennsylvania law has long held that parties such as Defendants can be liable to third parties such as the City when they have undertaken "to render services to another which [they] should recognize as necessary for the protection of a third person." *Cantwell v. Allegheny Cnty.*, 483 A.2d 1350, 1353 (Pa. 1984) (quoting Restatement (Second) of Torts § 324A).[5] In other words, Pennsylvania imposes a legal duty on contracting parties to perform their contractual obligations so as not to injure third parties. *See, e.g., Farabaugh v. Pennsylvania Tpk. Comm'n*, 911 A.2d 1264, 1283 (Pa. 2006).

Here, the City has plausibly alleged that Defendants, when they undertook to sell, dispense and create formularies for highly addictive opioid drugs for their health benefit plan clients, also assumed a duty to use reasonable care and to not create a foreseeable risk of harm to the City, among others. *See* Dkt. 90 at 19-20. The lack of a contract between the City and Optum or Express Scripts, and the terms of the City's contract with CVS, are therefore irrelevant.

Defendants are also plainly incorrect that just because they are *PBMs*, rather than pharmacies, they have no statutory dispensing duties. Dkt. 109 at 12. Defendants' mail-order

---

[5] Although the City demonstrated in its initial brief that it met the five factor test to determine if a party has a duty, Dkt. 90 at 20-21, courts "need not engage" in this analysis in voluntary undertaking cases. *See, e.g., Straw v. Fair*, 187 A.3d 966, 984 n.12 (Pa. Super. 2018).

pharmacies dispense controlled substances and had a duty to exercise due care in doing so. *See* Dkt. 90 at 22.

Finally, the City has not "admit[ed]" that *City of Pittsburgh v. Equitable Gas Co.*, 512 A.2d 83, 84 (Pa. Cmwlth. 1986), "would bar the City's claim." Dkt. 109 at 13. The municipal cost recovery rule bars costs caused by emergency public services, such as the gas explosion in *Equitable Gas*. *See* Dkt. 90 at 25-26. The doctrine does not bar public nuisance claims or claims based on repeated tortious conduct. *See, e.g., City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 324 (9th Cir. 1983) (public nuisance); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1149-50 (Ohio 2002) (ongoing conduct).

## V.   THE CITY HAS STATED A UTPCPL CLAIM AGAINST CVS

Defendants have no substantive response to the City's defense of its UTPCPL claim, except to ask the Court to dismiss the UTPCPL claim against Express Scripts and Optum Defendants. Dkt. 109 at 14. Since the City has acknowledged that its UTPCPL claim is only against CVS, *see* Dkt. 90 at 37 n.4, the City does not oppose the dismissal of that claim against the other defendants.

## VI.   THE CITY'S CPO CLAIM IS NOT PREEMPTED

Defendants contend that, if this Court does not conclude that the CPO claim is preempted, "municipalities and counties across the Commonwealth [could] pursue conflicting standards in an area where the General Assembly plainly desired uniformity." Dkt. 109 at 14. But Defendants fail to point to any clear statement of legislative intent as to that purported "desired uniformity." *See* Dkt. 90 at 34-35. And Defendants provide no response to the City's cases in which the Pennsylvania Supreme Court has consistently declined to find parallel local laws preempted. *See* Dkt. 90 at 34 (citing cases).

## VII.    THE CITY'S CLAIMS ARE NOT PREEMPTED BY ERISA OR MEDICARE.

Defendants cite two recent cases in support of their ERISA preemption argument, but neither is persuasive. Dkt. 109 at 15-16. In *Flowers v. Caremark PCS Health, LLC*, 180 F.4th 1084 (8th Cir. 2026), the court held that state requirements that imposed certain geographic restrictions on PBMs' pharmacy networks were preempted by ERISA because they forced PBMs to adopt "a particular scheme of substantive coverage," even if they provided PBMs "some flexibility" in how to satisfy those requirements. *Id.* at 1090. Similarly, *McKee Foods Corp. v. BFP Inc.*, 173 F.4th 242 (6th Cir. 2026), addressed several Tennessee laws that directly regulated PBMs and their pharmacy networks, among other requirements, and held that those laws were preempted by ERISA because they "diminish, if not outright eliminate, a plan's ability to design its network in a way most accommodating and beneficial to its participants." *Id.* at 267.

Unlike *Flowers* or *McKee Foods*, the City does not seek to regulate, standardize, set specific requirements for, or approve Defendants' formularies or UM practices, including for their ERISA plans. Dkt. 90 at 37. The City's action simply seeks to prevent Defendants from using their formularies in such a way as to create a public nuisance, operate negligently, or violate other laws of general applicability. *Id.* In other words, the City is not requiring Defendants to structure their benefit plans in a certain way, is not imposing any substantive requirements, and is not encroaching on Defendants' autonomy to design their formularies; it is entirely up to Defendants to determine how to do so to comply with the relevant state laws. For that reason, ERISA does not preempt the City's action. *Id*. at 36-38.

For similar reasons, Medicare Part D also does not preempt the City's action. *See id*. at 38-39. The City does not seek to displace any substantive Medicare Part D requirements or standards, but simply to ensure that the PBMs comply with state laws of general applicability, such as public nuisance and negligence. Such an action does not trigger preemption. *See Pharmaceutical Care*

11

*Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1206 n.22 (10th Cir. 2023); *Pharmaceutical Care Mgmt.*

*Ass'n v. Wehbi*, 18 F.4th 956, 976 (8th Cir. 2021).

**CONCLUSION**

For the forgoing reasons and those in the City's opposition, this Court should deny

Defendants' joint motion to dismiss the City's complaint for failure to state a claim.

DATED: August 4, 2026                              Respectfully Submitted,

                                                   THE CITY OF PHILADELPHIA LAW DEPT.

                                        By: /s/*Catherine Hancock Dorsey*

| | |
|---|---|
| Renee Garcia, City Solicitor | Catherine Hancock Dorsey (pro hac vice) |
| (PA Bar No. 315622) | **BARON & BUDD, P.C.** |
| Anne Taylor, Litigation Chair | 2600 Virginia Ave. N.W. Suite 900 |
| (PA Bar No. 206057) | Washington, DC 20037 |
| Lydia Furst, Chief Deputy City Solicitor | Tel.: (202) 333-4562 |
| (PA Bar No. 307450) | cdorsey@baronbudd.com |
| Michael Pfautz, Deputy City Solicitor | |
| (PA Bar No. 325323) | Russell W. Budd (pro hac vice) |
| CITY OF PHILADELPHIA LAW DEPT. | Christine C. Mansour (pro hac vice) |
| 1515 Arch Street, 17th Floor | **BARON & BUDD, P.C.** |
| Philadelphia, PA 19102 | 3102 Oak Lawn Ave., Suite 100 |
| Tel: (215) 683-5000 | Dallas, TX 75219 |
| renee.garcia@phila.gov | Tel.: (214) 521-3605 |
| anne.taylor@phila.gov | rbudd@baronbudd.com |
| lydia.furst@phila.gov | cmansour@baronbudd.com |
| michael.pfautz@phila.gov | |
| | Daniel Alberstone (pro hac vice) |
| Jerry R. DeSiderato (PA Bar No. 201097) | Mark Pifko (pro hac vice) |
| Timothy J. Ford (PA Bar No. 325290) | Peter Klausner (pro hac vice) |
| Silvio Trentalange (PA Bar No. 320606) | Evan Zucker (pro hac vice) |
| Stanford B. Ponson (PA Bar No. 322548) | Elizabeth Smiley (pro hac vice) |
| **DILWORTH PAXSON LLP** | **BARON & BUDD, P.C.** |
| 1650 Market Street, Suite 1200 | 15910 Ventura Boulevard, Suite 1600 |
| Philadelphia, PA 19103 | Los Angeles, California 91436 |
| Tel.: (215) 575-7000 | Tel.: (818) 839-2333 |
| jdesiderato@dilworthlaw.com | dalberstone@baronbudd.com |
| tford@dilworthlaw.com | mpifko@baronbudd.com |
| strentalange@dilworthlaw.com | pklausner@baronbudd.com |
| sponson@dilworthlaw.com | ezucker@baronbudd.com |
| | esmiley@baronbudd.com |

12

Gregory B. Heller (PA Bar No. 61130)
**FELDMAN SHEPHERD
WOHLGELERNTER TANNER
WEINSTOCK DODIG LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Tel: (215) 567-8300
gheller@feldmanshepherd.com

Andrew B. Sacks (Pa Bar No. 41390)
John Weston (PA Bar No. 26314)
**SACKS LAW, LLC**
1 Liberty Place, 55th Floor
1650 Market Street
Philadelphia, PA 19103
Tel.: (215) 925-8200
asacks@sackslaw.com
jweston@sackslaw.com

Stephen A. Sheller (PA Bar No. 3270)
**SHELLER PC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel.: (215) 790-7300
sasheller@sheller.com

J. Burton LeBlanc, IV (pro hac vice)
**BARON & BUDD, P.C.**
2600 CitiPlace Drive, Suite 400
Baton Rouge, LA 70808
Tel.: (225) 927-5441
bleblanc@baronbudd.com

Anthony J. Majestro (pro hac vice)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite 807
Charleston, WV 25301
Tel.: (304) 346-2889
amajestro@powellmajestro.com

Peter J. Mougey (pro hac vice)
Jeffrey R. Gaddy (pro hac vice)
**LEVIN, PAPANTONIO, PROCTOR,
BUCHANAN, O'BRIEN, BARR &
MOUGEY P.A.**
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
(850) 435-7068
pmougey@levinlaw.com
jgaddy@levinlaw.com

*Attorneys for Plaintiff*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2026, the foregoing was served upon counsel of record via the Court's electronic case filing system.

<u>/s/Catherine Hancock Dorsey</u>
Catherine Hancock Dorsey

14